# Exhibit B

FILED
2015 May-20 PM 04:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA; ex rel., et al., | ] ] ] |
| Plaintiffs, | ] ] |
| v. | ]  Case No.: 2:12-cv-KOB ] |
| ASERACARE INC, et al., | ] ] |
| Defendants. | ] |

### ORDER

Defendants GGNSC Administrative Services, LLC; Hospice Preferred Choice, Inc.; and Hospice of Eastern Carolina, Inc. (collectively, "AseraCare") filed a "Motion to Bifurcate Trial." (Doc. 288). AseraCare asks the court to bifurcate the trial, pursuant to Federal Rule of Civil Procedure 42(b), into two phases: one phase on the falsity element of Plaintiff United States of America's False Claims Act claim and a second phase on the other elements of the Government's FCA claim and all other claims. As discussed below, the court agrees with AseraCare and will bifurcate the trial into two phases.

  I.   **Standard of Review**

Whether to order bifurcation is within the discretion of the trial court. *See Harrington v. Cleburne Cnty. Bd. of Educ.*, 251 F.3d 935, 938 (11th Cir. 2001). "Rule 42(b) is sweeping in its terms and allows the court, in its discretion, to grant a separate trial of any kind of issue in any kind of case." *In re Bendectin Litig.*, 857 F.2d 290, 317 (6th Cir. 1988). The Rule provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a

1

separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial." Fed. R. Civ. P. 42.

**II.  Analysis**

AseraCare argues that it would be prejudiced, the jury would be confused, and the trial would be longer and more expensive if the Government presented "pattern and practice" evidence of general corporate practices before the jury determines whether any of the claims in the 233 patient sample are false.

The Government seeks damages from AseraCare for submission of false claims to Medicare for hospice benefits. From the patient pool of 2,181 patients, the Government's expert reviewed a random sample of 233 patient medical records, and he determined that 124 of those patients did not qualify for hospice benefits. The Government seeks to extrapolate from that finding that approximately half of the 2,181 patient claims AseraCare submitted were false.

The Government argues that it will be highly prejudiced if the court bifurcates the falsity element from the rest of the case and that the Government "must be permitted to present testimony from AseraCare employees that shows that AseraCare had a regular practice of not giving physicians the relevant, accurate and complete information about a patient when asking a doctor to sign a Certificate of Terminal Illness ('COTI')." (Doc. 295, 8). The court agrees that evidence that a doctor did not receive complete information about a specific patient matters to the jury's determination as to whether that specific claim is false. *See U.S. ex rel. Geschrey v. Generations Healthcare, LLC*, 922 F. Supp. 2d 695, 704 (N.D. Ill. 2012) (finding that "false information" provided to a doctor, such as attempts "to falsify the notes on which the patient's

2

certification of eligibility for hospice benefits was based," undermined the doctor's clinical judgment).

However, evidence of general corporate practices from various locations, unrelated to the information provided to physicians and unrelated to the 233 patient sample is not relevant to whether a specific claim is false. Allowing such general "pattern and practice" evidence before the jury decides whether any claim is false would be unduly prejudicial to AseraCare. Further, this type of evidence would be confusing to the falsity analysis as the jury must view each claim separately to determine whether it is objectively false.

The Government also argues that falsity and knowledge are interwoven issues that cannot be tried separately and that "the fact that AseraCare knowingly carried out a scheme to submit false claims is highly relevant evidence that the claims were, in fact, false." (Doc. 295, 13). Essentially, the Government argues that the existence of the scheme proves the falsity of the claims. The court disagrees. The Government must show that each separate claim within the 233 patient sample is objectively false. Falsity cannot be inferred by reference to AseraCare's general corporate practices unrelated to specific patients. A claim is either false or not without evidence of corporate practices unrelated to that claim.

Finally, the Government argues that bifurcation will not economize litigation because it plans to use certain "policies, programs, and procedures" of AseraCare to show both that claims within the 233 patient sample are false and that AseraCare knowingly submitted those false claims to the government. However, any potential duplication of evidence is no reason to avoid bifurcation given the undue prejudice to AseraCare and the great potential for confusing the jury. *See Rossano v. Blue Plate Foods, Inc.*, 314 F.2d 174, 176 (5th Cir. 1963) (finding prejudice is the

3

primary consideration in determining whether to grant a Rule 42(b) motion).[1]

The court recognizes that "[t]he submission of a claim is . . . the *sine qua non* of a False Claims Act violation." *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002). Without a false claim, no FCA liability exists. The court finds that AseraCare will be unduly prejudiced, the jury will be confused, and trial will be longer and more expensive if the Government presents evidence related to general corporate practices unrelated to particular patients in the sample before the jury decides whether any of the claims in the 233 patient sample are, in fact, false claims. Thus, the court will bifurcate the trial so that the jury must first determine whether any claims in the 233 patient sample are false without exposure to prejudicial and confusing evidence related to AseraCare's general corporate practices that relate most appropriately to whether AseraCare *knew* it was submitting false claims.

Therefore, the court **GRANTS** AseraCare's motion to bifurcate and **BIFURCATES** the trial into two phases: the first phase will address the falsity element of the Government's FCA claim,[2] and the second phase will address the other elements of the Government's FCA claim and

---

[1]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[2] During the falsity phase, *all evidence of falsity related to the 233 patient sample* is admissible, not just the Government expert's report and the patients' medical records. *See Geschrey*, 922 F. Supp. 2d at 704 (finding that "false information" provided to a doctor by other clinical professionals about a particular patient undermined the doctor's clinical judgment). In its Brief, (Doc. 295, 8-11), the Government identifies evidence of practices at three agencies from which a total of 21 patients of the 233 patient sample were admitted. For example, at least 11 patients from the 233 patient sample received hospice services from the Monroeville, Alabama agency; Marsha Brown testified about being given a "script" on how to present patients for certification at that agency. If that "script" shows up in any record for a patient at the Monroeville agency, the court will allow that evidence.

4

all other claims. Each phase will have separate opening statements, presentations of evidence, closing arguments, jury charges, and verdicts. The same jury will sit in both phases.

    **DONE** and **ORDERED** this 20th day of May, 2015.

                                      */s/ Karon O. Bowdre*
                                      KARON OWEN BOWDRE
                                      CHIEF UNITED STATES DISTRICT JUDGE