# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.    4:13-CV-00449-BCW |
| | ) | |
| VITAS HOSPICE SERVICES, LLC, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| ex rel. Charles Gonzalez, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.    4:13-CV-00344-BCW |
| | ) | |
| VITAS HEALTHCARE | ) | |
| CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| ex rel. Barbara Urick, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.    4:13-CV-000563-BCW |
| | ) | |
| VITAS HME SOLUTIONS, INC. | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

1

UNITED STATES OF AMERICA,
ex rel. Laura Spottiswood,

             Plaintiffs,

v.

CHEMED CORPORATION, et al.,

             Defendants.

Case No.     4:13-CV-00505-BCW

## <u>ORDER</u>

Before the Court is Defendants' Motion to Dismiss the United States' First Amended Complaint (Doc. #62). The Court being duly advised of the premises, and for good cause shown, denies said Motion.

## BACKGROUND

This matter is a consolidated *qui tam* action. (Doc. #64). The United States of America ("the Government") filed an Amended Complaint and Complaint in Intervention (Doc. #56) ("the complaint") that governs the consolidated cases that were initially filed as separate actions. (Doc. #64).

The Government filed this matter under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, against Defendant Chemed Corporation and its subsidiaries (collectively, "Vitas"), in connection with Medicare claims filed since 2002. Vitas provides hospice services throughout the United States, to patients at their homes, in assisted living facilities, in skilled nursing facilities, in unaffiliated hospitals, and in 36 inpatient units. (Doc. #56).

2

Medicare is a federally-funded program established by the Social Security Act of 1965 for the purpose of assisting qualified patients in paying their medical expenses. 42 U.S.C. § 1395, *et seq*. (2014). Hospice care, which is characterized by palliative, as opposed to curative, treatment, is covered under Medicare for eligible patients. 42 U.S.C. § 1395c(dd) (2014); 42 C.F.R. § 418.20 (2014).

The Medicare Hospice Benefit ("MHB") pays a hospice care provider a pre-determined daily reimbursement payment to cover the care of a qualifying patient. U.S. ex rel. Barys v. Vitas Healthcare Corp., 298 Fed. App'x 893, 894 (11th Cir. 2008). Payments correspond with the type of daily hospice care provided, which may fall into one of four categories: (1) routine home care; (2) continuous home care; (3) inpatient respite care; and (4) general inpatient care. 42 C.F.R. § 418.302(b)-(c) (2014). Notably, routine home care is characterized by palliative care, administered at the patient's home that is not continuous in nature, whereas continuous home care is administered by a nurse at the patient's home for a period of at least eight hours in a twenty-four hour period, for the purpose of managing the patient's pain and acute symptoms. 42 C.F.R. § 418.302(b)(1)-(2) (2014). Additionally, continuous home care is used under circumstances during brief periods of health crisis, and where continuous care is necessary to keep the patient at home. 42 C.F.R. § 418.302(b)(2) (2014).

Regardless of payment category, MHB covers only hospice care that is "reasonable and necessary for the palliation or management of [a] terminal illness as well as related conditions." 42 C.F.R. § 418.200 (2014). A terminal illness is one that includes a medical prognosis, formulated within the judgment of a physician, that includes a life expectancy of six months or less, if the illness runs its normal course. 42 C.F.R. § 418.3 (2014).

3

An individual who has been designated as terminally ill is eligible for MHB if his/her attending physician and the medical director of the hospice at issue provide certification of terminal illness. 42 C.F.R. § 418.22 (2014). This certification is a prerequisite for the submission of a claim for payment under Medicare. 42 C.F.R. § 418.20(b) (2014).

In order to avail itself of MHB, a hospice care provider submits to the Center for Medicare and Medicaid Services, a CMS-1450 claim form. U.S. ex rel. Dunn v. N. Mem'l Health Care, 739 F.3d 417, 419 (8th Cir. 2014). The claim form requires the hospice provider to confirm that it is in compliance with all Medicare regulations, that it will maintain medical records, that the patient has been certified as terminally ill, that the required certification is on file, and the CMS-1450 form, and thus the claim for MHB is true, correct, and complete. (Doc. #63-3).

