**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** *et al.*, | |
| **Plaintiffs,** | **CIVIL ACTION NUMBERS:** |
| | **1:09-cv-0013 (CMH/TCB)** |
| **v.** | **1:11-cv-1054 (CMH/TCB)** |
| | **1:14-cv-1228 (CMH/TCB)** |
| **HCR MANORCARE, INC.,** *et al.*, | |
| **Defendants.** | |

**DEFENDANTS HCR MANORCARE, HCR MANORCARE, INC., AND**
**HEARTLAND EMPLOYMENT SERVICES, LLC'S**
**MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND**
**AMENDED COMPLAINT OF RELATOR PATRICK GERARD CARSON**

Katherine J. Seikaly (VSB No. 71438)
Eric A. Dubelier (*pro hac vice*)
Carol C. Loepere (*pro hac vice*)
Daniel Z. Herbst (*pro hac vice*)
Reed Smith LLP
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, D.C. 20005
202-414-9200 (phone)
202-414-9299 (fax)
kseikaly@reedsmith.com
edubelier@reedsmith.com
cloepere@reedsmith.com
dherbst@reedsmith.com

Melissa A. Geist (*pro hac vice*)
REED SMITH LLP
136 Main Street, Suite 250
Princeton, NJ 08540
(609) 987-0050 (phone)
(609) 951-0824 (fax)
mgeist@reedsmith.com

Brent R. Gary (VSB No. 66592)
REED SMITH LLP
3110 Fairview Park Drive
Suite 1400
Falls Church, VA 22042
703-641-4200 (phone)
703-641-4340 (fax)
bgary@reedsmith.com

Marilyn A. Moberg (*pro hac vice pending*)
REED SMITH LLP
355 South Grand Avenue
Suite 2800
Los Angeles, CA 90071
(213) 457 8035 (phone)
(213) 457 8080 (fax)
mmoberg@reedsmith.com

*Counsel for Defendant HCR ManorCare, Inc.(sued as HCR ManorCare and HCR ManorCare, Inc.), and Heartland Employment Services, LLC*

## TABLE OF CONTENTS

I.     INTRODUCTION AND SUMMARY OF ARGUMENTS ................................................. 1

II.    PROCEDURAL BACKGROUND.............................................................. 3

III.   SUMMARY OF CARSON'S ALLEGATIONS .................................................. 4

IV.   APPLICABLE LAW ....................................................................... 5

     **A.**    **The Federal and State False Claims Acts** ............................................. 5

     **B.**    **Coverage for Skilled Rehabilitation Therapy Under Medicare** ...................... 5

     **C.**    **Coverage for Skilled Rehabilitation Therapy Under Medicaid** ...................... 6

V.    ARGUMENT ............................................................................. 7

     **A.**    **Carson's Claims are Not Properly Before This Court and Should Be Dismissed Pursuant to Rule 12(b)(1)** ............................................. 7

           **1.**    **Carson's FCA Claims in Counts 1 through 8 and Michigan FCA Claim in Count 18 are Barred by the "First-to-File" Rule** ......... 7

           **2.**    **Carson's FCA Claims in Counts 1 Through 8 Should be Dismissed Because the United States' Intervention Supersedes Carson's Claims** ............................................................. 8

           **3.**    **Carson's FCA Claims in Counts 1 Through 8 and State FCA Claims in Counts 10 Through 24 are Barred Because They are Based on Public Disclosures** .................................................. 9

     **B.**    **Carson's claims are not plausibly or sufficiently pleaded and should be dismissed pursuant to Rules 12(b)(6) and (9)(b)** ........................................ 12

           **1.**    **The Complaint Fails to Plead Claims With Particularity as Required by Rule 9(b)** ......................................................... 13

           **2.**    **The Complaint Fails to State Plausible Claims for Violation of the FCA as Required by Rule 12(b)(6)** .................................. 18

           **3.**    **The Complaint Fails to Plead a Plausible Claim for Conspiracy.** ........................................................................ 22

           **4.**    **The Complaint Fails to Plead a Plausible Claim for Retaliation** ........ 23

           **5.**    **The Complaint Fails to Plead Plausible State FCA Claims** ............... 25

     **C.**    **If any of Carson's Causes of Action Survive Dismissal, Certain Allegations are Time-Barred or Time-Limited.** ............................................. 27

           **1.**    **Carson's Claims Are Limited by the Relevant Statutes of Limitations** .......................................................................... 27

           **2.**    **Carson's FCA Claims Should be Limited to Claims Allegedly Submitted Under the Then-Effective Version of the Statute** ............. 28

        **3.**      **Carson's Claims Under the Georgia, New Jersey, and Oklahoma FCAs Should be Limited in Light of Those Statutes' Effective Dates** ........................................................................................... 29

VI.     CONCLUSION ............................................................................................................ 29

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................12

*Barys ex rel. United States v. Vitas Healthcare Corp.*,
    298 F. App'x 893 (11th Cir. 2008) ..........................................................25

*Cade v. Progressive Cmty. Healthcare, Inc.*,
    No. 1:09-CV-3522, 2011 WL 2837648 (N.D. Ga. July 14, 2011) ...........25

*Clark Cnty. Sch. Dist. v. Breeden*,
    532 U.S. 268 (2001)..................................................................................25

*Clausen v. Lab. Corp. of Am.*,
    290 F.3d 1301 (11th Cir. 2002) ...............................................................16

*Copperweld Corp. v. Indep. Tube Corp.*,
    467 U.S. 752 (1984)..................................................................................22

*Eberhardt v. Integrated Design & Const., Inc.*,
    167 F.3d 861 (4th Cir. 1999) ...................................................................23

*Elder v. DRS Techs, Inc.*,
    No. 1:13CV799 JCC/TRJ, 2013 WL 4538777 (E.D. Va. Aug. 27, 2013) ..............25

*Goodman v. Praxair, Inc.*,
    494 F.3d 458 (4th Cir. 2007*)* ..................................................................27

*Harrison v. Westinghouse Savannah River Co.*,
    176 F.3d 776 (4th Cir. 1999) ..................................................13, 17, 22

*Hart v. Hanover Cnty. Sch. Bd.*,
    3:10–CV–794, 2013 WL 1867388 (E.D. Va. May 2, 2013)......................25

*Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*,
    7135 S. Ct. 1970 (2015) .............................................................................7

*Kuhn v. LaPorte Cnty. Comp. Mental Health Council*,
    No. 3:06–CV–317, 2008 WL 4099883 (N.D. Ind. Sept. 4, 2008)............26

*Oberhand v. Dir., Div. of Taxation*,
    940 A.2d 1202 (N.J. 2008)........................................................................29

*Oklahoma ex rel. Crawford v. Guardian Life Ins. Co. of Am.*,
  954 P.2d 1235 (Okla. 1997) ..........................................................................29

*Phipps v. Agape Counseling & Therapeutic Servs.*,
  No. 3:13-CV-166, 2015 WL 2452448 (E.D. Va. May 21, 2015) ............................24

*Richmond, Fredericksburg & Potomac R.R. v. Forst*,
  4 F.3d 244 (4th Cir. 1993) ..........................................................................27

*United States ex rel. Ahumada v. Nat'l Ctr. for Employment of the Disabled*,
  No. 1:06-cv-713, 2013 WL 2322836 (E.D. Va. May 22, 2013).......................15, 16

*United States ex rel. Ahumada v. NISH*,
  756 F.3d 268 (4th Cir. 2014) .......................................................11, 12, 13, 18, 22

*United States ex rel. Badr v. Triple Canopy*,
  775 F.3d 628 (4th Cir. 2015) ........................................................................20

*United States ex rel. Bartz v. Ortho-McNeil Pharm., Inc.*,
  856 F. Supp. 2d 253 (D. Mass. 2012) ...........................................................26

*United States ex rel. Boise v. Cephalon, Inc.*,
  No. 08-287, 2015 WL 1724572 (E.D. Pa. Apr. 15, 2015).....................................26

*United States ex rel. Brooks v. Lockheed Martin Corp.*,
  423 F. Supp. 2d 522 (D. Md. 2006)...........................................................16, 22

*United States ex rel. Capella v. Norden Systems, Inc.*,
  No. 3:94-CV-2063 (EBB), 2000 WL 1336487 (D. Conn. Aug. 24, 2000)...............22

*United States ex rel. Carter v. Halliburton Co.*,
  710 F.3d 171 (4th Cir. 2013) ..........................................................................7

*United States ex rel. DeCesare v. Americare In Home Nursing*,
  757 F. Supp. 2d 573 (E.D. Va. 2010) ..............................................................21

*United States ex rel. Detrick v. Young*,
  909 F. Supp. 1010 (E.D. Va. 1995) .................................................................17

*United States ex rel. Dugan v. ADT Sec. Servs., Inc.*,
  No. 03-3485, 2009 WL 3232080 (D. Md. Sept. 29, 2009).....................................27

*United States ex rel. Geschrey v. Generations Healthcare, LLC*,
  922 F. Supp. 2d 695 (N.D. Ill. 2012) ..............................................................15

*United States ex rel. Hagood v. Riverside Healthcare Ass'n, Inc.*,
  No. 4:11CV109, 2015 WL 1349982 (E.D. Va. Mar. 23, 2015) .............................15

*United States ex rel. Head v. Kane & Co.*,
  798 F. Supp. 2d 186 (D.D.C. 2011) ....................................................................23

*United States ex rel. Herrera v. Bon Secours Cottage Health Servs.*,
  665 F. Supp. 2d 782, 783 n.2 (E.D. Mich. 2008) ...............................................26

*United States ex rel. Johnson v. Univ. Health Servs., Inc.*,
  889 F. Supp. 2d 791 (W.D. Va. 2012) .................................................................26

*United States ex rel. Jones v. Collegiate Funding Servs., Inc.*,
  469 F. App'x 244 (4th Cir. 2012) .......................................................................14

