**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** *et al.*, | |
| **Plaintiffs,** | **CIVIL ACTION NUMBERS:** |
| | **1:09-cv-0013 (CMH/TCB)** |
| **v.** | **1:11-cv-1054 (CMH/TCB)** |
| | **1:14-cv-1228 (CMH/TCB)** |
| **HCR MANORCARE, INC.,** *et al.*, | |
| | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

**DEFENDANTS HCR MANORCARE, INC., MANOR CARE, INC.,
HCR MANORCARE SERVICES, LLC, AND HEARTLAND EMPLOYMENT
SERVICES LLC'S ANSWER AND DEFENSES
TO UNITED STATES' CONSOLIDATED COMPLAINT IN INTERVENTION**

Defendants HCR ManorCare, Inc., Manor Care, Inc., HCR ManorCare Services, LLC, and Heartland Employment Services, LLC (collectively "Defendants"), by counsel, hereby submit the following as their Answer to the United States' ("Government") Consolidated Complaint in Intervention ("Complaint").

1.      Defendants admit that the Government purports to bring a FCA action and claims for unjust enrichment and payment by mistake against them, but deny the remaining allegations set forth in paragraph 1 and deny that they are liable in any way under the claims brought against them.

2.      Defendants admit that separate *qui tam* actions were brought against them by Relators Ribik, Carson and Slough and that those actions were consolidated. Defendants admit that the Government has filed this action in intervention against them. Defendants deny the remaining allegations set forth in paragraph 2.

3.      Defendants admit that HCR ManorCare, Inc., by and through its individual subsidiaries, currently operates approximately 283 skilled nursing facilities ("SNFs"). Defendants deny the remaining allegations set forth in paragraph 3.

4.      Defendants deny the allegations set forth in paragraph 4.

5.      The allegations in paragraph 5 paraphrase portions of statutes or regulations, and therefore no response is required.  To the extent a response is required, Defendants deny the allegations in this paragraph to the extent they mischaracterize the meaning or application of the statutes or regulations.

6.      Defendants deny the allegations set forth in paragraph 6.

7.      Defendants deny the allegations set forth in paragraph 7.

8.      Defendants deny the allegations set forth in paragraph 8.

9.      Defendants deny the allegations set forth in paragraph 9.

10.     Defendants have no way to quantify the intent of the Complaint in using the word "dramatically," and as such Defendants deny the allegations set forth in paragraph 10 to the extent that paragraph 10 is intended to allege something other than what was alleged in paragraph 9.  If paragraph 10 is simply redundant to paragraph 9 then Defendants' answer to paragraph 10 is the same as it is to paragraph 9.

11.     Defendants admit that in October 2006, the Arlington, Virginia SNF billed 33.6 percent of its rehabilitation days at the Ultra High level. Defendants admit that in April 2010 this facility billed approximately 85 percent of its rehabilitation days at the Ultra High level. Defendants admit that in October 2006, the Stratford Hall, Virginia SNF billed 23.7 percent of its rehabilitation days at the Ultra High level.  Defendants admit that in March 2010 this facility

billed 89.2 percent of its rehabilitation days at the Ultra High level. Defendants deny the remaining allegations set forth in paragraph 11.

12.      Defendants admit that in October 2006, the Sunnyvale, California SNF billed 52.9 percent of its rehabilitation days at the Ultra High level. Defendants admit that in February 2010 this SNF billed 91 percent of its rehabilitation days at the Ultra High level, that in May 2012 this facility billed 94 percent of its rehabilitation days at the Ultra High level and that in October 2010 this facility billed 100 percent of its rehab days at the Ultra High level. Defendants deny the remaining allegations set forth in paragraph 12.

13.      Defendants admit that in October 2006, the Wilmington, Delaware SNF billed 14.4 percent of its rehabilitation days at the Ultra High level and that in January 2010 this facility billed 92.3 percent of its rehabilitation days at the Ultra High level. Defendants deny the remaining allegations set forth in paragraph 13.

14.      Defendants admit that in October 2006, the Muskegon, Michigan SNF billed 8.4 percent of its rehabilitation days at the Ultra High level and that in October 2009, this facility billed 93.3 percent of its rehabilitation days at the Ultra High level.  Defendants deny the remaining allegations set forth in paragraph 14.

15.      Defendants admit that in October 2006, the Whitehall, Michigan SNF billed 6.7 percent of its rehabilitation days at the Ultra High level and that in April 2010, this facility billed 81.1 percent of its days at the Ultra High level.  Defendants deny the remaining allegations set forth in paragraph 15.

16.      Defendants deny the allegations set forth in paragraph 16.

17.      Defendants deny the allegations set forth in paragraph 17.

18.     Defendants have no way to quantify the intent of the complaint in using the word "numerous," and as such deny that numerous complaints were received.  Defendants deny the remaining allegations set forth in paragraph 18.

19.     Defendants deny the allegations set forth in paragraph 19.

20.     Paragraph 20 sets forth a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of paragraph 20.

21.     Defendants admit that to the extent the court has jurisdiction over this matter that the venue is proper.  Defendants deny the remaining allegations set forth in paragraph 21.

22.     Defendants, upon information and belief, admit the allegations set forth in paragraph 22.

23.     Defendants, upon information and belief, admit the allegations set forth in paragraph 23, but deny that Relator Ribik is entitled to any relief or recovery in this action.

24.     Defendants, upon information and belief, admit the allegations set forth in paragraph 24, but deny that Relator Carson is entitled to any relief or recovery in this action.

25.     Defendants, upon information, deny the first sentence set forth in paragraph 25. Defendants, upon information and belief, admit the remaining allegations set forth in paragraph 25, but deny that Relator Slough is entitled to any relief or recovery in this action.

26.     Defendants admit that HCR ManorCare, Inc., a Delaware corporation with its principal place of business in Toledo, Ohio, sits at the top of the organizational chart of HCR ManorCare related entities.  Defendants further admit that beginning on April 7, 2011 to December 31, 2011, HCR ManorCare, LLC, and from January 1, 2012 to the present, HCR ManorCare, Inc. subsidiaries operated and managed  all of its skilled nursing facilities, but the ownership of the underlying property and the improvements for substantially all of its skilled

nursing facilities has been held by subsidiaries of an unrelated third-party, HCP, Inc., and leased to an HCR ManorCare, LLC or HCR ManorCare, Inc. (as applicable for the related time periods) subsidiary under a long-term master lease, which subleases the property and improvements to the applicable HCR ManorCare, LLC or HCR ManorCare, Inc. subsidiary (as applicable for the related time periods).  Defendants deny the remaining allegations set forth in paragraph 26.

27.     Defendants admit that Defendant ManorCare, Inc., a Delaware corporation with headquarters in Toledo, Ohio, is a wholly-owned subsidiary of HCR ManorCare, Inc. Defendants further admit that ManorCare, Inc. was publicly traded under the symbol HCR until its December 21, 2007 acquisition by The Carlyle Group.  Defendants further admit that according to Manor Care, Inc.'s Form 10-K filing with the Securities and Exchange Commission for the period ending December 31, 2006, Manor Care, Inc. operated 278 SNFs in 30 states. Defendants deny the remaining allegations set forth in paragraph 27.

28.     Defendants admit that Defendant Heartland Employment Services, LLC, an Ohio limited liability company with headquarters in Toledo, Ohio, is a wholly-owned indirect subsidiary of both HCR ManorCare, Inc. and Manor Care, Inc. Defendants further admit that pursuant to an Employee Leasing Agreement, Heartland Employment Services, LLC leases employees, including therapists and other facility-level personnel, to the subsidiary entities that operate the SNFs and to Defendant HCR Manor Care Services, LLC. Defendants deny the remaining allegations set forth in paragraph 28.

