**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** *et al.*, *ex rel.* **PATRICK GERARD CARSON** | |
| **Plaintiffs,** | **CIVIL ACTION NUMBERS:** |
| **v.** | **1:09-cv-0013 (CMH/TCB)** |
| | **1:11-cv-1054 (CMH/TCB)** |
| **HCR MANORCARE, INC.,** *et al.*, | **1:14-cv-1228 (CMH/TCB)** |
| **Defendants.** | |

**PLAINTIFF/RELATOR PATRICK GERARD CARSON'S OPPOSITION
TO DEFENDANTS HCR MANORCARE, HCR MANORCARE, INC., AND
HEARTLAND EMPLOYMENT SERVICES, LLC'S
MOTION TO DISMISS HIS SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ........................................................................................... 1

II.  PROCEDURAL BACKGROUND .................................................................................... 2

III. SUMMARY OF RELATOR'S ALLEGATIONS ............................................................ 3

IV. LEGAL STANDARD ........................................................................................................ 6

V.  ARGUMENT ..................................................................................................................... 6

   A.  Mr. Carson's Claims are Properly Before This Court and Should not be Dismissed
   Pursuant to Rule 12(b)(1) ...................................................................................................... 6

      1.  Mr. Carson's FCA Claims and Michigan FCA Claim in Count 18 are not Barred
      by the "First-to-File" Rule ................................................................................................. 7

      2.  Intervention by the Government is not a Basis for Dismissal of any of Mr. Carson's FCA
      Claims ................................................................................................................................... 9

      3.  Mr. Carson's FCA Claims and State FCA Claims are not Barred by Any Purported Prior
      Public Disclosures ............................................................................................................. 10

   B.  Mr. Carson's Claims are plausibly and sufficiently pleaded and should not be
   dismissed pursuant to Rules 12(b)(6) and 9(b) ................................................................ 13

      1.  The Complaint Pleads Claims with Particularity as Required by Rule 9(b) ............ 14

      2.  The Complaint States Plausible Claims for Violation of the FCA as Required by Rule
      12(b)(6) ............................................................................................................................... 16

      3.  The Complaint Pleads a Plausible Claim for Conspiracy ......................................... 20

      4.  The Complaint Sufficiently Pleads a Claim for Retaliation ..................................... 22

      5.  The Complaint Pleads Plausible State FCA Claims .................................................. 26

   C.  Relator's Allegations are not Limited to Fraudulent Conduct that Occurred
   During his Employment ....................................................................................................... 27

VI. Mr. Carson Respectfully Requests Leave to Amend the Complaint Should it be
Found Lacking ........................................................................................................................ 28

VII.   CONCLUSION .......................................................................................................... 29

# TABLE OF AUTHORITIES

## CASES

*American Needle, Inc. v. National Football League,*
    560 U.S. 183 (2010)............................................................................................. 21, 22

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...................................................................................... 6, 13, 16

*Baldino's Lock & Key Serv., Inc. v. Google, Inc.,*
    No. 1:14-CV-00636, 2015 WL 402927 (E.D. Va. Jan. 27, 2015) ........................ 6, 13

*Chesbrough v. VPA, P.C.,*
    655 F.3d 461 (6th Cir. 2011) ................................................................................. 18

*Clark County Sch. Dist. v. Breeden,*
    532 U.S. 268 (2001)............................................................................................... 26

*Coleman v. Maryland Court of Appeals,*
    626 F.3d 187 (4th Cir. 2010) ............................................................................. 6, 13

*Copperweld Corp. v. Indep. Tube Corp.,*
    467 U.S. 752 (1984)............................................................................................... 21

*Davis v. Piper Aircraft Corp.,*
    615 F.2d 606 (4th Cir. 1980) ................................................................................. 29

*Elder v. DRS Technologies, Inc.,*
    No. 1:13cv799  (E.D. Va. Aug. 27, 2013) ......................................................... 24, 26

*Erickson v. Pardus,*
    551 U.S. 89 (2007)............................................................................................. 6, 13

*Harrison v. Westinghouse Savannah River Co.,*
    176 F.3d 776 (4th Cir. 1999) ("*Harrison I*") ........................................................ 17

*Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter,*
    135 S. Ct. 1970, 575 U.S. ___ (2015)...................................................................... 7

*Lettieri v. Equant Inc.,*
    478 F. 3d 640 (4th Cir. 2007) ................................................................................ 26

*Mann v. Heckler & Koch Defense, Inc.,*
    630 F.3d 338 (4th Cir. 2010) ............................................................................ 23, 24

*McDonnell Douglas Corp. v. Green,*
411 U.S. 792 (1973) ................................................................................ 26

*Mount Sinai Hosp., Inc. v. Weinberger,*
517 F.2d 329 (5th Cir. 1975) ................................................................ 19

*Ostrzenski v. Seigel,*
177 F. 3d 245 (4th Cir. 1999), ............................................................... 29

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
551 U.S. 308 (2007) ................................................................................ 14

*Tuchman v. DSC Communications Corp.,*
14 F.3d 1061 (5th Cir. 1994) ................................................................ 16

*United States ex rel Littlewood v. King Pharms., Inc.,*
806 F. Supp. 2d 833 (D.Md, 2011) ...................................................... 10

*United States ex rel Wilson v. Graham County Soil & Water Conservation Dist.,*
777 F.3d 691 (4th Cir. 2015). .............................................................. 13

*United States ex rel. Ahumada v. Nat'l Ctr. for Employment of the Disabled,*
No. 1:06-CV-713, 2013 WL 2322836 (E.D. Va. May 22, 2013) ............................................. 17

*United States ex rel. Augustine v. Century Health Servs.,*
289 F.3d 409 (6th Cir. 2002) ................................................................ 18

*United States ex rel. Beauchamp v. Academi Training Center, Inc.,*
No. 1:11cv371 (E.D. Va, March 21, 2013)............................................ 8

*United States ex rel. Carter v. Halliburton Co.,*
710 F.3d 171 (4th Cir. 2013) .................................................................. 7

*United States ex rel. Grubbs v. Kanneganti,*
565 F.3d 180 (5th Cir. 2009) ........................................................... 14, 15

*United States ex rel. Harrison v. Westinghouse Savannah River Co.,*
352 F.3d 908 (4th Cir. 2003) ("*Harrison II*")................................ 14, 15

*United States ex rel. Mikes v. Straus,*
274 F.3d 687 (2d Cir. 2001)................................................................... 17

*United States ex rel. O'Keefe v. Sverdup Corp.,*
131 F. Supp. 2d 87 (D. Mass. 2001) .................................................... 12

United States *ex rel. Owens v. First Kuwaiti Gen. Trading,*
 612 F.3d 724 (4th Cir. 2010) ........................................................................ 24, 25

*United States ex rel. Rector v. Bon Secours Richmond Health Corp.,*
 No. 3:11-CV-38 (E.D. Va. Apr. 14, 2014) ............................................................... 25

*United States ex rel. Riley v. St. Luke's Episcopal Hosp.,*
 355 F.3d 370 (5th Cir. 2004) ........................................................................ 17

*United States ex rel. Siller v. Becton Dickinson & Co.,*
 21 F.3d 1339 (4th Cir. 1994) .................................................................... 11, 12

*United States ex rel. Vuyyuru v. Jadhav,*
 555 F. 3d 337 (4th Cir. 2009) ....................................................................... 11

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,*
 525 F. 3d 370 (4th Cir. 2008) ........................................................................ 29

*United States v. Prabhu,*
 442 F. Supp. 2d 1008 (D. Nev. 2006) ................................................................. 18

