IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al*., | |
| Plaintiffs, | CIVIL ACTION NUMBERS: |
| | 1:09-cv-0013 (CMH/TCB) |
| v. | 1:11-cv-1054 (CMH/TCB) |
| | 1:14-cv-1228 (CMH/TCB) |
| HCR MANORCARE, INC., *et al*., | |
| Defendants. | |

**DEFENDANTS HCR MANORCARE, HCR MANORCARE, INC., AND
HEARTLAND EMPLOYMENT SERVICES, LLC'S
REBUTTAL MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS THE
SECOND AMENDED COMPLAINT OF RELATOR PATRICK GERARD CARSON**

Katherine J. Seikaly (VSB No. 71438)
Eric A. Dubelier (*pro hac vice*)
Carol C. Loepere (*pro hac vice*)
Daniel Z. Herbst (*pro hac vice*)
Reed Smith LLP
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, D.C. 20005
202-414-9200 (phone)
202-414-9299 (fax)
kseikaly@reedsmith.com
edubelier@reedsmith.com
cloepere@reedsmith.com
dherbst@reedsmith.com

Melissa A. Geist (*pro hac vice)*
REED SMITH LLP
136 Main Street, Suite 250
Princeton, NJ 08540
609-987-0050 (phone)
609-951-0824 (fax)
mgeist@reedsmith.com

Brent R. Gary (VSB No. 66592)
REED SMITH LLP
3110 Fairview Park Drive
Suite 1400
Falls Church, VA 22042
703-641-4200 (phone)
703-641-4340 (fax)
bgary@reedsmith.com

Marilyn A. Moberg (*pro hac vice pending*)
REED SMITH LLP
355 South Grand Avenue
Suite 2800
Los Angeles, CA 90071
213-457-8035 (phone)
213-457-8080 (fax)
mmoberg@reedsmith.com

*Counsel for Defendant HCR ManorCare, Inc.(sued as HCR ManorCare and HCR ManorCare, Inc.), and Heartland Employment Services, LLC*

**TABLE OF CONTENTS**

1. **Carson's Claims are Not Properly Before This Court and Should Be Dismissed Pursuant to Rule 12(b)(1).** ................................................................................ 1

   (a) Carson concedes that his Complaint is based on key facts that are also underlying the pending actions filed by other Relators and thus Counts 1 through 8 and Count 18 of the Complaint are barred by the first-to-file doctrine. ........................................................................................................... 1

   (b) Carson concedes that Counts 1, 2, 5 and 6 of his Complaint are superseded by the government's complaint in intervention. ......................................................... 4

   (c) Carson is not an original source of the publicly-disclosed allegations. .................. 5

2. **Carson's Claims are Not Plausibly or Sufficiently Pleaded and Should Be Dismissed Pursuant to Rules 9(b) and 12(b)(6).** ................................................................ 5

   (a) Carson did not plead particularized facts regarding the submission or identity of any false claims as required by Rule 9(b). ............................................ 5

   (b) Carson concedes his allegations do not establish any impact to Medicaid claims. ............................................................................................................. 6

   (c) Carson did not sufficiently plead a conspiracy claim. ........................................... 6

   (d) Carson did not sufficiently plead a retaliation claim. ........................................... 7

   (e) Carson did not sufficiently plead any State FCA claim. ........................................ 8

3. **Carson Does Not Dispute That His Allegations Are Time-Barred or Time-Limited.** ...................................................................................................................... 9

4. **Dismissal of the Complaint Should Be With Prejudice.** ............................................. 10

5. **Conclusion** ................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Needle, Inc. v. Nat'l Football League*,
560 U.S. 183 (2010) ........................................................................................................... 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................... 7

*United States ex rel. Beauchamp v. Academi Training Ctr., Inc.*,
933 F. Supp. 2d 825 (E.D. Va. 2013) ......................................................................... 2, 3, 4

*Campbell v. Am. Int'l Grp., Inc.*,
616 F. App'x 74 (4th Cir. 2015) ........................................................................................ 6

*United States ex rel. Carter v. Haliburton Co.*,
710 F.3d 171 (4th Cir. 2013) ..................................................................................... 1, 2, 3

*Copperweld Corp. v. Indep. Tube Corp.*,
467 U.S. 752 (1984) ....................................................................................................... 6, 7

