**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, | |
| Plaintiffs, | CIVIL ACTION NUMBERS: |
| v. | 1:09-cv-0013 (CMH/TCB) - LEAD<br>1:11-cv-1054 (CMH/TCB) |
| HCR MANORCARE, INC., *et al.*, | 1:14-cv-1228 (CMH/TCB) |
| Defendants. | |

**DEFENDANTS HCR MANORCARE, HCR MANORCARE, INC., AND
HEARTLAND EMPLOYMENT SERVICES, LLC'S
MEMORANDUM IN SUPPORT OF THEIR RENEWED MOTION TO DISMISS THE
SECOND AMENDED COMPLAINT OF RELATOR PATRICK GERARD CARSON**

Katherine J. Seikaly (VSB No. 71438)
Eric A. Dubelier (*pro hac vice*)
Carol C. Loepere (*pro hac vice*)
REED SMITH LLP
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, D.C. 20005
202-414-9200 (phone)
202-414-9299 (fax)
kseikaly@reedsmith.com
edubelier@reedsmith.com
cloepere@reedsmith.com
dherbst@reedsmith.com

Melissa A. Geist (*pro hac vice*)
REED SMITH LLP
136 Main Street, Suite 250
Princeton, NJ 08540
(609) 987-0050 (phone)
(609) 951-0824 (fax)
mgeist@reedsmith.com

Marilyn A. Moberg (*pro hac vice*)
REED SMITH LLP
355 South Grand Avenue
Suite 2800
Los Angeles, CA 90071
(213) 457 8035 (phone)
(213) 457 8080 (fax)
mmoberg@reedsmith.com

*Counsel for Defendant HCR ManorCare, Inc. (sued as HCR ManorCare and HCR ManorCare,
Inc.) and Heartland Employment Services, LLC*

**TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................1

II.   BACKGROUND ..................................................................................................4

      A.   Beginning In March 2010, A Government Investigation Of Alleged
           Overbilling And Providing Unnecessary Therapy To Patients By HCRMC
           And Others Is Publicly Reported ...........................................................4

      B.   Following The Public Reports Of The Government's Investigation,
           Relator Filed His *Qui Tam* Action, Making Identical Allegations Against
           HCRMC ...................................................................................................5

      C.   The Fourth Circuit Affirmed Dismissal Of Relator's Federal FCA *Qui
           Tam* Claims And Remanded For Further Consideration Of The State FCA
           *Qui Tam* Claims And Retaliation Claim ................................................6

III.  ARGUMENT .......................................................................................................7

      A.   Relator's State FCA Claims (Counts 10 to 25) Should Be Dismissed ..................7

           1.   Relator's state FCA claims fail on public disclosure grounds....................8

           2.   Relator's state FCA claims are inadequately pled under Federal
                Rules of Civil Procedure 8 and 9(b) ..............................................13

           3.   Relator's state FCA claims are deficient for particular reasons
                having to do with the individual state FCA statutes................................19

           4.   The Court may decline to exercise supplemental jurisdiction over
                Relator's state FCA claims .................................................................21

      B.   Relator's Retaliation Claim (Count 9) Should Be Dismissed ..............................22

           1.   Relator fails to plead that he was retaliated against "as a result of"
                his alleged protected activity ..............................................................22

           2.   Relator fails to plead that he engaged in "protected activity" .................24

           3.   Relator fails to plead that Defendants had notice of any protected
                activity ...............................................................................................26

      C.   If Any Of Relator's Claims Survive Dismissal, Certain Allegations Are
           Time-Barred Or Time-Limited ...........................................................27

           1.   Relator's claims are limited by the relevant statutes of limitations .........27

           2.   Relator's claims under the Georgia, New Jersey, and Oklahoma
                FCAs should be limited in light of those statutes' effective dates...........28

IV.   CONCLUSION ..................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................................13

*Bender v. Suburban Hosp.*,
   998 F. Supp. 631 (D. Md. 1998), *aff'd*, 159 F.3d 186 (4th Cir. 1998)....................23

*Bender v. Suburban Hosp., Inc.*,
   159 F.3d 186 (4th Cir. 1998) ..............................................................................22, 23

*Cade v. Progressive Cmty. Healthcare, Inc.*,
   No. 1:09-CV-3522, 2011 WL 2837648 (N.D. Ga. July 14, 2011) .........................7

*Copperweld Corp. v. Indep. Tube Corp.*,
   467 U.S. 752 (1984) ..................................................................................................18

*Corsello v. Lincare, Inc.*,
   428 F.3d 1008 (11th Cir. 2005) ...............................................................................18

*Eberhardt v. Integrated Design & Const., Inc.*,
   167 F.3d 861 (4th Cir. 1999) .......................................................................22, 26, 27

*ESAB Group, Inc. v. Centricut, Inc.*,
   126 F.3d 617 (4th Cir. 1997) ....................................................................................21

*Glynn v. EDO Corp.*,
   710 F.3d 209 (4th Cir. 2013) ....................................................................................26

*Goodman v. Praxair, Inc.*,
   494 F.3d 458 (4th Cir. 2007) ....................................................................................27

*Harrison v. Westinghouse Savannah River Co.*,
   176 F.3d 776 (4th Cir. 1999) ..............................................................................14, 18

*Jefferson v. Ambroz*,
   90 F.3d 1291 (7th Cir. 1996) ....................................................................................23

*Kuhn v. LaPorte Cnty. Comp. Mental Health Council*,
   No. 3:06–CV–317 CAN, 2008 WL 4099883 (N.D. Ind. Sept. 4, 2008)..................7

*Lee v. Computer Sci. Corp.*,
No. 1:14-cv-581, 2015 WL 778995 (E.D. Va. Feb. 24, 2015) .............................................25

*Mann v. Heckler & Koch Defense, Inc.*,
630 F.3d 338 (4th Cir. 2010) ................................................................ 22, 24, 26

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
591 F.3d 250 (4th Cir. 2009) ...........................................................................24

*Oberhand v. Dir., Div. of Taxation*,
940 A.2d 1202 (N.J. 2008) ...............................................................................29

*Oklahoma ex rel. Crawford v. Guardian Life Ins. Co. of Am.*,
954 P.2d 1235 (Okla. 1998) .............................................................................29

*Painter's Mill Grille, LLC v. Brown*,
716 F.3d 342 (4th Cir.2013) ............................................................................24

*Phipps v. Agape Counseling & Therapeutic Servs., Inc.*,
No. 3:I3-CV-I66, 2015 WL 2452448 (E.D. Va. May 21, 2015) .................................. 7, 14, 26

*Richmond, Fredericksburg & Potomac R.R. v. Forst*,
4 F.3d 244 (4th Cir. 1993) ...............................................................................27

*Scates v. Shenandoah Mem'l Hosp.*,
No. 5:15-CV-00032, 2015 WL 6143457 (W.D. Va. Oct. 19, 2015)...................................26

*U.S. ex rel. Ahumada v. NISH*,
756 F.3d 268 (4th Cir. 2014) ...................................................................*passim*

*U.S. ex rel. Bartz v. Ortho-McNeil Pharm., Inc.*,
856 F. Supp. 2d 253 (D. Mass. 2012)....................................................................8

*U.S. ex rel. Black v. Health & Hosp. Corp. of Marion Cty.*,
No. RDB-08-0390, 2011 WL 1161737 (D. Md. Mar. 28, 2011), *aff'd,* 494 F.
App'x 285 (4th Cir. 2012) ...............................................................................11

*U.S. ex rel. Bogina v. Medline Indus., Inc.*,
809 F.3d 365 (7th Cir. 2016) ..................................................................... 17, 27

*U.S. ex rel. Boise v. Cephalon, Inc.*,
No. 08-287, 2015 WL 1724572 (E.D. Pa. Apr. 15, 2015)...................................................21

*U.S. ex rel. Brooks v. Lockheed Martin Corp.*,
423 F. Supp.2d 522 (D. Md. 2006) ...................................................................18

*U.S. ex rel. Carson v. Manor Care, Inc.*,
851 F.3d 293 (4th Cir. 2017) ..................................................... 6, 7, 20, 21

iii

*U.S. ex rel. Cestra v. Cephalon, Inc.*,
No. CIV.A. 14-1842, 2015 WL 3498761 (E.D. Pa. June 3, 2015) .......................................20

*U.S. ex rel. Clausen v. Lab. Corp. of Am.*,
290 F.3d 1301 (11th Cir. 2002) ................................................................................. 17, 28

*U.S. ex rel. Drakeford v. Tuomey*,
792 F.3d 364 (4th Cir. 2015) .......................................................................................15

*U.S. ex rel. Dugan v. ADT Sec. Servs.*,
No. DKC 2003-3485, 2009 WL 3232080 (D. Md. Sept. 29, 2009)...................................28

*U.S. ex rel. Duxbury v. Ortho Biotech Prods., LP*,
579 F.3d 13 (1st Cir. 2009).........................................................................................12

*U.S. ex rel. Garzione v. PAE Government Servs., Inc.*,
No. 1:15-cv-833, 2016 WL 775780 (E.D. Va. Feb. 25, 2016) ............................................25

*U.S. ex rel. Godfrey v. KBR, Inc.*,
360 F. App'x 407 (4th Cir. 2010) .................................................................................19

*U.S. ex rel. Hafter v. Spectrum Emergency Care, Inc.*,
190 F.3d 1156 (10th Cir. 1999) ...................................................................................12

*U.S. ex rel. Head v. Kane Co.*,
798 F. Supp. 2d 186 (D.D.C. 2011) ..............................................................................19