Certification of terminal illness requires: (1) the specification of a life expectancy of six months or less if the illness runs its normal course; (2) clinical documents in support of this prognosis; (3) a physician's narrative explaining the clinical finds that support this prognosis; (4) attestation to the face-to-face encounter with the patient[1]; and (5) the certifying physicians' signature. 42 U.S.C. § 418.22(b)(1)-(5) (2014). If a patient has been certified as terminally ill, is entitled to Part A of Medicare, and has elected hospice care, the claim for MHB is payable. 42 C.F.R. § 418.20 (2014).

The basis for this *qui tam* action is the Government's assertion that Vitas has filed and has been paid on claims for MHB that were not in fact payable. The Government alleges four causes of action against Vitas: (1) violation of the False Claims Act ("FCA"), based on false or fraudulent claims; (2) violation of the FCA, based on false statements; (3) payment by mistake; and (4) unjust enrichment. (Doc. #56). Vitas asks the Court to dismiss the Government's

---

[1] This requirement was added on January 1, 2008.

4

complaint, arguing that the FCA claims do not meet the heightened-pleading standard under Fed. R. Civ. P. 9(b), and that the complaint overall fails to state a claim under Fed. R. Civ. P. 12(b)(6). (Doc. #62).

## STANDARD

Because the FCA is an anti-fraud statute, claims filed pursuant to it are subject to Rule 9(b)'s particularity requirement. U.S. ex rel. Joshi v. St. Luke's Hosp., 441 F.3d 552, 556 (8th Cir. 2006); FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances . . . ."). In this context, "circumstances" are "the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007). Conclusory allegations regarding deceptive or fraudulent conduct are insufficient. Commercial Prop. Inv., Inc. v. Quality Inns Int'l, Inc., 61 F.3d 639, 644 (8th Cir. 1995).

Vitas further asserts that even if the complaint satisfies Rule 9(b), all four claims fail because they do not state a claim. Under Rule 12(b)(6), a claim survives a motion to dismiss as long as it contains sufficient facts that state a plausible claim to relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). Finally, under Rule 12(b)(6), the non-moving party enjoys the benefit of all reasonable factual inferences, but the Court is not bound to accept as true any legal conclusion that is presented as a fact. Stodghill v. Wellston Sch. Dist., 512 F.3d 472, 476 (8th Cir. 2008); Iqbal, 556 U.S. at 678.

## ANALYSIS

The Government's claims filed under the FCA form this civil action referred to as *qui tam*. Vt. Agency of Natural Res. v. U.S. ex rel. Stevens, 529 U.S. 765, 768 (2000). "The False Claims Act provides that any person who knowingly presents a false or fraudulent claim for payment or approval by the federal government, or knowingly makes or uses a false record or statement that is material to a false or fraudulent claim, is liable to the United States for a civil penalty plus three times the damages incurred due to the violation." U.S. ex rel. Onnen v. Sioux Falls Ind. Sch. Dist. No. 49-5, 688 F.3d 410, 412 (8th Cir. 2012) (citing 31 U.S.C. § 3729(a)(1)-(2) (2014)).

A defendant's liability "under the FCA attaches 'not to the underlying fraudulent activity, but to the claim for payment.'" U.S. ex rel. Thayer v. Planned Parenthood of the Heartland, No. 13-1653, 2014 WL 4251603, *2 (8th Cir. Aug. 29, 2014) (quoting In re Baycol Prods. Litig., 732 F.3d 869, 874 (8th Cir. 2013). Relatedly, a claim that includes a false statement does not give rise to FCA liability; rather, the claim itself must be false or fraudulent. U.S. ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Grp. Inc., 400 F.3d 428, 443 (6th Cir. 2005).