*United States ex rel. Kester v. Novartis Pharm. Corp.*,
  No. 11 CIV. 8196 CM, 2014 WL 2619014 (S.D.N.Y. June 10, 2014) ..................26

*United States ex rel. Ketroser v. Mayo Found.*,
  729 F.3d 825 (8th Cir. 2013) .............................................................................20

*United States ex rel. Local 342 v. Caputo Co.*,
  321 F.3d 926 (9th Cir. 2003) .............................................................................19

*United States ex rel. Loughren v. Unumprovident Corp.*,
  No. 03-11699-PBS, 2008 WL 4280133 (D. Mass. Sept. 15, 2008)......................23

*United States ex rel. Martinez v. Va. Urology Ctr., P.C.*,
  No. 3:09-CV-442, 2010 WL 3023521 (E.D. Va. July 29, 2010)..................... 14-15

*United States ex rel. May v. Purdue Pharma L.P.*,
  737 F.3d 908 (4th Cir. 2013) ...............................................................................9

*United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*,
  No. 1:09-cv-1086 (AJT), 2011 WL 3911095 (E.D. Va. Sept. 6, 2011)...................9

*United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*,
  707 F.3d 451, 456-57 (4th Cir. 2013) .............................................................14, 18

*United States ex rel. Nudelman v. Int'l Rehab. Assoc., Inc.*,
  No. 00-1837, 2006 WL 925035, at *12 (E.D. Pa. Apr. 4, 2006) ...........................25

*United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*,
  No. 09–1899, 2010 WL 2794369 (4th Cir. July 16, 2010)....................................24

*United States ex rel. Palmieri v. Alpharma, Inc.*,
  928 F. Supp. 2d 840 (D. Md. 2013)....................................................................13

*United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg. Healthcare Sys.*,
  274 F. Supp. 2d 824 (S.D. Tex. 2003) ................................................................23

*United States ex rel. Rector v. Bon Secours Richmond Health Corp.*,
No. 3:11-CV-38, 2014 WL 1493568 (E.D. Va. Apr. 14, 2014) ................................................24

*United States ex rel. Rostholder v. Omnicare, Inc.*,
745 F.3d 694 (4th Cir. 2014) .....................................................................................................18

*United States ex rel. Ruhe v. Masimo Corp.*,
929 F. Supp. 2d 1033 (C.D. Cal. 2012) ....................................................................................23

*United States ex rel. Streck v. Allergan, Inc.*,
894 F. Supp. 2d 584 (E.D. Pa. 2012) ........................................................................................26

*United States ex rel. Ubl v. IIF Data Solutions*,
No. 1:06cv641, 2007 WL 2220586 (E.D. Va. Aug. 1, 2007) ...................................................14

*United States ex rel. Vuyyuru v. Jadhav*,
555 F.3d 337 (4th Cir. 2009) .......................................................................................................9

*United States ex rel. Williams v. Renal Care Grp., Inc.*,
696 F.3d 518 (6th Cir. 2012) .....................................................................................................14

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
525 F.3d 370 (4th Cir. 2008) .....................................................................................................13

*United States. v. APS Healthcare, Inc.*,
No. 2:11–cv–01454, 2013 WL 420402 (D. Nev. Jan. 30, 2013) ..............................................26

*United States v. Johnson Controls, Inc.*,
457 F.3d 1009 (9th Cir. 2006) ...................................................................................................26

*United States v. Newport News Shipbuilding*,
276 F. Supp. 2d 539 (E.D. Va. 2003) .......................................................................................20

*United States v. Prabhu*,
442 F. Supp. 2d 1008 (D. Nev. 2006) .......................................................................................19

*United States v. Univ. Health Servs.*,
No. 1:07-CV-00054, 2010 WL 2976080 (W.D. Va. July 28 2010) ............................................8

*Virginia ex rel. Hunter Labs., LLC v. Quest Diagnostics, Inc.*,
No. 1:13-CV-1129 2014 WL 1928211 (E.D. Va. May 13, 2014) .............................................13

*Walker v. Willis*,
435 S.E.2d 621 (Ga. Ct. App. 1993) .........................................................................................29

*Young v. CHS Middle East, LLC*,
No. 13-2342, 2015 WL 3396790 (4th Cir. May 27, 2015) ........................................................24

**Statutes**

31 U.S.C. § 3729 ............................................................................................3, 5, 8, 22, 28

31 U.S.C. § 3730 ..........................................................................5, 7, 8, 9, 12, 23, 27

42 U.S.C. § 1395y(a)(1)(A) ....................................................................................5, 20

42 U.S.C. § 1395yy(e) ................................................................................................5

740 Ill. Comp. Stat. § 175/5 ....................................................................................28

740 Ill. Comp. Stat. § 175/4 ......................................................................................9

Cal. Gov't Code § 12654 ...........................................................................................28

Cal. Gov't Code § 12652 .............................................................................................9

Colo. Rev. Stat. § 25.5-4-306 .....................................................................................9

Colo. Rev. Stat. § 25.5-4-307 ...................................................................................28

Del. Code Ann. tit. 6, § 1203 ...................................................................................26

Del. Code Ann. tit. 6, § 1206 .....................................................................................9

Del. Code Ann. tit. 6, § 1209 ...................................................................................28

Fla. Stat. § 68.087 .......................................................................................................9

Fla. Stat. § 68.089 .....................................................................................................28

Ga. Code Ann. § 49-4-168.1 .....................................................................................29

Ga. Code Ann. § 49-4-168.2 .......................................................................................9

Ga. Code Ann. § 49-4-168.5 .....................................................................................28

Ind. Code § 5-11-5.5-7 ...............................................................................................9

Ind. Code § 5-11-5.5-9 .............................................................................................28

Md. Code Ann., Health-Gen. § 2-604 .....................................................................26

Md. Code Ann., Health-Gen. § 2-609 .....................................................................28

Mich. Comp. Laws § 400.610a, Sec. 10a .................................................................7, 9

Mich. Comp. Laws § 400.614 ...................................................................................28

N.C. Gen. Stat. § 1-611 .........................................................................................9

N.C. Gen. Stat. § 1-615 .......................................................................................28

N.J. Stat. Ann. § 2A:32C-3 .................................................................................29

N.J. Stat. Ann. § 2A:32C-9 ...................................................................................9

N.J. Stat. Ann. § 2A:32C-11 ...............................................................................28

Nev. Rev. Stat. § 357.100 ......................................................................................9

Nev. Rev. Stat. § 357.170 ....................................................................................28

Okla. Stat. tit. 63, § 5053.1 ..................................................................................29

Okla. Stat. tit. 63, § 5053.5 ....................................................................................9

Okla. Stat. tit. 63, § 5053.6 ..................................................................................28

123 Stat 1617 .......................................................................................................28

Tex. Hum. Res. Code § 36.104 ...........................................................................28

Tex. Hum. Res. Code § 36.113 .............................................................................9

Va. Code Ann. § 8.01-216.8 ..................................................................................9

Va. Code Ann. § 8.01-216.9 ................................................................................28

Wis. Stat. Ann. §§ 893.981 .................................................................................28

**Rules**

Fed. R. Civ. P. 9(b) ...................................................................................... *passim*

Fed. R. Civ. P. 12(b) .................................................................................... *passim*

**Regulations**

42 C.F.R. § 413.343 ...............................................................................................6

42 C.F.R. § 424.20 .................................................................................................5

42 C.F.R. § 483.20 ...........................................................................................6, 19

54 Fed. Reg. 4302 ................................................................................................20

62 Fed. Reg. 67,174 .............................................................................................19

63 Fed. Reg. 26,252 ................................................................................................................6

65 Fed. Reg. 14,289 ..............................................................................................................16

76 Fed. Reg. 26,364 ..............................................................................................................11

Defendants HCR ManorCare, Inc. (incorrectly sued as "HCR ManorCare" and "HCR ManorCare, Inc.," collectively "HCRMC") and Heartland Employment Services, LLC ("Heartland Services") submit this memorandum in support of their Motion to Dismiss the Second Amended Complaint ("Complaint" or "Compl.") of Relator Patrick Carson ("Carson") pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b).

## I.      INTRODUCTION AND SUMMARY OF ARGUMENTS

In this *qui tam* action, Carson, a former physical therapy assistant at one HCRMC-affiliated skilled nursing facility ("SNF") in Pennsylvania, raises nine causes of action under the federal False Claims Act ("FCA") and additional causes under the parallel false claims acts of sixteen states (the "State FCAs").  Relying on prior public disclosures and filing his complaints well after Relators Christine Ribik ("Ribik") and Marie Slough ("Slough"), Carson claims a general scheme by unspecified HCRMC employees to inflate government-reimbursable services at HCRMC-affiliated SNFs—the identical allegations raised in complaints previously filed by Relators Ribik and Slough in this now-consolidated action.

Carson's Complaint suffers from several procedural and substantive defects which should result in its dismissal under Rules 12(b)(1), (12)(b)(6), and 9(b).  First, the Court lacks jurisdiction over Carson's non-retaliation FCA claims and his Michigan FCA claim under the applicable "first-to-file" rules because relators Ribik and Slough indisputably had complaints pending based upon the same factual allegations when Carson filed his action.  Second, for an FCA action in which the United States has intervened, Carson cannot maintain a freestanding action under 31 U.S.C. § 3729, requiring dismissal of Counts 1 through 8 (i.e., all of his FCA claims except retaliation).  Third, Carson's non-retaliation FCA claims and nearly all of his State FCA claims are jurisdictionally-barred under the applicable "public disclosure" bars because those claims are based upon information that had been publicly disclosed in government reports

and the news media before Carson adopted for his own use these previous allegations which has already been asserted by Relators Ribik and Slough in their previously filed complaints.