29.     Defendants admit that HCR Manor Care Services, LLC was known as HCR Manor Care Services, Inc. until its conversion to an LLC in 2009 and that HCR Manor Care Services, LLC provides numerous services to the SNFs pursuant to a Corporate Services Agreement. Defendants deny the remaining allegations set forth in paragraph 29.

30.     Defendants deny the allegations set forth in paragraph 30.

31.     Defendants admit that on September 10, 2008, Barry Lazarus, Vice President of HCR Manor Care Services, Inc. wrote to Mr. Mark Zobel at CMS stating that HCR ManorCare Services had the requisite ownership of and control over HCR ManorCare's provider entities as listed in Attachment A to that letter for purposes of payment logistics under the home office designation as permitted by applicable law. Defendants further admit that Mr. Lazarus requested that HCR Manor Care Services, Inc. be designated as the home office for all of HCR ManorCare's provider entities. Defendants further admit that HCR ManorCare's home office is now HCR Manor Care Services, LLC. Defendants deny the remaining allegations set forth in paragraph 31.

32.     Defendants admit that all its SNFs are part of the HCR ManorCare Services chain and that in 2007-2012 Barry Lazarus was the Point of Contact for the purposes of payment logistics under the home office designation as permitted by applicable law and the home office address for HCR ManorCare Services is 333 N. Summit Street Toledo, Ohio 43604.  Defendants deny the remaining allegations set forth in paragraph 32.

33.     Upon information and belief, Defendants deny the allegations set forth in paragraph 33.

34.     Defendants deny the allegations set forth in paragraph 34.

35.     Defendants admit that in February 2008, the former Chief Operating Officer Stephen Guillard, an employee of HCR ManorCare Services, LLC, distributed a memo regarding "Levels of Authorization" to the Regional Directors of Operations with copies to others as noted on the memorandum itself. Defendants deny the remaining allegations set forth in paragraph 35

to the extent they are inconsistent with the plain language of the "Levels of Authorization" document.

36.     The allegations in paragraph 36 recite a portion of a statute, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language quoted in this paragraph. Defendants deny the allegations of this paragraph to the extent they mischaracterize the cited statute's meaning or application.

37.     The allegations in paragraph 37 recite a portion of a statute, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language quoted in this paragraph. Defendants deny the allegations of this paragraph to the extent they mischaracterize the cited statute's meaning or application.

38.     The allegations in paragraph 38 recite a portion of a statute, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language quoted in this paragraph. Defendants deny the allegations of this paragraph to the extent they mischaracterize the cited statute's meaning or application.

39.     Defendants, upon information and belief, admit the allegations set forth in paragraph 39.

40.     Defendants, upon information and belief, admit the allegations set forth in paragraph 40.

41.     The allegations in paragraph 41 paraphrase a portion of a statute or regulation, and therefore no response is required.  To the extent a response is required, Defendants deny that

- 7 -

the Government is entitled to any relief or recovery against them under the language paraphrased in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the cited statute's or regulation's meaning or application.

42.    The allegations in paragraph 42 paraphrase a portion of a statute, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language paraphrased in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the cited statute's meaning or application.

43.    The allegations in paragraph 43 paraphrase a portion of a statute, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language paraphrased in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the cited statute's meaning or application.

44.    The allegations in paragraph 44 paraphrase a portion of a regulation, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language paraphrased in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the cited regulation's meaning or application.

45.    The allegations in paragraph 45 paraphrase a portion of a regulation and a policy manual, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language paraphrased in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the cited regulation's or policy manual's meaning or application.

46.     The allegations in paragraph 46 paraphrase a portion of a statute, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language paraphrased in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the cited statute's meaning or application.

47.     The allegations in paragraph 47 paraphrase a portion of a policy manual, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language paraphrased in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the cited policy manual's meaning or application.

48.     The allegations in paragraph 48 paraphrase a portion of a statute, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language paraphrased in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the cited statute's meaning or application.

49.     The allegations in paragraph 49 paraphrase a portion of a regulation, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language paraphrased in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the cited regulation's meaning or application.

50.     The allegations in paragraph 50 paraphrase a portion of a regulation, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language paraphrased in

this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the regulation's meaning or application.

51.     The allegations in paragraph 51 paraphrase a portion of a regulation, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language paraphrased in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the regulation's meaning or application.

52.     The allegations in paragraph 52 paraphrase a portion of a regulation, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language paraphrased in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the cited regulation's meaning or application.

53.     The allegations in paragraph 53 paraphrase a portion of a regulation, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language paraphrased in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the cited regulation's meaning or application.

54.     The allegations in paragraph 54 paraphrase a portion of a regulation, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language paraphrased in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the regulation's meaning or application.

55.     The allegations in paragraph 55 paraphrase a portion of a regulation, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language paraphrased in this paragraph. Defendants deny the allegations of this paragraph to the extent they mischaracterize the regulation's meaning or application.

56.     The allegations in paragraph 56 paraphrase a portion of a statute or regulation, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language paraphrased in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the cited statute's or regulation's meaning or application.

57.     The allegations in paragraph 57 paraphrase a portion of a regulation and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language paraphrased in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the cited regulation's meaning or application.

58.     The allegations in paragraph 58 paraphrase a portion of a statute or regulation, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language paraphrased in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the cited statute's or regulation's meaning or application.

59.     The allegations in paragraph 59 paraphrase a portion of a regulation, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language paraphrased in

this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the regulation's meaning or application.

60.     The allegations in paragraph 60 paraphrase a portion of a regulation, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language paraphrased in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the regulation's meaning or application.

61.     The allegations in paragraph 61 paraphrase a portion of a regulation, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language paraphrased in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the cited regulation's meaning or application.

62.     The allegations in paragraph 62 paraphrase a portion of a regulation, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language paraphrased in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the cited regulation's meaning or application.

63.     The allegations in paragraph 63 paraphrase a portion of a regulation, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language paraphrased in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the regulation's meaning or application.

64.     The allegations in paragraph 64 paraphrase a portion of a regulation and claims processing manual, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language paraphrased in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the cited regulation's or processing manual's meaning or application.

65.     Defendants, upon information and belief, admit the allegations set forth in the first and second sentences of paragraph 65.  Defendants further admit that from at least January 2006 to the present, the SNFs have submitted Part A claims to the following FIs/MACs: Highmark; Novitas; National Government Services; and CGS Administrators, LLC.  Defendants deny the remaining allegations set forth in paragraph 65.

66.     Defendants, upon information and belief, admit the allegations set forth in paragraph 66.

67.     The allegations in paragraph 67 paraphrase a portion of a statute, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language paraphrased in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the cited statute's meaning or application.

68.     The allegations in paragraph 68 paraphrase a portion of a regulation, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language paraphrased in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the cited regulation's meaning or application.

69.     The allegations in paragraph 69 paraphrase a portion of a reimbursement manual, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language quoted in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the cited reimbursement manual's meaning or application.

70.     The allegations in paragraph 70 recite a portion of a reimbursement manual, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language quoted in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the cited reimbursement manual's meaning or application.

71.     The allegations in paragraph 71 recite a portion of a regulation and reimbursement manual, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language quoted in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the cited regulation's and reimbursement manual's meaning or application.

72.     Defendants admit the allegations in the first sentence of paragraph 72. Defendants deny the remaining allegations set forth in this paragraph.

73.     The allegations in paragraph 73 paraphrase a portion of a regulation, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language paraphrased in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the cited regulation's meaning or application.

74.     The allegations in paragraph 74 paraphrase a portion of a regulation, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language paraphrased in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the cited regulation's meaning or application.