## STATUTES

31 U.S.C. § 3729(b). ................................................................................... 16
31 U.S.C. § 3730(b)(1) .................................................................................. 9
31 U.S.C. § 3730(b)(4) .................................................................................. 9
31 U.S.C. § 3730(b)(5) ................................................................................ 7, 9
31 U.S.C. § 3730(c)(1) ................................................................................. 10
31 U.S.C. § 3730(e)(4)(A) .............................................................................. 11
31 U.S.C. § 3730(e)(4)(B) .............................................................................. 12
31 U.S.C. § 3730(h) .............................................................................. 23, 27, 28
Cal. Gov't Code § 12652(c) ............................................................................. 5
Del. Code tit. 6, §1203 ................................................................................. 28
Mich. Comp. Laws Ann. § 400.610a, Sec. 10a (12) .......................................................... 7

## RULES

Fed. R. Civ. P. 12(b)(1) ................................................................................. 9
Fed. R. Civ. P. 12(b)(6) ............................................................................ 13, 17, 29
Fed. R. Civ. P. 9(b) ............................................................................. 13, 14, 15, 16

## OTHER AUTHORITIES

U.S. Gen. Accounting Office, *Medicaid Nursing Home Payments:*

*States' Payment Rates Largely Unaffected by Recent Fiscal Pressure*,
    http://www.gao.gov/products/GAO-04-143 (last visited Oct. 29, 2015).................................. 23

*Virginia's Medicaid Reimbursement to Nursing Facilities*,
    Senate Doc. 28, Va. Gen. Assembly, Jan. 6, 2000
    http://jlarc.virginia.gov/pdfs/reports/Rpt243.pdf (last visited Oct. 29, 2015). ........................ 22

## I.        PRELIMINARY STATEMENT

Despite the Defendants' assertions to the contrary, there is simply no basis in law to dismiss Relator Carson's Second Amended Complaint ("Complaint").   Defendants offer a panoply of arguments in a vain effort to make Mr. Carson's valid Complaint disappear. The Defendants' efforts fail as a matter of law.

To be perfectly clear, Mr. Carson was the ***only*** Relator to file claims on behalf of the States. Certain of the allegations contained in the Government's complaint in intervention are only found in Mr. Carson's Complaint. The cases at issue were consolidated. The Government intervened in a consolidated action to which Mr. Carson was a party. Thus, the First-to-File bar does not apply to his Complaint.

Mr. Carson's allegations were not publically disclosed. Mr. Carson could not have based his allegations on the other filed complaints, as all complaints were filed under seal. Mr. Carson and his attorneys were not aware of, and did not view, the other two complaints until *after he filed his own.* There was nothing for Mr. Carson to base his allegations on other than his own observations and investigations. Even if the allegations were disclosed, nowhere do the Defendants address that Mr. Carson, under all applicable authority, is clearly an "original source" under the False Claims Act ("FCA"), which defeats any purported public disclosures.

Mr. Carson's Complaint has detailed and specific instances of Defendants' improper conduct, including specific dates of treatments, patients, and the individuals engaged in inappropriate conduct. Mr. Carson has provided sufficient notice to the Defendants as required under the Federal Rules of Civil Procedure.  The Complaint includes specific facts that show that the Defendants violated the False Claims Act. Mr. Carson filed his Complaint well within the applicable statutes of limitations.

The Government intervened in certain of these claims. Defendants have already made many of these same arguments when they sought dismissal of the Government's complaint in intervention. This Court correctly rejected them.

Defendants continue by presenting a laundry list of arguments claiming that Mr. Carson failed to present plausible claims for conspiracy, retaliation, and violation of the State FCAs. In so arguing, the Defendants equate non-intervention by certain, but not all, of the states as a basis for dismissal. This is simply not the way the state statutes work. Furthermore, the State of California, which may have a great many potential claims, has yet to file as to whether it is intervening in this matter. In addition, Mr. Carson can proceed independently with his wrongful retaliation claims.

Together, all of the facts asserted by Mr. Carson, presumed at this stage of litigation to be true, plausibly plead a scheme to cause false claims to be submitted to the Government[1] and provide specific information to apprise Defendants of the scheme in which they participated. It appears that Defendants hope one of their many arguments will gain an audience. For the reasons outlined at length below, they are not valid. Accordingly, Mr. Carson respectfully requests that Defendants' motion to dismiss be denied in its entirety.

## II.      PROCEDURAL BACKGROUND

Defendants[2] appear to make a great deal out of the fact that Mr. Carson somehow waited to file his complaint. Nothing can be farther from the truth. Mr. Carson was terminated at the end of 2009. Prior to his termination, Mr. Carson spent approximately two years trying desperately to retain counsel to represent him. Unfortunately several lawyers incorrectly told him he had no basis

---

[1] Relator's Complaint included facts concerning the operations of all Government-funded health programs.
[2] Mr. Carson named only those entities for which he had evidence of conduct.

to file under the FCA. Mr. Carson should not suffer because of a delay, which occurred despite his best efforts, in securing competent counsel.

Defendants attempt to cast further aspersions regarding the nature of Mr. Carson's amendments to his Complaint. It is important to note that those amendments were made *prior* to the matter being joined by an adversary. Indeed, the first amendment was made to correct *a scrivener's error in the caption*. The second amendment was made *after the Government intervened in the consolidated action to exclude certain parties from the litigation for the sake of judicial economy*, which is something for which Mr. Carson should not be penalized. Should the Court find that Mr. Carson's complaint is lacking in any way – something Mr. Carson and his counsel vehemently deny – Mr. Carson respectfully requests an opportunity to correct any alleged deficiencies through substantive amendment to his Complaint, now that the matter has been joined and the Complaint has been challenged for the first time in an adversarial proceeding.

Defendants offer a plethora of arguments in support of their motion to dismiss. Indeed, Defendants made many of the same arguments in their motion to dismiss the Government's complaint in intervention, which was filed on July 7, 2015.  The Court correctly denied these arguments in its Order dated September 8, 2015. As such, Mr. Carson respectfully requests that the Defendants' motion be denied in its entirety.

## III.   SUMMARY OF RELATOR'S ALLEGATIONS

At first blush, it is difficult to discern what the Defendants are attempting to argue. However, it quickly becomes apparent that the Defendants are trying to belittle Mr. Carson (and his allegations) because he is "not a licensed therapist but rather a therapy assistant." (Defendants' Memorandum in Support of Motion to Dismiss (hereafter: "Defs. Mem.") at 4). This is inappropriate. Relator's title does not dictate his ability to bring forth credible evidence of the

Defendants' wrongdoing. Mr. Carson maintained meticulous records – on a daily basis – of the Defendants' wrongful conduct. During his lengthy employment with the Defendants, Mr. Carson discovered that in order to obtain the highest reimbursement possible for skilled nursing facility stays and the therapy administered during those stays, Defendants utilized improper billing practices and methodologies to present or cause to be presented false claims or statements for payments under Government-funded health insurance programs.  As a result of Defendants' conduct, the Government was improperly charged.  Specifically, the Relator observed that on a regular (if not daily) basis the therapists and therapist assistants employed by Defendants (the "Rehabilitation Staff Members") engaged in the following:

     a.  Overbilling for therapy services provided;

     b.  Billing for therapy services not provided;

     c.  Billing non-skilled activities as skilled therapy; and

     d.  Billing for unreasonable, unnecessary, and at times harmful therapy.

(Complaint at ¶5.)

Additionally, to capture the highest number of treatment minutes for Medicare patients, the Rehabilitation Staff Members were instructed to:

     a.  Shift prescribed minutes amongst the three therapy disciplines (physical, occupational and speech), irrespective of medical need;

     b.  Change therapy prescriptions to allow for six days of treatment if all targeted minutes could not be captured within five days;

     c.  Increase use of group therapy;

     d.  Reduce the amount of therapy provided to privately insured patients; and

     e.  Increase modality use by 30%. (Complaint at ¶6.)