*United States ex rel. Denenea v. Allstate Ins. Co.*,
No. 07–2795, 2011 WL 231780 (E.D. La. Jan. 24, 2011) ................................................. 2

*United States ex rel. DRC, Inc. v. Custer Battles, LLC.*,
376 F. Supp. 2d 617 (E.D. Va. 2005), *aff'd in part, rev'd in part on other grounds*, 562 F.3d 295 (4th Cir. 2009) ................................................................................ 7

*Campbell ex rel. Equity Units Holders v. Am. Int'l Grp., Inc.*,
86 F. Supp. 3d 464, 472 ..................................................................................................... 6

*Gillespie v. Marriott Int'l, Inc.*,
No. 1:15-CV-350 ............................................................................................................... 9

*Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*,
135 S. Ct. 1970 (2015) ....................................................................................................... 1

*United States ex rel. LaCorte v. Wagner*,
185 F.3d 188 (4th Cir. 1999) ............................................................................................. 1

*United States ex rel. Nathan v. Takeda Pharms. N. Am.*,
707 F.3d 451 (4th Cir. 2013) ............................................................................................. 5

*Nemphos v. Nestle Waters N. Am., Inc.*,
775 F.3d 616 (4th Cir. 2015) ........................................................................................... 10

*Phipps v. Agape Counseling & Therapeutic Servs., Inc.*,
  No. 3:13-CV-166, 2015 WL 2452448 (E.D. Va. May 21, 2015) ............................................... 8

*Rockwell Int'l Corp. v. United States*,
  549 U.S. 457 (2007) .................................................................................................................. 2

*United States ex rel. Rostholder v. Omnicare, Inc.*,
  745 F.3d 694 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 85 (2014) ............................................. 6

*Vander Boegh v. EnergySolutions, Inc.*,
  536 Fed. Appx. 522 (6th Cir. 2013) ........................................................................................... 8

*United States ex rel. Vuyyuru v. Jadhav*,
  555 F.3d 337 (4th Cir. 2009) ..................................................................................................... 5

**Statutes**

63 Pa. Cons. Stat. § 1304 ................................................................................................................. 8

**Regulations**

49 Pa. Code § 40.32(c) .................................................................................................................... 8

49 Pa. Code § 40.53 ........................................................................................................................ 8

49 Pa. Code § 40.171 ...................................................................................................................... 8

Defendants HCR ManorCare, Inc. ("HCRMC") and Heartland Employment Services, LLC ("Heartland Services") submit this rebuttal in support of their Motion to Dismiss the Second Amended Complaint ("Complaint" or "Compl.") of Relator Patrick Carson. Unlike the prior Relators Ribik and Slough, Carson amended and served his Complaint after the government's intervention and seeks to proceed on his federal FCA Counts through his own Complaint rather than the government's complaint. Carson persists in this argument even though he now explicitly concedes that his Counts 1, 2, 5 and 6 were superseded by the government's intervention. The issue is not whether the Court has jurisdiction over the government's identical claims, it is whether Carson can separately proceed on these claims with his own Complaint. He cannot because he was not the first relator in this action to file a complaint based on the fraud alleged in his pleading, and as such the Court is without jurisdiction to hear his FCA and Michigan FCA claims. This reason alone warrants dismissal of Counts 1 through 8, and Count 18 of his Complaint and there is no need for the court to decide the other issues with respect to these claims. In any event, Carson's Complaint is impermissibly based on public disclosures, and his FCA claims and remaining conspiracy, retaliation and state law claims also fail for the reasons set forth below.

1. **Carson's Claims are Not Properly Before This Court and Should Be Dismissed Pursuant to Rule 12(b)(1).**

   (a) Carson concedes that his Complaint is based on key facts that are also underlying the pending actions filed by other Relators and thus Counts 1 through 8 and Count 18 of the Complaint are barred by the first-to-file doctrine.