*U.S. ex rel. Helfer v. Associated Anesthesiologists of Springfield, Ltd.*,
No. 10-3076, 2014 WL 4198199 (C.D. Ill. Aug. 25, 2014) .................................................22

*U.S. ex rel. Herrera v. Bon Secours Cottage Health Servs.*,
665 F. Supp. 2d 782 (E.D. Mich. 2008) ......................................................................7, 19

*U.S. ex rel. Ibanez v. Bristol-Myers Squibb Co.*,
No. CIV.A. 1:11-CV-029, 2015 WL 1439054 (S.D. Ohio Mar. 27, 2015)............................22

*U.S. ex rel. Johnson v. Universal Health Servs., Inc.*,
889 F. Supp. 2d 791 (W.D. Va. 2012)..............................................................................7

*U.S. ex rel. Jones v. Collegiate Funding Servs., Inc.*,
469 F. App'x 244 (4th Cir. 2012) .............................................................................9, 11

*U.S. ex rel. Kester v. Novartis Pharm. Corp.*,
No. 11 CIV. 8196(CM), 2014 WL 2619014 (S.D.N.Y. June 10, 2014) ..................................8

*U.S. ex rel. King v. Solvay S.A.*,
No. CIV.A. H-06-2662, 2015 WL 925612 (S.D. Tex. Mar. 3, 2015)......................................8

iv

*U.S. ex rel. Marlar v. BWXT Y-12, L.L.C.*,
    525 F.3d 439 (6th Cir. 2008) ....................................................................... 17, 27

*U.S. ex rel. May v. Purdue Pharma L.P.*,
    737 F.3d 908 (4th Cir. 2013) ............................................................................. 8

*U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*,
    707 F.3d 451 (4th Cir. 2013) ........................................................................... 16

*U.S. ex rel. Nudelman v. Int'l Rehab. Assoc., Inc.*,
    No. 00-1837, 2006 WL 925035 (E.D. Pa. Apr. 4, 2006) ...................................... 7

*U.S. ex rel. Owens v. First Kuwaiti General Trading*,
    612 F.3d 724 (4th cir. 2010) ........................................................................... 24

*U.S. ex rel. Palmieri v. Alpharma, Inc.*,
    928 F. Supp. 2d 840 (D. Md. 2013) .................................................................. 14

*U.S. ex rel. Parks v. Alpharma, Inc.*,
    493 F. App'x 380 (4th Cir. 2012) ............................................................... 26, 27

*U.S. ex rel. Rector v. Bon Secours Richmond Health Corp.*,
    No. 3:11-CV-38, 2014 WL 1493568 (E.D. Va. Apr. 14, 2014) ........................... 25

*U.S. ex rel. Ruhe v. Masimo Corp.*,
    929 F. Supp. 2d 1033 (C.D. Cal. 2012) ............................................................ 18

*U.S. ex rel. Streck v. Allergan, Inc.*,
    894 F. Supp. 2d 584 (E.D. Pa. 2012) ............................................................... 21

*U.S. ex rel. Vuyyuru v. Jadhav*,
    555 F.3d 337 (4th Cir. 2009) .................................................................. 8, 9, 12

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
    525 F.3d 370 (4th Cir. 2008) .............................................................. 14, 15, 16

*U.S. ex rel. Yesudian v. Howard Univ.*,
    153 F.3d 731 (D.C. Cir. 1998) ........................................................................ 26

*United States v. APS Healthcare, Inc.*,
    No. 2:11-cv-01454-MMD-GWF, 2013 WL 420402 (D. Nev. Jan. 30, 2013) ......... 7

*United States v. Domestic Indus., Inc.*,
    32 F. Supp. 2d 855 (E.D. Va. 1999) ................................................................ 21

*United States v. Hind Health Care, Inc.*,
    No. 15-CV-04928-LHK, 2017 WL 190254 (N.D. Cal. Jan. 16, 2017) ................. 20

*United States v. Johnson Controls, Inc.*,
   457 F.3d 1009 (9th Cir. 2006) ............................................................................7

*Virginia ex rel. Hunter Labs., LLC v. Quest Diagnostics, Inc.*,
   No. 1:13-CV-1129 GBL/TCB, 2014 WL 1928211 (E.D. Va. May 13, 2014) ...... 16

*Walker v. Willis*,
   435 S.E.2d 621 (Ga. Ct. App. 1993) ...............................................................29

*Young v. CHS Middle East, LLC*,
   611 F. App'x 130 (4th Cir. 2015) ...................................................................25

*Zahodnick v. Int'l Bus. Machines Corp.*,
   135 F.3d 911 (4th Cir. 1997) ..........................................................................26

**Statutes**

63 Pa. C.S. § 1304 ..............................................................................................23

31 U.S.C. § 3730(b)(5) ........................................................................................1

31 U.S.C. § 3730(e)(4)(A) (2000) ....................................................................2, 8

31 U.S.C. § 3730(e)(4)(B) ............................................................................11, 12

31 U.S.C. § 3730(h) ..............................................................................22, 24, 25

31 U.S.C. § 3730(h)(3) .......................................................................................28

42 U.S.C. § 1395y(a)(1)(A) .................................................................................15

740 Ill. Comp. Stat. 175/5(b) .............................................................................28

Cal. Gov't Code § 12652(d)(3) .............................................................................8

Cal. Gov't Code § 12654(a) ................................................................................28

Colo. Rev. Stat. § 25.5-4-306(5)(c) ......................................................................8

Colo. Rev. Stat. § 25.5-4-307 .............................................................................28

Del. Code Ann. Title 6, § 1203(b)(4)(b) (2000 version) ...............................20-21

Del. Code Ann. Title 6, § 1206(b) ........................................................................8

Del. Code Ann. Title 6, § 1209(a) ......................................................................28

Fla. Stat. § 68.087(3) ...........................................................................................8

Fla. Stat. § 68.089(1) ...................................................................................28

Ga. Code Ann. § 49-4-168.1 (eff. May 24, 2007) ......................................29

Ga. Code Ann. § 49-4-168.2(l)(2) ...............................................................8

Ga. Code Ann. § 49-4-168.5 .......................................................................28

Ill. Comp. Stat. 175/4(e)(4) ..........................................................................8

Ind. Code § 5-11-5.5-7(f) .............................................................................8

Ind. Code § 5-11-5.5-9(b) ...........................................................................28

Md. Code Ann., Health-Gen. § 2-604(a)(7) ..............................................20

Md. Code Ann., Health-Gen. § 2-609(a) ...................................................28

Md. Code Ann., Health-Gen. § 2-606(d) .....................................................8

Mich. Comp. Laws Ann. § 400.610a(12) ...................................................19

Mich. Comp. Laws Ann. § 400.610a(13) .....................................................8

Mich. Comp. Laws Ann. § 400.614 ............................................................28

N.C. Gen. Stat. § 1-611(d) ............................................................................8

N.C. Gen. Stat. § 1-615(a) ..........................................................................28

N.J. Stat. Ann. § 2A:32C-3 .........................................................................29

N.J. Stat. Ann. § 2A:32C-9(c) ......................................................................8

N.J. Stat. Ann. § 2A:32C-11 .......................................................................28

Nev. Rev. Stat. § 357.100 .............................................................................8

Nev. Rev. Stat. § 357.170 ............................................................................28

Okla. Stat. Title 63, § 5053.1 ......................................................................29

Okla. Stat. Title 63, § 5053.5(B) ..................................................................8

Okla. Stat. Title 63, § 5053.6 ......................................................................28

Tex. Hum. Res. Code Ann. § 36.104 ..........................................................28

Tex. Hum. Res. Code Ann. § 36.113 ............................................................8

Va. Code Ann. § 8.01-216.8 ................................................................................. 8, 11, 12

Va. Code Ann. § 8.01-216.9 .........................................................................................28

Wis. Stat. § 893.981 ....................................................................................................28

**Regulations**

42 C.F.R. § 483.20(j)(2) ..............................................................................................15

62 Fed. Reg. 67,174, 67,202-03 (Dec. 23, 1997) .......................................................15

76 Fed. Reg. 26,364, 26,393 (May 6, 2011) ...............................................................10

49 Pa. Code §§ 40.32(c), 40.53(b)(3), and 40.171(b) .............................................6, 23

**Other Authorities**

HHS-OIG, Questionable Billing by Skilled Nursing Facilities, Publ. No. OEI-02-
     09-00202 (Dec. 2010), http://www.oig.hhs.gov/oei/reports/oei-02-09-
     00202.pdf ......................................................................................................5, 10

HHS-OIG, Changes in Skilled Nursing Facilities Billing in FY 2011, Publ. No.
     OEI-02-09-00204 (July 8, 2011), http://oig.hhs.gov/oei/reports/oei-02-09-
     00204.pdf ..........................................................................................................10

HHS-OIG, Semiannual Report to Congress (Oct. 1, 2010 - Mar. 31, 2011),
     https://oig.hhs.gov/reports-and-
     publications/archives/semiannual/2011/spring/spring2011_semiannual.pdf. ........10

Scott Higham and Dan Keating, *Review Heightens Concerns Over Medicare
     Billing at Nursing Homes*, Wash. Post, Mar. 29, 2010,
     http://www.washingtonpost.com/wp-
     dyn/content/article/2010/03/28/AR2010032802764.html (last visited May 5,
     2017) ...............................................................................................................4, 9

Following the U.S. Court of Appeals for the Fourth Circuit's decision affirming in part, and vacating in part, the Court's dismissal of the Second Amended Complaint ("Complaint") of Relator Patrick Carson ("Relator"), Defendants HCR ManorCare, Inc.[1] ("HCRMC") and Heartland Employment Services, LLC ("Heartland Services") (collectively, "Defendants") submit this memorandum in support of their renewed motion to dismiss Relator's remaining claims under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b).