FCA liability is further limited by three potential limitations periods: (1) six years from the date of the violation; (2) three years from the date when material facts became reasonably available; or (3) no more than ten years "after the date on which the violation is committed." 31 U.S.C. § 3731(b) (2014). The applicable limitations period is that which occurs comparatively latest in time. 31 U.S.C. § 3731(b)(2) (2014).

In this case, Vitas represents that the parties have entered into a tolling agreement that includes MHB claims submitted by Vitas going back to July 24, 2002. (Doc. #63). The agreement impacts the otherwise applicable ten-year limitations period which began to run on

May 2, 2003. Pursuant to the parties' tolling agreement, any liability incurred by Vitas under the Government's allegations against it is limited to MHB claims submitted between July 24, 2002 and May 2, 2013, which is the date upon which the Government filed this lawsuit. See Varner v. Peterson Farms, 371 F.3d 1011, 1016 (8th Cir. 2004) (claims for relief filed outside the applicable limitations period are subject to dismissal).

For MHB claims filed by Vitas during the relevant time period, the Court must determine whether the Government's FCA claims are sufficient under both Rule 9(b) and Rule 12(b)(6). A plaintiff has stated a claim for a violation of the FCA if he/she has plead, with particularity, that the defendant has: (1) knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval from the government; or (2) knowingly makes a false statement or record in connection with a claim that leads the government to make a payment on a claim that it otherwise would not have. U.S. ex rel. Vigil v. Nelnet, Inc., 639 F.3d 791, 796 (8th Cir. 2011) (citing U.S. ex rel. Roop v. Hypoguard USA, Inc., 559 F.3d 818, 822 (8th Cir. 2009) (quoting 31 U.S.C. § 3729(a)(1)-(2) (2014))).

A claim filed pursuant to the FCA may be cognizable based on either factual falsity or legal falsity. U.S. ex rel. Conner v. Salina Reg'l Health Ctr., 543 F.3d 1211, 1217 (10th Cir. 2008). A claim for payment is factually false if it "involves an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided." Mikes v. Straus, 274 F.3d 687, 697 (2d Cir. 2001). By contrast, a legally false claim involves a defendant's certification of compliance with certain statutes or regulations that are prerequisites of payment, when he/she knows that the conditions of payment stated by the applicable statutes or regulations have not been met. Conner, 543 F.3d at 1217. However, a false certification is

actionable under the FCA "only if it leads the government to make a payment which it would not have otherwise made." Id. at 1219.

### A. First Cause of Action – False or Fraudulent Claims

In support of dismissal of the FCA claim based on false or fraudulent claims, Vitas contends that the Government has not met rule 9(b), and even if the claim is adequately pleaded, this FCA claim must fail because the Government cannot prove that any MHB claim was false. Vitas posits that a patient's eligibility for MHB, which is dependent upon a physician's certification that the patient is terminally ill, is necessarily a subjective determination that cannot be false because it is within the discretion of a physician's medical judgment.

Under 31 U.S.C. §3729(a)(1), the Government's claim for the submission of false or fraudulent claims survives the motion to dismiss if the claim contains plausible allegations that, pursuant to the heightened pleading standard of Rule 9(b), Vitas knowingly presented to the government a false or fraudulent claim for payment. Dunn, 739 F.3d at 419 (claims under the FCA must comply with Rule 9(b)).

The complaint alleges that Vitas presented false or fraudulent claims by: (1) submitting MHB claims for hospice care provided to patients that were not terminally ill and thus not qualified; (2) filing claims for payment of hospice care not actually performed; and (3) filing claims that misrepresented the type of care provided so that Vitas would be paid at a higher rate. The Government alleges that Vitas' business practices and policies, as well as their marketing tactics, led to these false or fraudulent claims.