Fourth, even if the Court had jurisdiction over Carson's claims, his pleading does not reach the level of particularity required by Rule 9(b). Carson does not identify any plausible false claim nor does he answer any of the basic questions that would provide adequate notice to Defendants of his purported FCA claims, including who allegedly provided unnecessary therapy, who allegedly submitted false claims, or which corporate defendant had responsibility for the alleged conduct. Carson does not even plead any facts from which the court could conclude that the patients he describes were eligible for government-reimbursed care.

Fifth, Carson's claims fail under Rule 12(b)(6) because there are fatal flaws underlying his theory of liability—that HCRMC systemically inflated government reimbursement through certain employees providing unnecessary therapy—in light of the subjective nature of such clinical determinations and the ambiguous "reasonable and necessary" requirement. Sixth, Carson's novel theory that increasing service levels will necessarily give rise to false claims under Medicaid, in which the United States and fifteen of the sixteen states have already declined to intervene, is even more attenuated and fails to plausibly plead the submission of any false claim. Seventh, Carson fails to state plausible claims for conspiracy, retaliation, or for violation of the State FCAs.

Eighth, notwithstanding the other legal defects of the Complaint, the Court should dismiss all claims that are time-barred on the face of the Complaint or which predate the effective date of the relevant statute. For each of these reasons, HCRMC respectfully requests that Carson's Complaint be dismissed. Moreover, since the defects with Carson's Complaint cannot be cured by re-pleading and he already has made three attempts to plead a viable claim,

Carson should not be permitted the opportunity to file another amended pleading and his claims should be dismissed with prejudice.

## II.   PROCEDURAL BACKGROUND

On January 7, 2009, Relator Christine Ribik filed a *qui tam* complaint in this Court under seal asserting FCA claims against HCR ManorCare, Inc. and several other defendants based on alleged overbilling of federal healthcare programs for skilled rehabilitation therapy.  Dkt. 09-13, ECF No. 1. On August 20, 2010, Relator Marie Slough filed a *qui tam* complaint in the Eastern District of Michigan against HCR ManorCare, Inc. and other defendants raising similar allegations.  Dkt. 14-1228, ECF No. 1 (E.D. Mich.).  On April 26, 2011, Ribik filed an amended complaint which added other HCRMC-related entities as defendants.  Dkt. 09-13, ECF No. 23.

On September 28, 2011, almost two years after his termination of employment with HCRMC in November 2009, Carson filed his original complaint against HCR ManorCare, Inc., "HCR ManorCare," and three other entities based on the identical allegations and theories of liability raised by Ribik and Slough in their previously filed complaints.  Dkt. 11-1054, ECF No. 1, at ¶¶ 21-25.  On January 23, 2012, Carson filed an Amended Complaint.  Dkt. 11-1054, ECF No. 10-2.  The United States intervened and filed a Consolidated Complaint in Intervention on April 10, 2015 as to the FCA presentment and false-statement claims under § 3729(a)(1)(A) and (B) arising under Medicare and TRICARE.  Dkt. 09-13, ECF No. 84.[1]  No states have intervened as to Carson's State FCA claims.[2]  On May 11, 2015, Carson filed a second amended complaint dismissing certain defendants and naming only HCR ManorCare, Inc., HCR ManorCare, and

---

[1] According to the United States, the Court consolidated Ribik's and Carson's actions on June 13, 2012, and then consolidated Slough's action with that action on November 4, 2014.  *See* Dkt. 09-13, ECF No. 84, at ¶¶ 24-25.

[2] Of the sixteen states cited by Carson, all but California have already declined intervention.  *See* ECF No. 112 (under seal).

Heartland Services as defendants.  Dkt. 09-13, ECF No. 94-1.[3]

## III.     SUMMARY OF CARSON'S ALLEGATIONS

Copying Relators Ribik and Slough, Carson, who is not a licensed therapist but rather a therapy assistant, alleges a general scheme by HCRMC to increase government reimbursement for therapy services through "improper billing practices and methodologies."   Compl. ¶ 4. Carson alleges Defendants' employees overbilled for therapy services provided, billed for therapy services not provided, billed unskilled activities as skilled therapy and billed for unreasonable or unnecessary therapy.  *Id.* ¶ 5.

According to Carson, HCRMC was focused on obtaining high Resource Utilization Group ("RUG") categories for Medicare patients.  *Id.* ¶¶ 104-08.  Carson alleges some patients were given unnecessary therapy or unhelpful group therapy or had delayed discharges in order to keep billing high, without regard to medical need.  *Id.* ¶¶ 109-11, 124-35, 141, 146-47.[4]  Carson alleges staff members improperly billed time for patients who refused therapy services or where only non-skilled activities were conducted.  *Id.* ¶ 117-123, 144-45.  Carson further alleges his employment by HCRMC was terminated in November 2009 in retaliation for his complaints about what he believed to be fraudulent billing practices in connection with claims submitted to

---

[3] Defendants cannot discern which corporate entity Carson is referring to when he names "HCR ManorCare" as a defendant.  While the closest possibility is "HCR ManorCare, Inc.," that entity is already separately named as a defendant in this action.  There is no corporate entity in existence that fits the description of HCR ManorCare contained in the Complaint.  *See* Comp. ¶ 21.  Defendants assume these references must refer to the same corporate entity.  Regardless, this motion is being filed on behalf of all Defendants to this action.

[4] Carson claims that group therapy is "[r]arely, if ever, . . . medically necessary or clinically appropriate," Compl. ¶ 140, even though it was ordered and planned by professionals who, unlike Carson, were trained, licensed and experienced in ordering and planning therapy.  Group therapy is explicitly approved for skilled rehabilitation therapy reimbursement under Medicare Part A.  *See* Medicare Benefit Policy Manual, Ch. 15, § 230, https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Internet-Only-Manuals-IOMs-Items/CMS012673.html.

the government for reimbursement of therapy services. *Id.* ¶¶ 148-57. Carson did not file his original complaint until late 2011, almost two years after his alleged unlawful termination and after a federal investigation of HCRMC was publicly known.

## IV.   APPLICABLE LAW
### A.   THE FEDERAL AND STATE FALSE CLAIMS ACTS

Carson's Complaint alleges nine counts under prior and current versions of the FCA: (1) presentation of false claims to the government, in violation of former 31 U.S.C. § 3729(a)(1) and current § 3729(a)(1)(A) (Counts 1 and 5); (2) making or using a false record or statement material to cause a false claim to be paid, in violation of former § 3729(a)(2) and current § 3729(a)(1)(B) (Counts 2 and 6); (3) making or using a false record or statement material avoid an obligation to refund, in violation of former § 3729(a)(7) and current § 3729(a)(1)(G) (Counts 3 and 8); (4) conspiracy to violate the FCA, in violation of former § 3729(a)(3) and current § 3729(a)(1)(C) (Counts 4 and 7); and (5) retaliation, in violation of current § 3730(h) (Count 9).

Carson also has raised *qui tam* allegations under sixteen State FCAs—those of California, Colorado, Delaware, Florida, Georgia, Illinois, Indiana, Maryland, Michigan, Nevada, New Jersey, North Carolina, Oklahoma, Texas, Virginia, and Wisconsin—which largely track the federal FCA in form and substance and the federal FCA case law in terms of analysis.

### B.   COVERAGE FOR SKILLED REHABILITATION THERAPY UNDER MEDICARE

In its motion to dismiss the United States' complaint, HCRMC more fully describes the payment system for rehabilitation therapy under Medicare Part A. ECF No. 117 at 8-10. In short, Medicare pays SNFs under a prospective payment system for covered beneficiaries based on expectations of required care. 42 U.S.C. § 1395yy(e). Reimbursable services must be "reasonable and necessary" either to diagnose or treat an illness or injury or improve functioning. 42 U.S.C. § 1395y(a)(1)(A). A physician must initially certify, and recertify every thirty days

thereafter, the patient's need for SNF services.  42 C.F.R. § 424.20.  During the patient's stay at the facility, licensed professionals classify each patient's needs through periodic assessments.  42 C.F.R. § 413.343.  The periodic assessments are reported to the government on standardized forms that track therapy minutes, medical diagnoses, and other data using a tool known as the Minimum Data Set ("MDS").  42 C.F.R. 483.20(b).  Using data in the MDS, each patient is placed in a RUG level (ranging from "Low" to "Ultra High") in accordance with regulations that determine the amount of reimbursement.  *See* 63 Fed. Reg. 26,252, 26,261-69 (May 12, 1998).

### C.    COVERAGE FOR SKILLED REHABILITATION THERAPY UNDER MEDICAID

Unlike Medicare, Medicaid reimbursement varies by state and generally does not rely on RUG classifications to determine reimbursement.  *See* discussion *infra* Part V(B)(2)(c).  Many states use a prospective reimbursement system that sets reimbursement rates in advance by using historical trends from that facility or from groups of facilities to calculate anticipated expenditures.  *Id.*  As to individual patients, some states pay a flat per diem rate per patient per day regardless of the amount of services provided.  *Id.*  Many states employ methods for limiting reimbursement, including upper payment ceilings, add-on efficiency incentives, and adjustments if facilities do not meet certain occupancy levels, all of which attenuate the connection between any particular patient's RUG-level and any ultimate reimbursement by Medicaid.  *Id.*[5]

---

[5] Carson mentions TRICARE, CHAMPUS and FEHBP only in passing and fails to allege any false claims submitted to those programs.  Compl. ¶¶ 3, 35-37.  Carson also does not allege if or how claims are reimbursed under those programs or any relation to Medicare's RUG framework. Because Carson has not plausibly or particularly pleaded any claims related to TRICARE, CHAMPUS or FEHBP, any allegations related to these programs should be dismissed.