75.     The allegations in paragraph 75 recite a portion of a reimbursement manual, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language quoted in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the cited reimbursement manual's meaning or application.

76.     Defendants admit that James Pagoaga is the Vice President of Rehabilitation Services. Defendants deny the remaining allegations set forth in paragraph 76.

77.     Defendants admit that for the purposes of effectively providing services to the operating entities, HCR ManorCare Services groups the skilled nursing facilities ("SNF") into divisions and regions and that those divisions and regions have been reconfigured at certain points in time. Defendants further admit that at certain times there were six divisions. Defendants deny the remaining allegations set forth in paragraph 77.

78.     Defendants admit that each division has regions and that each region usually is assigned a Regional Rehab Manager who reports to the Division Rehab Director.  Defendants deny the remaining allegations set forth in paragraph 78.

79.     Defendants admit that the Rehabilitation Department at each SNF is managed by a Director of Rehabilitation ("DOR") or a Team Leader. These Directors of Rehabilitation or

Team Leaders are based in individual SNFs and report to the Regional Rehabilitation Managers. Defendants deny the remaining allegations set forth in paragraph 79.

80.     Defendants admit that Mr. Pagoaga was the Vice President of HCR ManorCare Services. HCR ManorCare Services' rehabilitation department managed by Mr. Pagoaga, during the time period alleged in the Complaint, disseminated some documents called policies and procedures to the rehabilitation departments in the SNFs. HCR ManorCare Services' rehabilitation department also distributed a variety of clinical resources to the rehabilitation departments at the SNFs.  Rehabilitation department employees were expected to follow policies and procedures. Defendants deny the remaining allegations set forth in paragraph 80.

81.     Defendants admit that Mr. Pagoaga had authority over hiring, firing, and compensation decisions for the individual Directors of Rehab at the SNFs, but he was rarely involved in these decisions.  Defendants further admit that the Division Rehab Directors and Regional Rehab Managers also had authority over hiring, firing, and compensation decisions for the individual Directors of Rehab at the SNFs. Defendants deny the remaining allegations set forth in paragraph 81.

82.     Defendants admit that Stephen Guillard was employed by HCR Manor Care Services, LLC as the Executive Vice-President and Chief Operating Officer until his retirement in October 2011. Defendants admit that Steven M. Cavanaugh succeeded Mr. Guillard as the Executive Vice-President and Chief Operating Officer. Defendants deny the remaining allegations set forth in paragraph 82.

83.     Defendants admit that there are Vice Presidents, General Managers assigned by HCR ManorCare Services to each of the geographic divisions and that these Vice Presidents,

General Managers report to the Executive Vice President and Chief Operating Officer. Defendants deny the remaining allegations set forth in paragraph 83.

84.     Defendants admit that HCR ManorCare Services usually has a Regional Director of Operations ("RDO") assigned to serve each region within the Divisions. Defendants also admit that the Administrator for each SNF reports to the Regional Director of Operations for the region in which the SNF is located.  Defendants deny the remaining allegations set forth in paragraph 84.

85.     Defendants deny the allegations set forth in paragraph 85.

86.     Defendants admit the allegations set forth in the first sentence of paragraph 86. Defendants further admit some rehabilitation departments employed "rehabilitation aides." Defendants deny the remaining allegations set forth in paragraph 86.

87.     Defendants admit that each SNF had at least one MDS coordinator. Defendants admit that the MDS coordinator, who was usually a registered nurse, was responsible for collecting the information needed for the MDS.  Defendants deny the remaining allegations set forth in paragraph 87.

88.     Defendants deny the allegations set forth in paragraph 88, and state that MDS forms were submitted to the appropriate state and federal agencies in accordance with all applicable rules and regulations.

89.     Defendants deny the allegations set forth in paragraph 89.

90.     HCR ManorCare Services, LLC operates and maintains a central billing office in Toledo, OH that submits bills to Medicare and Tricare on behalf of the SNFs. Defendants deny the remaining allegations set forth in paragraph 90.

91.     Defendants admit the second and third sentences set forth in paragraph 91. Defendants further admit that the Central Billing office is staffed by employees of Heartland Employment Services, LLC who are leased to HCR ManorCare Services, LLC.  Billing is one of the services provided by HCR ManorCare Services. Defendants deny the remaining allegations set forth in paragraph 91.

92.     Defendants deny the allegations set forth in paragraph 92.

93.     Defendants deny the allegations set forth in paragraph 93.

94.     Defendants deny the allegations set forth in paragraph 94.

95.     Defendants admit that HCR Manor Care Services, LLC is the Chain Home Office and it receives Medicare payments for services provided at the SNFs as permitted by applicable law.  Defendants deny the remaining allegations set forth in paragraph 95.

96.     Defendants deny the allegations set forth in paragraph 96.

97.     Defendants deny the allegations set forth in paragraph 97.

98.     Defendants deny the allegations set forth in paragraph 98.

99.     Defendants deny the allegations set forth in paragraph 99.

100.    Defendants admit that a PowerPoint entitled "Driving the P&L," dated September 2007, exists and contains the words quoted in paragraph 100.  However, Defendants state that the words quoted are part of a PowerPoint containing 25 slides, are pled out of context of the entirety of the PowerPoint, and Defendants deny that the PowerPoint demonstrates intent to file a false claim. Defendants deny the remaining allegations set forth in paragraph 100.

101.    Defendants deny the allegations set forth in paragraph 101.

102.    Defendants admit that during the time that the "Rehab Power Rating" was used, it reflected the sum of the percentage of rehabilitation days that were billed at the Ultra High level

combined with the percentage of rehabilitation days billed at the Very High RUG level.

Defendants deny the remaining allegations set forth in paragraph 102.

103.    Defendants admit that during the time that the "Nursing Power Rating" was used,

it reflected the sum of the percentage of rehabilitation days billed at the X, L or C ADL levels.

Defendants deny the remaining allegations set forth in paragraph 103.

104.    Defendants admit that the Rehab Power Rating and Nursing Power Rating

combined comprised the "Medicare Power Rating" for an individual facility, Region, or

Division.  Defendants deny the remaining allegations set forth in paragraph 104.

105.    Defendants admit that Medicare Power Rating data was sent to administrators and

Directors of Rehab at the SNFs and to some executives.  Defendants deny the remaining

allegations set forth in paragraph 105.

106.    Defendants deny the allegations set forth in paragraph 106.

107.    Defendants admit that a four page single spaced document entitled "MAD Rehab

Division White Paper – Q4 2008" exists and that the document contains "RU > 50%." However,

Defendants state that the words are pled out of context of the entirety of the document, and

Defendants deny that the document demonstrates intent to file a false claim.  Defendants deny

the remaining allegations set forth in paragraph 107.

108.    Defendants admit that a three page single spaced document entitled "MAD Rehab

Division White Paper – Q1 2009" exists listing Medicare Management Benchmarks referenced

in paragraph 108.  Defendants further admit that a 20 page document entitled "P&L Summary

June 2009" exists listing Medicare Management Benchmarks referenced in paragraph 108.

However, Defendants state that the paraphrased Medicare Management Benchmarks are pled out

of the context of the entirety of the documents, and Defendants deny the documents demonstrate

intent to file a false claim.  Defendants deny the remaining allegations set forth in paragraph 108.

110.     Defendants admit that in 2010, Mid-Atlantic Division Rehabilitation Director

("DRD") Terri Russell sent a PowerPoint to several people, including James Pagoaga, entitled

the "HCR Manor Care Mid-Atlantic 2010 Therapy Goals & Expectations." Defendants admit

that this PowerPoint contains the words quoted in paragraph 109. However, Defendants state that

the words quoted are part of a PowerPoint that is 17 slides long, are pled out of context of the

entirety of the PowerPoint, and Defendants deny that the PowerPoint demonstrates intent to file a

false claim. Defendants deny the remaining allegations set forth in paragraph 109.