Relator also observed that Defendants postponed the discharge of patients for days and sometimes weeks longer than medically appropriate. (Complaint at ¶7.) Through their fraudulent conduct, Defendants have caused Medicare, Medicaid and other federal Government-funded health insurance programs to pay millions of dollars in inflated reimbursements to Defendants at the taxpayers' expense.  Specifically, as a result of Defendants' improper conduct, Medicare has paid the named defendants in excess of $6 billion and TRICARE, a federal Government-funded health insurance program, has paid more than $5.6 million.  (Complaint at ¶8). These billing practices were employed at each of Defendants' skilled nursing facilities. Through their improper conduct, Defendants violated and breached Federal and State law, including, but not limited to, the Social Security Act, Medicare, Medicaid, the FCA and the false claim statutes of the states[3] of California, Colorado, Delaware, Florida, Georgia, Illinois, Indiana, Maryland, Michigan, Nevada, New Jersey, North Carolina, Oklahoma, Texas, Wisconsin and the Commonwealth of Virginia, and fraudulently took Government monies.  The ultimate victims, of course, were the United States taxpayers and taxpayers of the aforementioned States. (*Id.* at ¶10). Mr. Carson filed his Complaint on September 28, 2011 after making his statutory pre-suit disclosures in July 2011 (which satisfied his "original source" obligations).

---

[3] Mr. Carson was the *only* Relator to include claims under the State False Claims Acts in his complaint. While certain States may have declined intervention *at this point*, pursuant to relevant and longstanding authority Mr. Carson is permitted to prosecute this action on behalf of those states that have declined. It is well established that ***declination is not a basis for dismissal***. Pursuant to the California False Claims Act, Cal. Gov't Code § 12652(c)(1), Mr. Carson has also named California as a plaintiff.  As recognized by Defendants, the Court's publicly available docket does not yet include California's decision regarding intervention.  *See* Dkt. No. 131, Defs. Memo at p. 3, fn. 2.  The Defendants' Memorandum, therefore, does not address California's interest in this *qui tam* case.  *See* Cal. Gov't Code § 12652(c)(4)-(c)6). It would be procedurally problematic to dismiss Mr. Carson's Complaint before the State of California had an opportunity to evaluate its decision to intervene. Moreover, despite Defendants' contentions, not all states actually filed a declination.

## IV.     LEGAL STANDARD

As mentioned above, the Defendants have articulated no basis in law or fact to dismiss Mr. Carson's Complaint. It has long been established that "[i]n reviewing a motion to dismiss, the Court will 'accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff.'"  *Baldino's Lock & Key Serv., Inc. v. Google, Inc.*, No. 1:14-CV-00636, 2015 WL 402927, at *2 (E.D. Va. Jan. 27, 2015) (Hilton, J.) (quoting *Coleman v. Maryland Ct. of App.*, 626 F.3d 187, 190 (4th Cir. 2010)).  Therefore, "[i]n order to avoid dismissal, the Complaint 'need only give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  In light of these standards, a motion to dismiss must be denied where the complaint "state[s] a plausible claim for relief that permits the court to infer more than the mere possibility of misconduct."  *Coleman*, 626 F.3d at 190 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). As more fully detailed below, Mr. Carson respectfully requests that the Defendants' motion to dismiss be denied in its entirety.

## V.     ARGUMENT

### A.  Mr. Carson's Claims are Properly Before This Court and Should not be Dismissed Pursuant to Rule 12(b)(1)

Defendants have not adequately raised any jurisdictional obstacles to Mr. Carson's Complaint and thus have not provided a basis for why this Court should dismiss the Complaint pursuant to Rule 12(b)(1).  Moreover, the arguments Defendants do make under the 12(b)(1) heading are inadequate: Mr. Carson's complaint is not barred by the First-to-File rule, the Government's intervention into the case does not warrant dismissal of the Complaint, and Mr. Carson's Complaint is not barred by prior public disclosures.

1.   **Mr. Carson's FCA Claims and Michigan FCA Claim in Count 18 are not Barred by the "First-to-File" Rule**

Defendants incorrectly argue that Mr. Carson's FCA claims and his Michigan FCA Claim are barred by the first-to-file rule.[4]  Defendants correctly note that "[w]hen a person brings an action under [the FCA], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action."  31 U.S.C. § 3730(b)(5).  In the Fourth Circuit, a later filed suit is a "related action" and is barred only if it is "based upon the 'same material elements of fraud' as the earlier suit,'" being thus essentially duplicative.[5]  *United States ex rel. Carter v. Halliburton Co.*, 710 F.3d 171, 182 (4th Cir. 2013) (holding that the District Court erred in dismissing Relator's Complaint with prejudice pursuant to the First-to-File bar), *rev'd in part on other grounds*, *Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, 135 S. Ct. 1970, 575 U.S. ___ (2015).[6]

Fourth Circuit Courts applying the "first-to-file" bar must determine whether the claims in the later-filed action are based on same facts underlying the first-filed action, because "a later suit is barred if it is based upon the "same material elements of fraud" as the earlier suit, even though the subsequent suit may 'incorporate somewhat different details.'" *Halliburton Co.*, 710 F.3d at 182. Thus, the goal of this inquiry is to determine "whether the [subsequent complaint] alleges a fraudulent scheme the government already would be equipped to investigate based on the [prior complaint.]" *United States ex rel. Beauchamp v. Academi Training Ctr., Inc.*, No. 1:11cv371, 2013

---

[4] It appears that Defendants acknowledge this is not a basis for dismissal of Counts 9-17 and 19-25.

[5] Of course, should the Court decide that there is overlap of allegations, principles of due process dictate that Mr. Carson is entitled to a judicial determination, after a complete briefing, and a review of all the complaints as to whether they are "related" and which allegations are not.

[6] Michigan's first-to-file rule also is triggered only by a previously-filed *related* action.  *See* Mich. Comp. Laws Ann. § 400.610a, Sec. 10a (12)

WL 1189707 at *6 (E.D. Va. Mar. 21, 2013) (finding that relator's later-filed allegations were not subject to the First-to-File bar despite certain commonalities with the earlier-filed action).

Here, while the allegations of fraud contained in Mr. Carson's original Complaint and subsequent pleadings may overlap somewhat with the allegations in the previously filed complaints in the consolidated litigation, Mr. Carson's allegations go well beyond those allegations and include fraudulent schemes that are wholly additional to anything contained in any previously filed complaints. As Defendants correctly note, Mr. Carson and the other relators allege that the Defendants applied undue pressure on their rehabilitation staff members to unlawfully increase RUG levels without regard to medical necessity. However, the similarities end there.

This abstract similarity does not suffice to render Mr. Carson's Complaint duplicative of the previously-filed complaints, and thus barred by the first-to-file rule. Mr. Carson's Complaint contains specific and substantial allegations including, but not limited to, the mechanism by which Defendants improperly increased their billings to Government-funded health programs, such as consistently administering "modalities [like] electric stimulation, diathermy, and ultra sound … to inappropriate patients" that have no predecessors among the other complaints. (Complaint, ¶ 133). As noted above, Mr. Carson's Complaint is also alone among relators here to have made any allegations of Medicaid fraud under the relevant state statutes. Despite certain abstract commonalities with the earlier-filed complaints, it is unlikely that the earlier-filed complaints "would have led to an investigation" of the many additional allegations of fraud Mr. Carson has made against the Defendants.