The first-to-file bar is a jurisdictional, "absolute, unambiguous exception-free rule." *See United States ex rel. Carter v. Haliburton Co.*, 710 F.3d 171, 181 (4th Cir. 2013) (citing *United States ex rel. LaCorte v. Wagner,* 185 F.3d 188, 191 (4th Cir. 1999)), *aff'd in part, rev'd in part and remanded sub nom. Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, 135

- 1 -

S. Ct. 1970 (2015).[1]  This rule bars Carson's FCA and Michigan FCA claims and the Court need not reach other grounds to dismiss these claims.[2]  Carson is fundamentally incorrect in his argument, unsupported by any statutory or case citation, that the first-to-file bar was mooted by the consolidation of his action with the other Relators' actions or by the government's intervention in the consolidated action. Opp. at 9.  *See Rockwell Int'l Corp. v. United States,* 549 U.S. 457, 477-78 (2007) (relator should still be dismissed after government's intervention for failing to meet jurisdictional prerequisites, in this case the public disclosure bar); *see also United States ex rel. Denenea v. Allstate Ins. Co.*, No. 07–2795, 2011 WL 231780, at *3 (E.D. La. Jan. 24, 2011) ("[A] relator cannot avoid the first-to-file bar by consolidating his claim with an earlier action."); *Haliburton*, 710 F.3d at 181 ("[W]hoever wins the race to the courthouse prevails and the other case must be dismissed.").[3]

Analyzing the first-to-file bar is a two-step process, first determining whether the prior-filed action was pending at the time the later-filed action was brought, and second determining if the claims in the later-filed action plead the same material elements of fraud.  *See Halliburton* at 181-182; s*ee also Beauchamp*, 933 F. Supp. 2d at 835.  In his Opposition, Carson acknowledges the triggering element:  that the allegations of fraud in his Complaint "overlap somewhat with the allegations in the previously filed complaints in the consolidated litigation" which were

---

[1] Carson is also wrong in claiming without any case authority that the first-to-file bar is not jurisdictional in the Fourth Circuit.  Opp. at 9 n.7; *see Haliburton*, 710 F.3d at 181 ("Section 3730(b)(5) is jurisdictional and if an action is later filed that is based on the facts underlying the pending case, the court must dismiss the later case for lack of jurisdiction.") (citation omitted); *accord United States ex rel. Beauchamp v. Academi Training Ctr., Inc.*, 933 F. Supp. 2d 825, 835 (E.D. Va. 2013).

[2] Carson acknowledges that the Michigan FCA (Count 18) contains a comparable first-to-file bar as the federal FCA.  Opp. at 7 n.6.

[3] Carson suggests that if the Court is going to consider the first-to-file rule he should be granted further briefing.  Opp. at 7 n.5.  But he has had a full opportunity to address this issue in his Opposition and apparently declined to do so.

pending at the time he filed his action. Opp. at 8. Carson specifically concedes that he "and the other relators allege that the Defendants applied undue pressure on their rehabilitation staff members to unlawfully increase RUG levels without regard to medical necessity." Opp. at 8. Although Carson claims "the similarities end there," the two previous Relators, like Carson, also alleged: (1) unnecessary amounts of therapy, (2) unnecessary disciplines of therapy, (3) delayed discharge dates, (4) double-billing, (5) inflation of time entries, (6) billing for unskilled services, and (7) billing for services not provided. *See* Defendants' Memorandum in Support of Motion to Dismiss ("Def. Memo.") at 7-8 (describing Slough's and Ribik's pleadings). Based on the allegations raised by other Relators, the government already was equipped to investigate Carson's allegations of fraud. *See Beauchamp*, 933 F. Supp. 2d at 835 (describing the goal of the first-to-file inquiry).

Carson argues without any factual support that his allegations "go well beyond" and "include fraudulent schemes that are wholly additional" to Relators Ribik and Slough. Opp. 8. Despite this argument, he only identified two differences in his Complaint: first, that he alleged that Defendants used certain treatment modalities to deliver unnecessary therapy, and second, that he alleged violations of certain State FCAs for the identical conduct. Opp. at 8.[4] As to use of modalities, Carson's allegations do not describe a wholly additional fraud, but rather just a different "mechanism" for providing unnecessary services through modalities (therapy tools). Opp. at 8. Carson does not allege any different "material elements of fraud" to distinguish his allegations from the previous Relators' allegations. *See Haliburton*, 710 F.3d at 182 (under the "material elements" test, relator cannot avoid first-to-file bar "by simply adding factual details or

---

[4] The fact that Carson was the only Relator to plead State law violations for the exact same conduct has no relevance whatsoever to the application of the first-to-file rule to his federal FCA claims.