## I.   <u>INTRODUCTION</u>

The Court previously dismissed Relator's Complaint in its entirety—including Relator's federal False Claims Act ("FCA") claims, state FCA claims, and federal FCA retaliation claim—under the FCA's first-to-file bar, 31 U.S.C. § 3730(b)(5), because Relator's Complaint contains the same material elements of fraud alleged in the pending action of Christine Ribik. On appeal, the Fourth Circuit held that the Court properly dismissed Relator's federal FCA claims. The Fourth Circuit, however, remanded with respect to Relator's FCA retaliation and state FCA claims, ruling that the FCA's first-to-file bar did not apply to Relator's FCA retaliation claim, and that the Court's Order dismissing Relator's Complaint did not indicate that the states apply the same first-to-file rule to their statutes. The Fourth Circuit acknowledged Defendants' alternative grounds for affirmance, but declined to consider those grounds, reasoning that the District Court should have that opportunity in the first instance. Defendants now move again to dismiss Relator's remaining claims.

Relator's state FCA claims (Counts 10 to 25) should be dismissed for multiple reasons.

---

[1]   Relator has sued "HCR ManorCare," an entity that does not exist, as a distinct and separate defendant from "HCR ManorCare, Inc." Defendants assume that Relator is referring to the same corporate entity when he references "HCR ManorCare" and "HCR ManorCare, Inc." Regardless, this motion is being filed on behalf of all Defendants to this action.

*First*, these state FCA claims fail on public disclosure grounds.  Each of the relevant state FCAs (except Wisconsin) includes a public disclosure bar that is interpreted in accord with the federal public disclosure bar at 31 U.S.C. § 3730(e)(4)(A) (2000), which precludes jurisdiction over FCA actions that are "based upon the public disclosure of allegations or transactions" in government and news media reports "unless . . . the person bringing the action is an original source of the information."  Here, prior to Relator filing any complaint, the Washington Post reported that HCRMC was under scrutiny by the U.S. Department of Health and Human Services' Office of Inspector General ("HHS-OIG") for improper billing and announced that "two nursing homes owned by HCR ManorCare put their residents in the most expensive billing category at nearly five times the national average."  The HHS-OIG confirmed this investigation in a public report issued prior to Relator filing his Original Complaint.  Relator relies only on "information and belief" that HCRMC employed improper billing practices because he never worked for Defendants in any state upon whose FCA he now relies.

*Second*, Relator's state FCA claims are inadequately pled under Rules 8 and 9(b).  There is a reason why no state joined this action; the excessive services that Relator alleges are reimbursed by Medicare, not Medicaid; and, as such, Relator has not adequately pled a state FCA claim.  Further, Relator fails to meet Rule 8's plausibility standard because he fails to plead an objective falsehood necessary to state a plausible claim.  In addition, Relator fails to meet Rule 9(b)'s particularity standard because he fails to plead the required "who, what, when, where, and why" of his state FCA claims.

*Third*, three of Relator's state FCA claims are deficient for specific reasons having to do with the individual state FCA statutes.  In particular, Relator's Michigan FCA claim fails on first-to-file grounds; Relator's Maryland FCA claim fails because Maryland did not intervene;

and Relator's Delaware FCA claim, to the extent it is based on acts prior to July 16, 2009, fails because the Delaware Attorney General did not determine that a substantial violation occurred.

*Fourth*, although Relator's state FCA claims should be dismissed on public disclosure grounds, as well as Rule 8 and 9(b) grounds, the Court may decline to exercise supplemental jurisdiction over Relator's state FCA claims.

In addition to dismissing Relator's state FCA claims (Counts 10 to 25), the Court should dismiss Relator's federal FCA retaliation claim (Count 9) because Relator fails to plead the essential elements of the claim.

*First*, Relator fails to plead that he was retaliated against "as a result of" his alleged protected activity.  Relator concedes in his complaint that he acted outside the legally authorized scope of his certification as a physical therapy assistant and that this unauthorized conduct was the reason Defendants provided for his discharge.  Together, these allegations establish that Defendants had a valid, non-retaliatory, non-pretextual basis for discharging Relator.

*Second*, Relator fails to plead that he engaged in "protected activity," which occurs when an employee's opposition to fraud takes place in a context where the conduct reasonably could lead to a viable FCA action.  Relator alleges only that he reported his "concerns" regarding Defendants' conduct.  But the alleged reporting of "concerns" does not show an effort to publicly expose fraud or a realistic likelihood of future FCA litigation.

*Third*, Relator fails to plead that Defendants had notice of any protected activity.  Here, Relator's "concerns" about supposed overbilling practices do not amount to threats or warnings that Defendants' conduct was illegal or fraudulent.

If any of Relator's claims survive dismissal, certain allegations are time-barred or time-limited.  Relator appears to allege that HCRMC submitted false claims sometime during his

period of HCRMC employment—August 29, 2005 through November 9, 2009.  For each the

state FCA claims (except for Wisconsin), a 6-year limitations period requires dismissal as to

claims allegedly submitted or paid prior to September 28, 2005.  In addition, Relator's claims

under the Georgia, New Jersey, and Oklahoma FCAs should be limited because they were not

enacted until 2007 and 2008—after the beginning of the relevant time period at issue in Relator's

Complaint.

For all of these reasons, and as detailed below, Relator's complaint is deficient and

should be dismissed.

## II.   <u>BACKGROUND</u>

### A.   BEGINNING IN MARCH 2010, A GOVERNMENT INVESTIGATION OF ALLEGED OVERBILLING AND PROVIDING UNNECESSARY THERAPY TO PATIENTS BY HCRMC AND OTHERS IS PUBLICLY REPORTED

On March 29, 2010, the Washington Post reported that HCRMC was one of several

skilled nursing facility ("SNF") operators under examination by the HHS-OIG for allegedly

increasing patient therapy levels beyond medical need.  *See* Scott Higham and Dan Keating,

*Review Heightens Concerns Over Medicare Billing at Nursing Homes*, Wash. Post, Mar. 29,

2010.[2]  This article described industry-wide allegations that SNF therapists were billing for

unnecessary therapy.  *Id.*  It further highlighted testimony given to Congress indicating that

"[f]acilities are paid for providing therapy even when a patient's need for and benefit from it has

not been demonstrated."  *Id.*  This article then tied these allegations specifically to the

Defendants in this case, reporting that "two nursing homes owned by HCR ManorCare put their

residents in the most expensive billing category at nearly five times the national average . . . ."

*Id.*

---

[2]      http://www.washingtonpost.com/wp-
dyn/content/article/2010/03/28/AR2010032802764.html (last visited May 5, 2017).

Thereafter, in December 2010, the HHS-OIG published a report on its investigation.  *See* HHS-OIG, Questionable Billing by Skilled Nursing Facilities, Publ. No. OEI-02-09-00202 (Dec. 2010)[3] (the "Report").   The Report found "that certain SNFs may be routinely placing beneficiaries into higher paying RUGs regardless of the beneficiaries' care and resource needs or keeping beneficiaries in [Medicare] Part A stays longer than necessary."  *Id.* at 14.

**B.  FOLLOWING THE PUBLIC REPORTS OF THE GOVERNMENT'S INVESTIGATION, RELATOR FILED HIS *QUI TAM* ACTION, MAKING IDENTICAL ALLEGATIONS AGAINST HCRMC**

On September 28, 2011, more than eighteen months after the Washington Post reported that HHS-OIG was investigating HCRMC, and nearly one year after the HHS-OIG issued its report on questionable billing practices, Relator filed his original complaint.  Case No. 11-1054, ECF No. 1 ("Original Complaint"), at ¶¶ 21-25.   This complaint made identical allegations regarding HCRMC's billing practices as the media and government had reported.  *Id.* at ¶¶ 98-145.  Relator asserted claims under the federal FCA and 16 state FCA statutes, all of which were based on the same underlying allegations.  *Id.* at ¶¶ 163-251.  No states have intervened as to Relator's state FCA claims.

Relator filed a Second Amended Complaint naming only HCRMC, HCR ManorCare, and Heartland Services as defendants.  Case No. 09-13, ECF No. 94-1 ("Second Amended Complaint").[4]  His allegations continued to track those already made public.

Relator in both his Original and Second Amended Complaints further alleged that his employment at an HCRMC-affiliated SNF was terminated in November 2009 in retaliation for his complaints about what he believed to be fraudulent billing practices.  Original Complaint at

---

[3]     http://www.oig.hhs.gov/oei/reports/oei-02-09-00202.pdf.

[4]     Relator previously had filed a First Amended Complaint in January 2012.  Case No. 11-1054, ECF No. 10-2.

¶¶ 146-155; Second Amended Complaint at ¶¶ 148-157.  His alleged internal complaints were spread across 33 months.  *Id.*  But Relator did not allege any ongoing retaliation or conflict between the time of his initial alleged complaint and his ultimate discharge.  Relator also acknowledged that HCRMC provided him with what constitutes a valid, non-retaliatory reason for his discharge—that he changed a patient's treatment goal in violation of 49 Pa. Code §§ 40.32(c), 40.53(b)(3), and 40.171(b).  *Id.* ¶ 156.