"Underlying schemes and other wrongful activities that result in the submission of fraudulent claims are included in the 'circumstances constituting fraud and mistake' that must be pled with particularity under Rule 9(b)." U.S. ex rel. Sikkenga v. Regence Bluecross Blueshieled

of Utah, 472 F.3d 702, 727 (10th Cir. 2006) (citing U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 232 (1st Cir. 2004); U.S. ex rel. Clausen v. Lab. Corp. of Am., 290 F.3d 1301, 1311 (11th Cir. 2002); Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 785 (4th Cir. 1999)). In this context, sufficiency under Rule 9(b) requires that such allegations are linked to particular allegations of actual claims submitted for payment. Sikkenga, 472 F.3d at 727 (citing Karvelas, 360 F.3d at 232).

In this case, alongside the Government's general allegations of wrongful conduct, the complaint identifies fourteen patients and specific claims submitted by Vitas from different hospice facilities. U.S. ex rel. Thayer v. Planned Parenthood of the Heartland, No. 13-1654, 2014 WL 4251603, *2 (8th Cir. Aug. 29, 2014) (the complaint must allege some representative examples of the allegedly fraudulent conduct); Hypoguard, 559 F.3d at 822. The Court thus concludes that the Government has satisfied Rule 9(b) with respect to its claim for submission of false or fraudulent claims.

Likewise, the claim satisfies Rule 12(b)(6). Payment of a claim for MHB is conditioned upon a certification of terminal illness, such that a patient may qualify for coverage. The Government alleges that Vitas submitted claims for MHB for hospice services that it did not perform, submitted claims that improperly categorized routine home care as continuous home care, and submitted claims for hospice services that were not medically necessary. With all reasonable inferences drawn in the Government's favor, the allegations of the complaint plausibly state a claim for relief under the FCA. Vitas' motion to dismiss this claim is denied.

### B. Second Cause of Action – False Statements

Vitas  seeks dismissal of the Government's second cause of action under Rules 9(b) and 12(b)(6) upon the contentions that no claims contained false statements or records because a

patient's eligibility for MHB is medically discretionary and not dictated by Medicare guidelines, and compliance with all Medicare regulations is not material to payment.

Under 31 U.S.C. § 3729(a)(2), the Government's claim for violation of the FCA based on false statements survives the motion to dismiss if the claim complies with both the particularity requirement of Rule 9(b) and the threshold pleading standard under Rule 12(b)(6). See Dunn, 739 F.3d at 419. Under the allegations of the complaint, the Government asserts that Vitas knowingly made false statements or submitted false records in support of claims for payment to cover hospice services.

The Government alleges that Vitas submitted claims for payment that included and reiled upon false statements or records representing that a patient was terminally ill, and thus eligible for MHB, when the patient's condition did not actually include such a prognosis, or require or the type of hospice care reportedly rendered. See Vigil, 639 F.3d at 795. Just as above, the Court concludes that in pleading both general allegations and providing specific representative examples of claims that are discordant with patient records, this claim satisfies Rule 9(b).

With respect to Rule 12(b)(6), the Court agrees with Vitas that a hospice provider that signs off on a claim form stating that the claim is true, correct, and complete, and thus compliant with applicable regulations, is insufficient to support a claim under the FCA. Id. This exclusion is rooted in the purpose of the FCA. Id. The FCA is an anti-fraud statute designed to protect federal funds; it is "not concerned with regulatory noncompliance." Id. at 795-96. Thus, the Government's claim for violation of the FCA based on false statements may not include liability stemming from the form language that the claim is "correct complete and is in conformance with the Civil Rights Act of 1964 as amended." (Doc. #63-3).

However, an FCA claim based on a false statement is cognizable where the statement is material, or where there is a "direct link between the false statement and the government's decision to pay or approve a false claim . . . ." Vigil, 639 F.3d at 799 (citations omitted). In this context, a proper MHB claim for payment includes a physician's certification of terminal illness, medical records supporting a prognosis with a life expectancy of six months or less, and a physician's narrative explaining how the medical records align with the patient's condition and eligibility for Medicare coverage. The Government alleges that Vitas submitted MHB claims that were based on false certification, meaning that Vitas submitted claims for benefits that were premised on false underlying information. See Conner, 543 F.3d at 1217 (citing U.S. ex rel. Hendow v. Univ. of Phoenix, 461 F.3d 1166, 1172 (9th Cir. 2006)). The Government alleges that these underlying falsities were material, and thus resulted in false claims. See Medshares Mgmt., 400 F.3d at 443.