## V.     ARGUMENT

### A.     CARSON'S CLAIMS ARE NOT PROPERLY BEFORE THIS COURT AND SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(1)

#### 1.     Carson's FCA Claims in Counts 1 through 8 and Michigan FCA Claim in Count 18 are Barred by the "First-to-File" Rule

Pursuant to the first-to-file rules of the FCA and Michigan FCA, this Court lacks jurisdiction over Carson's claims in Counts 1 through 8 and 18 because at the time Carson filed his complaint, Relator Ribik had a pending action based on the same underlying facts (as did Relator Slough).   In fact, Ribik had filed her complaint over two years before Carson filed his first complaint.   "When a person brings an action under [the FCA], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action."   31 U.S.C. § 3730(b)(5).   This as "an absolute, unambiguous exception-free rule." *United States ex rel. Carter v. Halliburton Co.*, 710 F.3d 171, 181 (4th Cir. 2013), *rev'd in part on other grounds*, *Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, 135 S. Ct. 1970 (2015).   A later filed suit is a "related action" and is barred if it is "based upon the 'same material elements of fraud' as the earlier suit, even though the subsequent suit may 'incorporate somewhat different details.'"   *Halliburton*, 710 F.3d at 182.   "Section 3730(b)(5) is jurisdictional and if an action is later filed that is based on the facts underlying the pending case, the court must dismiss the later case for lack of jurisdiction."   *Id.* at 181.   Michigan's parallel first-to-file rule also is triggered by a relator's *ex relatione* action on behalf of the federal government under the federal FCA.   *See* Mich. Comp. Laws Ann. § 400.610a, Sec. 10a(12).

Here, Carson's September 28, 2011 complaint and his subsequent pleadings are based upon the same material elements of alleged fraud as other pending actions.   In particular, Ribik's January 7, 2009 complaint alleged, *inter alia*, that there was undue pressure at HCRMC to increase RUG levels without regarding to medical necessity.   Dkt. 09-13, ECF No. 1 at ¶¶ 44-45.

Ribik alleged patients were given unnecessary levels of therapy, unnecessary disciplines of therapy or unhelpful group therapy or had delayed discharges to keep billing high, without regard to medical need. *Id.* ¶¶ 47-49. Ribik alleged some treatments involved multiple staff members who each submitted time entries for the patient, resulting in double-billing. *Id.* ¶ 49(a). She alleged staff members inflated their reported time with patients. *Id.* ¶ 49(c). Ribik also alleged staff members improperly billed time for patients who did not receive service or where only non-skilled activities were conducted. *Id.* ¶¶ 49(b), (d), & (k). With the exception of Carson's retaliation claim, these are the exact same allegations that Carson subsequently raised in his pleadings more than thirty-two months later. *See supra* Part IV (describing these same allegations in Carson's Complaint at ¶¶ 5, 60, 104-11, 114-15, 117-35, 141, 144-47).[6] Accordingly, because related actions were currently pending when Carson filed his action, Counts 1 through 8 and 18 of his Complaint should be dismissed pursuant to Rule 12(b)(1).

**2.     Carson's FCA Claims in Counts 1 Through 8 Should be Dismissed Because the United States' Intervention Supersedes Carson's Claims**

The FCA provides that if the United States decides to intervene, "the action shall be conducted by the Government." 31 U.S.C. § 3730(b)(4) (referring to "a civil action under section 3729," *see* § 3730(b)(1)). Accordingly, once the government has intervened in an action, the relator may no longer proceed with a freestanding FCA claim brought under § 3729. *United States v. Univ. Health Servs.*, No. 1:07-CV-00054, 2010 WL 2976080, at *3 (W.D. Va. July 28, 2010). Here, except as to Carson's retaliation claim in Count 9 which invokes a different FCA subsection, § 3730(h), the United States' intervention in the FCA claims against HCRMC supersedes Carson's ability to maintain freestanding FCA claims. Accordingly, even if Carson

---

[6] Relator Slough's August 20, 2010 complaint also raised many identical allegations, including inflating treatment time or billing for patients who did not receive service or who participated in non-skilled or group activities. Dkt. 14-1228, ECF No. 1, at ¶¶ 38, 52, 54, 58, 66 (E.D. Mich.).

was not barred because he was not first to file, Counts 1 through 8 of Carson's Complaint should be dismissed.[7]

### 3.   Carson's FCA Claims in Counts 1 Through 8 and State FCA Claims in Counts 10 Through 24 are Barred Because They are Based on Public Disclosures

This Court lacks jurisdiction over the FCA claims in Counts 1 through 8 and State FCA claims in Counts 10 through 24 because Carson's Complaint was based upon allegations publicly disclosed in government reports and the news media.   In the version relevant to Carson's Complaint,[8] the FCA's public disclosure bar provides:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A) (2000).   The public-disclosure bar requires dismissal if the action is "even partly" derived from prior public disclosures. *United States ex rel. Vuyyuru v. Jadhav,* 555 F.3d 337, 351 (4th Cir. 2009).   Similarly, each State FCA Carson invokes, with the exception of the Wisconsin FCA, has a comparable bar on new actions based on prior public disclosures.[9]

---

[7] After dismissal of Carson's federal claims, this Court should decline to exercise supplemental jurisdiction over Carson's state law claims.  *See United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.,* No. 1:09-cv-1086 (AJT), 2011 WL 3911095, at *6 (E.D. Va. Sept. 6, 2011).

[8] The applicable version of the public-disclosure bar is the one in effect at the time the allegedly false claims were submitted, even for complaints filed after the FCA's 2010 amendments.  *See United States ex rel. May v. Purdue Pharma L.P.,* 737 F.3d 908, 918 (4th Cir. 2013) (explaining need to avoid retroactive effect where legislation is silent).

[9] *See* Cal. Gov't Code § 12652(d)(3); Colo. Rev. Stat. § 25.5-4-306(5)(c); Del. Code Ann. tit. 6, § 1206(b); Fla. Stat. § 68.087(3); Ga. Code Ann. § 49-4-168.2(l)(2); 740 Ill. Comp. Stat. § 175/4(e)(4); Ind. Code § 5-11-5.5-7(f); Md. Code Health-Gen. § 2-606(d); Mich. Comp. Laws § 400.610a, Sec. 10a(13); Nev. Rev. Stat. § 357.100; N.J. Stat. Ann. § 2A:32C-9(c); N.C. Gen. Stat. § 1-611(d); Okla. Stat. tit. 63, § 5053.5(B); Tex. Hum. Res. Code § 36.113; Va. Code Ann. § 8.01-216.8.

Long before Carson's original September 28, 2011 complaint, the U.S. Department of Health and Human Services' Office of Inspector General ("HHS-OIG") announced an investigation for fiscal year 2009 into "Medicare claims submitted by SNFs to determine the extent to which [RUGs] included on SNF claims for Medicare reimbursement are accurate and supported by the residents' medical records," following a 2006 OIG report warning of upcoded claims.  HHS-OIG Work Plan Fiscal Year 2009 10-11, https://oig.hhs.gov/publications/docs/workplan/2009/WorkPlanFY2009.pdf.

In 2010, the Washington Post reported that HCR ManorCare was one of the entities under scrutiny by HHS-OIG for allegedly overbilling or increasing patient therapy levels beyond medical need.  *See* Scott Higham and Dan Keating*, Review Heightens Concerns Over Medicare Billing at Nursing Homes*, Wash. Post, Mar. 29, 2010, at A3, *available at* http://www.washingtonpost.com/wp-dyn/content/article/2010/03/28/AR2010032802764.html.
The article described industry-wide allegations that therapists were billing for therapy levels unsupported by medical records and patients were receiving unnecessary or contraindicated therapy.  *Id.*  The Post described watchdog testimony to Congress that "[f]acilities are paid for providing therapy even when a patient's need for and benefit from it has not been demonstrated." *Id.*  The Post also tied these allegations to the Defendants in this case, reporting that "[i]n the Washington area, two nursing homes owned by HCR ManorCare put their residents in the most expensive billing category at nearly five times the national average . . . ."  *Id.*

Thereafter, in December 2010, the HHS-OIG published a report of its findings from its investigation.  *See* HHS-OIG, Questionable Billing by Skilled Nursing Facilities, Publ. No. OEI-02-09-00202 (Dec. 2010), http://www.oig.hhs.gov/oei/reports/oei-02-09-00202.pdf (the "Report").  The Report found "that certain SNFs may be routinely placing beneficiaries into

higher paying RUGs regardless of the beneficiaries' care and resource needs or keeping beneficiaries in Part A stays longer than necessary." *Id.* at 14. The Report indicated that the treatment levels "did not appear to be the result of changes in beneficiary characteristics" such as age or diagnoses, and that for-profit SNFs owned by large chains had the highest treatment levels and highest incidence of questionable billing. *Id.* at 11-13; *see also* Compl. ¶ 21-22 (alleging that HCRMC is the largest skilled nursing provider in the industry).[10] These public allegations are the very same allegations that Carson reiterated in his Complaint.