110.     Defendants deny the allegations set forth in paragraph 110.

111.     Defendants admit that a document entitled "MAD Rehab Division White Paper –

Q4 2008" exists and that the document contains "RU > 50%."  Defendants further admit that a

PowerPoint entitled the "HCR Manor Care Mid-Atlantic 2010 Therapy Goals & Expectations"

exists and contains "RU @/> 80."  However, Defendants state that these references are contained

in multi-page documents, are pled out of context of the entirety of these documents and

Defendants deny that these documents demonstrate intent to file a false claim.  Defendants deny

the remaining allegations set forth in paragraph 111.

112.     Defendants admit that in 2010, Ms. Russell served as Division Rehab Director for

the Eastern Division, which consisted of approximately 46 SNFs. Defendants further admit that

Ms. Russell sent a PowerPoint to several people, including James Pagoaga, entitled "HCR Manor

Care Eastern 2010 Therapy Goals & Expectations" and contains the words quoted in paragraph

112.  However, Defendants state that the words quoted are part of a PowerPoint containing 17

slides, are pled out of context of the entirety of the PowerPoint, and Defendants deny that the

PowerPoint demonstrates intent to file a false claim.   Defendants deny the remaining allegations set forth in paragraph 112.

113.     Defendants admit that in January 2010, Delaine Rice-White, while serving as Southeast Division Rehabilitation Director, prepared a four page single spaced document entitled "Therapy Strategic Plan Executive Summary 2010," which she sent to several people including James Pagoaga. Defendants admit the document contains the words quoted in paragraph 113. However, Defendants state that the words quoted are pled out of context of the entirety of the documents, and Defendants deny the document demonstrates intent to file a false claim. Defendants deny the remaining allegations set forth  in paragraph 113.

114.     Defendants admit that in June 2008, the West Region 2 Regional Rehab Manager emailed a three page document entitled "Action Plan" to Mr. Pagoaga and paragraph 114 paraphrases certain portions of this document.  However, Defendants state that the words are pled out of context of the entirety of the document, and Defendants deny that the document demonstrates intent to file a false claim. Defendants further admit that a PowerPoint setting forth the Midwest Region 6 2010 goals exists and is paraphrased in paragraph 114.  However, Defendants state the words are pled out of context of the entirety of the PowerPoint, and Defendants deny that the PowerPoint demonstrates intent to file a false claim. Defendants deny the remaining allegations set forth in paragraph 114.

115.     Defendants deny the allegations set forth in paragraph 115.

116.     Defendants deny the allegations set forth in paragraph 116.

117.     Defendants admit that a June 2007 document at the Bethesda, Maryland SNF contains the words quoted in paragraph 117.  However, Defendants state that the words quoted are pled out of context of the entirety of the document and Defendants deny that the document

demonstrates intent to file a false claim. Defendants deny the remaining allegations set forth in paragraph 117.

118.    Defendants admit that a May 2009, two page "Action Plan" for the Midwest-City SNF contains the words quoted in paragraph 118. However, Defendants state that the words quoted are pled out of context of the entirety of the document and Defendants deny that the document demonstrates intent to file a false claim.

119.    Defendants admit that in January 2010 a six page draft "30 –Day Action Plan Of Correction" was prepared for the Stratford, Virginia SNF and contains the words quoted in paragraph 119.  However, Defendants state that the words quoted are pled out of context of the entirety of the document, and Defendants deny the document demonstrates intent to file a false claim.  Defendants deny the remaining allegations set forth in paragraph 119.

120.    Defendants admit that on January 13, 2010, Terri Russell sent an email regarding the draft Plan of Correction noted in paragraph 119 and the email contains the words quoted in paragraph 120.  However, Defendants state that the words quoted are pled out of the context of the entirety of the email, and Defendants deny the email demonstrates intent to file a false claim. Defendants deny the remaining allegations set forth in paragraph 120.

121.    Defendants admit that a "Performance Appraisal" dated October 14, 2010 for a Director of Rehab exists and contains the words quoted in paragraph 121.  However, Defendants state that the words are pled out of context of the entirety of the document, and Defendants deny that the document demonstrates intent to file a false claim. Defendants deny the remaining allegations set forth in paragraph 121.

122.    Defendants admit that a "Performance Appraisal" dated December 16, 2009 for a Regional Rehab Manager prepared by Terri Russell exists and contains the words quoted in

paragraph 122.  However, Defendants state that the words are pled out of context of the entirety of the document, and Defendants deny that the document demonstrates intent to file a false claim.  Defendants deny the remaining allegations set forth in paragraph 122.

123.    Defendants admit that in September 2009 a Midwest Regional Rehab Manager named Kathie Dell sent an email to the Director of Rehab for the West Des Moines SNF that contained the words quoted in paragraph 123.  However, Defendants state that the words are pled out of context of the entirety of the document, and Defendants deny that the document demonstrates intent to file a false claim. Defendants deny the remaining allegations set forth in paragraph 123.

124.    Defendants deny the allegations set forth in paragraph 124.

125.    Defendants admit that HCR ManorCare Services used documents called "Workbooks" and that one multi-page Workbook sent to the Aberdeen, South Dakota SNF contains the words quoted in paragraph 125.  However, Defendants state that the words quoted are pled out of context of the entirety of the Workbook, and Defendants deny that the Workbook demonstrates intent to file a false claim. Defendants deny the remaining allegations in paragraph 125.

126.    Defendants admit that HCR ManorCare Services personnel had documents called "Financial Analysis Worksheets" that contained single-spaced text, and that one of the Worksheets contains the words quoted in paragraph 126.  However, Defendants state that the words quoted are pled out of context of the entirety of the Worksheet, and Defendants deny that the Worksheet demonstrates intent to file a false claim.  Defendants deny the remaining allegations set forth in paragraph 126.

127.    Defendants admit that there exists a PowerPoint document from HCR ManorCare Services referencing the Central Division that lists SNFs in various categories including "Highest Medicare LOS [Days]," "Highest MPR," "Highest Percent RU." Defendants admit that this PowerPoint document was emailed to several individuals including Mr. Pagoaga. Defendants deny that the Workbook demonstrates intent to file a false claim. Defendants deny the remaining allegations set forth in paragraph 127.

128.    Defendants deny the allegations set forth in paragraph 128.

129.    Defendants are not aware of who or what is quoted in paragraph 129 and for that reason it is not possible to answer. To the extent an answer is required, Defendants deny the allegations set forth in paragraph 129.

130.    Defendants are not aware of who or what is quoted in paragraph 130, and for that reason it is not possible to answer. To the extent an answer is required, Defendants deny the allegations set forth in paragraph 130.

131.    Defendants deny the allegations set forth in paragraph 131.

132.    Defendants admit that "Medicare Entitlement Training" was offered to employees. Defendants deny that Medicare Entitlement Training demonstrates intent to file a false claim. Defendants deny the remaining allegations set forth in paragraph 132.

133.    Defendants deny the allegations set forth in paragraph 133.

134.    Defendants admit that a six page May 2008 "Action Plan of Correction" for a DOR existed and contains the words quoted in paragraph 134. However, Defendants state that the words quoted are pled out of context of the entirety of the document, and Defendants deny that the document demonstrates intent to file a false claim. Defendants deny the remaining allegations set forth in paragraph 134.

135.    Defendants admit that an email exists that is dated September 21, 2009 and contains the words quoted in paragraph 135.  However, Defendants state that the words quoted are pled out of context of the entirety of the email, and Defendants deny that the email demonstrates intent to file a false claim.  Defendants deny the remaining allegations set forth in paragraph 135.