Contrary to the Defendants' suggestion, the mere fact that a relator has filed an FCA suit alleging improper billing by a defendant does not preclude all future relators from filing subsequent suits against the same defendant alleging improper billing, when the alleged schemes

by which the defendant has defrauded the Government are different and distinct. Thus, because Mr. Carson's Complaint is replete with allegations that are not based on the same material elements of fraud as those underlying previously-filed complaints, his Complaint should not be dismissed pursuant to Rule 12(b)(1).[7]

Even if the Court were to find that Mr. Carson's allegations are entirely based upon the same material elements of fraud as the others allegations, it would not follow as a matter of law that Mr. Carson's Complaint should be dismissed, as Ms. Ribik's and Mr. Carson's cases were consolidated by Order of this Court on June 13, 2012, and all three cases were consolidated by Order of this Court on November 4, 2014.  The Government intervened and filed a complaint in intervention in the *consolidated* action on April 10, 2015.

### 2. Intervention by the Government is not a Basis for Dismissal of any of Mr. Carson's FCA Claims

As noted above, Mr. Carson does not dispute Defendants' claim that Counts 1, 2, 5 and 6 of his Complaint are superseded by the Government's complaint.  Defendant correctly notes that if the United States decides to intervene, "the action shall be conducted by the Government."  31 U.S.C. § 3730(b)(4) (referring to "a civil action under section 3729," *see* § 3730(b)(1)).  However, Defendants over-extend this principle to erroneously conclude that Counts 3, 4, 7 and 8, on which the Government has not intervened, are superseded by the Government's Complaint.  With respect

---

[7] In any event, Defendants have failed to identify the proper source of authority under which dismissal could be appropriate, even if Mr. Carson's Complaint were merely duplicative of the other complaints.  Defendants argue that, in such an event, Mr. Carson's Complaint should be dismissed pursuant to Rule 12(b)(1).  But Rule 12(b)(1) is a rule of narrow application which allows a Court to dismiss a case if the Court lacks subject matter jurisdiction to decide it.  However, under the current statutory language, the First-to-File bar is not a jurisdictional bar to suit in this Court.  31 U.S.C. § 3730(b)(5) ("When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action.").

to those Counts, Defendants offer no reason whatsoever for concluding that intervention should trigger a dismissal.

Even with respect to the counts in which the Government has intervened, Defendants cite no legal authority for the conclusion that dismissal of Mr. Carson's Complaint —or of the Ribik and Slough complaints—is appropriate, because there is no such authority.

As the statute makes clear, with respect to the counts on which the Government has intervened, the action shall indeed be conducted by the Government.  However, nowhere does the statute state or suggest that a relator's complaint or claims must be dismissed upon intervention by the Federal Government.  Indeed, the statute is clear that even where the Government intervenes in an action, *the relator remains a party to that action and retains an interest in the case through to its conclusion*. *See* 31 U.S.C. § 3730(c)(1) (providing that when the Government has intervened, the relator "shall have the right to continue as a party to the action . . .");[8] *see also United States ex rel Littlewood v. King Pharms., Inc*., 806 F. Supp. 2d 833, 836 (D. Md. 2011) ("If the United States decides to intervene in a *qui tam* action, it takes over the litigation. Upon intervention, the complaint is unsealed, the docket is unsealed, and the United States serves the complaint on the defendant. *However, the* **qui tam** *relator remains a party to the action*.") (emphasis added).  In essence, a relator's complaint is subsumed into the Government's action. As such, intervention is not a basis to dismiss Mr. Carson's Complaint outright.

### 3.   Mr. Carson's FCA Claims and State FCA Claims are not Barred by Any Purported Prior Public Disclosures

Contrary to Defendants' contention, this Court does not lack jurisdiction over the FCA

---

[8] It is significant that the Government, which enjoys broad statutory powers to dismiss a relator's action or otherwise limit his participation, has chosen not to dismiss or inhibit any of the relators, instead filing a *Consolidated* Complaint in Intervention.

claims and State FCA claims, because Mr. Carson's Complaint was not based upon allegations publicly disclosed in government reports and/or the news media.  Even if the Complaint had been based on prior public disclosures, it would not be subject to the Public Disclosure Bar, because Mr. Carson is an original source of the information upon which his allegations are based.

The FCA's public disclosure bar provides:

> The Court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other Federal Report, hearing, audit, or investigation; or from the news media unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A) (2000). Similarly, as the Defendants have noted, each State FCA, with the exception of the Wisconsin FCA, has a comparable bar on new actions based on prior public disclosures, with a comparable exception for relators who are "original sources" of the information on which their allegations are based.

In the Fourth Circuit, a FCA suit triggers the Public Disclosure Bar only if it is "actually derived" from the prior public disclosure. *United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1348 (4th Cir. 1994); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 350 (4th Cir. 2009). *Siller* instructs that finding allegations to be "based upon" a public disclosure requires more than a finding of similarity between the public disclosure and the complaint's allegations. "[I]t is self-evident that a suit that includes allegations that happen to be similar (even identical) to those already publicly disclosed, but were not actually derived from those public disclosures, simply is not, in any sense, parasitic." *Siller*, 21 F.3d at 1348.

Defendants do not claim that Mr. Carson's allegations were "actually derived" from the purported examples of public disclosures they offer.  As such, Defendants have provided this Court

with no basis for finding that Mr. Carson's Complaint is barred under the Public Disclosure Bar. Instead, the Defendants simply highlight and exaggerate vague similarities between Mr. Carson's allegations and the purported examples.

The two examples cited by the Defendants are too speculative to have provided the detailed information on which Carson's Complaint was based.  Both the HHS-OIG report and the *Washington Post* article cited by the Defendants raise questions about and cite unspecific allegations of improper billing practices by skilled nursing facilities, including HCR Manorcare. But neither purported disclosure actually alleges or imputes to the Defendants the specific conduct alleged in Mr. Carson's Complaint.

Even if the Court determines that there has been a public disclosure, Mr. Carson is an original source of the information found in his Complaint, an issue the Defendants summarily fail to address. It is well established that the public disclosure bar does not apply when the relator is an original source of the information contained in the action. An original source is one who has "direct and independent knowledge of the information on which the allegations are based." 31 U.S.C. § 3730(e)(4)(B).  Direct knowledge means that the information was acquired by the plaintiff through his own efforts; independent knowledge means that it is not derived from public disclosures. *See, e.g., United States ex rel. O'Keefe v. Sverdup Corp.*, 131 F. Supp. 2d 87, 93 (D. Mass. 2001).

Clearly, Mr. Carson has personal knowledge of the Defendants' improper schemes, as he was an employee who witnessed the conduct firsthand.  This makes him "precisely the sort of 'whistleblowing insider' the statute seeks to encourage." *See United States ex rel Wilson v. Graham County Soil & Water Conservation Dist.* 777 F.3d 691, 699 (4th Cir. 2015). Mr. Carson's knowledge is independent because it does not depend on public disclosures and it is direct because

12

it was obtained without any intervening agency, instrumentality, or influence. *Id.* The claims in the Complaint are the result of Mr. Carson's own firsthand observations of the Defendants' conduct. *See Springfield*, 14 F.3d at 657. There are no applicable public disclosures in this case. And even if there were, Mr. Carson is an original source of the information in his Complaint. Mr. Carson therefore respectfully requests that this Court deny the Defendants' motion to dismiss.

### B. Mr. Carson's Claims are plausibly and sufficiently pleaded and should not be dismissed pursuant to Rules 12(b)(6) and 9(b)

Contrary to the Defendants' contention, Relator Carson has plausibly and sufficiently pleaded a claim for relief under the FCA in compliance with Rule 12(b)(6) and 9(b). "In reviewing a motion to dismiss, a Court must 'accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff.'" *Baldino's Lock & Key*, 2015 WL 402927, at *2 (quoting *Coleman*, 626 F.3d at 190). Therefore, "[i]n order to avoid dismissal for failure to state a claim for relief, the Complaint 'need only give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Id.* (quoting *Erickson*, 551 U.S. at 94). In light of this standard, Defendants' motion to dismiss must be denied, as Mr. Carson's Complaint states "a plausible claim for relief that permits the court to infer more than the mere possibility of misconduct." *Coleman*, 626 F.3d at 190 (quoting *Iqbal*, 556 U.S. at679).