- 3 -

geographic locations to the essential or material elements of a fraud claim against the same defendant described in a prior complaint"). The government was already equipped to investigate the mechanisms through which any extra therapy was provided or reimbursed based on the allegations made by the prior two Relators. *See Beauchamp*, 933 F. Supp. 2d at 835.[5] As such, Counts 1 through 8 and Count 18 of Carson's Complaint can be dismissed on first-to-file grounds alone.

    (b)    <u>Carson concedes that Counts 1, 2, 5 and 6 of his Complaint are superseded by the government's complaint in intervention.</u>

Carson concedes that "Counts 1, 2, 5 and 6 of his Complaint are superseded by the Government's complaint." Opp. at 9-10. But despite the government's intervention in the consolidated action, Carson thereafter filed his current Complaint reasserting the same FCA claims on his own behalf.[6] While a relator who was first to file can remain a party notwithstanding the government's intervention, *see* § 3730(c)(1), Carson cannot separately proceed with Counts 1, 2, 5 and 6 and they should be dismissed.[7] *See* Def. Memo. at 8-9.

---

[5] Carson relies on and misstates the holding of *Beauchamp*. Opp. at 8. The court in *Beauchamp* concluded that the relator had alleged two different schemes. One scheme was barred by the first-to-file bar because it was based on the same material elements as a fraud alleged in a pending case, that is, false certifications about what contractual roles and positions certain individuals were fulfilling under a government contract. 933 F. Supp. at 836. The court concluded that a second scheme alleged a wholly different fraud that was not barred, that is, the falsification of records of contract-mandated firearms training. *Id.* at 837-38. The court explained: "[b]eyond the commonality of 'unqualified personnel,' it is clear that these two schemes do not share material elements of fraud . . . ." *Id.*

[6] In this regard, Carson's reassertion of the FCA counts after the government's intervention sets him apart from Relators Ribik and Slough, who deferred to the government's control of the action and did not amend or serve their complaints after the intervention. *Cf.* Opp. at 10 (suggesting all three Relators are similarly situated).

[7] Because § 3730(b) provides for government control of "the action," referring to "a civil action for a violation of section 3729," even if Carson was first-to-file, which he was not, he should not be able to proceed separately on reverse-false-claim or conspiracy counts (Counts 3, 4, 7 and 8) which he also brings under § 3729 and were rejected by the government.

(c) Carson is not an original source of the publicly-disclosed allegations.

Carson admits there are "vague similarities between [his] allegations and the purported examples" of public disclosures that Defendants contend present a jurisdictional bar to his action, in particular with respect to disclosures of "improper billing practices by skilled nursing facilities, including HCR Manorcare." Opp. at 11-12. These similarities support an inference that his Complaint is at least partially derived from the public disclosures and thus barred under § 3730(e)(4)(A). *See* Def. Memo. at 9-11; *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 351 (4th Cir. 2009) (actions "even partly" derived from public disclosures are barred).

To escape application of the public disclosure bar Carson contends he qualifies for the "original source" exception. Opp. at 12. But as explained in Defendant's Memorandum, Carson failed to plead a critical element of the original source exception—the voluntary provision of information to the government before filing the action—and Carson also does not have "direct and independent knowledge of the information on which the allegations are based." *See* Def. Memo. at 11-12, 16-18.

**2. Carson's Claims are Not Plausibly or Sufficiently Pleaded and Should Be Dismissed Pursuant to Rules 9(b) and 12(b)(6).**

(a) Carson did not plead particularized facts regarding the submission or identity of any false claims as required by Rule 9(b).