### C.   THE FOURTH CIRCUIT AFFIRMED DISMISSAL OF RELATOR'S FEDERAL FCA *QUI TAM* CLAIMS AND REMANDED FOR FURTHER CONSIDERATION OF THE STATE FCA *QUI TAM* CLAIMS AND RETALIATION CLAIM

After the Court dismissed Relator's Complaint on first-to-file grounds, the Fourth Circuit held that "the district court properly determined that it lacked subject matter jurisdiction over Carson's *qui tam* action under the FCA" due to the FCA's first-to-file bar.  *U.S. ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 305 (4th Cir. 2017).  The Fourth Circuit also concluded that the Court "did not abuse its discretion in denying leave to amend" because "any amendment would be futile."  *Id.* at 305 n.6.  The Fourth Circuit, however, concluded that the FCA's first-to-file bar could not apply to Relator's FCA retaliation claim, and that the Court's order dismissing Relator's Complaint did not indicate that the states apply the same first-to-file rule to their statutes.  *Id.* at 306-08.  Thus, the Fourth Circuit vacated the dismissal with respect to Relator's FCA retaliation and state FCA claims and remanded for further proceedings.  *Id.* at 308.

The Fourth Circuit acknowledged that Defendants had alternative grounds for affirmance on Relator's state FCA clams and FCA retaliation claim, but "decline[d] to consider those other

grounds as they were never addressed by the district court, which should have that opportunity in the first instance." *Id.* at 307.[5]

## III.   ARGUMENT

### A.   RELATOR'S STATE FCA CLAIMS (COUNTS 10 TO 25) SHOULD BE DISMISSED

Relator has raised false claim allegations under 16 state FCAs—those of California, Colorado, Delaware, Florida, Georgia, Illinois, Indiana, Maryland, Michigan, Nevada, New Jersey, North Carolina, Oklahoma, Texas, Virginia, and Wisconsin.  *See* Second Amended Complaint at ¶¶ 191-253 (Counts 10 to 25).

The substantive provisions of the state FCAs mirror the federal FCA and, as such, federal cases on public disclosure and sufficiency of pleading apply.  For example, the Virginia Fraud Against Taxpayers Act ("VFATA" or "Virginia FCA") is "identical" to the federal FCA and "courts look to decisions interpreting the FCA in considering actions brought under the VFATA."  *Phipps v. Agape Counseling & Therapeutic Servs., Inc.*, No. 3:I3-CV-I66, 2015 WL 2452448, at *4 (E.D. Va. May 21, 2015); *U.S. ex rel. Johnson v. Universal Health Servs., Inc.*, 889 F. Supp. 2d 791, 793 (W.D. Va. 2012) (same with respect to pre-2011 version of VFATA).[6]

---

[5]      The Fourth Circuit also acknowledged that Defendants "argue that Michigan has a first-to-file bar that operates analogously to the federal rule" and concluded that this argument also should be considered by the District Court upon remand.  *Carson*, 851 F.3d at 308.

[6]      *See also U.S. ex rel. Nudelman v. Int'l Rehab. Assoc., Inc.*, No. 00-1837, 2006 WL 925035, at *12 (E.D. Pa. Apr. 4, 2006) (finding that the False Claims Acts of California, Delaware, Florida, Illinois, and Nevada "read similarly and are substantively the same as" the federal FCA and ruling that "analysis of the federal claims shall apply equally to the [state FCA] claims); *Cade v. Progressive Cmty. Healthcare, Inc.*, No. 1:09-CV-3522, 2011 WL 2837648, at *3 (N.D. Ga. July 14, 2011) (Georgia FCA is "nearly identical" to the federal FCA); *U.S. ex rel. Herrera v. Bon Secours Cottage Health Servs.*, 665 F. Supp. 2d 782, 783 n.2 (E.D. Mich. 2008) (same, as to Michigan FCA); *United States. v. APS Healthcare, Inc.*, No. 2:11-cv-01454-MMD-GWF, 2013 WL 420402, at *2 n.1 (D. Nev. Jan. 30, 2013) (same, as to Nevada FCA); *United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1021 (9th Cir. 2006) (applying federal FCA analysis to claims under California FCA); *Kuhn v. LaPorte Cnty. Comp. Mental Health Council,*

### 1.     Relator's state FCA claims fail on public disclosure grounds

The public disclosure bar precludes jurisdiction over FCA actions that are "based upon the public disclosure of allegations or transactions" in government and news media reports "unless . . . the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A) (2000).[7]  Each state FCA that Relator invokes, with the exception of the Wisconsin FCA, has a public disclosure bar nearly identical to the federal statute,[8] and courts have routinely held that the state public disclosure bars are interpreted and applied in the same manner as the federal statute. *See, e.g.*, *U.S. ex rel. King v. Solvay S.A.*, No. CIV.A. H-06-2662, 2015 WL 925612, at \*5-6 (S.D. Tex. Mar. 3, 2015) (applying the California, Texas, and Virginia statutes in the "same manner" as the federal FCA with regard to public disclosure and original source issues).

The bar compels dismissal of claims if the fraud allegations are "even partly" derived from public disclosures. *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 351 (4th Cir. 2009).

---

No. 3:06–CV–317 CAN, 2008 WL 4099883, at \*3 n.1 (N.D. Ind. Sept. 4, 2008) (same, as to Indiana FCA); *U.S. ex rel. Bartz v. Ortho-McNeil Pharm., Inc.*, 856 F. Supp. 2d 253, 258 n.7 (D. Mass. 2012) (same, as to New Jersey and Oklahoma FCAs); *U.S. ex rel. Kester v. Novartis Pharm. Corp.*, No. 11 CIV. 8196(CM), 2014 WL 2619014, at \*1, 11 (S.D.N.Y. June 10, 2014) (indicating Colorado, Maryland, North Carolina, Texas, Wisconsin and other state FCAs are modeled on the federal FCA).

[7]     Congress amended the public disclosure bar in March 2010, but the pre-amendment version of the statute applies here because it appears to be the one in effect at the time the allegedly false claims here were submitted. *See U.S. ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 918 (4th Cir. 2013).

[8]     *See* Cal. Gov't Code § 12652(d)(3); Colo. Rev. Stat. § 25.5-4-306(5)(c); Del. Code Ann. tit. 6, § 1206(b); Fla. Stat. § 68.087(3); Ga. Code Ann. § 49-4-168.2(l)(2); 740 Ill. Comp. Stat. 175/4(e)(4); Ind. Code § 5-11-5.5-7(f); Md. Code Ann, Health-Gen. § 2-606(d); Mich. Comp. Laws Ann. § 400.610a(13); Nev. Rev. Stat. § 357.100; N.J. Stat. Ann. § 2A:32C-9(c); N.C. Gen. Stat. § 1-611(d); Okla. Stat. tit. 63, § 5053.5(B); Tex. Hum. Res. Code Ann. § 36.113; Va. Code Ann. § 8.01-216.8.  (As explained below, Relator's claim under the Wisconsin FCA should be dismissed for reasons unrelated to the public disclosure bar.)

"Once a defendant files a motion to dismiss based on the public-disclosure bar, the relator bears the burden of proving by a preponderance of the evidence that the bar does not apply." *U.S. ex rel. Ahumada v. NISH*, 756 F.3d 268, 274-75 (4th Cir. 2014) (citing *Vuyyuru*, 555 F.3d at 348). "[A] mere denial of knowledge of public disclosures does not satisfy the burden[.]" *U.S. ex rel. Jones v. Collegiate Funding Servs., Inc.*, 469 F. App'x 244, 255-56 (4th Cir. 2012) (citing *Vuyyuru*, 555 F.3d at 350-51).

Here, Relator fails to meet his burden to show that his state FCA claims should not be barred on public disclosure grounds.  In particular, it is evident that (a) Relator's state FCA claims are based upon information previously disclosed in public government and news media reports; and (b) Relator cannot show that he was an "original source" of this information.

> a.  *Relator's state FCA qui tam claims are based upon information previously disclosed in public government and news media reports*

Relator's core allegations are that Defendants' therapists and therapy assistants were (1) overbilling for therapy services provided; (2) billing non-skilled activities as skilled therapy; and (3) billing for unreasonable and unnecessary therapy.  Original Complaint at ¶¶ 98-145; Second Amended Complaint at ¶¶ 100-147.   That information already was in the public domain before he commenced this suit.

In March 2010, the Washington Post reported that HCRMC was one of the specific entities under scrutiny by HHS-OIG.  *See* Higham and Keating, *Review Heightens Concerns Over Medicare Billing at Nursing Homes*, *supra* at 4 & n.2.  The Washington Post tied allegations of overbilling and unnecessary treatment specifically to the Defendants in this case, reporting that "two nursing homes owned by HCR ManorCare put their residents in the most expensive billing category at nearly five times the national average . . . ." *Id.*

Later, in December 2010, the HHS-OIG published a report of its findings from its investigation. *See* HHS-OIG, Questionable Billing by Skilled Nursing Facilities, *supra* at 5 & n.3. The Report found that "certain SNFs may be routinely placing beneficiaries into higher paying RUGs regardless of the beneficiaries' care and resource needs or keeping beneficiaries in Part A stays longer than necessary." *Id.* at 14. The Report indicated that the treatment levels "did not appear to be the result of changes in beneficiary characteristics" such as age or diagnoses, and that for-profit SNFs owned by large chains had the highest treatment levels and highest incidence of questionable billing. *Id.* at 11-13.