In this case, the certification of terminal illness is a prerequisite of eligibility for Medicare coverage. Stated differently, hospice care is covered by Medicare only when a patient has been medically certified as terminally ill and hospice care is reasonable and medically necessary for palliative care. Because the certification of terminal illness equates with a patient's eligibility for MHB coverage, the Court concludes that the complaint plausibly alleges a claim under the FCA for false statements in connection with a claim for payment. Vitas' motion to dismiss this claim is denied.

**C.  Third Cause of Action – Payment by Mistake**

Vitas also seeks dismissal of the Government's claim of payment by mistake of fact, based on the assertion that because none of the MHB claims were false or fraudulent, Vitas did not receive any improper payments. The Government alleges it mistakenly paid Vitas on MHB

11

claims that were false and/or fraudulent that it would not have paid otherwise, and it is thus entitled to restitution. The Court exercises supplemental jurisdiction over the Government's claims filed under state law pursuant to 28 U.S.C. § 1367.

A party seeking relief under the FCA may also seek damages under equitable principles. U.S. v. Applied Pharm. Consultants, Inc., 182 F.3d 603, 608 (8th Cir. 1999); U.S. v. R.J. Zavoral & Sons, 894 F. Supp. 2d 1118, 1127 (D. Minn. Sept. 6, 2012). In Missouri, a cognizable claim for payment by mistake requires a plaintiff to allege that he/she: (1) made a payment to the defendant; (2) was mistaken as to a fact; (3) would not have made the payment but for the mistake; (4) was under no legal obligation to pay; and (5) is entitled to restitution for the amounts paid. W. Cas. & Sur. Co. v. Kohm, 638 S.W.2d 798, 800 (Mo. Ct. App. 1982).

While the Government's claim of payment by mistake appears to be based on the same facts underlying its FCA claims, this cause of action seeks repayment of money mistakenly paid on claims that were not reimbursable, as opposed to statutory damages under the FCA. For these reasons, and incorporating the discussion in the previous sections, the Court denies Vitas' motion to dismiss this claim.

### D. Fourth Cause of Action – Unjust Enrichment

Finally, Vitas seeks dismissal of the Government's equitable claim for unjust enrichment. The Government claims that Vitas improperly received MHB payments on claims that were actually not reimbursable. The Court exercises supplemental jurisdiction over this claim filed under Missouri law. 28 U.S.C. § 1367 (2014).

A successful claim for unjust enrichment requires the plaintiff to show that: (1) he/she conferred a benefit upon the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and kept the benefit under circumstances that were inequitable or unjust.

12

<u>Howard v. Turnbull</u>, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010). In addition, a plaintiff must show that injustice resulted from the defendant's retention of the benefit. <u>Id.</u> at 436-37.

As above, the Government seeks equitable damages based on the same underlying facts upon which its FCA claims are based, but this unjust enrichment claim seeks recovery for money that allegedly should not have been paid. Thus, with all reasonable inferences drawn the Government's favor, this claim contains sufficient factual content from which the reasonable inference could be drawn that Vitas unjustly received and retained a benefit to which it was not entitled. Consequently, Vitas' motion to dismiss this claim is denied.

## CONCLUSION

The Court, having reviewed the parties' arguments and applicable law, finds that the Government's claims against Vitas survive the motion to dismiss, pursuant to both Rule 9(b) and Rule 12(b)(6). Accordingly, it is hereby

ORDERED Vitas' Motion to Dismiss the United States' First Amended Complaint (Doc. #62) is DENIED. The motion is granted only to the extent that the Government is seeking recovery for claims submitted before July 24, 2002.

IT IS SO ORDERED.

DATED: <u>September 30, 2014</u>

/s/ Brian C. Wimes
JUDGE BRIAN C. WIMES
UNITED STATES DISTRICT COURT

13