Faced with this reality, Carson contends the "original source" exception to the public disclosure bar should apply because he acquired knowledge during his employment that was "direct and independent" of what was previously disclosed. Compl. ¶ 20. But "[a] mere assertion of [direct and independent] knowledge, without adequate basis in fact and unsupported by competent proof, will not establish jurisdiction." *United States ex rel. Ahumada v. NISH*, 756 F.3d 268, 276 (4th Cir. 2014). While Carson claims he observed instances where services were over- or under-provided to patients at the single SNF where he worked, Carson was a physical therapy assistant, not a licensed physician or therapist, and he claims no insight into HCRMC's billing procedures. Moreover, he does not allege that those patients even had government-

---

[10] The Report's findings were widely discussed in other government reports and the news media. *See, e.g.*, 76 Fed. Reg. 26,364, 26,393 (May 6, 2011) (reporting that the Report identified an increase in questionable billings); HHS-OIG Semiannual Report to Congress Oct. 1, 2010 - Mar. 31, 2011 ("From 2006 to 2008, skilled nursing facilities (SNF) increasingly billed for higher-paying resource utilization groups, even though beneficiary characteristics remained largely unchanged."); HHS-OIG, Changes in Skilled Nursing Facilities Billing in FY 2011, Publ. No. OEI-02-09-00204 (July 8, 2011), http://oig.hhs.gov/oei/reports/oei-02-09-00204.pdf (discussing DHHS's response to the Report); *see also* Press Release, PRNewsWire, *CtW Investment Group Challenges HCP Board Re: $6.1 Billion ManorCare Deal Citing Questionable Billing Practices* (Feb. 16, 2011), http://www.prnewswire.com/news-releases/ctw-investment-group-challenges-hcp-board-re-61-billion-manorcare-deal-citing-questionable-billing-practices-116316969.html (describing concern that "ManorCare topped the list of care providers who billed Medicare for $259 million in potentially 'excess' fees in 2009," according to an SEIU report).

reimbursed care or that any actual claim submission resulted.  Carson's alleged knowledge thus does not materially support his allegations of FCA violations or add anything to the prior public disclosures on which his Complaint is based.  Moreover, under the then-effective version of the original source exception, Carson would have had to "voluntarily provide[] the information to the Government before filing an action under this section which is based on the information" in order to trigger the exception.  *See* 31 U.S.C. § 3730(e) (2000).  There are no allegations in the Complaint nor any indication in the record to support this jurisdictional element.  Accordingly, Carson's allegations fail to support his conclusory assertion that he was an "original source" and Counts 1-8 and 10-24 should be dismissed for lack of jurisdiction pursuant to Rule 12(b)(1).

## B.    CARSON'S CLAIMS ARE NOT PLAUSIBLY OR SUFFICIENTLY PLEADED AND SHOULD BE DISMISSED PURSUANT TO RULES 12(B)(6) AND (9)(B)

Even if this Court has jurisdiction, Carson's Complaint should be dismissed under Rule 12(b)(6) for failure to comply with Rule 9(b) and failure to state a plausible claim for relief.  To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ahumada*, 756 F.3d at 280 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A claim is facially plausible when it contains sufficient factual allegations for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," and so "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility . . . .'"  *Id*.  Legal conclusions and recitations of the elements of a cause of action are not considered well-pleaded facts.  *Id*. at 681.

In addition, FCA and State FCAs claims "must also meet the more stringent 'particularity' requirement of Federal Rule of Civil Procedure 9(b)."  *Ahumada,* 756 F.3d at 280.

"[A]n FCA plaintiff must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* "More precisely, the complaint must allege 'the who, what, when, where and how of the alleged fraud.'" *Id.* (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 379 (4th Cir. 2008)). A failure to comply with Rule 9(b) is treated as a failure to state a claim under Rule 12(b)(6). *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999). Because Carson's Complaint fails to plead plausible claims and plead allegations of fraud with particularity, the Complaint should be dismissed.

1. **The Complaint Fails to Plead Claims With Particularity as Required by Rule 9(b)**

Carson's FCA and State FCA claims are insufficient under Rule 9(b) because they fail to allege "the who, what, when, where and how of the alleged fraud." *Ahumada,* 756 F.3d at 280; *see also United States ex rel. Palmieri v. Alpharma, Inc.*, 928 F. Supp. 2d 840, 853 (D. Md. 2013) (Rule 9(b) applies to state law fraud claims asserted in federal court).

a.   Carson does not plead a particularized claim because he fails to identify any false claim resulting from the alleged scheme.

Carson's Complaint should be dismissed because it fails the Rule 9(b) requirement that Carson plead particularized facts including "the identification of some representative claims" allegedly violating the FCA. *See Virginia ex rel. Hunter Labs., LLC v. Quest Diagnostics, Inc.*, No. 1:13-CV-1129 GBL/TCB, 2014 WL 1928211, at *7 (E.D. Va. May 13, 2014). "[T]he statute attaches liability, not to the underlying fraudulent activity . . . but to the 'claim for payment.'" *Harrison*, 176 F.3d at 785 (internal quotation marks omitted). Thus, "Rule 9(b) 'does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the

Government.'" *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 456-57 (4th Cir. 2013). "[W]hen a defendant's actions, as alleged and as reasonably inferred from the allegations, *could* have led, but *need not necessarily* have led, to the submission of false claims, a relator must allege with particularity that specific false claims actually were presented . . . ." *Id.* at 457, 461 (affirming dismissal of FCA claim premised on government reimbursement statistics and evidence some off-label prescriptions were written); *see also United States ex rel. Ubl v. IIF Data Solutions*, No. 1:06cv641, 2007 WL 2220586, at *3 (E.D. Va. Aug. 1, 2007) ("[E]ven if a plaintiff states with particularity the circumstances constituting the alleged fraud . . . [it] must still be of the type for which the [FCA] provides a remedy.").[11]

Carson's Complaint is deficient because it fails to identify any representative claims with particularity. While Carson does refer to some unidentified patients who received services (*see* Compl. ¶¶ 125-35, 141), his incomplete examples do not allege that the Defendants billed the government for the alleged services or even that these were Medicare or Medicaid patients in the first place, much less the who, what, when, where and how of any alleged fraud. In the absence of any identified claims, the Complaint alleges nothing more than a "fraudulent billing scheme," Compl. ¶ 157, which is insufficient to plead an FCA claim under Rule 9(b). *See United States ex rel. Jones v. Collegiate Funding Servs., Inc.*, 469 F. App'x 244, 259 (4th Cir. 2012) (affirming dismissal where the relators "made no allegation as to any particular transactions . . . in which the certifications were material, nor do they name or identify any employee who (knowingly or not) completed a false certification form"); *United States ex rel. Martinez v. Va. Urology Ctr.*,

---

[11] While Defendants deny there was any corporate pressure to increase reimbursements, a goal of maximizing reimbursement is not improper under the FCA. *See United States ex rel. Williams v. Renal Care Grp., Inc.*, 696 F.3d 518, 528-31, 533 (6th Cir. 2012) (reversing and granting summary judgment for defendants because there was no evidence of scienter, even though evidence showed defendants took advantage of Medicare regulatory scheme to increase profits).

*P.C.*, No. 3:09-CV-442, 2010 WL 3023521, at *5 (E.D. Va. July 29, 2010) (dismissing complaint which lacked details linking the conduct to claims actually submitted for payment); *United States ex rel. Hagood v. Riverside Healthcare Ass'n*, No. 4:11CV109, 2015 WL 1349982, at *9-12 (E.D. Va. Mar. 23, 2015) (dismissing complaint which detailed an overbilling scheme but failed to connect the scheme to the actual submission of any claims to the government). Accordingly, Carson's Complaint should be dismissed for lack of particularity pursuant to Rules 9(b) and 12(b)(6).

> **b.**   Carson does not plead a particularized claim because he fails to allege which individuals and corporations knowingly submitted allegedly false claims.

Carson's Complaint is also fatally deficient under Rule 9(b) because he does not allege with particularity the "who" of the purported fraud—neither which individuals submitted or caused the submission of a false claim with the requisite scienter, nor which corporate Defendants allegedly have responsibility for those individuals' conduct.  Throughout his Complaint, Carson attributes culpable conduct to the "Rehabilitation Staff Members" generally, without identifying who was responsible for any actual false records or false claims submissions. Carson thus fails to identify who he contends had the scienter necessary to commit an FCA violation, thereby failing to plead a required element of an FCA claim.  *See United States ex rel. Ahumada v. Nat'l Ctr. for Employment of the Disabled*, No. 1:06-cv-713, 2013 WL 2322836, at *4 (E.D. Va. May 22, 2013) (relator failed to allege "essential element" of scienter through facts showing defendant knowingly made a false statement or engaged in fraudulent conduct); *United States ex rel. Geschrey v. Generations Healthcare, LLC*, 922 F. Supp. 2d 695, 703 (N.D. Ill. 2012) (FCA allegations were insufficient because they failed to identify who was responsible for allegedly false certifications or why certifications were false).

Furthermore, "in FCA cases with multiple defendants, Rule 9(b) requires that a complaint set forth with particularity each defendant's culpable conduct. . . .  Defendants cannot simply be grouped together without specification of which defendant committed which wrong. . . .  [W]hen a relator raises allegations of fraud against multiple defendants, the complaint must apprise each defendant of the specific nature of his or her participation in the fraud."  *Ahumada,* 2013 WL 2322836, at *3-4 (citations and internal quotation marks omitted); *see also United States ex rel. Brooks v. Lockheed Martin Corp.*, 423 F. Supp. 2d 522, 527-28 (D. Md. 2006) (dismissing relator's complaint because it "lump[ed] all of the defendants together without identifying the person, or even the corporation, making the alleged misrepresentations").  While Carson alleges that the three individual Defendants are each a separate and distinct entity, Compl. ¶¶ 21-23, he asserts only generalized and collective allegations against the Defendants as if they were one entity.  *See, e.g.*, Compl. ¶¶ 1, 4-5, 100, 143-48, 159-64.  He does not allege which, if any, of the Defendants even submitted claims to the government, much less submitted false claims.  He does not allege which, if any, of the Defendants bear responsibility for any individuals' conduct, nor any facts to support why such responsibility exists or where it came from.[12]  Thus, Carson has failed to meet the particularity requirement of Rule 9(b) and his Complaint should be dismissed.

c.  Carson does not plead a particularized claim because he relies on information and belief.

Carson's Complaint is further defective because Rule 9(b) does not permit the pleading of FCA allegations upon "information and belief."  *See United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310-11 (11th Cir. 2002). Only those relators with actual pre-discovery knowledge of wrongdoing are permitted to bring suit under the FCA; a relator may not

---

[12] Notably, the Complaint contains no mention of Heartland Services beyond identifying it as a defendant.  For this additional reason, all claims against Heartland Services should be dismissed.

bring False Claims Act actions merely because they suspect there is "something fishy going on." *United States ex rel. Detrick v. Daniel F. Young, Inc.*, 909 F. Supp. 1010, 1022 (E.D. Va. 1995); *see also Wilson*, 525 F.3d at 380 (a claim that "rest[s] primarily on facts learned through the costly process of discovery . . . is precisely what Rule 9(b) seeks to prevent"); *Harrison*, 176 F.3d at 789 (Rule 9(b) is intended to "eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed").