136.    Defendants admit that in January 2007 an anonymous occupational therapist assistant who had been employed for between four and six months wrote in an exit survey in part the language quoted in paragraph 136.  However, Defendants state that the words quoted are part of a multi-page Excel spreadsheet, are pled out of context of the entirety of the Excel spreadsheet, and Defendants deny that the document demonstrates intent to file a false claim.  Defendants deny the remaining allegations set forth in paragraph 136.

137.    The allegations in paragraph 137 paraphrase a portion of a regulation, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language paraphrased in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the cited regulation's meaning or application.

138.    The allegations in paragraph 138 paraphrase a portion of a regulation, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language paraphrased in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the cited regulation's meaning or application.

139.    Defendants deny the allegations set forth in paragraph 139.

140.     Defendants admit that in 2008 a Regional Rehabilitation Manager assigned to the Eastern Division wrote an email that contains the words quoted in paragraph 140.  However, Defendants state that the words quoted are pled out of context of the entirety of the email, and Defendants deny that the email demonstrates intent to file a false claim.  Defendants deny the remaining allegations set forth in paragraph 140.

141.     Defendants admit that in May 2010, VP of Rehab James Pagoaga wrote an email to COO Guillard that contains the words quoted in Paragraph 141.  However, Defendants state that the words quoted are pled out of context of the entirety of the email, and Defendants deny that the email demonstrates intent to file a false claim.  Defendants deny the remaining allegations in paragraph 141.

142.     Defendants admit that in April-May of 2010 a Service Delivery Audit was performed. Defendants admit that the results showed that for Med A/Ins PPS patients the percent of concurrent therapy was 39.5%.  Defendants admit that a 22 page PowerPoint summary of this audit existed and contains the words quoted in paragraph 142.  However, Defendants state that the words quoted are pled out of context of the entirety of the PowerPoint, and Defendants deny that the PowerPoint demonstrates intent to file a false claim.   Defendants deny the remaining allegations in paragraph 142.

143.     Defendants have no way to quantify the intent of the Complaint in using the word "dramatically," and as such, Defendants deny the allegations in the first sentence of paragraph 143.  Defendants admit that between October 2010 and September 2011, the amount of group therapy provided to Medicare patients varied by month, but that the amount ranged from approximately 10% to approximately 19%. Defendants deny the remaining allegations set forth in paragraph 143.

144.     Defendants admit that a "Financial Analysis Worksheet" dated December 2009 for the West Division contained a page for the Willowbrook SNF and that page contained the words quoted in paragraph 144.  However, Defendants state that the words quoted are pled out of context of the entirety of the document, and Defendants deny that the document demonstrates intent to file a false claim.  Defendants deny the remaining allegations set forth in paragraph 144.

145.     Defendants admit that after October 2011 the amount of group therapy provided to Medicare patients decreased.  Defendants deny the remaining allegations set forth in paragraph 145.

146.     Defendants admit that Patient A was a long-term care resident with chronic health problems, admitted to the Topeka, Kansas facility three times in 2011 and twice in 2012.  Defendants further admit that Patient A was treated with between 87 and 180 minutes of group therapy during the assessment period of Patient A's admissions in 2011, in addition to individual therapy services.  Defendants further admit that no group therapy was provided during Patient A's 2012 admissions and that Patient A was treated with more minutes of individual therapy in 2012 than in 2011.  Defendants deny the remaining allegations set forth in paragraph 146 and state that all therapy services provided to Patient A were skilled, reasonable, and necessary under Medicare Part A.

147.     Defendants admit that Patient A was treated with a total of 2,171 minutes of therapy, of which 510 (or 23 percent) were group therapy minutes, during Patient A's third admission in 2011, starting on June 20, 2011.  Defendants also admit that based on the total weekly minutes during that admission, the therapy was billed at the Ultra High level.  Defendants further admit that Medicare paid $19,208.10 for therapy services provided during that admission.  Defendants deny the remaining allegations set forth in paragraph 147 and state

that all therapy services provided to Patient A were skilled, reasonable, and necessary under Medicare Part A.

148.    Defendants deny the allegations set forth in paragraph 148 and state that all therapy services provided to Patient A were skilled, reasonable, and necessary under Medicare Part A.

149.    Defendants deny the allegations set forth in paragraph 149.

150.    Defendants deny the allegations set forth in paragraph 150.

151.    Defendants admit that the Care Line received a letter via facsimile from a therapist in 2010 and that the quoted section in paragraph 151 is in that letter.  Defendants deny the remaining allegations set forth in paragraph 151.

152.    Defendants admit that Patient B was a 63-year-old woman who underwent knee surgery and was admitted to the Oaklawn West SNF in Oaklawn, Illinois four times during 2011 for post-operative physical and occupational therapy. Defendants also admit that therapy provided to Patient B was billed at an Ultra High level.  Defendants have no way to quantify the intent of the Complaint in using the words "far less" and, as such, Defendants deny the remaining allegations in paragraph 152 and state that all therapy services provided to Patient B were skilled, reasonable, and necessary under Medicare Part A.

153.    Defendants admit that Patient B was treated with 885 minutes of therapy during her first assessment period.  Defendants deny the remaining allegations in paragraph 153 and state that all therapy services provided to Patient B were skilled, reasonable, and necessary under Medicare Part A.

154.    Defendants admit that therapy provided during March 4, 2011 to March 28, 2011 to Patient B was billed at Ultra High level.  Defendants also admit that Medicare paid $15,282.16

for the services provided to Patient B during this admission.  Defendants deny the remaining allegations in paragraph 154, and state that all therapy services provided to Patient B were skilled, reasonable and necessary under Medicare Part A.

155.    Defendants deny the allegations set forth in paragraph 155 and state that all therapy services provided to Patient B were skilled, reasonable, and necessary under Medicare Part A.

156.    Defendants admit that Patient B was treated with 780 minutes of therapy during her first assessment period and 1,000 minutes of therapy during the second assessment period during Patient B's fourth admission in 2011.  Defendants also admit that Patient B received between 615 and 690 minutes of therapy per week outside of these assessment periods. Defendants deny the remaining allegations in paragraph 156 and state that all therapy services provided to Patient B were skilled, reasonable, and necessary under Medicare Part A.

157.    Defendants admit that therapy provided to Patient B during her admission between May 31, 2011 and June 26, 2011 was billed at the Ultra High level.  Defendants also admit that Medicare paid $13,489.84 for the services provided to Patient B during this admission.  Defendants deny the remaining allegations in paragraph 157 and state that all therapy services provided to Patient B were skilled, reasonable, and necessary under Medicare Part A.

158.    Defendants deny the allegations set forth in paragraph 158 and state that all therapy services provided to Patient B were skilled, reasonable, and necessary under Medicare Part A.

159.    Defendants admit that corporate rehab consultants conducted a review at several SNFs in the Mid-Atlantic Division in 2008 to evaluate whether Medicare patients were receiving appropriate levels of therapy and that a written summary of this review contained in part the

language quoted in paragraph 159.  However, Defendants state that the words quoted are pled out of context of the entirety of the document, and Defendants deny the document demonstrates intent to file a false claim. Defendants deny the remaining allegations set forth in paragraph 159.

160.    Defendants admit that in June 2010, a corporate rehab consultant visited the San Antonio SNF and the visit summary contains the words quoted in paragraph 160.  However, Defendants state that the words quoted are pled out of context of the entire document, and Defendants deny that the document demonstrates intent to file a false claim.  Defendants deny the remaining allegations set forth in paragraph 160.