In addition, Relator Carson's Complaint satisfies the heightened requirement of Rule 9(b), the purpose of which is "to ensure [ ] that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of . . ." *United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 921 (4th Cir. 2003) ("*Harrison II*") (citations omitted). Rule 9(b) does not require a relator to plead his allegations with the level of detail required to prove his case, as Defendants seem to be contend. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also United States ex rel. Grubbs v. Kanneganti*, 565

F.3d 180, 189 & n.29 (5th Cir. 2009) ("And surely a procedural rule ought not be read to insist that a plaintiff plead the level of detail required to prevail at trial").  Relator Carson's Complaint, satisfies the requirements of Federal Civil Procedure Rule 9(b) because his allegations provide sufficient notice to Defendants of the precise misconduct alleged his Complaint.

### 1.   The Complaint Pleads Claims with Particularity as Required by Rule 9(b)

The Court should reject Defendants' arguments that Relator Carson's claims are insufficient under Rule 9(b).  Rather, Mr. Carson's Complaint alleges with particularity, as Rule 9(b) requires, details regarding HCR ManorCare's improper scheme to inflate billings to Medicare, TRICARE, Medicaid and specific, representative false claims that were actually submitted for payment. Indeed, he lists specific patients[9], dates of treatment and the improper activity engaged in by the Defendants.

Mr. Carson's Complaint provides representative examples of false claims which Defendants submitted to Medicare, TRICARE, FEHBP and Medicaid for payment.  (Complaint ¶¶112-141).  The Complaint likewise provides detailed allegations of the methodologies HCR ManorCare used in its improper scheme to subject Skilled Nursing Facility ("SNF") patients to unnecessary rehabilitation therapy, in order to inflate its reimbursement from federal and state healthcare programs, and connects representative false claims to these various means and methodologies. *Id.*

For example, the Complaint details how Defendants used unnecessary and unreasonable therapy to increase minutes delivered to patients.  (*Id. ¶¶* 124-136).  The Complaint then provides

---

[9] Obviously, specific patient identifiers are not included in Mr. Carson's allegations, so as to not violate the Health Insurance Portability and Accountability Act ("HIPA"). The failure to include such "specific" information does not render a FCA Complaint insufficient as a matter of law.

specific examples of false claims whereby Defendants sought reimbursement for unnecessary and unreasonable therapy provided to particular patients. (*Id.* ¶¶ 125, 126, 127, 128, 130, 131 and 134).

Defendants erroneously contend that, although the Complaint sets forth numerous specific false claims for different patients, the Complaint lacks sufficient particularity under Rule 9(b). (Defs. Mem. at 14).  Defendants' selective and self-serving reading of the Complaint ignores the primary purpose of Rule 9(b), which is to ensure that the defendant has sufficient information to articulate a defense by placing it on notice of the conduct complained of. *Harrison II*, 352 F.3d at 921 (citations omitted).  Moreover, Rule 9(b) does not require the relator to plead his allegations with the level of detail required to prove his case, as Defendants seem to contend.  *See Kanneganti*, 565 F.3d at 189 & n.29.  Mr. Carson's Complaint, including the representative examples of patients and false claims, easily satisfies Rule 9(b), because Relator's allegations provide sufficient notice to Defendants of the precise misconduct alleged.

Further, Defendants erroneously contend that Rule 9(b) requires Mr. Carson to identify "which individuals and corporations knowingly submitted [the] allegedly false claims."  (Defs. Mem. at 14).[10]  More generally, Defendants fundamentally misstate or misunderstand the scienter requirement of an FCA claim at the pleading stage. While Rule 9(b) imposes a heightened pleading requirement for allegations of fraud, it does not require the same level of particularity with respect to the knowledge element of an FCA claim.  Rather, Rule 9(b) provides that "malice, intent, knowledge, and other conditions of a person's mind may be alleged *generally*."  Fed. R. Civ. P. 9(b) (emphasis added); *see also Iqbal*, 556 U.S. at 686.  Rule 9(b) is satisfied by alleging facts: (1)

---

[10] Certainly the Defendants are not suggesting their services were being provided *gratis*. Defendants attempt to argue that there is no basis for Defendant Heartland Services to be in this action. However, Defendants fail to mention to this Court that Heartland Services issued certain employment information, including checks, to Mr. Carson. Knowing this, it is inconceivable how the Defendants can argue there is no basis for this entity to be in the case.

making it reasonable to believe that defendant knew of the wrong, (2) showing a motive, or (3) indicating "conscious behavior" on the part of the defendant. *See Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994). Mr. Carson's Complaint more than meets this burden by alleging specific facts that demonstrate Defendants knew that they submitted false claims, or at a minimum "act[ed] in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b).

Mr. Carson's Complaint is replete with the dates of specific meetings where improper conduct occurred. He sets forth the names of the individuals who engaged in improper conduct. (Complaint at ¶138). He specifically references patients, complete with dates for delayed discharges. (*Id.* at ¶141). He references the improper use of modalities by management (*Id.* at ¶133) and the improper treatment of specific patients, with dates of treatment. (*Id.* at ¶134). He alleges that he submitted his time records, which were billed to Government-funded healthcare programs.

Notice pleading is still viable under the Federal Rules of Civil Procedure. Mr. Carson has satisfied the requirements of the Rules, and respectfully requests that the Defendants motion to dismiss be denied on this point.

### 2. The Complaint States Plausible Claims for Violation of the FCA as Required by Rule 12(b)(6)

Mr. Carson's Complaint satisfies the requirements of Federal Rule of Civil Procedure 12(b)(6). Defendants correctly note that to plead an FCA claim, a plaintiff must allege, *inter alia*, (1) a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter, *i.e.*, with actual knowledge or deliberate ignorance or reckless disregard of the truth or falsity of the information; (3) that was material; and (4) caused the government to pay out money or forfeit money due. *United States ex rel. Ahumada v. Nat'l Ctr. for Employment of the Disabled*,

No. 1:06-CV-713, 2013 WL 2322836, at *2-3 (E.D. Va. May 22, 2013) (Hilton, J.), *aff'd sub nom. United States ex rel. Ahumada v. NISH*, 756 F.3d 268 (4th Cir. 2014) (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 788 (4th Cir. 1999) (*"Harrison I"*)).  However, Defendants incorrectly assert that claims for unnecessary services can never give rise to FCA liability because such claims are purportedly subjective, or that Mr. Carson's allegations of unnecessary care are not plausible because he was just "a physical therapist assistant." (Defs. Mem. at 22).

Defendants incorrectly contend that Mr. Carson's allegations fail "as a matter of law," because he has failed to allege "an objectively false statement." (*Id.* at 19).  Defendants assert that their claims to the Government for therapy could not have been false, because disagreement over the amount of therapy that is "reasonable and necessary" cannot give rise to an objectively false statement or a false claim.  (*Id.* at 18.)  In making these assertions, Defendants ignore well-established case law holding that claims for unnecessary services are actionable as "false" under the FCA.  *See United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004) ("[C]laims for medically unnecessary treatment are actionable under the FCA."); *see also United States ex rel. Mikes v. Straus*, 274 F.3d 687, 700-701 (2d Cir. 2001) (holding that claims for medically unnecessary services are "false" under the FCA); *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 468 (6th Cir. 2011) (adopting reasoning in *Mikes*); *United States ex rel. Augustine v. Century Health Servs.*, 289 F.3d 409, 415 (6th Cir. 2002) (holding that claims for payment submitted in violation of Medicare regulations on which payment is conditioned are "false" claims under the FCA).