Under the Rule 9(b) standard, Carson cannot dispute the numerous deficiencies in his Complaint, including his failure to connect his allegations regarding treatment to any false claim actually presented for government reimbursement—a critical defect requiring dismissal. *See* Def. Memo. at 14-15; *see also United States ex rel. Nathan v. Takeda Pharms. N. Am.*, 707 F.3d 451, 456-57 (4th Cir. 2013) (allegations are insufficient if the alleged conduct "could have led, but need not necessarily have led, to the submission of false claims"). In addition, Carson does not dispute that he lacks personal knowledge about any activities at facilities other than the

Yeadon, Pennsylvania location where he worked; activities in any of the States whose FCAs he invokes; or activities following his November 9, 2009 termination. *See* Def. Memo. at 16-18, 27-28. Carson's speculation that similar alleged conduct may have occurred at other facilities or may have continued after his termination because he "has no reason to believe" otherwise (Opp. at 28) fails to satisfy the requirements of Rule 9(b). *See* Def. Memo. at 16-18.[8]

      (b)    <u>Carson concedes his allegations do not establish any impact to Medicaid claims.</u>

In his Opposition, Carson concedes that under the prospective Medicaid reimbursement frameworks adopted in some unspecified States, the amount of reimbursement is not directly related to the amount of time or services submitted. Opp. at 20; *see also* Def. Memo. at 20-22. Because he fails to allege how any of his allegations would ultimately impact any claim for Medicaid reimbursement and under which States' Medicaid programs, Carson fails to allege any false claim involving Medicaid or under any State FCA. *See United States ex rel. Rostholder v. Omnicare, Inc.*, 745 F.3d 694, 702 (4th Cir. 2014) (FCA is not designed to police regulatory violations that do not impact an actual claim), *cert. denied*, 135 S. Ct. 85 (2014).

      (c)    <u>Carson did not sufficiently plead a conspiracy claim.</u>

With respect to his FCA conspiracy claims (Count 4 and 7), Carson acknowledges that "a parent corporate and its wholly owned subsidiaries . . . are legally incapable of forming a conspiracy with one another." Opp. at 20-21 (quoting *Copperweld Corp. v. Indep. Tube Corp.*,

---

[8] Carson's failure to include any allegations at all implicating Heartland Employment Services, LLC in wrongful conduct requires dismissal of his claims against that defendant. *See* Def. Memo at 16 n.12. Carson's Opposition now attempts to supplement the allegations in the Complaint by claiming Heartland Employment Services, LLC had an administrative role with respect to his employment. Opp. at 15 n.10. But arguments in an opposition brief cannot supplement a complaint, *see Campbell ex rel. Equity Units Holders v. Am. Int'l Grp., Inc.*, 86 F. Supp. 3d 464, 472 n.9 (E.D. Va.) *aff'd sub nom. Campbell v. Am. Int'l Grp., Inc.*, 616 F. App'x 74 (4th Cir. 2015), and, regardless, Carson still fails to implicate Heartland Employment Services, LLC in any wrongdoing.

467 U.S. 752, 773-74 (1984)).[9] Moreover, the intra-corporate conspiracy doctrine highlights just one of many defects with respect to Carson's conspiracy claim. Just as important is Carson's failure to plead any facts supporting the elements of such claim, including who allegedly participated in the conspiracy, when the alleged agreement was made, what it included, what the parties allegedly were seeking to accomplish, and what steps were taken in furtherance of the conspiracy. *See* Def. Memo. at 22-23 (citing, *inter alia*, *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 790 (4th Cir. 1999)). Carson's conclusory allegation that there was a conspiracy is not sufficient to plead a claim.

    (d)    <u>Carson did not sufficiently plead a retaliation claim.</u>

Carson's conclusory statement that he was terminated due to his complaints about fraudulent billing practices (Compl. ¶ 149) is insufficient to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009); Def. Memo. at 23-25. Carson contends the Court should infer that someone at HCRMC must have terminated him as a result of his internal complaints because (1) there was "temporal proximity" between his alleged report to corporate compliance on November 5, 2009 and his termination, and (2) the reason given for his termination allegedly was a "pretext." Opp. at 25-26. But without particularized factual allegations about, *inter alia*, who terminated Carson, what they knew, what their alleged motivations were, and why the stated