The Report's findings also were widely discussed in other government reports and the news media. *See, e.g.*, 76 Fed. Reg. 26,364, 26,393 (May 6, 2011) (reporting that the Report identified an increase in questionable billings); HHS-OIG, Semiannual Report to Congress, at iii (Oct. 1, 2010 - Mar. 31, 2011)[9] ("From 2006 to 2008, skilled nursing facilities (SNF) increasingly billed for higher paying resource utilization groups, even though beneficiary characteristics remained largely unchanged."); HHS-OIG, Changes in Skilled Nursing Facilities Billing in FY 2011, Publ. No. OEI-02-09-00204 (July 8, 2011)[10] (discussing DHHS's response to the Report).

Accordingly, Relator's complaint is based upon information revealed in these prior public disclosures despite his unsupported denial.

---

[9]     https://oig.hhs.gov/reports-and-publications/archives/semiannual/2011/spring/spring2011_semiannual.pdf.

[10]     http://oig.hhs.gov/oei/reports/oei-02-09-00204.pdf.

> b.    *Relator cannot show that he was an "original source" of the disclosed information*

Relator cannot meet his burden to show that he was an "original source" and thus beyond the reach of the public disclosure bar.  *See* 31 U.S.C. § 3730(e)(4)(B) (exception requires relator to establish that he "has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information"); *see also, e.g.*, Va. Code Ann. § 8.01-216.8 (exception requires relator to establish that he "has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions and [ ] has voluntarily provided the information to the Commonwealth before filing an action under this article").[11]

Relator has alleged in conclusory fashion that he "is not aware of any 'public disclosure' in connection with the false claims in this Complaint."  Original Complaint at ¶ 20; Second Amended Complaint at ¶¶ 20.  However, this sort of vague, conclusory averment does not satisfy a relator's burden to show that he had "direct and independent knowledge" of the fraud alleged.  *See Ahumada*, 756 F.3d at 275; *Jones*, 469 F. App'x at 255-56; *U.S. ex rel. Black v. Health & Hosp. Corp. of Marion Cty.*, No. RDB-08-0390, 2011 WL 1161737, at *8 (D. Md. Mar. 28, 2011), *aff'd,* 494 F. App'x 285 (4th Cir. 2012).

Relator also maintains that he had independent knowledge based on his claimed "observ[ations]" at the single Pennsylvania facility where he worked of instances where therapy services were over- or under-provided to patients.  Original Complaint at ¶ 99; Second Amended

---

[11]    Each state FCA that Relator invokes, with the exception of the Wisconsin FCA, has a public disclosure bar and original source exception that are nearly identical to the federal statute. *See supra* at 7-8 & nn.6, 8.

Complaint at ¶ 101.  But Pennsylvania does not have a false claims act, and Relator alleges no personal, direct knowledge of Defendants' alleged conduct in any other state.  In fact, he does not allege even a single act committed, much less any false claim submitted, in any of the 16 states under whose FCAs he asserts his claims because he knows nothing about Defendants' business in those states.  Relator avers only on "information and belief" that HCRMC's allegedly improper "billing practices were employed at each of [HCRMC's] skilled nursing facilities."  Original Complaint at ¶ 9; Second Amended Complaint at ¶ 9.  Such conclusory pleading on "information and belief," however, plainly does not meet Relator's burden to show that he was an "original source."   A relator's "mere suspicion that there must be a false or fraudulent claim lurking around somewhere simply does not carry his burden of proving that he is entitled to original source status."  *Vuyyuru*, 555 F.3d at 353.  Rather, "[t]o establish original source status knowledge, a *qui tam* plaintiff must allege specific facts—as opposed to mere conclusions— showing exactly how and when he or she obtained direct and independent knowledge of the fraudulent acts alleged in the complaint. . . ."  *U.S. ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1162 (10th Cir. 1999); *see also U.S. ex rel. Duxbury v. Ortho Biotech Prods., LP*, 579 F.3d 13, 28 (1st Cir. 2009) (courts do not credit "conclusory allegations" when considering original source issue).

Relator also fails to plead the other prerequisite to meeting the "original source" exception—that he "voluntarily provided the information to the Government before filing an action under this section which is based on the information."  31 U.S.C. § 3730(e)(4)(B); *see also, e.g.*, Va. Code Ann. § 8.01-216.8 (exception requires relator to establish that he "has voluntarily provided the information to the Commonwealth before filing an action under this

article").[12]   Relator's conclusory assertion that he "is an 'original source' under the FCA"
completely ignores this requirement.  Original Complaint at ¶ 20; Second Amended Complaint at
¶ 20.  Relator's failure to plead the "voluntarily provided" requirement forecloses any showing
that he was an "original source."

For these reasons, the Court should dismiss each of Relator's state FCA claims (except
his claim based on the Wisconsin FCA at Count 25) on public disclosure bar grounds.[13]

### 2. Relator's state FCA claims are inadequately pled under Federal Rules of Civil Procedure 8 and 9(b)

Rule 8(a)(2) provides that "[a] pleading that states a claim for relief must contain … [a]
statement of the claim showing that the pleader is entitled to relief."  To survive a motion to
dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to
relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell
Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To plead an FCA claim, a plaintiff must
allege, *inter alia*, (1) a false statement or fraudulent course of conduct; (2) made or carried out
with the requisite scienter, *i.e.*, with actual knowledge or deliberate ignorance or reckless
disregard of the truth or falsity of the information; (3) that was material; and (4) caused the
government to pay out money or forfeit money due.[14]  *Ahumada,* 756 F.3d at 280 & n.8.  Claims

---

[12]   Each state FCA that Relator invokes, with the exception of the Wisconsin FCA, includes
in its definition of "original source" a voluntary government reporting requirement that is nearly
identical to the federal statute.  *See supra* 7-8 & nn.6, 8.

[13]   Relator's claim under the Wisconsin FCA should be dismissed because his Complaint
with respect to Count 25 fails to satisfy Rule 8 and Rule 9(b)'s pleading standards.  *See infra* 13-
19.

[14]   As explained *supra* at 7 & n.6, each of the relevant state FCAs contain identical elements
as the federal FCA and are interpreted consistent with federal FCA case law.

that do not allege an "objective falsehood" cannot give rise to FCA liability. *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376-77 (4th Cir. 2008).

Rule 9(b), in turn, provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FCA claims "must also meet the more stringent 'particularity' requirement of [Rule] 9(b)." *Ahumada*, 756 F.3d at 280. "[A]n FCA plaintiff must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* "More precisely, the complaint must allege 'the who, what, when, where and how of the alleged fraud.'" *Id.* (quoting *Wilson*, 525 F.3d at 379). A failure to comply with Rule 9(b) is treated as a failure to state a claim under Rule 12(b)(6). *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999).

These federal rules govern all claims brought in federal court, including state FCA claims. *See Phipps*, 2015 WL 2452448, at *3; *U.S. ex rel. Palmieri v. Alpharma, Inc.*, 928 F. Supp. 2d 840, 852-57 (D. Md. 2013). Relator's state FCA claims are deficient under both Rule 8 and Rule 9(b).

       a.      <u>Relator fails to plead facts sufficient to meet Rule 8's plausibility standard</u>

Relator fails to meet Rule 8's plausibility standard with respect to his state FCA claims because (i) with respect to Relator's allegations of false claims submitted to Medicaid, Relator fails to allege a connection between reimbursement under the various state Medicaid regimes and his allegations of excessive therapy services; and (ii) Relator fails to plead an objective falsehood necessary to state a plausible claim.

> **i.**    *Relator fails to allege a connection between reimbursement under the various state Medicaid regimes and his allegations of excessive therapy services*

In pleading the alleged relevant statutes and regulations Relator describes the Medicaid program generally, but does explain reimbursement under any of the individual state Medicaid programs.  Second Amended Complaint at ¶¶ 61-64.  He provides no explanation as to how any of the alleged excessive services were billed to a state Medicaid program and led the states to make payments they would not otherwise have made.  *See id.*  This failure alone provides a basis to dismiss.  *See Ahumada*, 756 F.3d at 280 n.8 (relator must show "that the false statement caused the government to pay out money") (citation and internal quotation marks omitted).

> **ii.**    *Relator fails to plead an objective falsehood necessary to state a plausible claim*

Relator fails to plead the core element of his state FCA claims that Defendants provided medically unreasonable and unnecessary therapy—an "*objective* falsehood."  *Wilson*, 525 F.3d at 376 (emphasis added); *see also U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 383 (4th Cir. 2015) (same) (citation omitted).

Relator's fraud theory turns on a *subjective* question about which reasonable minds can differ:  whether the therapy Defendants provided to each unique patient was—or was not—medically "reasonable and necessary" under 42 U.S.C. § 1395y(a)(1)(A).  The federal regulation governing claims to federal health programs—which provides that "[c]linical disagreement does not constitute a material and false statement[,]" 42 C.F.R. § 483.20(j)(2)—is directly contrary to Relator's fraud theory.  *See also* 62 Fed. Reg. 67,174, 67,202-03 (Dec. 23, 1997) ("If, based on observation, one nurse codes a resident as needing supervision for locomotion while another nurse codes the same resident as needing limited assistance based on her observation, we would consider that to be clinical disagreement and not falsification.").  Accordingly, there is no

15

objective standard by which a court can determine whether one side or another's view of medical reasonableness and necessity is true or false.

For these reasons, Relator fails to plead facts supporting his state FCA claims sufficient to meet Rule 8's plausibility standard.