In this case, Carson claims no knowledge of or responsibility for the Defendants' billing activity or actual claim submissions. Carson's Complaint assumes not only that false claims are being submitted in connection with the activity he alleges, but takes a further leap to allege that similar activity occurred at other facilities run by Defendants, even though he had no personal knowledge outside his own facility. *See* Compl. ¶ 9 (alleging on "information and belief" that certain billing practices were employed at each of Defendants' SNFs); *id.* ¶¶ 30, 102 (revealing Carson had no first-hand knowledge of billing practices at other facilities). Since Carson's pleading on information and belief is insufficient in the context of an FCA claim, the Complaint should be dismissed as to any claims from facilities other than the facility at which Carson was employed—a SNF in Yeadon, Pennsylvania (Compl. ¶¶ 16, 24)—and with respect to any other allegations he raises only on information and belief.

d.   <u>Carson fails to plead any State FCA claim with particularity.</u>

Carson claims personal knowledge only of activities at the Pennsylvania SNF where he was employed and has not alleged with particularity any fraud at any other facility, despite his claimed "understanding" that similar activities might have occurred at other facilities. Compl. ¶¶ 16, 24, 30, 102. Despite the express geographic limitation of his Complaint, Carson does not raise any claim under Pennsylvania law. Instead, he alleges claims under the State FCAs of sixteen other states, but he does not allege or identify a single act committed, nor any false claim

- 17 -

submitted, in any of those states.  Quite simply, Carson does not allege the who, what, when, where, why or how of *any* State FCA claims.  Carson's "understanding" that similar conduct may have led to false claims in remote states clearly fails to satisfy the particularity requirement of Rule 9(b).[13]  *Nathan*, 707 F.3d at 457.  Each of Carson's State FCA claims should thus be dismissed.

### 2.    The Complaint Fails to State Plausible Claims for Violation of the FCA as Required by Rule 12(b)(6)

To plead an FCA claim, a plaintiff must allege, *inter alia*, (1) a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter, *i.e.*, with actual knowledge or deliberate ignorance or reckless disregard of the truth or falsity of the information; (3) that was material; and (4) caused the government to pay out money or forfeit money due. *Ahumada,* 756 F.3d at 280.  Claims which are not objectively false cannot give rise to FCA liability.  *Wilson*, 525 F.3d at 376-77.  Moreover, a regulatory violation alone is insufficient to establish liability, especially where the requirements are ambiguous or undefined, because the FCA requires a "false statement or fraudulent course of conduct."  *United States ex rel. Rostholder v. Omnicare, Inc.*, 745 F.3d 694, 702 (4th Cir. 2014).

### a.    Carson does not plausibly plead that clinical opinions as to rehabilitation therapy led to objectively false claim submissions.

By trying to second-guess the determinations of physicians and licensed clinical therapists, Carson fails to plausibly allege the submission of objectively false claims to the government.  Carson instead relies on differences of clinical opinion as to the "reasonableness and necessity" of rehabilitation therapy, and such determinations do not give rise to objectively false statements under controlling law.  *See Wilson*, 525 F.3d at 377 (FCA liability can only exist

---

[13] Nor does Carson allege how any such claims were submitted under the unique Medicaid reimbursement rules of each state.  *See infra* Part V(B)(2)(c).

for objectively false claims); *United States v. Prabhu*, 442 F. Supp. 2d 1008, 1026 (D. Nev. 2006) (claims are not objectively false if "reasonable persons can disagree regarding whether the service was properly billed to the government.").

Here, Carson does not allege the absence of a physician's order for the therapy provided to any patient, that HCRMC failed to comply with physician certification requirements, or that any physician committed or participated in a fraud by issuing an improper order for any individual patient. That leaves only Carson's disagreement with the mode, frequency and duration of certain therapy ordered by physicians and determined by licensed therapists who actually cared for the patients. But under the applicable regulations, an objective falsehood cannot arise from subjective determinations by licensed physicians and therapists in accordance with physician orders as to the specific type and duration of rehabilitation therapy. *See* 42 C.F.R. § 483.20(j)(2) ("Clinical disagreement does not constitute a material and false statement."); 62 Fed. Reg. 67,174, 67,202-03 (Dec. 23, 1997) (explaining application of this rule). Because reasonable minds may differ about such individualized clinical determinations, Carson's Complaint does not plead the objective falsity required to sustain his purported FCA claims and it fails as a matter of law.

> b.   Carson does not plausibly plead the existence of defined and unambiguous standards for rehabilitation therapy as needed to establish objective falsity and scienter

The Complaint is also deficient because it does not plausibly plead that the standards governing clinical necessity for rehabilitation therapy are defined and unambiguous, and thus Carson has not adequately pleaded objective falsity or scienter. Claims are not false under the FCA unless services are furnished in violation of a controlling rule, regulation, or standard. *See United States ex rel. Local 342 v. Caputo Co.*, 321 F.3d 926, 933 (9th Cir. 2003); *Prabhu*, 442 F. Supp. 2d at 1026. Moreover, to establish scienter, Carson must allege that HCRMC knowingly

submitted claims that were improper and objectively false.  *See United States v. Newport News Shipbuilding*, 276 F. Supp. 2d 539, 561 (E.D. Va. 2003); *see also United States ex rel. Ketroser v. Mayo Found.*, 729 F.3d 825, 832 (8th Cir. 2013) (a defendant's "reasonable interpretation of an ambiguity inherent in the regulations belies the scienter necessary to establish [an FCA] claim").

Here, Carson's Complaint fails to allege clear and objective regulatory standards for the type, amount, frequency, and duration of rehabilitation therapy services such that claims for such services could be capable of objective falsity under the FCA.  The Complaint also does not allege any standard upon which Carson is basing his disagreement with the treating licensed therapists about the "reasonableness and necessity" of certain therapy services.[14]  Carson cannot establish fraud premised merely on his own lay opinions and interpretations of broadly-worded regulations.  *See United States ex rel. Badr v. Triple Canopy*, 775 F.3d 628, 635 (4th Cir. 2015).  Because the standards governing clinical necessity for rehabilitation therapy are undefined and ambiguous, Carson cannot plausibly plead the required elements of objective falsity or scienter and his claims should be dismissed.

       c.    <u>Carson fails to plead a plausible FCA claim with respect to claims submitted to Medicaid.</u>

Carson's allegations of false claims submitted to Medicaid should be dismissed because Carson fails to plausibly allege a connection between reimbursement under the various state

---

[14] While federal programs reimburse certain rehabilitation therapy services that are reasonable and necessary for the patient's treatment, 42 U.S.C. § 1395y(a)(1)(A), the terms "reasonable" and "necessary" are not defined by statute or regulation.  *See* 54 Fed. Reg. 4302, 4304, 4308, 4312 (Jan. 30, 1989).  Instead the government grants to licensed therapists acting pursuant to physicians' orders the responsibility to determine what is "reasonable and necessary" based on the patient's condition at the time and what was the reasonably appropriate course of treatment for the particular illness or injury.  *See* Medicare Benefit Policy Manual, Ch. 8, § 30.2.2.1.

Medicaid regimes and his allegations of excessive therapy services.  Carson has not pleaded how the therapy services he believes to be excessive actually impacted Medicaid reimbursement. Unlike Medicare, which reimburses SNFs through a daily per diem rate determined by the patient's RUG level, Medicaid reimbursement methodology varies amongst the states, including some methodologies that are not adjusted for the amount of services provided and are distinct from the RUG classification system.  *See Virginia's Medicaid Reimbursement to Nursing Facilities*, Senate Doc. 28, Va. Gen. Assembly, Jan. 6, 2000, at 6, 8, http://jlarc.virginia.gov/pdfs/reports/Rpt243.pdf (summarizing different state Medicaid reimbursement frameworks).

While some states use retrospective or hybrid reimbursement systems, during the time period covered by the complaint the majority of states used prospective systems that set Medicaid rates in advance using historical trends to calculate anticipated expenditures.  *See* U.S. Gen. Accounting Office, *Medicaid Nursing Home Payments: States' Payment Rates Largely Unaffected by Recent Fiscal Pressure* 11, http://www.gao.gov/products/GAO-04-143. Different states apply different reimbursement adjustments, and some states (like Florida, Georgia and Illinois) apply a flat *per diem* rate for each patient without adjustments for the amount of services provided.  *See id.*  States also implement various methods to limit reimbursement, including payment ceilings, efficiency incentives, and occupancy-based adjustments.  *Virginia's Medicaid Reimbursement to Nursing Facilities, supra*, at 7; *Medicaid Nursing Home Payments, supra*, at 11-12.  Accordingly, even if therapy was excessive, it would not necessarily lead to a false Medicaid claim because the therapy provided would not have caused the government to make payments it otherwise would not have made.  *See United States ex rel. DeCesare v. Americare In Home Nursing*, 757 F. Supp. 2d 573, 586 (E.D. Va. 2010) (actionable statements must "lead the

government to make payments it would not otherwise have made").  A therapist or therapy assistant also would not necessarily know whether any particular treatment would have an impact on the patient's reimbursement claims under Medicaid, thus defeating the required FCA element of scienter.  Accordingly, Carson has not plausibly alleged the submission of objectively false claims for therapy services to Medicaid and his related allegations should be dismissed.