161.    Defendants deny the allegations set forth in paragraph 161.

162.    Defendants admit that there is a 14 page document entitled "Therapy Management Tips" and contains the words quoted in paragraph 162.  However, Defendants state that the words quoted are pled out of context of the entirety of the document, and Defendants deny the document demonstrates intent to file a false claim.

163.    Defendants admit that the quote cited is in an email from Ms. Johnson in October 2009. However, Defendants state that the words quoted are pled out of context of the entirety of the email, and Defendants deny that the document demonstrates intent to file a false claim.

164.    Defendants deny the allegations in the first sentence of paragraph 164.  The remaining allegations in paragraph 164 recite a portion of a regulation, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the regulation's meaning or application.

165.    Defendants have no way to quantify the intent of the Complaint in using the word "significantly" and as such Defendants deny the allegations set forth in paragraph 165.

166.    Defendants admit that in October 2006 the percentage of Ultra High level rehabilitation days was noted to be 38.8 in company documents. Defendants admit that in November 2009 the percentage of Ultra High Level rehabilitation days was noted in company documents to be 80.3. Defendants admit that 80.3 percent is more than double 38.8 percent. Defendants deny that these documents demonstrate intent to file a false claim.  Defendants deny the remaining allegations set forth in paragraph 166.

167.    Defendants admit that the statistics cited for Whitehall Borough facility in Pittsburgh, Pennsylvania are noted in company records. Defendants deny that these statistics demonstrate intent to file a false claim.  Defendants deny the remaining allegations set forth in paragraph 167.

168.    Defendants deny the allegations set forth in paragraph 168.

169.    The allegations in the first sentence of paragraph 169 recite a portion of a statute, and therefore no response is required.  To the extent a response is required, Defendants deny that the Government is entitled to any relief or recovery against them under the language quoted in this paragraph.  Defendants deny the allegations of this paragraph to the extent they mischaracterize the cited source's meaning or application.  Defendants deny the allegations in the second sentence of paragraph 169.

170.    Defendants deny the allegations set forth in paragraph 170.

171.    Defendants admit that Patient C was an 84-year-old man admitted to the Palos Heights West facility in Illinois and received physical therapy, occupational therapy, and speech therapy during his 50-day stay.  Defendants also admit that Patient C's chart contains notes that

at times he was not making progress in therapy.  Defendants deny the remaining allegations set forth in paragraph 171 and state that all therapy services provided to Patient C were skilled, reasonable, and necessary under Medicare Part A.

172.    Defendants admit that Patient C attended a group therapy session on the same day that a physician signed an order for palliative care and comfort measures only.  Defendants state that this group therapy was for speech only, not physical or occupational therapy.  Defendants also admit that Patient C's chart contains a note that he had labored breathing and was not verbally responsive.  Defendants further admit that five days after this note, Patient C's chart documents his refusal to participate in therapy, and that Patient C died later the same day. Defendants admit that therapy provided to Patient C was billed at an Ultra High level. Defendants deny the remaining allegations in paragraph 172 and state that all therapy services provided to Patient C were skilled, reasonable, and necessary under Medicare Part A.

173.    Defendants admit that all of Patient C's rehab days were billed at an Ultra High level and that Medicare paid $25,664.43 for services provided to Patient C.  Defendants deny the remaining allegations in paragraph 173 and state that all therapy services provided to Patient C were skilled, reasonable, and necessary under Medicare Part A.

174.    Defendants deny the allegations set forth in paragraph 174 and state that all therapy services provided to patients were skilled, reasonable, and necessary under Medicare Part A.

175.    Defendants admit that Patient D was an 85-year-old man at the time of his admission in February 2010 and diagnosed with end stage cardiomyopathy.  Defendants also admit that Patient D was admitted to the Palm Harbor facility in February 2010 for rehabilitative therapy after a prior admission at the same facility in 2008.  Defendants admit that Patient D

received physical therapy, occupational therapy, and speech therapy and was treated with

between 55 and 75 minutes of physical therapy each day during the first week of his stay.

Defendants also admit that this therapy was billed at the Ultra High level.  Defendants admit that

Patient D was admitted to hospice.  Defendants deny the remaining allegations in paragraph 175

and state that all therapy services provided to Patient D were skilled, reasonable, and necessary

under Medicare Part A.

176.    Defendants admit that Patient D's chart indicates that he refused therapy on

multiple occasions.  Defendants also admit that Patient D was described on February 26, 2010 in

a chart note as "medically fragile."  Defendants, however, state that another chart note described

Patient D as making "excellent progress in physical therapy until March 11, 2010."  Defendants

deny the remaining allegations in paragraph 176 and state that all therapy services provided to

Patient D were skilled, reasonable, and necessary under Medicare Part A.

177.    Defendants deny the allegations set forth in paragraph 177 and state that all

therapy services provided to Patient D were skilled, reasonable, and necessary under Medicare

Part A.

178.    Defendants admit that therapy services for Patient D's 2010 admission were billed

at the Ultra High level and that Medicare paid $16,951.47 for claims from this admission.

Defendants deny the remaining allegations in paragraph 178 and state that all therapy services

provided to Patient D were skilled, reasonable, and necessary under Medicare Part A.

179.    Defendants admit that Patient D received therapy services during an admission

from July 9, 2008 to August 21, 2008, which was billed at the Ultra High level.  Defendants deny

the remaining allegations in paragraph 179 and state that all therapy services provided to Patient

D were skilled, reasonable, and necessary under Medicare Part A.

180.     Defendants admit the allegations set forth in paragraph 180.

181.     Defendants deny the allegations set forth in paragraph 181.

182.     Defendants admit that Patient E was a 64-year-old female at the time of her first of several admissions to Heartland Health Care Center in Whitehall, Michigan.  Patient E was treated with physical therapy and occupational therapy in January 2011 after falling and suffering an injury, which required hospitalization and pain management.  Defendants deny the remaining allegations in paragraph 182 and state that all therapy services provided to Patient E were skilled, reasonable, and necessary under Medicare Part A.

183.     Defendants admit that on one particular day, Patient E spent 25 minutes completing therapeutic exercises, 30 minutes receiving diathermy, and 20 minutes receiving E-stim. Defendants deny the remaining allegations set forth in paragraph 183 and state that all therapy services provided to Patient E were skilled, reasonable, and necessary under Medicare Part A.

184.     Defendants admit that Patient E was treated with 725 minutes of therapy during her admission from January 21, 2011 until February 4, 2011, at which time Patient E was discharged to a hospital.  Defendants also admit that this therapy was billed at the Ultra High level and that Medicare paid $8,762.18 for these services.  Defendants deny the remaining allegations in paragraph 184 and state that all therapy services provided to Patient E were skilled, reasonable, and necessary under Medicare Part A.

185.     Defendants deny the allegations set forth in paragraph 185 and state that all therapy services provided to Patient E were skilled, reasonable, and necessary under Medicare Part A.

186.    Defendants admit that Patient F was a 68-year-old woman with three admissions to the Heartland of Marietta facility in Ohio between September 26, 2006 and January 31, 2007. Defendants also admit that Patient F had a variety of chronic conditions, including but not limited to hepatitis C, cirrhosis, and diabetes.  Defendants further admit that Patient F complained of fatigue, generalized pain, and limited mobility in October 2006.  Defendants also admit that Patient F was treated with physical therapy, occupational therapy, and diathermy. Defendants deny the remaining allegations in paragraph 186 and state that all therapy services provided to Patient F were skilled, reasonable, and necessary under Medicare Part A.