Defendants continue by unjustifiably relying on *United States v. Prabhu*, 442 F. Supp. 2d 1008 (D. Nev. 2006), for the proposition that a claim is not false where "reasonable persons can

disagree regarding whether the service was properly billed to the Government." (Defs. Mem. at 19). Defendants suggest that *Prabhu* somehow supports the proposition that allegations of unnecessary treatment can never establish FCA liability *as a matter of law*. This is incorrect. In *Prabhu*, the Court granted *summary judgment at the close of discovery* for the defendant because "[t]he Government has failed to adduce any evidence that . . . from a clinical standpoint—the services were medically unnecessary." *Prabhu*, 442 F. Supp. at 1032. *Prabhu* stands for the simple proposition that, where there is no evidence in the record, at the close of discovery, to support the allegation that the services provided were medically unnecessary, *summary judgment* is appropriate on claims that billing for those services violated the FCA.

*Prabhu*, however, does not support the assertion that Defendants make here, that *allegations* of billing for unnecessary services, even if proven, can never support FCA liability. *Prabhu*'s holding was founded on the lack of evidence in the completed record to support the allegations that the services at issue were unnecessary *in that case*, rather than on the theory that such claims can never support FCA liability under any circumstances.

Moreover, Defendants are asking this Court to hold that an allegation of unnecessary treatment can never give rise to FCA liability, so long as the provider asserts that the treatment was necessary. This cannot be correct. If Defendants were correct, any treatment, no matter how unnecessary, could be charged to Medicare as long as the provider was willing to assert that the treatment was appropriate. This would render meaningless the statutory requirement that Medicare pays only for "reasonable and necessary" treatment. *See, e.g., Mount Sinai Hosp., Inc. v. Weinberger*, 517 F.2d 329, 334 (5th Cir. 1975) (explaining "reasonable and necessary" standard set forth in 42 U.S.C. § 1395y controls whether particular services are covered by Medicare).

Defendants may contend at trial that patients in their facilities received reasonable and

necessary services, and that the claims alleged were not false.  Defendants may not contend at this very preliminary stage of the proceedings, however, that the Relator's allegations of unnecessary and unreasonable treatment do not plausibly support FCA liability.  The fact Mr. Carson is a physical therapist assistant does not render his allegations of improper treatment *per se* implausible.

Defendants further contend that because the precise reimbursement rules and procedures vary across the various state Medicaid programs, it somehow follows that Relator's allegations that Defendants knowingly billed the states for services that were never rendered, or that were medically unnecessary and rendered solely for the purpose of increasing Medicaid payments to the Defendants, do not state a plausible claim with respect to the false claims submitted to Medicaid. (Defs. Mem. at 20-22). It is difficult to discern the logic of Defendants' argument on this point. Defendants are correct, no doubt, that the precise Medicaid reimbursement rules and procedures do vary from state to state.

> [T]he federal government provides the states with great flexibility to develop their own Medicaid reimbursement methodologies, as long as they conform to federal laws and regulations. Consequently, there is no requirement that states develop and use a single payment methodology for all facilities providing nursing facility services.

*Virginia's Medicaid Reimbursement to Nursing Facilities*, Senate Doc. 28, Va. Gen. Assembly, Jan. 6, 2000, at 6, 8, http://jlarc.virginia.gov/pdfs/reports/Rpt243.pdf (last visited Oct. 29, 2015). In essence, in many states, Medicaid begins to cover the cost for the same services that Medicare initially covered after the proscribed period of time pursuant to regulation. Depending on the state, this could occur as early as twenty days after treatment. Thus, it is common knowledge that Medicaid funds are often utilized in lieu of or in conjunction with Medicare funds. As such, the state FCAs are implicated as a result of the Defendants' improper conduct.

Regardless of the Defendants' incorrect application of the relevant legal authority, unless the Defendants mean to somehow suggest that certain states have adopted Medicaid reimbursement methods under which a skilled nursing facility may submit claims for reimbursement for services that were never rendered, or for services that were medically unnecessary, the mere fact that reimbursement methods can vary from state to state is irrelevant.

Defendants, of course, do not make such an implausible claim explicitly, but they do attempt to confuse the issue with an irrelevant discussion of retrospective and prospective reimbursement systems. (Defs. Mem. at 21). As the Defendants do not explain, certain states set the rate of reimbursement for eligible services *retrospectively*, meaning that the amount paid to the provider by the state Medicaid program will depend on the actual costs to the provider of having rendered the service. *See* U.S. Gen. Accounting Office, *Medicaid Nursing Home Payments: States' Payment Rates Largely Unaffected by Recent Fiscal Pressure* 9-13, http://www.gao.gov/products/GAO-04-143 (last visited Oct. 29, 2015). Other states, however, to encourage more efficient and economical use of resources, set their reimbursement rates *prospectively*: providers who can deliver the services for less than the fixed reimbursement rate earn a profit, while those who cannot must bear the excess cost themselves. *Id*. at 11.

As the Defendants also do not explain, neither reimbursement method allows a provider to submit a claim for reimbursement to the state government for medical services that were never rendered, that were not rendered as described in the reimbursement claim, or that were not medically necessary. As such, the Defendants' arguments fail.

### 3.   The Complaint Pleads a Plausible Claim for Conspiracy

Mr. Carson has adequately pled an improper conspiracy. Defendants incorrectly argue that Relator Carson has failed to plead a plausible claim for conspiracy under the FCA because "[a]

parent corporation and its wholly owned subsidiaries . . . are legally incapable of forming a conspiracy with one another." *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769 (1984). However, while Defendants are correct to note that the United States Supreme Court has cautioned Courts against finding intra-corporate conspiracies, the Supreme Court has also cautioned Courts not to blind themselves to the possibility of an intra-corporate conspiracy by elevating form over substance. *See American Needle, Inc. v. National Football League*, 560 U.S. 183, 192, (2010).

The Supreme Court has explained that "corporate interrelationships…are not determinative" of the applicability of conspiracy provisions of Federal statutes. *Id.* at 193 (noting that § 1 of the Sherman Act, prohibiting conspiracies in restraint of trade, may apply "as readily [to] a conspiracy among those who are affiliated or integrated under common ownership as [to] a conspiracy among those who are otherwise independent.") (emphasis added).   The Defendants' reliance on *Copperweld* is thus misguided.

In *Copperweld*, the Supreme Court held that there was no prohibited conspiracy under the Sherman Act between a corporation and its wholly owned subsidiary where "they are controlled by a single center of decision making."  *Copperweld*, 467 U.S. at 767.  As *Copperweld* exemplifies, "substance, not form, should determine whether a[n] . . . entity is capable of conspiring" under Federal statutes.  *Id.* at 773.  The question is not, as the Defendants contend, "whether the alleged conspirators are a single entity." *American Needle,* 560 U.S. at 194.  Rather, the question is if the alleged conspiracy is a concerted effort that "joins together separate decision makers."[11] *Id.*

---

[11] In the anti-trust context, the relevant inquiry would not be whether the multiple parties "seem like one firm or multiple firms in any metaphysical sense," but rather whether the alleged conspiracy is amongst "separate economic actors pursuing separate economic interests, such that the agreement deprives the marketplace of independent centers of decision making…and thus of actual or potential competition." *Id.* at 194 (internal citations omitted).  Here, the relevant inquiry should not turn simply on whether the co-conspirators are wholly-owned subsidiaries or employees

Given the patchwork of related entities and skilled nursing facilities under the Defendants' umbrella throughout the country whose cooperation was necessary for the Defendants to undertake their improper scheme, this Court should not allow Defendants to escape liability on the mere basis of the form of their corporate organization. Indeed, much has been made of the mosaic of corporate relationships established in the skilled nursing facility context. Mr. Carson respectfully requests that the Defendants' motion to dismiss his Complaint be denied on this point.