---

[9] Contrary to Carson's suggestion, the intracompany conspiracy doctrine was not narrowed by the antitrust principle that "corporate relationships . . . are not determinative of the applicability of the Sherman Act." Opp. at 21. Instead, the Supreme Court has recognized that in certain contexts, the intracompany conspiracy doctrine also may apply to legally-separate entities that share "a single center of decisionmaking and . . . control a single aggregation of economic power." *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 194 (2010); *accord Copperweld*, 467 U.S. at 772-74. Courts have looked to antitrust precedents for guidance in the context of FCA conspiracy claims. *See, e.g.*, *United States ex rel. DRC, Inc. v. Custer Battles, LLC.*, 376 F. Supp. 2d 617, 651 & n.89 (E.D. Va. 2005) (concluding that a conspiracy among the related defendants was a "legal impossibility," relying *inter alia* on *Copperweld*, 467 U.S. at 768), *aff'd in part, rev'd in part on other grounds*, 562 F.3d 295 (4th Cir. 2009).

reason was a pretext, Carson's Complaint fails to state a plausible claim for retaliation.  *See Phipps v. Agape Counseling & Therapeutic Servs., Inc.*, No. 3:13-CV-166, 2015 WL 2452448, at *8 (E.D. Va. May 21, 2015) (employer must be on notice that litigation is a reasonable possibility); *see also Vander Boegh v. EnergySolutions, Inc.*, 536 Fed. Appx. 522, 530 (6th Cir. 2013) (decision-maker's knowledge of protected activity is an essential element of unlawful retaliation).  Moreover, Carson concedes he changed a patient's treatment goal to a goal which he claims was approved by a physical therapist even though he acknowledges that "only a physical therapist may change a treatment goal" under the Pennsylvania Physical Therapy Practice Act.  Compl. ¶ 156; *see also* 63 Pa. Cons. Stat. § 1304 (physical therapy licensure requirements); 49 Pa. Code §§ 40.32(c), 40.53 & 40.171 (prohibiting physical therapist assistant from performing certain skilled functions including modification of a patient plan of care or adjustment of treatment programs).  This admission by Carson that he acted outside the legally authorized scope of his certification as a physical therapy assistant presents a valid non-retaliatory basis for Carson's termination; therefore, his conclusory assertion of a pretext is insufficient to state a claim for retaliation.

(e)     Carson did not sufficiently plead any State FCA claim.

Carson's State FCA counts also should be dismissed because they were barred by prior public disclosures and they were not particularly and plausibly pled.  *See* Def. Memo. at 25.  Moreover, Carson only worked at a single facility in Pennsylvania, has alleged no Pennsylvania State law violations, and provides no basis for his alleged knowledge of activities at any other facility in Pennsylvania let alone facilities in other States.  Carson has failed to allege with Rule 9(b) particularity any claims for reimbursement filed in other states and each of his State FCA counts should be dismissed.  Def. Memo. at 17 (citing Compl. ¶¶ 9, 30, 102).

Carson is also wrong in his attempts to avoid the procedural bars to his Maryland and Delaware claims. Opp. at 27 n.12; *see* Def. Memo. at 26. Because a relator may not proceed with a Maryland FCA claim unless the State elects to intervene "before [the] unsealing [of] the complaint," Md. Code Ann., Health-Gen § 2-604(a)(7), Carson's Maryland FCA allegations cannot be resurrected if Maryland intervenes at some later point in time. As for the Delaware FCA, Carson argues that a determination by the Delaware Attorney General that there was "substantial evidence" that a violation has occurred "is simply not a requirement under the Delaware FCA." Opp. at 27 n.12. Carson completely ignores the fact that the statute did include that requirement prior to July 16, 2009 and such requirement remains applicable to any claims allegedly submitted prior to July 16, 2009. *See* Def. Memo. at 26 (citing cases). Due to the failure of these procedural prerequisites, Carson's Maryland FCA claims and affected Delaware FCA claims should be dismissed with prejudice.

**3.    Carson Does Not Dispute That His Allegations Are Time-Barred or Time-Limited.**

Carson does not dispute that (1) each of his claims should be limited by the relevant statute of limitations, (2) his FCA claims should be limited to claims allegedly submitted under the then-effective version of the FCA, and (3) his claims under the Georgia, New Jersey and Oklahoma FCAs should be limited in light of those statutes' effective dates. *See* Def. Memo. at 27-29. Carson contends only that his FCA allegations should not be limited to the timeframe of his employment with HCRMC—August 29, 2005 through November 9, 2009—because he "has no reason to believe" that Defendants halted their conduct after he was terminated. Opp. at 27-28. In so contending, Carson tacitly admits he has no idea what occurred after (or before) his period of employment. Carson's speculation and conjecture about other time periods is insufficient to state a claim under Rule 8, much less allege false claims with particularity as required by Rule 9(b). *See Gillespie v. Marriott Int'l, Inc.*, No. 1:15-CV-350 JCC/IDD, 2015

WL 2374610, at *3 (E.D. Va. May 18, 2015) (citing *Twombly*, 550 U.S. at 555).  In addition to the other time limitations discussed in Defendants' Memorandum, Carson's allegations should be limited to claims submitted during his period of employment.