> b.   <u>Relator fails to plead his state FCA claims with the particularity required by Rule 9(b)</u>

Relator fails to plead with particularity the required "who, what, when, where, and why" of his state FCA claims.  Those claims therefore do not survive scrutiny under Rule 9(b).

Rule 9(b) requires relators in FCA suits to identify specific "representative [false] claims."  *See Virginia ex rel. Hunter Labs., LLC v. Quest Diagnostics, Inc.*, No. 1:13-CV-1129 GBL/TCB, 2014 WL 1928211, at *7 (E.D. Va. May 13, 2014).  The rule does not permit a relator "'merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government.'"  *U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 456-57 (4th Cir. 2013).  "[W]hen a defendant's actions, as alleged and as reasonably inferred from the allegations, *could* have led, but *need not necessarily* have led, to the submission of false claims, a relator must allege with particularity that specific false claims actually were presented . . . ."  *Id.* at 457.  Rule 9(b) further requires that an FCA plaintiff must, at a minimum, "describe the . . . identity of the person making the misrepresentation and what he obtained thereby."  *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (internal quotation marks and citation omitted).

> i.   *Relator fails to plead with particularity facts showing fraudulent submission of a representative false claim*

Relator fails to plead with particularity even one specific "representative" false claim as required by controlling law.  Nor, as noted above, does he allege how any such claim for post-

hospital rehabilitation could have been billed to a state Medicaid program; and even if it could have, whether the amount of the claim would vary based on the amount of services provided. Although Relator refers to some unidentified patients who received services, Second Amended Complaint at ¶¶ 125-35, 141, his incomplete examples do not allege that the Defendants billed a state Medicaid program for the alleged services.

Moreover, as particularly relevant in assessing his state FCA claims, Relator fails to allege even a single act committed, much less any false claim submitted, in any of the 16 states under whose FCAs he asserts his claims.  He alleges only a vague "understanding" that the conduct he observed at the Pennsylvania facility where he was employed might have occurred at other facilities, Second Amended Complaint at ¶¶ 30, 102, and expressly pleads only on "information and belief" that HCRMC's alleged improper "billing practices were employed at each of [HCRMC's] skilled nursing facilities[,]" Second Amended Complaint at ¶ 9.  But such pleading on "information and belief" is presumptively inadequate to meet Rule 9(b)'s requirements.  *See Bogina*, 809 F.3d at 370 ("information and belief" allegations "won't do in a fraud case—for 'on information and belief' can mean as little as 'rumor has it that'"); *U.S. ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 446 (6th Cir. 2008) ("alleging that the defendants must have submitted fraudulent claims to the government does not satisfy" Rule 9(b)) (citation and internal quotation marks omitted); *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310-11 (11th Cir. 2002) (same).  Thus, Relator could only satisfy the Rule 9(b) standard with respect to conduct at his Pennsylvania facility, but he did not bring any claim under Pennsylvania law.

As a result, the Court should dismiss Relator's state FCA claims regarding the alleged submission of false claims due to his multiple failures to plead the required elements of those claims with particularity under Rule 9(b).

ii.    *Relator fails to plead with particularity a conspiracy to submit a false claim*

In each of Relator's state FCA Counts, he includes a conclusory assertion that Defendants "conspired" to violate the state FCAs, but Relator fails to plead a cognizable conspiracy claim. Relator fails to plead any details of this alleged conspiracy for which he brings state FCA claims—not the particulars of the agreement, "who" entered into it, "when," or "what" the conspirators "sought to gain" from it.  *See Ahumada*, 756 F.3d at 282 (affirming dismissal of conspiracy claim under Rule 8 based on same pleading deficiencies).  This does not even satisfy Rule 8, much less the more demanding requirements of Rule 9(b).  *Id.*; *see also Harrison*, 176 F.3d at 790 (same); *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (affirming dismissal of conspiracy claim under Rule 9(b) where relator alleged the "bare legal conclusion" of a conspiracy "unsupported by specific allegations of any agreement").

Relator's conspiracy claim independently fails because it rests—at most—on allegations of an "intra-corporate conspiracy" among HCRMC's employees and/or affiliated HCRMC entities and their employees.  Corporations cannot, however, as a matter of law, conspire with their employees, agents, or affiliated business entities in the FCA context.  *See U.S. ex rel. Brooks v. Lockheed Martin Corp.*, 423 F. Supp. 2d 522, 528 (D. Md. 2006) ("A parent corporation and its wholly owned subsidiaries . . . are legally incapable of forming a conspiracy with one another.") (citing *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769 (1984)); *accord U.S. ex rel. Ruhe v. Masimo Corp.*, 929 F. Supp. 2d 1033, 1037-38 (C.D. Cal. 2012); *U.S.*

18

*ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 201 (D.D.C. 2011).[15]   The Court thus should

dismiss Relator's state FCA conspiracy claims.

For these reasons, this Court should dismiss Relator's state FCA claims as inadequately

pled under Rules 8 and 9(b).

> **3.   Relator's state FCA claims are deficient for particular reasons having to do with the individual state FCA statutes**

As explained above, each one of Relator's state FCA claims (except his claim under the

Wisconsin FCA) should be dismissed on public disclosure grounds, and each one of Relator's

state FCA claims should be dismissed as inadequately pled under Rules 8 and 9(b).  In addition,

certain of Relator's state FCA claims are deficient for reasons having to do with the individual

state FCA statutes.  In particular, (a) Relator's Michigan FCA claim fails on first-to-file grounds;

(b) Relator's Maryland FCA claim fails because Maryland did not intervene; and (c) Relator's

Delaware FCA claim, to the extent it is based on acts prior to July 16, 2009, fails because the

state Attorney General did not determine that a substantial violation occurred.

> *a.   Relator's Michigan FCA claim fails on first-to-file grounds*

Similar to the federal FCA, Michigan's FCA provides that a "person other than the

attorney general shall not bring an action under this section that is based on allegations or

transactions that are the subject of a civil suit or an administrative civil money penalty

proceeding to which this state *or the federal government is already a party*."  Mich. Comp. Laws

Ann. § 400.610a(12) (emphasis added); *see also U.S. ex rel. Herrera v. Bon Secours Cottage*

---

[15]   Relator's conspiracy claim also fails because, for the reasons set forth above, he fails to
sufficiently plead his underlying state FCA claims. *See U.S. ex rel. Godfrey v. KBR, Inc.*, 360 F.
App'x 407, 413 (4th Cir. 2010) (where "conspiracy claim is premised on … claims of underlying
FCA violations, the conspiracy claim rises and falls with the individual claims").

*Health Servs.*, 665 F. Supp. 2d 782, 783 n.2 (E.D. Mich. 2008) ("The Michigan Medicaid False Claims Act is substantially similar to the FCA.").

At the time that Relator brought his Original, Amended, and Second Amended Complaints, the federal government was already a party to Relator Ribik's suit and, as the Fourth Circuit concluded in affirming the dismissal of Relator's federal FCA *qui tam* claims, "[i]t is clear that Carson's allegations are materially similar to those found in Ribik's complaint." *Carson*, 851 F.3d at 304.  For the same reason, this Court should dismiss Relator's Michigan FCA claim.

> b.   <u>Relator's Maryland FCA claim fails because Maryland did not intervene</u>

The Maryland FCA provides that, "[i]f the state does not elect to intervene and proceed with the action . . . , before unsealing the complaint, the court shall dismiss the action."  Md. Code Ann., Health-Gen. § 2-604(a)(7).  Here, Relator's complaint was unsealed on April 20, 2015, and Maryland has not intervened.  Thus, with respect to Relator's Maryland FCA claim (Count 17), the Court "shall dismiss the action."  *Id.*; *see United States v. Hind Health Care, Inc.*, No. 15-CV-04928-LHK, 2017 WL 190254, at *1 (N.D. Cal. Jan. 16, 2017) ("In accordance with the terms of the Maryland False Health Claims Act, the State of Maryland having declined to intervene in this matter, all claims asserted on behalf of the State of Maryland are hereby dismissed without prejudice.") (citation omitted); *U.S. ex rel. Cestra v. Cephalon, Inc.*, No. CIV.A. 14-1842, 2015 WL 3498761, at *14 (E.D. Pa. June 3, 2015) (same).

> c.   <u>Relator's Delaware FCA claim, to the extent it is based on acts prior to July 16, 2009, fails because the state Attorney General did not determine that a substantial violation occurred</u>

Under the version of the Delaware FCA that existed prior to July 16, 2009, relators could not prosecute claims unless the state Attorney General had determined there was "substantial

20

evidence that a violation . . . has occurred." Del. Code Ann. tit. 6, § 1203(b)(4)(b) (2000 version). Here, Relator does not allege that the Delaware Attorney General determined there was substantial evidence that a violation occurred. Thus, Relator's Delaware FCA claim (Count 12) is barred as to any claim allegedly submitted or paid prior to July 16, 2009, the effective date of a statutory amendment. *See U.S. ex rel. Streck v. Allergan, Inc*., 894 F. Supp. 2d 584, 603 (E.D. Pa. 2012) (dismissing Delaware FCA allegations for claims submitted prior to July 16, 2009 absent a written determination about substantial evidence); *U.S. ex rel. Boise v. Cephalon, Inc.,* No. 08-287, 2015 WL 1724572, at *14 (E.D. Pa. Apr. 15, 2015) (same).

For all of these reasons, Relator's state FCA claims are deficient and should be dismissed.