### 3.    The Complaint Fails to Plead a Plausible Claim for Conspiracy.

In Counts 4 and 7, Carson alleges the Defendants conspired to violate the FCA.  To plead a conspiracy claim, a relator must plead—with Rule 9(b) particularity—that two or more conspirators agreed to make a false record or statement with the purpose of having that false record or statement cause the government to pay a fraudulent claim.  *See* 31 U.S.C. § 3729(a)(1)(C) (formerly § 3729(a)(3)); *see also Harrison*, 176 F.3d at 790 (conspiracy allegation "fail[ed] Rule 9(b)'s requirements since [relator] did not plead how [non-competitive procurement] was accomplished in a fraudulent way, what false statements were made to induce [it], when they were made, by whom, etc."); *Ahumada*, 756 F.3d at 282 (conspiracy allegation did not adequately allege conspirators acted with purpose to defraud the government, who entered into the alleged agreement, when they did so, or what they sought to gain).[15]

Here, Carson's conspiracy allegations are flawed from the outset because they suggest only an intra-corporate conspiracy.  Companies cannot conspire with their employees, agents, or related business entities in the FCA context.  *See Brooks,* 423 F. Supp. 2d at 528 ("A parent corporation and its wholly owned subsidiaries . . . are legally incapable of forming a conspiracy with one another.") (citing *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769 (1984));

---

[15] *See also United States ex rel. Capella v. Norden Sys., Inc.*, No. 3:94-CV-2063 (EBB), 2000 WL 1336487, at *11 (D. Conn. Aug. 24, 2000) (conspiracy allegations failed to satisfy Rule 9(b) because complaint merely alluded to an agreement and did not specify how and when it arose, who entered into it, or any act committed in furtherance of the conspiracy).

*accord United States ex rel. Loughren v. Unumprovident Corp.*, No. 03-11699-PBS, 2008 WL 4280133, at *3 (D. Mass. Sept. 15, 2008); *United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg. Healthcare Sys.*, 274 F. Supp. 2d 824, 856 (S.D. Tex. 2003).[16]  Carson's Complaint only alleges conduct attributed to "HCR" employees.  Compl. ¶ 101.  And even if other Defendants' employees were involved, Carson alleges and implies that the three defendants are related parties.  *See* Compl. ¶¶ 21-23 (describing Heartland Services as a wholly-owned subsidiary of "HCR ManorCare, Inc."); *see also* Note 3 *supra* (describing how "HCR ManorCare" is presumed to be a reference to "HCR ManorCare, Inc.").  Accordingly, no conspiracy count can lie on the facts alleged by Carson.

Carson also has failed to plead any other element of a conspiracy, much less plead it with particularity, including who allegedly participated in the conspiracy, when the agreement was made, what it included, what the parties allegedly were seeking to accomplish, nor what steps were taken in furtherance of the conspiracy.  In the absence of the facts and allegations necessary to support a conspiracy claim, Counts 4 and 7 of the Complaint should be dismissed.

### 4.  The Complaint Fails to Plead a Plausible Claim for Retaliation

Count 9 of the Complaint claims retaliatory termination.  The FCA prohibits retaliation for "lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of [the FCA]."  31 U.S.C. § 3730(h).  To plead retaliation, a plaintiff must plausibly allege (1) he engaged in protected acts in furtherance of an FCA suit; (2) the employer knew about these acts; and (3) the employer discharged him as a result of the acts.  *Eberhardt v. Integrated Design & Const., Inc.*, 167 F.3d 861, 866 (4th Cir. 1999).  "A protected

---

[16] *See also United States ex rel. Ruhe v. Masimo Corp.*, 929 F. Supp. 2d 1033, 1037-38 (C.D. Cal. 2012) (a corporation cannot conspire with its own employees*); United States ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 201 (D.D.C. 2011) (same).

activity need not indicate that an actual FCA suit was being contemplated, but it must evince some attempt to expose possible fraud." *United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co*., No. 09–1899, 2010 WL 2794369, at *10 (4th Cir. July 16, 2010).

In the present case, Carson failed to plausibly allege the required elements of a retaliation claim.  Carson alleges that on five occasions over a 33-month period, he reported that colleagues inflated time entries, that other "billing irregularities" were taking place, or that he disagreed with HCRMC's use of group therapy.  Compl. ¶ 150-54.  But Carson's claimed conduct was not protected activity under the FCA because it was not in furtherance of an FCA action—none of his allegations suggest an effort to bring fraud to public light or a realistic likelihood of litigation or liability.  *See Owens*, 2010 WL 2794369, at *10 ("'An employer is entitled to treat a suggestion for improvement as what it purports to be rather than as a precursor to litigation.'"); *United States ex rel. Rector v. Bon Secours Richmond Health Corp.*, No. 3:11-CV-38, 2014 WL 1493568, at *13 (E.D. Va. Apr. 14, 2014) (allegations insufficient where relator "complained of what he perceived as shoddy or suspicious business practices and was generally concerned that Defendants' activities were possibly violating Medicare and Medicaid statutes and regulations").[17]  Likewise, Carson's sparse allegations of "billing irregularities" do not plausibly allege that HCRMC was "on notice that litigation is a reasonable possibility" as a result of his complaints.  *Phipps v. Agape Counseling & Therapeutic Servs.,* No. 3:13-CV-166, 2015 WL 2452448, at *8 (E.D. Va. May 21, 2015) (employers must be on notice of possible litigation).  Indeed, Carson acknowledges his concerns were investigated and found to lack merit.  Compl.

---

[17] *Cf. Young v. CHS Middle East, LLC*, No. 13-2342, 2015 WL 3396790, at *3-4 (4th Cir. May 27, 2015) (concluding dismissal was not warranted where relator alleged his conduct included reporting to supervisors that management was "defrauding the government" and "emphasiz[ing] 'the potential liability' of reporting false employee staffing . . . to the State Department").

¶ 152

Carson also does not plausibly allege that he was discharged as a result of his allegedly-protected activity.  Carson does not even allege who took the allegedly-adverse employment action and what, how, and why they supposedly knew about his allegedly-protected conduct.  Carson's allegations thus do not give rise to a "reasonable inference" that HCRMC terminated him because he made complaints in furtherance of a potential FCA action.  *See Elder v. DRS Techs., Inc.*, No. 1:13CV799 (JCC/TRJ), 2013 WL 4538777, at *6 (E.D. Va. Aug. 27, 2013). His isolated complaints were spread across 33 months, and other than his eventual termination, Carson does not allege any ongoing retaliation, antagonism or animus between the time of his alleged activity and the adverse action.  *Cf. Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273–74 (2001) ("very close" temporal proximity weighs in favor of a causal relationship); *Hart v. Hanover Cnty. Sch. Bd.,* No. 3:10–CV–794, 2013 WL 1867388, at *4-5 (E.D. Va. May 2, 2013) (causation also can be reflected in "ongoing retaliatory animus or intervening antagonism").  Accordingly, because Carson has failed to plausibly plead the required element of causation, much less protected activity or notice to his employer, Count 9 of the Complaint should be dismissed.

### 5.     The Complaint Fails to Plead Plausible State FCA Claims

Carson failed to plead plausible claims under the State FCAs, which parallel the federal FCA and follow FCA case law.  For the same reasons Carson failed to state a claim under the FCA, he also failed to state claims under the State FCAs and those claims should be dismissed.[18]

---

[18] *See Barys ex rel. United States v. Vitas Healthcare Corp.*, 298 F. App'x 893, 894 n.1 (11th Cir. 2008) (Florida FCA parallels federal FCA); *United States ex rel. Nudelman v. Int'l Rehab. Assoc., Inc.*, No. 00-1837, 2006 WL 925035, at *12 (E.D. Pa. Apr. 4, 2006) (same, as to California, Delaware, Florida, Illinois, and Nevada FCAs); *Cade v. Progressive Cmty. Healthcare, Inc.*, No. 1:09-CV-3522, 2011 WL 2837648, at *3 (N.D. Ga. July 14, 2011) (same,

Moreover, Carson's claims under the Maryland FCA (Count 17) and Delaware FCA (Count 12) are each procedurally defective and must be dismissed.  The Maryland FCA claim is barred because Maryland declined to intervene before Carson's Complaint was unsealed on April 20, 2015.  *See* Md. Code Ann., Health-Gen. § 2-604(a)(7) ("If the state does not elect to intervene and proceed with the action . . . , before unsealing the complaint, the court shall dismiss the action").  The Delaware FCA claim is barred as to any claim allegedly submitted or paid prior to July 16, 2009, the effective date of a statutory amendment, because relators could not prosecute claims under the prior statute unless the Attorney General had determined there was "substantial evidence that a violation . . . has occurred," which Relator does not allege occurred here.  *See* Del. Code Ann. tit. 6, § 1203(b)(4)(b) (2000 version); *see also United States ex rel. Streck v. Allergan, Inc.*, 894 F. Supp. 2d 584, 603 (E.D. Pa. 2012) (dismissing Delaware FCA allegations for claims submitted prior to July 16, 2009 absent a written determination about substantial evidence); *United States ex rel. Boise v. Cephalon, Inc.,* No. 08-287, 2015 WL 1724572, at *14 (E.D. Pa. Apr. 15, 2015) (same).  Accordingly, these State FCA claims should be dismissed with prejudice.

---

as to Georgia FCA); *United States ex rel. Herrera v. Bon Secours Cottage Health Servs.*, 665 F. Supp. 2d 782, 783 n.2 (E.D. Mich. 2008) (same, as to Michigan FCA); *United States. v. APS Healthcare, Inc.,* No. 2:11-cv-01454-MMD-GWF, 2013 WL 420402, at *2 n.1 (D. Nev. Jan. 30, 2013) (same, as to Nevada FCA); *United States ex rel. Johnson v. Univ. Health Servs.*, 889 F. Supp. 2d 791, 793 (W.D. Va. 2012) (same, as to Virginia FCA); *United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1021 (9th Cir. 2006) (applying federal FCA analysis to claims under California FCA); *Kuhn v. LaPorte Cnty. Comp. Mental Health Council,* No. 3:06–CV–317 CAN, 2008 WL 4099883, at *3 n.1 (N.D. Ind. Sept. 4, 2008) (same, as to Indiana FCA); *United States ex rel. Bartz v. Ortho-McNeil Pharm., Inc.,* 856 F. Supp. 2d 253, 259 (D. Mass. 2012) (same, as to New Jersey and Oklahoma FCAs); *United States ex rel. Kester v. Novartis Pharm. Corp.*, No. 11 CIV. 8196(CM), 2014 WL 2619014, at *11 (S.D.N.Y. June 10, 2014) (indicating Colorado, Maryland, North Carolina, Texas, Wisconsin and other State FCAs are modeled on the federal FCA).