187.    Defendants admit that Patient F's chart contains notes dated November 10, 2006 indicating that Patient F was lethargic and that medication was attempted at 5:45 a.m, at which time Patient F began heaving and vomiting.  Defendants also admit that at 7:45 am, the physician was notified that Patient F was extremely lethargic and minimally responsive to stimuli. Defendants further admit that Patient F was transported to the hospital on November 10, 2006 at 10:05 a.m.  Defendants admit that on November 10, 2006,  Patient F was treated with 50 minutes of diathermy to both knees for pain and further that Patient F's chart contains notes on that date that Patient F was slow to respond and that she stated that she "hurt all over."  Defendants deny the remaining allegations in paragraph 187 and state that all therapy services provided to Patient F were skilled, reasonable, and necessary under Medicare Part A.

188.    Defendants admit that during Patient F's 30-day assessment during her first admission in 2006, she was treated with 784 minutes of therapy and that Medicare was billed at the Ultra High level.  Defendants deny the remaining allegations in paragraph 188 and state that all therapy services provided to Patient F were skilled, reasonable, and necessary under Medicare Part A.

189.    Defendants deny the allegations set forth in paragraph 189 and state that all therapy services provided to Patient F were skilled, reasonable, and necessary under Medicare Part A.

190.    Defendants deny the allegations set forth in paragraph 190.

191.    Defendants admit that Patient G was an 82-year-old woman with a history of uncontrolled atrial fibrillation, diabetes, and peripheral vascular disease, admitted to the Kenosha, Wisconsin facility with orders for physical and occupational therapy services. Defendants also admit that Patient F was admitted to the Kenosha, Wisconsin facility on six separate occasions.  Defendants admit that when Patient G was admitted on July 10, 2009, she was evaluated for speech therapy services.  On July 13, 2009, the facility requested and obtained an order from Patient G's doctor for speech therapy for five days per week.  Defendants deny the remaining allegations in paragraph 191 and state that all therapy services provided to Patient G were skilled, reasonable, and necessary under Medicare Part A.

192.    Defendants admit that Patient G completed swallow studies in July and August 2009 and that Patient G's chart indicates that Patient G's goals were to "alternate solids and liquids," "demonstrate small bites," and "demonstrate a slow eating rate."  Defendants deny the remaining allegations in paragraph 192 and state that all therapy services provided to Patient G were skilled, reasonable, and necessary under Medicare Part A.

193.    Defendants admit that Patient G's admission between July 10, 2009 and July 27, 2009 lasted 17 days.  Defendants also admit that therapy was billed to Medicare at the Ultra High level and that Medicare paid $10,643.52 for services during this admission.  Defendants deny the remaining allegations in paragraph 193 and state that all therapy services provided to Patient G were skilled, reasonable, and necessary under Medicare Part A.

194.     Defendants deny the allegations of paragraph 194 and the contents set forth in Exhibit A to the Complaint and state that all therapy services provided to Patient G were skilled, reasonable, and necessary under Medicare Part A.

195.     Defendants admit that Patient H was a 71-year-old man admitted to the Wingfield Hills, Nevada facility following a hospitalization for a urinary tract infection and was also a TRICARE dual-eligible beneficiary.  Defendants also admit that during his stay beginning August 30, 2010, Patient H was treated with physical therapy, occupational therapy, and speech therapy.  Defendants, however, state that Patient H only received 50 minutes of speech therapy which consisted solely of a swallow evaluation.  Defendants further admit that Medicare paid $15,558.72 and TRICARE paid $4,400 for these services provided to Patient H, and state that all therapy services provided to Patient H were skilled, reasonable, and necessary under Medicare Part A and TRICARE.  Defendants deny the remaining allegations set forth in paragraph 195.

196.     Defendants deny the allegations set forth in paragraph 196.

197.     Defendants deny the allegations set forth in paragraph 197.

198.     Defendants deny the allegations set forth in paragraph 198.

199.     Defendants deny the allegations set forth in paragraph 199.

200.     Defendants admit that there were Hi/Lo level checklists which differed in form among the facilities and were used in the discretion of the clinician at various times during the stay of a patient.  Defendants deny that these documents demonstrate intent to file a false claim.  Defendants deny the remaining allegations set forth in paragraph 200.

201.     Defendants deny the allegations set forth in paragraph 201.

202.     Defendants admit that in 2009 HCR ManorCare Services analyzed the financial impact of increased length of stay, a legitimate business metric, at select facilities in the normal

course of running the business and deny that this analysis demonstrates intent to file a false claim. Defendants deny the remaining allegations set forth in paragraph 202.

203.    Defendants admit that a document exists entitled "Operations Summary" noted that the fourth quarter 2009 length of stay for Medicare patients increased 0.7 days over the fourth quarter of 2008.  Defendants deny this document demonstrates intent to file a false claim. Defendants deny the remaining allegations set forth in paragraph 203.

204.    Defendants admit that they were aware of the federal healthcare program rules and regulations as set forth in the statutes, regulations and policy benefit manuals regarding skilled rehabilitation therapy services.  Defendants deny the remaining allegations set forth in paragraph 204.

205.    Defendants deny the allegations set forth in paragraph 205.

206.    Defendants admit that an email exists containing the quote set forth in paragraph 206.  However, Defendants state that the words quoted are pled out of context of the entire email, and Defendants deny that the document demonstrates intent to file a false claim.  Defendants deny the remaining allegations set forth in paragraph 206.

207.    Defendants admit that an email exists that is dated March 12, 2009 and contains the words quoted in paragraph 207.  However, Defendants state that the words quoted are pled out of context of the entire email, and Defendants deny that the document demonstrates intent to file a false claim.  Defendants deny the remaining allegations set forth in paragraph 207.

208.    Defendants lack knowledge and belief to answer the allegations in paragraph 208 because there is no specificity regarding the time period in which the alleged complaints were made, who made the alleged complaints, and to whom such complaints were made and as such deny the allegations in paragraph 208.

209.    Defendants lack knowledge and belief to answer the allegations in paragraph 209 because there is no specificity regarding the time period in which the alleged resignations occurred, the names of the therapists who allegedly resigned or expressed concerns, and as such, deny the allegations in paragraph 209.

210.    Defendants admit that an exit interview survey exists and contain the words quoted in paragraph 210.  However, Defendants state that the words quoted are part of a larger document, are pled out of context of the entirety of the document, and Defendants deny that the document demonstrates intent to file a false claim.  Defendants deny the remaining allegations set forth in paragraph 210.

211.    Defendants admit that on July 19, 2011, CtW Investment Group sent a letter to CEO Ormond and that the quote set forth in paragraph 211 is contained in this letter.  However, Defendants state that the words quoted are pled out of the context of the entirety of the letter itself and the facts and circumstances surrounding the letter, and Defendants deny that the letter demonstrates intent to file a false claim. Defendants deny the remaining allegations set forth in paragraph 211.

212.    Defendants admit that the letter referred to in paragraph 211 was discussed at an August 2011 Board of Directors meeting for HCR ManorCare, LLC and HCRMC Operations, LLC.  Defendants deny the remaining allegations set forth in paragraph 212.

213.    Defendants deny the allegations set forth in paragraph 213.

214.    Defendants admit that Exhibit A exists and that it is a chart of claims for Patients A-H and state that all therapy services provided to Patients A-H were skilled, reasonable, and necessary under Medicare Part A and/or TRICARE.  Defendants deny the remaining allegations of paragraph 214 and in Exhibit A.