### 4.   The Complaint Sufficiently Pleads a Claim for Retaliation

It is clear that Mr. Carson was improperly terminated for his whistleblowing activity under the FCA. As noted by the Defendants, the FCA protects the relator from being "discharged…or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of [the FCA]." 31 U.S.C. § 3730(h).

To assert a valid FCA retaliation claim in the Fourth Circuit, a plaintiff must allege that: (1) he engaged in protected activity by taking action in furtherance of a *qui tam* suit; (2) his employer had notice of those acts; and (3) his employer took adverse action against him as a result of these acts. *See Mann v. Heckler & Koch Defense, Inc.*, 630 F.3d 338, 343 (4th Cir. 2010). Defendants challenges the first and third elements.  (Defs. Memo at 23-25).  For the reasons elaborated below, Defendants' challenges are without merit.

Relator Carson has alleged that the Defendant terminated his employment in retaliation for his repeated efforts to stop "the fraudulent billing practices concerning patients associated with Government funded health programs." (Complaint at ¶149).  Throughout his Complaint, and in

---

of each other, but whether the improper conduct was made possible or facilitated by the concerted effort of the separate actors.

particular in ¶¶148-157, Relator alleges at least five specific instances, starting as far back as February 2007, in which he informed the Defendant of the improper conduct which formed the basis of the present action and which constituted clear violations of the FCA.  Four days after Relator Carson's final attempt to bring the Defendants' improper conduct to light in an effort to stop the numerous violations of the FCA, the Defendants terminated him on a pretextual basis. (*Id.* at ¶156).  It is inconceivable how this does not fall under the FCA.

As such, the Defendants deprived Mr. Carson of his livelihood and ability to support himself, all because he tried to do the right thing. Under any fair reading of the Complaint, Mr. Carson's allegations plausibly state Defendants terminated him in retaliation for engaging in protected activity, and sufficiently plead a 3730(h) claim according to the plain language of the statute.

To sufficiently plead the first element of a 3730(h) claim, it is not necessary that a relator plead that he undertook the activity in question in contemplation of an eventual FCA suit. *United States ex rel. Owens v. First Kuwaiti Gen. Trading,* 612 F.3d 724, 735 (4th Cir. 2010).  In the Fourth Circuit, a protected activity takes place where "an employee's opposition to fraud takes place in a context where litigation is a distinct possibility, when the conduct could reasonably lead to a viable FCA action, or when . . . litigation is a reasonable possibility." *Mann,* 630 F.3d at 344.

Here, Relator has pled facts that, when proven, indicate that litigation of a FCA claim was a distinct and reasonable possibility.  Throughout his complaint, and particularly in ¶¶112-141, Relator alleges fraudulent conduct by the Defendants which rises to the level of a FCA violation. He has further alleged that he brought the improper conduct to the Defendants' attention on at least five specific occasions.  (Complaint, ¶¶148-157).  On two of those occasions he directed his complaint to his supervisors (*Id.* at ¶¶150-1), and on the three other occasions he directed his

complaints to the Defendants' office of corporate compliance. (*Id.* at ¶¶152-154).  Therefore, based on the facts known to the Relator at the time of his internal complaints to the Defendant, there was a reasonable possibility that his efforts could lead to a viable FCA action. *Elder v. DRS Techs., Inc.*, No. 1:13cv799, 2013 WL 4538777, at *5 (E.D. Va. Aug. 27, 2013) (holding that internal complaints by the relator that "corporate practices of [Defendant] were wrong and potentially illegal" were protected activity under the FCA).

Defendants' predictable resistance to this obvious conclusion is based on two inapposite cases.  Specifically, Defendant cites *Owens*, 612 F.3d at 734, for the misapplied proposition that "[a]n employer is entitled to treat a suggestion for improvement as what it purports to be rather than as a precursor to litigation," and *United States ex rel. Rector v. Bon Secours Richmond Health Corp.*, No. 3:11-CV-38, 2014 WL 1493568, at *13 (E.D. Va. Apr. 14, 2014), for the proposition that allegations of shoddy business practices do not constitute protected activity under the FCA. Defendants infer from these two cases that Relator's "sparse allegations of 'billing irregularities' do not plausibly allege that HCRMC was 'on notice that litigation is a reasonable possibility.'" But this is irrelevant, as it relies on a misrepresentation of the Mr. Carson's complaint of improper conduct.

Defendants are correct that under Fourth Circuit precedent, internal complaints by an employee of "shoddy business practices" or "suggestions for improvement" do not qualify as protected activity.  However, the Defendants incorrectly state Mr. Carson's attempts to denounce Defendants' improper schemes were mere suggestions to improve shoddy business practices.

As the *Owens* court explained, "[f]or activity to rise above the level of ordinary critique and constitute a step in preparation for an FCA claim, there must be some suggestion of impropriety or illegality by the employer" that the employee is attempting to uncover or prevent.

24

*Owens*, 612 F.3d at 735.  Here, Relator's Complaint is replete with allegations of fraud against the Government beyond mere suggestions for improving the Defendant's business practices, and he has clearly and sufficiently alleged that his internal complaints made to the Defendants while in their employ were allegations of fraudulent conduct and should have put the Defendants on notice that litigation was a reasonable possibility.  Thus, Mr. Carson's conduct was protected activity under the FCA.

To sufficiently plead the third element of a 3730(h) claim, a relator must allege that his employer took adverse action against him as a result of engaging in protected activity.  The Fourth Circuit has recognized at least two methods of proving a causal link between protected activity and retaliatory discharge which are relevant here.  The first method relies on the "temporal proximity" of the protected activity and the alleged retaliatory discharge.  *Elder*, 2013 WL 4538777, at *5; *see also Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273-74 (2001).  In *Elder*, the court dismissed the defendant's response to plaintiff's temporal proximity argument by noting that "the time span between Plaintiff's latest instance of protected conduct and the adverse action of his termination may be much shorter than the 23 month period [alleged by defendant." *Id.* at *5-6.  Here, Mr. Carson's "latest instance of protected conduct" preceded his termination by a mere *four days*. (Complaint at ¶155.)

The second method of proving a causal link between protected activity and the retaliatory discharge requires a showing that the Defendants' articulated reason for termination is a mere "pretext." *Lettieri v. Equant Inc.,* 478 F. 3d 640, 646 (4th Cir. 2007); *see also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-05 (1973).  To survive the Defendants' Motion to Dismiss, Relator need only have alleged that the Defendants' articulated reason for the termination was a

mere pretext.  Relator does this at ¶156 of his Complaint, where he alleges that he did not change a plan of care without approval of a physical therapist, as Defendants had accused him of doing.

Thus, whether by alleging a close temporal proximity between the protected activity and the retaliatory discharge, or by alleging that Defendants' articulated reason for termination was a mere pretext, Relator has sufficiently alleged that Defendants terminated his employment because he engaged in protected activity.  The closest thing to a cognizable argument against this inevitable conclusion in Defendants' Memorandum relies on a rule for which Defendants provide no authority.  Specifically, Defendants complain that Relator "does not even allege who took the allegedly-adverse employment action and what, how, and why they supposedly knew about his allegedly-protected conduct." (Defs. Mem. at 25).  Again, Defendants cite no authority for this purported requirement and offer no rationale for why this Court should adopt this novel rule. Mr. Carson's allegations plausibly suggest that he was terminated in retaliation for engaging in protected activity and are sufficient to plead a 3730(h) claim. As such, Defendants' arguments fail and their motion should be denied.