**4.      Dismissal of the Complaint Should Be With Prejudice.**

Although Carson requests an opportunity to amend his (second amended) Complaint after its dismissal, he acknowledges that amendment is not appropriate if it would be futile.  Opp. at 28-29; *see also Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616, 619 n.2 (4th Cir. 2015) (affirming denial of request for leave to amend on grounds of futility).  With respect to the first-to-file and public disclosure bars, Carson cannot cure those jurisdictional defects through amendment.  With respect to dismissal pursuant to Rules 9(b) and 12(b)(6), Carson attempts to minimize the defects in his Complaint by suggesting they can be remedied through "scriveners' additions" and "ministerial amendments" (Opp. at 29), when the Complaint fails to plead the submission of any false claim at even the most basic level.  Carson's allegations confirm that there is no reason to believe he could add any material information even if he were given a chance to further amend, since his role as a physical therapy assistant did not provide him an opportunity to develop knowledge about the submission of claims, his location in Pennsylvania did not provide him an opportunity to develop knowledge about activities in other States, and his termination in November 9, 2009 did not provide him an opportunity to develop knowledge about any additional activities after that date and certainly not since he filed his May 11, 2015 Second Amended Complaint.  For these reasons, the dismissal of the Complaint should be with prejudice.

**5.      Conclusion**

Because Carson's allegations are barred by the first-to-file and public disclosure bars, are superseded, and are insufficient to plausibly and particularly allege a claim under the FCA or any

State FCA, the Defendants respectfully request that the Court dismiss each count of the Complaint with prejudice.

Dated:  November 12, 2015            Respectfully submitted,

                                                     HCR MANORCARE, INC. (SUED AS HCR MANORCARE AND HCR MANORCARE, INC.) AND HEARTLAND EMPLOYMENT SERVICES, LLC
By Counsel

/s/_____
Katherine J. Seikaly (VSB No. 71438)
Eric A. Dubelier (*pro hac vice*)
Carol C. Loepere (*pro hac vice*)
Daniel Z. Herbst (*pro hac vice*)
Reed Smith LLP
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, D.C. 20005
202-414-9200 (phone)
202-414-9299 (fax)
kseikaly@reedsmith.com
edubelier@reedsmith.com
cloepere@reedsmith.com
dherbst@reedsmith.com

Brent R. Gary (VSB No. 66592)
REED SMITH LLP
3110 Fairview Park Drive
Suite 1400
Falls Church, VA 22042
703-641-4200 (phone)
703-641-4340 (fax)
bgary@reedsmith.com

Melissa A. Geist (*pro hac vice)*
REED SMITH LLP
136 Main Street
Suite 250
Princeton, NJ 08540
(609) 987-0050 (phone)
(609) 951-0824 (fax)
mgeist@reedsmith.com

Marilyn A. Moberg (*pro hac vice pending*)
REED SMITH LLP
355 South Grand Avenue
Suite 2800
Los Angeles, CA 90071
(213) 457 8035 (phone)
(213) 457 8080 (fax)
mmoberg@reedsmith.com

*Counsel for Defendants HCR ManorCare, Inc. (sued as HCR ManorCare and HCR ManorCare, Inc.) and Heartland Employment Services, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of November 2015, the foregoing was electronically filed with the clerk of court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

/s/
Brent R. Gary (VSB No. 66592)
REED SMITH LLP
3110 Fairview Park Drive
Suite 1400
Falls Church, VA 22042
703-641-4200 (phone)
703-641-4340 (fax)
bgary@reedsmith.com

*Counsel for Defendants HCR ManorCare, Inc. (sued as HCR ManorCare and HCR ManorCare, Inc.) and Heartland Employment Services, LLC*