### 4.     The Court may decline to exercise supplemental jurisdiction over Relator's state FCA claims

Although Relator's state FCA claims should be dismissed on public disclosure grounds, as well as for being deficient under Rules 8 and 9(b), the Court also may decline supplemental jurisdiction over the state claims. The Fourth Circuit indicated that the Court could consider whether to exercise supplemental jurisdiction over Relator's state FCA claims on remand. *Carson*, 851 F.3d at 308 n.8. Supplemental jurisdiction over state law claims should be exercised "only if in furtherance of judicial economy, convenience and fairness to litigants." *United States v. Domestic Indus., Inc.*, 32 F. Supp. 2d 855, 872 (E.D. Va. 1999) (citing *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 628 (4th Cir. 1997)).

Here, even if the Court were to determine that Relator's FCA retaliation claim can survive dismissal despite its clear flaws, *see infra* at 22-27, exercising supplemental jurisdiction over the 16 state FCA claims would not be in furtherance of judicial economy, convenience, or fairness to the litigants. Relator has not participated in discovery in the intervened case that has

been ongoing for a year.  Requiring Defendants to re-do discovery for Relator's non-intervened state law claims would create significant burden on and unfairness to Defendants who are preparing for trial of the intervened case.  *See U.S. ex rel. Ibanez v. Bristol-Myers Squibb Co.*, No. CIV.A. 1:11-CV-029, 2015 WL 1439054, at *16 (S.D. Ohio Mar. 27, 2015) ("Because the Court has dismissed Relators' FCA claims—save for their retaliation claims—it accordingly declines to exercise supplemental jurisdiction over these analogous state-law claims."); *U.S. ex rel. Helfer v. Associated Anesthesiologists of Springfield, Ltd.*, No. 10-3076, 2014 WL 4198199, at *12 (C.D. Ill. Aug. 25, 2014) (declining to exercise supplemental jurisdiction over state FCA claims after the federal FCA *qui tam* claims were dismissed even though the relator's FCA retaliation claim remained pending).  Accordingly, the Court should decline to exercise supplemental jurisdiction over Relator's state FCA claims.

### B.  RELATOR'S RETALIATION CLAIM (COUNT 9) SHOULD BE DISMISSED

Section 3730(h) prohibits retaliation for "lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of [the FCA]."  To plead retaliation, a plaintiff must plausibly allege (1) he engaged in protected acts in furtherance of an FCA suit; (2) the employer knew about these acts; and (3) the employer discharged him as a result of the acts.  *Eberhardt v. Integrated Design & Const., Inc*., 167 F.3d 861, 866 (4th Cir. 1999); *Mann v. Heckler & Koch Defense, Inc.*, 630 F.3d 338, 343 (4th Cir. 2010).  Relator's complaint not only fails to adequately allege any of these elements, his own allegations negate the causation requirement at the heart of his retaliation claim.

#### 1.  Relator fails to plead that he was retaliated against "as a result of" his alleged protected activity

Relator is bound by his allegations.  *See Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 192 (4th Cir. 1998) (reasoning that "while notice pleading does not demand that a complaint

expound the facts, a plaintiff who does so is bound by such exposition") (citing *Jefferson v. Ambroz*, 90 F.3d 1291, 1296 (7th Cir. 1996) (explaining that although notice pleading does not require a plaintiff to plead particulars, "if a plaintiff chooses to [do so], and they show that he has no claim, then he is out of luck")).   Here, the reason for Relator's discharge—which Relator admits in his complaint—negates any showing that his discharge occurred "as a result of" his alleged protected activity.

Specifically, Relator's complaint acknowledges that he, a physical therapy assistant, changed a patient's treatment goal despite the fact that, under governing Pennsylvania law, "only a physical therapist may change a treatment goal."   Second Amended Complaint at ¶ 156; *see also* 63 Pa. C.S. § 1304 (physical therapy licensure requirements); 49 Pa. Code §§ 40.32(c), 40.53(b)(3), and 40.171(b) (prohibiting physical therapist assistant from performing certain skilled functions including modification of a patient plan of care or adjustment of treatment programs).   Relator's admission thus concedes that he acted outside the legally authorized scope of his certification as a physical therapy assistant.   Relator further pleaded that this unauthorized conduct was the reason Defendants discharged him.   Second Amended Complaint at ¶ 156. Together, these allegations establish that Defendants had a valid, non-retaliatory, non-pretextual basis for discharging Relator.   *See Bender*, 159 F.3d at 192; *see also Bender v. Suburban Hosp.*, 998 F. Supp. 631, 632 (D. Md. 1998) (dismissing retaliation claim and noting that a party can "plead himself out of court" by alleging facts that "demonstrate that he has no legal claim"), *aff'd*, 159 F.3d 186 (4th Cir. 1998).

Given the specificity and effect of this affirmative concession, Relator's conclusory allegation that the valid, non-retaliatory reason Defendants provided for his discharge was nonetheless a "pretext" (Second Amended Complaint at ¶ 156) does not change the outcome that

his own allegations compel.  *See Painter's Mill Grille, LLC*, 716 F.3d at 350 ("conclusory"

allegations not credited on motion to dismiss); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com,*

*Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) ("conclusory 'restatements'" of the "elements of a cause

of action . . . fail to constitute well-pled facts for Rule 12(b)(6) purposes") (citation omitted).

The non-retaliatory reason provided for Relator's discharge, as confirmed by his own

allegations, precludes any showing that Relator plausibly pleaded the causation element of his

retaliation claim.  As this Court has emphasized, a complaint must contain sufficient, non-

conclusory factual allegations to state a claim.  While the law does not demand a high level of

detail, it does require something much more than the sort of bare assertions Relator offers to

sustain the claim of "pretext" in his complaint.  *See Painter's Mill Grille, LLC*, 716 F.3d at 350

(noting settled view that enough facts must be alleged to show a plausible claim for relief);

*Nemet Chevrolet, Ltd.*, 591 F.3d at 255 (same).  Relator's retaliation claim should be dismissed

for this reason.

### 2. Relator fails to plead that he engaged in "protected activity"

Relator also fails to plead that he engaged in "protected activity by taking action in

furtherance of a *qui tam* suit."  "Protected activity" under § 3730(h) occurs when an employee's

opposition to fraud takes place in a context "when the conduct reasonably could lead to a viable

FCA action, or when . . . litigation is a reasonable possibility."  *Mann*, 630 F.3d at 344 (citation

and internal quotation marks omitted).  "The distinct possibility standard is an objective one"—

the protected activity must be "relate[d] to company conduct that involves an objectively

reasonable possibility of an FCA action."  *Id.*

Under this standard, an "employer is entitled to treat a suggestion for improvement as

what it purports to be rather than as a precursor to litigation."  *U.S. ex rel. Owens v. First Kuwaiti*

*General Trading*, 612 F.3d 724, 735 (4th Cir. 2010).  Moreover, "'[s]imply reporting [a] concern

24

of a mischarging to the government to his supervisor does not suffice to establish' that a whistleblower plaintiff was engaging in 'protected activity.'"  *U.S. ex rel. Garzione v. PAE Government Servs., Inc.*, No. 1:15-cv-833, 2016 WL 775780, at *8 (E.D. Va. Feb. 25, 2016) (quoting *Lee v. Computer Sci. Corp.*, No. 1:14-cv-581, 2015 WL 778995, at *6 (E.D. Va. Feb. 24, 2015) (internal citation and quotation marks omitted)).

Thus, for example, courts in the Fourth Circuit have found retaliation allegations deficient where the relator "complained of what he perceived as shoddy or suspicious business practices and was generally concerned that Defendants' activities were possibly violating Medicare and Medicaid statutes and regulations."  *U.S. ex rel. Rector v. Bon Secours Richmond Health Corp.*, No. 3:11-CV-38, 2014 WL 1493568, at *13 (E.D. Va. Apr. 14, 2014)).  *Compare Young v. CHS Middle East, LLC*, 611 F. App'x 130, 133-34 (4th Cir. 2015) (reversing dismissal of retaliation claim where relator allegedly reported to supervisors that management was "defrauding the government" and "emphasiz[ing] 'the potential liability' of reporting false employee staffing . . . to the State Department").

 Relator alleges, in sum, that he reported his "concerns" that colleagues inflated time entries, that other "billing irregularities" were taking place, and that he disagreed with Defendants' use of group therapy.  Second Amended Complaint at ¶¶ 151-152.  But the alleged reporting of "concerns" does not show an effort to publicly expose fraud on the government or a realistic likelihood of future FCA litigation—as was the case, for example, in *Young*.  Rather, the alleged reporting is like that in cases such as *Garzione* and *Rector*, where the courts dismissed retaliation claims based on the reporting of concerns of possible mischarging of Medicare and Medicaid.

Relator's failure to plead any "protected activity" accordingly provides an additional reason for the Court to dismiss Relator's retaliation claim.

### 3. Relator fails to plead that Defendants had notice of any protected activity

Finally, Relator fails to plead that Defendants had the requisite notice that he was engaging in protected activity that might lead to a viable FCA claim. *See Glynn v. EDO Corp.*, 710 F.3d 209, 214 (4th Cir. 2013). "If an employer has no notice that an FCA action is possible, it [cannot] retaliate against an employee in violation of 31 U.S.C. § 3730(h)." *Scates v. Shenandoah Mem'l Hosp.*, No. 5:15-CV-00032, 2015 WL 6143457, at *7 (W.D. Va. Oct. 19, 2015) (citing *U.S. ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 744 (D.C. Cir. 1998)). The notice element is "viewed from 'the employer's perspective,' and 'turns on whether the employer . . . is on notice that litigation is a reasonable possibility.'" *U.S. ex rel. Parks v. Alpharma, Inc.*, 493 F. App'x 380, 388 (4th Cir. 2012) (quoting *Mann*, 630 F.3d at 344 and *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 868 (4th Cir. 1999)).