**C.**  **IF ANY OF CARSON'S CAUSES OF ACTION SURVIVE DISMISSAL, CERTAIN ALLEGATIONS ARE TIME-BARRED OR TIME-LIMITED.**

**1.**  **Carson's Claims Are Limited by the Relevant Statutes of Limitations**

Each of Carson's claims are limited by a statute of limitations and should be dismissed to the extent they are time-barred if not dismissed in their entirety on other grounds.[19]  Carson appears to allege that HCRMC submitted false claims to the government sometime during his period of HCRMC employment—August 29, 2005 through November 9, 2009.  Compl. ¶¶ 24, 155.  He includes no allegations as to acts or events outside this timeframe.  Since Carson did not file his original Complaint until September 28, 2011, claims allegedly submitted to or paid by the government during portions of his employment period fall outside the relevant statutes of limitations.[20]  In particular, as against HCRMC (sued as HCR ManorCare and HCR ManorCare, Inc.),[21] the following claims are barred by the statute of limitations:

- For Counts 1 through 8, the six-year limitations period of 31 U.S.C. § 3731(b) requires dismissal of those Counts as to claims allegedly submitted or paid prior to September 28, 2005.

- For Count 9 (FCA retaliation), the three-year limitations period of 31 U.S.C. § 3730(h)(3) precludes reliance conduct prior to September 28, 2008 (though the only retaliation Carson alleges was his November 9, 2009 termination).

---

[19]  On a Rule 12(b)(6) motion to dismiss, courts can rule on affirmative defenses that are discernable on the face of the complaint.  *See Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007)*; Richmond, Fredericksburg & Potomac R.R. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993).

[20]  Courts deem an FCA violation to occur either when the defendant submits a false claim to the government or when the government pays the claim.  *See United States ex rel. Dugan v. ADT Sec. Servs.*, No. DKC 2003-3485, 2009 WL 3232080, at *4 (D. Md. Sept. 29, 2009).

[21]  With respect to Heartland Services, which Carson first named as a defendant in his May 11, 2015 Second Amended Complaint, the only claims that would survive the limitations periods would be Carson's Wisconsin FCA claim (Count 25) which has a 10-year limitation period and those claims that have six-year limitations periods (i.e., Counts 1-8 and 10-24) for claims filed after May 11, 2009 but before November 9, 2009 (the date of Carson's termination and last allegations).  Count 9 is time-barred in its entirety as related to Heartland Services.  *See* 31 U.S.C. § 3730(h)(3) (three-year limitations period for retaliation claims).

- For Counts 10 through 24, the six-year limitations period of the State FCAs of California, Colorado, Delaware, Florida, Georgia, Illinois, Indiana, Maryland, Michigan, Nevada, New Jersey, North Carolina, Oklahoma, Texas and Virginia requires the dismissal of those Counts as to claims allegedly submitted or paid prior to September 28, 2005.[22]

HCRMC respectfully requests the dismissal of each Count of the Complaint to the extent it purports to reach claims allegedly submitted outside the relevant limitations period.[23]

### 2. Carson's FCA Claims Should be Limited to Claims Allegedly Submitted Under the Then-Effective Version of the Statute

Carson's allegations apparently span the 2009 amendment to the FCA, and Carson raises separate FCA Counts under the pre- and post-amendment versions. Counts 1 through 4 of the Complaint invoke the pre-amendment version of the FCA, and Counts 5 through 8 invoke the post-amendment version. The amended version is applied to claims after the enactment date of May 20, 2009, except that for Counts 2 and 6, the amendment of 31 U.S.C. § 3729(a)(1)(B) (former § 3729(a)(2)) was designated to have effect retroactively to June 7, 2008. *See* Pub. L. 111-21, § 4, 123 Stat 1617, 1625 (2009). Accordingly, Count 2 should be limited to claims submitted prior to June 7, 2008; Count 6 should be limited to claims submitted on or after June 7, 2008; Counts 1, 3 and 4 should be limited to claims submitted prior to May 20, 2009; Counts 5,

---

[22] Cal. Gov't Code § 12654(a); Colo. Rev. Stat. § 25.5-4-307; Del. Code Ann. tit. 6, § 1209(a); Fla. Stat. § 68.089(1); Ga. Code Ann. § 49-4-168.5; 740 Ill. Comp. Stat. 175/5(b); Ind. Code § 5-11-5.5-9(b); Md. Code Ann., Health-Gen. § 2-609(a); Mich. Comp. Laws § 400.614; Nev. Rev. Stat. § 357.170; N.J. Stat. Ann. § 2A:32C-11; N.C. Gen. Stat. § 1-615(a); Okla. Stat. tit. 63, § 5053.6; Tex. Hum. Res. Code Ann. § 36.104; Va. Code Ann. § 8.01-216.9. The 10-year limitations period under the Wisconsin FCA (Count 25) likely is not implicated in this case. *See* Wis. Stat. § 893.981.

[23] Defendants' calculation of limitations periods herein give Carson the presumption that his Second Amended Complaint relates-back to his original September 28, 2011 complaint with respect to HCRMC (sued as HCR ManorCare and HCR ManorCare, Inc.). Defendants reserve the right to challenge relation-back in subsequent proceedings if any claims survive dismissal.

7, and 8 should be limited to claims submitted on or after May 20, 2009; and, for each of these Counts, all other alleged claims from other time periods should be dismissed as to those Counts.

**3.    Carson's Claims Under the Georgia, New Jersey, and Oklahoma FCAs Should be Limited in Light of Those Statutes' Effective Dates**

As noted above, Carson appears to allege that HCRMC submitted false claims sometime during his period of HCRMC employment—August 29, 2005 through November 9, 2009 (Compl. ¶¶ 24, 155)—and he includes no allegations as to acts or events outside this timeframe. But the Georgia, New Jersey and Oklahoma FCAs were not in effect for this entire period and are not given retroactive effect.  *See* Ga. Code Ann. § 49-4-168.1 (eff. May 24, 2007); N.J. Stat. Ann. § 2A:32C-3 (eff. Mar. 13, 2008); Okla. Stat. tit. 63, § 5053.1 (eff. Nov. 1, 2007).[24] Accordingly, the Court should dismiss Carson's causes of action brought under these State FCAs as to claims allegedly submitted prior to May 24, 2007 for Count 14 (Georgia), prior to March 13, 2008 for Count 20 (New Jersey), and prior to November 1, 2007 for Count 22 (Oklahoma).

**VI.    CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6).  Since the defects with Relator's pleading and theory cannot be cured by re-pleading and because he has already had three opportunities to plead a viable claim, Carson should not be permitted to file another amended pleading and his claims should be dismissed with prejudice.

---

[24] *See also Walker v. Willis*, 435 S.E.2d 621, 622 (Ga. Ct. App. 1993) (Georgia laws "generally are applied prospectively unless a clear contrary intention is indicated"); *Oberhand v. Dir., Div. of Taxation*, 940 A.2d 1202, 1209 (N.J. 2008) (same, as to New Jersey laws); *Oklahoma ex rel. Crawford v. Guardian Life Ins. Co. of Am.*, 954 P.2d 1235, 1238 (Okla. 1998) (same, as to Oklahoma laws).

Dated:  September 14, 2015

Respectfully submitted,

HCR MANORCARE, INC. (SUED AS HCR MANORCARE AND HCR MANORCARE, INC.) AND HEARTLAND EMPLOYMENT SERVICES, LLC
By Counsel

/s/_____
Katherine J. Seikaly (VSB No. 71438)
Eric A. Dubelier (*pro hac vice*)
Carol C. Loepere (*pro hac vice*)
Daniel Z. Herbst (*pro hac vice*)
Reed Smith LLP
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, D.C. 20005
202-414-9200 (phone)
202-414-9299 (fax)
kseikaly@reedsmith.com
edubelier@reedsmith.com
cloepere@reedsmith.com
dherbst@reedsmith.com

Brent R. Gary (VSB No. 66592)
REED SMITH LLP
3110 Fairview Park Drive
Suite 1400
Falls Church, VA 22042
703-641-4200 (phone)
703-641-4340 (fax)
bgary@reedsmith.com

Melissa A. Geist (*pro hac vice*)
REED SMITH LLP
136 Main Street
Suite 250
Princeton, NJ 08540
(609) 987-0050 (phone)
(609) 951-0824 (fax)
mgeist@reedsmith.com

Marilyn A. Moberg (*pro hac vice pending*)
REED SMITH LLP
355 South Grand Avenue
Suite 2800
Los Angeles, CA 90071
(213) 457 8035 (phone)
(213) 457 8080 (fax)
mmoberg@reedsmith.com

*Counsel for Defendants HCR ManorCare, Inc. (sued as HCR ManorCare and HCR ManorCare, Inc.) and Heartland Employment Services, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 14th day of September 2015, the foregoing was electronically filed with the clerk of court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

/s/ _____
Brent R. Gary (VSB No. 66592)
REED SMITH LLP
3110 Fairview Park Drive
Suite 1400
Falls Church, VA 22042
703-641-4200 (phone)
703-641-4340 (fax)
bgary@reedsmith.com

*Counsel for Defendants HCR ManorCare, Inc.,
Manor Care, Inc., and Heartland Employment
Services, LLC*