215.    Defendants repeat and reallege all answers to paragraphs 1 through 214, as if fully set forth herein.

216.    Defendants deny the allegations set forth in paragraph 216.

217.    Defendants deny the allegations set forth in paragraph 217.

218.    Defendants repeat and reallege all answers to paragraphs 1 through 214, as if fully set forth herein.

219.    Defendants deny the allegations set forth in paragraph 219.

220.    Defendants deny the allegations set forth in paragraph 220.

221.    Defendants repeat and reallege all answers to paragraphs 1 through 214, as if fully set forth herein.

222.    Defendants deny the allegations set forth in paragraph 222.

223.    Defendants deny the allegations set forth in paragraph 223.

224.    Defendants repeat and reallege all answers to paragraphs 1 through 214, as if fully set forth herein.

225.    Defendants deny the allegations set forth in paragraph 225.

226.    Defendants deny the allegations set forth in paragraph 226.

227.    Defendants deny the allegations set forth in paragraph 227.

228.    Defendants deny all allegations set forth in sections I – IV in the Prayer for Relief.

229.    All allegations in the Complaint not expressly admitted are hereby denied.


## **DEFENSES**

Without assuming any burden of proof they would not otherwise have, Defendants assert the following defenses and/or affirmative defenses:

1.      The Government's claims are barred in whole or in part by the defense of estoppel.

2.      The Government's claims are barred in whole or in part by the defense of laches.

3.      The Government's claims are barred in whole or in part by the defense of waiver.

4.      The Government's claims are barred in whole or in part by the defense of release.

5.      The Government's claims are barred in whole or in part by the defense of statute of limitations or repose.

6.      The Government's claims are barred in whole or in part by the defense of accord and satisfaction.

7.      The Complaint fails to state a claim against the Defendants.

8.      The Government's claims fail because, over the time period alleged in the Complaint, there was no clear, unambiguous, or objective legal standard by which to judge truth or falsity of claims for skilled services.

9.      The Government's claims fail because the Defendants only billed for therapy services that were skilled and medically reasonable and necessary in compliance with the applicable standards.

10.     The Government's claims fail, in whole or in part, because corporate pressure to bill for medically unnecessary and/or non-skilled services did not exist.  Furthermore, the Defendants' patients' therapy needs were determined by the physicians and therapists who treated the patients in the exercise of their independent, professional judgment.

11.     The Government's claims fail to the extent they do not identify with specificity (e.g., by dates, patients, persons engaged in allegedly fraudulent conduct, etc.) the alleged false claims.

12.     The Government's claims are barred for failure to mitigate damages.

13.     The Government's claims are barred or lessened by any claim amounts it recouped or underpaid.

14.     The Government's claims should be reduced, modified and/or barred by the doctrine of unclean hands and/or in pari delicto.

15.     The Government is barred from obtaining relief against the Defendants because their conduct was at all times reasonable, proper, in good faith, and in compliance with applicable law.

16.     The Defendants' conduct was not the proximate cause of the Government's alleged injuries or damages, if any.

17.     No act or omission of the Defendants was malicious, willful, wanton, reckless or made with intent to violate any statute or law.

18.     The Government has failed to plead fraud with the adequate degree of specificity and particularity as required by applicable statutory and/or common law.

19.     The Government's False Claims Act claims are barred in whole or in part by the Public Disclosure bar of the False Claims Act, and this Court lacks jurisdiction over such claims.

20.     The Complaint is barred because the Defendants never knowingly presented a false or fraudulent claim for payment or approval.

21.     The Complaint is barred because the Defendants never knowingly made, used or caused to be made or used, a false record or statement material to a false or fraudulent claim.

22.     Some or all of the purported claims and allegations in the Complaint are barred because they amount to differences of subjective medical, clinical, and scientific opinions that do not create or establish violations of the False Claims Act or any other statutory or common law

provision, particularly with respect to determinations concerning the appropriate nature and duration of skilled therapy services that the Defendants provided to individual patients.

23.     The allegations and claims in the Complaint are barred because any actions taken by the Defendants with respect to the subject matters alleged in the Complaint were taken in good faith and/or in reasonable reliance upon regulatory interpretations and judgments by the Government and/or its agents and contractors upon whom the Defendants were entitled to rely.

24.     The Complaint fails to establish the prerequisites necessary for recovery under the False Claims Act, 31 U.S.C. § 3729 et seq.

25.     The Complaint fails to establish the prerequisites necessary for recovery under the doctrine of unjust enrichment.

26.     The Complaint fails to establish the prerequisites necessary for recovery under the doctrine of payment by mistake.

27.     The Complaint fails to establish the apparent authority necessary to find the Defendants vicariously liable for actions taken by employees, agents, contractors, and/or third parties.

28.     The Government's claimed damages are too remote and speculative to form the basis for relief.

29.     The Complaint is barred, in whole or in part, because the Government's claims and the damages and penalties the Government seeks to recover violate the Defendants' constitutional rights to due process.

The Defendants reserve the right to amend this Answer to include any additional defenses which may become known and/or available during this litigation.

WHEREFORE Defendants request that the Court deny the Government's claims and award Defendants their costs and any additional relief the Court deems necessary and proper.

## DEMAND FOR JURY

Defendants hereby demand a trial by jury.


Dated:  September 18, 2015            HCR MANORCARE, INC.
                                      MANOR CARE, INC.
                                      HCR MANORCARE SERVICES, LLC
                                      HEARTLAND EMPLOYMENT SERVICES, LLC
                                      By Counsel

                                      /s/_____
                                      Katherine J. Seikaly (VSB No. 71438)
                                      Eric A. Dubelier (*pro hac vice*)
                                      Carol C. Loepere (*pro hac vice*)
                                      Daniel Z. Herbst (*pro hac vice*)
                                      Reed Smith LLP
                                      1301 K Street, N.W.
                                      Suite 1100 – East Tower
                                      Washington, D.C. 20005
                                      202-414-9200 (phone)
                                      202-414-9299 (fax)
                                      kseikaly@reedsmith.com
                                      edubelier@reedsmith.com
                                      cloepere@reedsmith.com
                                      dherbst@reedsmith.com

                                      Brent R. Gary (VSB No. 66592)
                                      Reed Smith LLP
                                      3110 Fairview Park Drive
                                      Suite 1400
                                      Falls Church, VA 22042
                                      703-641-4200 (phone)
                                      703-641-4340 (fax)
                                      bgary@reedsmith.com

Melissa A. Geist (*pro hac vice*)
Reed Smith LLP
136 Main Street, Suite 250
Princeton, NJ 08540
(609) 987-0050 (phone)
(609) 951-0824 (fax)
mgeist@reedsmith.com

Marilyn A. Moberg (*pro hac vice pending*)
Reed Smith LLP
355 South Grand Avenue, Suite 2900
Los Angeles, California  90071
(213) 457-8035
(213) 457-8080
mmoberg@reedsmith.com


*Counsel for Defendants HCR ManorCare, Inc.,*
*Manor Care, Inc., HCR ManorCare Services, LLC,*
*and Heartland Employment Services, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day of September 2015, the foregoing was electronically filed with the clerk of court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

/s/_____
Katherine J. Seikaly (VSB No. 71438)
Eric A. Dubelier (*pro hac vice*)
Carol C. Loepere (*pro hac vice*)
Daniel Z. Herbst (*pro hac vice*)
Reed Smith LLP
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, D.C. 20005
202-414-9200 (phone)
202-414-9299 (fax)
kseikaly@reedsmith.com
edubelier@reedsmith.com
cloepere@reedsmith.com
dherbst@reedsmith.com

Brent R. Gary (VSB No. 66592)
Reed Smith LLP
3110 Fairview Park Drive
Suite 1400
Falls Church, VA 22042
703-641-4200 (phone)
703-641-4340 (fax)
bgary@reedsmith.com

*Counsel for Defendants HCR ManorCare, Inc.,
Manor Care, Inc., HCR ManorCare Services, LLC,
and Heartland Employment Services, LLC*