### 5.    The Complaint Pleads Plausible State FCA Claims

Contrary to Defendants' unsupported contention, Mr. Carson has sufficiently pled claims under the State FCAs.  As the Defendants note, the state FCAs closely parallel the federal FCA and follow federal case law. *Id*.  Thus, Defendants offer no additional support for why Mr. Carson's claims under the state FCAs should be dismissed over and above the reasons already discussed (and discredited) for dismissal under the federal statute. Defendants make no effort to conceal the fact that they have no new arguments on this point: "For the same reasons Carson failed to state a claim under the FCA, he also failed to state claims under the State FCAs and those claims should be dismissed." *Id*. at 25.

As set forth above, in many states Medicaid covers the cost for certain services Medicare initially covered, after a proscribed period of time pursuant to relevant regulation. This could occur as early as twenty days after treatment. As such, Medicaid funds are often utilized in lieu of or in connection with Medicare funds. As such, the state FCAs are implicated because of the Defendants' improper conduct.

Thus, for the same reasons Defendants have failed to establish that Mr. Carson's Complaint does not state a claim under the Federal FCA, they also fail to establish that his claims under the State FCAs are insufficient and should be dismissed.[12] As such, the Defendants' motion to dismiss should be denied.

### C.   Relator's Allegations are not Limited to Fraudulent Conduct that Occurred During his Employment

Defendants erroneously contend that Relator Carson's allegations are limited to allegations of fraudulent conduct that occurred during his employment with the Defendants between August 29, 2005 and November 9, 2009. (Defs. Mem. 27).  Defendants then argue that because Mr. Carson filed his Original Complaint on September 28, 2011, his claims are subject to the time limitations of the federal and state statutes.  Specifically, Defendants claim that counts 1 through 8 are subject to the six-year limitation of 31 U.S.C. 3731(b) and should thus be dismissed for all claims prior to September 28, 2005.  Defendant further contends that count 9 is subject to the three-year limitation of 31 U.S.C. 3730(h), and must therefore be barred for all claims prior to November 9, 2009.

---

[12] Defendants erroneously claim that Carson's claims under the Delaware FCA are barred because the Delaware Attorney General has not determined there was "substantial evidence that a violation [of the state FCA] has occurred." *Id.* at 26.  This is simply not a requirement under the Delaware FCA.  Delaware's FCA closely parallels the federal statute, and thus imposes no special requirement that the relator obtain permission to proceed in a non-intervened basis. See Del. Code tit. 6, §1203. In addition, the State of Maryland has the right to intervene at a later point if it chooses. As such, dismissal is premature here.

Finally, Defendant claims that counts 10 through 24 are subject to the six-year periods of limitation of the respective state statutes, and must be dismissed for all claims prior to September 28, 2005.

As noted above, Defendants are mistaken in asserting that Relator Carson's allegations are limited to allegations of improper conduct that occurred during his employment with the Defendants between August 29, 2005 and November 9, 2009. Nothing in his Complaint suggests any such limitation, and Defendants cite no support and marshal no argument in favor of their assumption. In fact, Relator Carson has no reason to believe that Defendants halted their fraudulent conduct on the very day he was unlawfully terminated. In other words, he alleges a continuing tort. It is premature for Defendants to argue otherwise, especially without the benefit of discovery. Mr. Carson's allegations concern all conduct by the Defendants up to the present day, and through the conclusion of this action. As such, Defendants' arguments are not a basis for dismissal.

## VI.    Mr. Carson Respectfully Requests Leave to Amend the Complaint Should it be Found Lacking

For the reasons articulated below, Mr. Carson respectfully requests that he be given leave to amend his Complaint should it be found lacking in any way. It has long been established that, where, as here, a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile. *See United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F. 3d 370, 376 (4th Cir. 2008) (holding that courts should liberally grant a leave to amend unless "amending the complaint would be futile"). Although Mr. Carson's Complaint was filed in 2011, it was not unsealed and served until June of this year. Thus, this is the first time it has been subjected to adversarial scrutiny and challenge. Accordingly, it would be equitable to allow the Complaint to be amended, should the

Court hold that it fails to state a plausible claim. *See Davis v. Piper Aircraft Corp.,* 615 F.2d 606, 613 (4th Cir. 1980) ("Because defendant was from the outset made fully aware of the events giving rise to the action, an allowance of the amendment could not in any way prejudice the preparation of the defendant's case."). Nearly all of the Defendants' arguments, if viable, appear to be curable largely through scriveners' additions.

In *Ostrzenski v. Seigel*, 177 F. 3d 245, 253 (4th Cir. 1999), the Fourth Circuit endorsed that:

A dismissal under Rule 12(b)(6) generally is not final or on the merits and *the court normally will give plaintiff leave to file an amended complaint.* The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that plaintiff be given every opportunity to cure a formal defect in his pleading. This is true even though the court doubts that plaintiff will be able to overcome the defects in his initial pleading. Amendment should be refused only if it appears to a certainty that plaintiff cannot state a claim.

(emphasis added). Given the procedural history of this case, Mr. Carson respectfully requests leave to amend his Complaint should the Court find it insufficient in any way. This is especially so here, where despite Defendants' contentions, this is the first time that Mr. Carson's complaint has been subjected to attack from an adversary. Indeed, Defendants make a great deal out of the fact that they claim the Complaint has been pled three times. (Defs. Mem. at 2-3, 29.) However, the Complaint was amended only twice. The first time to merely correct a typographical error in the caption, and the second time merely to drop parties deemed, after further investigation, to be irrelevant to the litigation. Nothing more. It is disingenuous to conclude that these ministerial amendments preclude Mr. Carson from addressing whatever purported concerns the Defendants now raise.

## VII.   CONCLUSION

For the foregoing reasons, Mr. Carson respectfully requests that this Court deny the Defendants' motion to dismiss his Complaint in its entirety. As articulated above, there is no basis

to dismiss his Complaint. As such, Mr. Carson should be permitted to proceed with his case. However, should the Court deem Mr. Carson's Complaint defective for any reason - a position Relator's counsel does not subscribe - Mr. Carson respectfully requests that the Court grant him an opportunity to cure any such defects and file an amended complaint.

Dated:  October 29, 2015

/s/ *Robert O. Wilson*
Robert O. Wilson (VSB# 77791)
L. Kendall Satterfield (*pro hac vice*)
Rosalee B. C. Thomas
FINKELSTEIN THOMPSON LLP
James Place 1077 30th Street NW, Suite 150
Washington, D.C. 20007
Phone: 202-337-8000
Fax: 202-337-8090
rwilson@finkelsteinthompson.com
ksatterfield@finkelsteinthompson.com
rbcthomas@finkelsteinthompson.com

William L. Hurlock (*pro hac vice*)
Christopher P.  Furlong
MUELLER LAW, LLC
363 Bloomfield Avenue, Suite 2-C
Montclair, New Jersey 07042
Tel: (973) 233-8290
Fax: (973) 509-9521
william.hurlock@muellerlaw.com
Christopher.furlong@muellerlaw.com

*Counsel for Plaintiff/Relator Patrick Gerard Carson*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of October 2015, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

/s/ *Robert O. Wilson*
Robert O. Wilson (VSB# 77791)
L. Kendall Satterfield (*pro hac vice)*
Rosalee B. C. Thomas
FINKELSTEIN THOMPSON LLP
James Place 1077 30th Street NW, Suite 150
Washington, D.C. 20007
Phone: 202-337-8000
Fax: 202-337-8090
rwilson@finkelsteinthompson.com