In order to put an employer on notice that litigation is a reasonable possibility, a relator must make actual threats or warnings of FCA litigation, such as "characterizing the employer's conduct as illegal or fraudulent or recommending that legal counsel become involved." *Eberhardt*, 167 F.3d at 868; *see also Scates*, 2015 WL 6143457, at *7. A relator's complaints do not provide notice that litigation is a reasonable possibility if they are "couched in terms of concerns and suggestions, not threats or warnings of FCA litigation." *Parks*, 493 F. App'x at 389 (citing *Zahodnick v. Int'l Bus. Machines Corp.*, 135 F.3d 911, 914 (4th Cir. 1997)); *see also Phipps*, 2015 WL 2452448, at *8 (dismissing retaliation claim because relator merely told employer that she was "extremely uncomfortable with adding/changing/deleting names on intakes and/or reassessments").

Here, Relator has not pled that he gave Defendants notice that FCA litigation was a reasonable possibility.  None of his allegations indicate that he conveyed to his supervisors that Defendants' conduct was "illegal or fraudulent" or that he "recommend[ed] that legal counsel become involved." *Eberhardt*, 167 F.3d at 868.  Rather, Relator's allegations expressly state that he was communicating his "concerns" about supposed overbilling practices (Second Amended Complaint at ¶ 15)—"not threats or warnings of FCA litigation."  *Parks*, 493 F. App'x at 389.  Thus, Relator's retaliation claim fails for this additional reason.

### C.   IF ANY OF RELATOR'S CLAIMS SURVIVE DISMISSAL, CERTAIN ALLEGATIONS ARE TIME-BARRED OR TIME-LIMITED

#### 1.   Relator's claims are limited by the relevant statutes of limitations

Each of Relator's claims are limited by a statute of limitations and should be dismissed to the extent they are time-barred.[16]  As noted above, Relator has not pled his claims with sufficient particularity, including when any specific false claim was made, but Relator appears to allege generally that HCRMC submitted false claims to the government during his period of HCRMC employment—August 29, 2005 through November 9, 2009.  Second Amended Complaint at ¶¶ 24, 155.  He includes no allegations as to acts or events outside this timeframe.[17]  Since Relator did not file his Original Complaint until September 28, 2011, claims allegedly submitted

---

[16]   On a Rule 12(b)(6) motion to dismiss, courts can rule on affirmative defenses that are discernable on the face of the complaint. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993).

[17]   To the extent Relator takes the position that his allegations are not limited to the time of his employment, such allegations could only be on information and belief and, as explained above, pleading on information and belief is presumptively inadequate to meet Rule 9(b)'s requirements. *See U.S. ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 370 (7th Cir. 2016) ("information and belief" allegations "won't do in a fraud case—for 'on information and belief' can mean as little as 'rumor has it that'"); *U.S. ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 446 (6th Cir. 2008) ("alleging that the defendants must have submitted fraudulent claims to the government does not satisfy" Rule 9(b)) (citation and internal quotation marks omitted); *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310-11 (11th Cir. 2002) (same).

to or paid by the government during portions of his employment period fall outside the relevant statutes of limitations.[18]   In particular, as against HCRMC (sued as HCR ManorCare and HCR ManorCare, Inc.),[19] for Counts 10 to 24, the six-year limitations period of the state FCAs requires the dismissal as to claims allegedly submitted or paid prior to September 28, 2005.[20] HCRMC respectfully requests the dismissal of each Count of the Complaint to the extent it purports to reach claims allegedly submitted outside the relevant limitations period.[21]

### 2.    Relator's claims under the Georgia, New Jersey, and Oklahoma FCAs should be limited in light of those statutes' effective dates

As noted above, Relator appears to allege that HCRMC submitted false claims sometime during his period of HCRMC employment—August 29, 2005 through November 9, 2009 (Second Amended Complaint at ¶¶ 24, 155)—and he includes no allegations as to acts or events

---

[18]    Courts deem an FCA violation to occur either when the defendant submits a false claim to the government or when the government pays the claim.  *See U.S. ex rel. Dugan v. ADT Sec. Servs.*, No. DKC 2003-3485, 2009 WL 3232080, at *4 (D. Md. Sept. 29, 2009).

[19]    With respect to Heartland Services, which Relator first named as a defendant in his May 11, 2015 Second Amended Complaint, the only claims that would survive the limitations periods would be Relator's Wisconsin FCA claim (Count 25), which has a 10-year limitation period, and those claims that have six-year limitations periods (*i.e.*, Counts 10 to 24) for claims filed after May 11, 2009 but before November 9, 2009 (the date of Relator's termination and last allegations).  Count 9 is time-barred in its entirety as related to Heartland Services.  *See* 31 U.S.C. § 3730(h)(3) (three-year limitations period for retaliation claims).

[20]    Cal. Gov't Code § 12654(a); Colo. Rev. Stat. § 25.5-4-307; Del. Code Ann. tit. 6, § 1209(a); Fla. Stat. § 68.089(1); Ga. Code Ann. § 49-4-168.5; 740 Ill. Comp. Stat. 175/5(b); Ind. Code § 5-11-5.5-9(b); Md. Code Ann., Health-Gen. § 2-609(a); Mich. Comp. Laws Ann. § 400.614; Nev. Rev. Stat. § 357.170; N.J. Stat. Ann. § 2A:32C-11; N.C. Gen. Stat. § 1-615(a); Okla. Stat. tit. 63, § 5053.6; Tex. Hum. Res. Code Ann. § 36.104; Va. Code Ann. § 8.01-216.9. The 10-year limitations period under the Wisconsin FCA (Count 25) likely is not implicated in this case.  *See* Wis. Stat. § 893.981.

[21]    Defendants' calculation of limitations periods herein give Relator the presumption that his Second Amended Complaint relates-back to his original September 28, 2011 complaint with respect to HCRMC (sued as HCR ManorCare and HCR ManorCare, Inc.).  Defendants respectfully reserve the right to challenge relation-back in subsequent proceedings if any claims survive dismissal.

outside this timeframe.  But the Georgia, New Jersey, and Oklahoma FCAs were not in effect for this entire period and are not given retroactive effect.  *See* Ga. Code Ann. § 49-4-168.1 (eff. May 24, 2007); N.J. Stat. Ann. § 2A:32C-3 (eff. Mar. 13, 2008); Okla. Stat. tit. 63, § 5053.1 (eff. Nov. 1, 2007).[22]  Accordingly, the Court should dismiss Relator's claims brought under these state FCAs as to claims allegedly submitted prior to May 24, 2007 for Count 14 (Georgia), prior to March 13, 2008 for Count 20 (New Jersey), and prior to November 1, 2007 for Count 22 (Oklahoma).

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Relator's complaint pursuant to Rules 9(b), 12(b)(1), and 12(b)(6).  Since the defects with Relator's pleading and theory cannot be cured by re-pleading and because he already has had three opportunities to plead a viable claim, Relator should not be permitted to file another amended pleading and his claims should be dismissed with prejudice.

Dated:  May 5, 2017                                    Respectfully submitted,

                                                      HCR MANORCARE, INC. (SUED AS HCR
                                                      MANORCARE AND HCR MANORCARE,
                                                      INC.) AND HEARTLAND EMPLOYMENT
                                                      SERVICES, LLC

                                                      By Counsel

---

[22]    *See also Walker v. Willis*, 435 S.E.2d 621, 622 (Ga. Ct. App. 1993) (Georgia laws "generally are applied prospectively unless a clear contrary intention is indicated"); *Oberhand v. Dir., Div. of Taxation*, 940 A.2d 1202, 1209 (N.J. 2008) (same, as to New Jersey laws); *Oklahoma ex rel. Crawford v. Guardian Life Ins. Co. of Am.*, 954 P.2d 1235, 1238 (Okla. 1998) (same, as to Oklahoma laws).

/s/_____

Katherine J. Seikaly (VSB No. 71438)
Eric A. Dubelier (*pro hac vice*)
Carol C. Loepere (*pro hac vice*)
REED SMITH LLP
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, D.C. 20005
202-414-9200 (phone)
202-414-9299 (fax)
kseikaly@reedsmith.com
edubelier@reedsmith.com
cloepere@reedsmith.com

Melissa A. Geist (*pro hac vice*)
REED SMITH LLP
136 Main Street
Suite 250
Princeton, NJ 08540
(609) 987-0050 (phone)
(609) 951-0824 (fax)
mgeist@reedsmith.com

Marilyn A. Moberg (*pro hac vice*)
REED SMITH LLP
355 South Grand Avenue
Suite 2800
Los Angeles, CA 90071
(213) 457 8035 (phone)
(213) 457 8080 (fax)
mmoberg@reedsmith.com

*Counsel for Defendants HCR ManorCare, Inc.
(sued as HCR ManorCare and HCR
ManorCare, Inc.) and Heartland Employment
Services, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 5th day of May 2017, the foregoing was electronically filed with the clerk of court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

/s/_____
Katherine J. Seikaly (VSB No. 71438)
REED SMITH LLP
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, D.C. 20005
202-414-9200 (phone)
202-414-9299 (fax)
kseikaly@reedsmith.com

*Counsel for Defendants HCR ManorCare, Inc.*
*(sued as HCR ManorCare and HCR ManorCare,*
*Inc.) and Heartland Employment Services, LLC*