**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

**UNITED STATES OF AMERICA,** *et al., ex rel.*
**RIBIK and CARSON,**

               **Plaintiffs,**

**v.**

**HCR MANORCARE, INC.,** *et al.*

               **Defendants.**

**CIVIL ACTION NUMBERS:
1:09-cv-0013 (CMH/TCB)
1:11-cv-1054 (CMH/TCB)
1:14-cv-1228 (CMH/TCB)**

**RELATOR PATRICK GERARD CARSON'S RESPONSE TO
DEFENDANTS' SECOND MOTION TO
<u>DISMISS HIS SECOND AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

I. Introduction ..................................................................................................................... 1

II.  Factual and Procedural Background ........................................................................... 2

III. Legal Standard ............................................................................................................. 5

IV.  Argument .................................................................................................................... 6

  A.  There is No Basis to Dismiss Relator's State FCA Claims (Counts 10 to 25) ...................... 6

    1.  Mr. Carsons' state FCA claims are not barred by any purported prior public disclosures... 6
     a. Relator's claims are not based on information previously disclosed.............................6

     b. Relator is an original source of the information in his Complaint...................................8

    2.  Mr. Carson's State FCA claims are adequately pled under Rules 8(a) and 9(b).. ............. 10
     a. Mr. Carson's Complaint states a plausible claim for relief...............................................10

        i. Defendants implausibly suggest that Medicaid reimbursement rules of the various states might allow claims for payment for medical services that were never rendered or were medically unnecessary...............................................................................11

        ii. Mr. Carson's allegations of unnecessary treatment clearly give rise to liability under the state false claims acts............................................................................12

     b.  Mr. Carson's Complaint pleads with particularity.......................................................14

    3. Mr. Carson's Complaint adequately pleads conspiracy under the state FCAs……………17

    4.  Mr. Carson Pled Cognizable Claims under the Michigan, Delaware and Maryland FCAs.18

    5.  Supplemental Jurisdiction exists over Mr. Carson's state FCA claims…………………...19

  B.  Mr. Carson Sufficiently Pled a Claim for Retaliation ........................................................ 22

  C.  Mr. Carson's Allegations are not limited to conduct that occurred during his employment.26

  D.  Mr. Carson Respectfully Requests Leave to Amend the Complaint Should it be Found Lacking. ................................................................................................................................ 27

V.  Conclusion .................................................................................................................. 29

# TABLE OF AUTHORITIES

## CASES

American Needle, Inc. v. National Football League,
    560 U.S. 183 (2010) ............................................................................ 17, 18

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ...................................................................................... 5

Baldino's Lock & Key Serv., Inc. v. Google, Inc.,
    No. 1:14-CV 00636, 2015 WL 402927 (E.D. Va. Jan. 27, 2015) ............................................ 5

Chesbrough v. VPA, P.C.,
    655 F.3d 461 (6th Cir. 2011) ......................................................................... 12

Clark County Sch. Dist. v. Breeden,
    532 U.S. 268 (2001) .................................................................................... 25

Coleman v. Maryland Ct. of App.,
    626 F.3d 187 (4th Cir. 2010) ............................................................................ 5

Copperweld Corp. v. Indep. Tube Corp.,
    467 U.S. 752 (1984) ............................................................................... 17, 18

Davis v. Piper Aircraft Corp.,
    615 F.2d 606 (4th Cir. 1980) ......................................................................... 27

Elder v. DRS Techs., Inc.,
    No. 1:13cv799, 2013 WL 4538777 (E.D. Va. Aug. 27, 2013) .................................... 24, 25, 26

Erickson v. Pardus,
    551 U.S. 89 (2007) ...................................................................................... 5

Harrison v. Westinghouse Savannah River Co.,
    176 F.3d 776 (4th Cir. 1999) ......................................................................... 10

Harvey v GOBO, Inc., et al,
    No. 6:16-CV-00076, 2017 U.S. Dist. LEXIS 34903 (W.D.Va. Mar. 10, 2017.) ..................... 21

Lettieri v. Equant Inc.,
    478 F. 3d 640 (4th Cir. 2007) ........................................................................ 26

Mann v. Heckler & Koch Defense, Inc.,
    630 F.3d 338 (4th Cir. 2010) ..................................................................... 22, 24

McDonnell Douglas Corp. v. Green,
411 U.S. 792 (1973)............................................................................................... 26

Mount Sinai Hosp., Inc. v. Weinberger,
517 F.2d 329 (5th Cir. 1975) .............................................................................. 12

Ostrzenski v. Seigel,
177 F. 3d 245 (4th Cir. 1999) ............................................................................. 28

Ridenour v. Andrews Federal Credit Union,
897 F.2d 715 (4th Cir.1990) ............................................................................... 22

Rosado v. Wyman,
397 U.S. 397 (1970)............................................................................................. 22

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
551 U.S. 308 (2007);............................................................................................ 14

United Mine Workers v. Gibbs,
383 U.S. 715 (1966)............................................................................................. 20

United States ex rel. Ahumada v. Nat'l Ctr. for Employment of the Disabled,
No. 1:06-CV-713, 2013 WL 2322836 (E.D. Va. May 22, 2013) ....................... 10

United States ex rel. Augustine v. Century Health Servs.,
289 F.3d 409 (6th Cir. 2002) .............................................................................. 12

United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.,
342 F.3d 634 (6th Cir. 2003) ................................................................................ 7

United States ex rel. Bunk v. Gov't Logistics N.V.,
842 F.3d 261 (4th Cir. 2016) ......................................................................... 20, 21

United States ex rel. Galmines v. Novartis Pharms. Corp.,
No. 06-3213, 2013 U.S. Dist. LEXIS 158090 (E.D. Pa. November 5, 2013)..........19

United States ex rel. Grubbs v. Kanneganti,
565 F.3d 180 (5th Cir. 2009) ........................................................................ 14, 16

United States ex rel. Harrison v. Westinghouse Savannah River Co.,
352 F.3d 908 (4th Cir. 2003) ........................................................................ 14, 16

United States ex rel. Landis v. Hospice Care of Kansas, LLC,
No. 06-2455-CM, 2010 WL 5067614 (D. Kan. Dec. 7, 2010)............................. 13

iii

United States ex rel. Mikes v. Straus,
   274 F.3d 687 (2d Cir. 2001)............................................................................... 12

United States ex rel. Ondis v. City of Woonsocket,
   587 F.3d 49 (1st Cir. 2009)................................................................................. 6

United States ex rel. Owens v. First Kuwaiti Gen. Trading,
   612 F.3d 724 (4th Cir. 2010) ............................................................... 23, 24, 25

United States ex rel. Rector v. Bon Secours Richmond Health Corp.,
   No. 3:11-CV-38, 2014 WL 1493568 (E.D. Va. Apr. 14, 2014) ....................... 24

United States ex rel. Reid v. Aegis Therapies, Inc.,
   No. 10-cv-00072, 2013 WL 5816501 (N.D. Ga. Oct. 29, 2013) ..................... 13

United States ex rel. Riley v. St. Luke's Episcopal Hosp.,
   355 F.3d 370 (5th Cir. 2004) ........................................................................... 12

United States ex rel. Siller v. Becton Dickinson & Co.,
   21 F.3d 1339 (4th Cir. 1994) ............................................................................. 7

United States ex rel. Springfield Terminal Rwy. Co. v. Quinn,
   14 F.3d 645 (D.C. Cir. 1994)............................................................................. 9

United States ex rel. Vuyyuru v. Jadhav,
   555 F.3d 337 (4th Cir. 2009) ............................................................................. 7

United States ex rel. Wilson v. Graham County Soil & Water Conservation Dist.,
   777 F.3d 691 (4th Cir. 2015) ............................................................................. 9

United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,
   525 F. 3d 370 (4th Cir. 2008) ......................................................................... 27

United States v. Vitas Hospice Servs., LLC,
   No. 4:13-cv-00449-BCW, slip op. (W.D. Mo. Sept. 30, 2014) ....................... 13

White v. Cty. of Newberry, S.C.,
   985 F.2d 168 (4th Cir. 1993) ........................................................................... 20

<u>STATUTES</u>

28 U.S.C. §1367(a) ............................................................................................. 20, 22

28 U.S.C. §1367(c) ............................................................................................. 21, 22

31 U.S.C. §3729............................................................................................................ 20

iv

31 U.S.C. §3729(a) ..................................................................................................... 3

31 U.S.C. §3730(b)(2)................................................................................................10

31 U.S.C. §3730(e)(4)(A) (2000) ............................................................................... 6

31 U.S.C. §3730(e)(4)(B) ........................................................................................... 8

31 U.S.C. §3730(h) ............................................................................................. passim

31 U.S.C. §3732(b)...................................................................................................19

42 U.S.C. §1395y......................................................................................................13

Del. Code tit. 6, §1203. .......................................................................................... 19

Health Insurance Portability and Accountability Act....................................................15

Mich. Comp. Laws Ann. § 400.610a, Sec. 10a (12)................................................. 18

OTHER AUTHORITIES

California State Plan under Title XIX of the Social Security Act, Supp. 1 to Attachment 4.19-B,
    available at
    http://www.dhcs.ca.gov/formsandpubs/laws/Documents/StatePlan%20Supplement%201%20t
    o%20Att%204.19-B.pdf ....................................................................................................... 8

RULES

Federal Rule of Civil Procedure 12(b)(6) ............................................................. 27, 28

Federal Rule of Civil Procedure 8(a) ........................................................................ 10

Federal Rule of Civil Procedure 9(b).............................................................. 10, 14, 15

# I. INTRODUCTION

Defendants yet again seek to dismiss Relator Carson's Second Amended Complaint ("Complaint") in its entirety after their previous attempt was overturned on appeal by the United States Court of appeals for the Fourth Circuit. As before, Defendants have no basis in law for dismissal.

It is important to note that this odyssey began approximately twenty months ago, when, Defendants first moved to dismiss Relator's Complaint.  In support of that motion, Defendants offered a plethora of arguments urging dismissal.

Out of a laundry list of arguments, this Court correctly declined to accept any of them - except for the argument that Relator's Complaint was barred, in its entirety, by the first-to-file rule of the False Claims Act.  That argument was eventually rejected in part by the Fourth Circuit, which reinstated Relator's claims for retaliatory termination and his claims under the false claims acts of the named state plaintiffs ("state FCAs"), *i.e.* counts nine through twenty-five of the Complaint.  It is also important to note that Defendants pleaded unsuccessfully that the Judges of the Fourth Circuit adopt the very arguments that this Court would not consider as a basis for dismissal.[1]

However, despite the fact that neither this Court nor the Court of Appeals was persuaded by the plethora of arguments previously advanced for dismissal we now find ourselves again before this Court briefing these very same arguments.

Once again, as evidenced by two different Orders issued from two different Courts there simply is no basis in law to dismiss the surviving claims of Relator's Complaint.

---

[1] Contrary to Defendants' intimation, the Fourth Circuit did not "acknowledge" (Def. Mem. 1, 7 n.5.) Defendants' many arguments for dismissal in any meaningful sense.  Rather, the Circuit Court declined Defendants' request that it affirm dismissal based on those arguments.

Mr. Carson's allegations were not publicly disclosed. Mr. Carson could not have based his allegations on the media and government reports identified by the Defendants, as those reports are either woefully lacking in detail or simply fail to mention Defendants, their illicit schemes, or any other aspect of his claims.  Mr. Carson and his attorneys were not aware of, and did not view, those reports prior to filing his original complaint.   Mr. Carson based his allegations on nothing other than his own observations and investigation. Even if Mr. Carson's allegations had been previously disclosed, his Complaint would not be subject to the public disclosure bar, as he is clearly an original source of the information contained in his Complaint.

Mr. Carson's Complaint contains detailed and specific instances of Defendants' improper conduct, including specific dates of treatments, patients, the individuals who engaged in inappropriate conduct, and which Governmental program was billed for same. Mr. Carson satisfies the Federal Rules of Civil Procedure, and he has provided notice to the Defendants of his claims. The Complaint includes specific facts that show that the Defendants violated the State FCAs, and he filed his Complaint well within the applicable statutes of limitations.

Together, all the facts asserted by Mr. Carson -  presumed at this stage of the litigation to be true -  plausibly plead a detailed scheme to cause the submission of false claims to the Government and provide specific information of the Defendants' scheme.  For the reasons outlined at length below the Defendants arguments—which this Court previously declined to adopt—have no basis in law. Accordingly, Mr. Carson respectfully requests that Defendants' motion to dismiss be denied in its entirety and he *finally* be permitted to prosecute his claims before this Court.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Relator is a physical therapist assistant who discovered, while working for the Defendants, that they were overbilling Government-funded health programs for therapy services provided to

plan beneficiaries, billing for services not provided, and billing for unnecessary and at times harmful therapy.  Defendants terminated Relator's employment once he raised his concerns with management.

On September 28, 2011, Relator Mr.  Patrick Gerard "Jerry" Carson, after making his initial disclosures to the Government,[2] filed a complaint on behalf of the Federal Government, the States of California, Colorado, Delaware, Florida, Georgia, Illinois, Indiana, Maryland, Michigan, Nevada, New Jersey, North Carolina, Oklahoma, Texas, Wisconsin and the Commonwealth of Virginia against HCR ManorCare, Inc. and other defendants.

In his original complaint, Relator alleged violations of subsection 31 U.S.C. §3729(a) of the Federal False Claims Act ("FCA"), as well as violations of the State FCAs.  Relator also asserted a claim, solely on his own behalf, for unlawful retaliatory termination for engaging in protected whistle blowing activity under 31 U.S.C. §3730(h).

On June 13, 2013, this Court consolidated Mr. Carson's case with another case brought against Defendants by relator Christine Ribik.  A third case was also eventually consolidated with Mr. Carson and Ms. Ribik's complaints. After conducting its own lengthy investigation, the United States Department of Justice (hereinafter: "the Government") intervened in the consolidated matter

---

[2] Contrary to Defendants' contention (Def. Mem. 12), Relator served copies of his Complaint upon Margaret Hutchison, Assistant United States Attorney for the Eastern District of Pennsylvania, Monika Moore, United States Attorney for the Eastern District of Virginia and Eric H. Holder, Jr., United States Attorney General.  (Complaint ¶15). On July 20, 2011, a full two months *prior* to filing his Complaint, Relator served a written disclosure with supporting documentation upon Ms. Hutchinson and the United States Attorney General. Relator also served the written Disclosure Statement and Complaint upon the various State Attorney General's Offices in accordance with the State FCAs.

on December 8, 2014.  Shortly after intervention, the Government filed its own Consolidated Complaint in Intervention on April 10, 2015.[3]

After service of the Government's Complaint, the Defendants filed a motion to dismiss the Government's Complaint for failure to state a claim, essentially raising many of the same arguments they later raised in an attempt to dismiss Relator's Complaint, and which they resurrect yet again in support of the instant motion.  After a full briefing and hearing on the motion, the District Court correctly denied the motion to dismiss the Government's Complaint in its entirety.

Following the Government's intervention, Relator Carson amended his Complaint[4]  on May 11, 2015, for the purpose of voluntarily excluding certain parties who were named in his original complaint, but against whom the Government had declined to intervene.  As was his right, Relator served his amended Complaint on the Defendants with the intention of prosecuting his state claims on a non-intervened basis and to pursue his retaliatory termination claim.

After service, Defendants moved to dismiss Relator's Complaint on several grounds including, but not limited to, all of the arguments present in Defendants' current submission. This Court correctly declined to adopt Defendant's various arguments for dismissal save for the argument premised upon the first-to-file bar.

---

[3] Contrary to the Defendants' suggestion, the fact that the States have thus far decided not to intervene in Mr. Carson's case indicates nothing as to the merits of his case.  Indeed, the State of California, among others, are closely monitoring Mr. Carson's case as well as the Federal Government's case against Defendants and may elect to intervene at any time. Either way, a State's decision not to intervene in no way impugns Mr. Carson's ability to prosecute the state claims on a non-intervened basis.

[4] This was the Second Amendment. The first, done under seal, was done solely for ministerial reasons to amend the caption which contained a typographical error. The second amendment was done to drop those Defendants against which the Government determined not to intervene.

Following a full briefing and oral argument, the Defendants again urged the United States Court of Appeals for the Fourth Circuit to affirm the District Court's dismissal and to *adopt those arguments that this Court specifically refused as a basis for dismissal.* In so ruling, the Court of Appeals vacated the dismissal of Relator's retaliation claim under §3730(h) and his claims under the State FCAs and remanded the matter back to this Court so that Mr. Carson can prosecute his surviving claims. Despite these multiple attempts at dismissal Defendants now again revive many of their myriad of arguments for dismissal.

### III. LEGAL STANDARD

Once again, there is simply no basis in law to dismiss Mr. Carson's claims. It has long been established that "[i]n reviewing a motion to dismiss, the Court will 'accept the facts alleged in the complaint as true and construe them *in the light most favorable to the plaintiff.*'" *Baldino's Lock & Key Serv., Inc. v. Google, Inc*., No. 1:14-CV 00636, 2015 WL 402927, at *2 (E.D. Va. Jan. 27, 2015) (Hilton, J.) (quoting *Coleman v. Maryland Ct. of App.*, 626 F.3d 187, 190 (4th Cir. 2010)) (emphasis added). Therefore, "[i]n order to avoid dismissal, the Complaint 'need only give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Such is the case with Mr. Carson's Complaint. In light of these standards, a motion to dismiss must be denied where the complaint "state[s] a plausible claim for relief that permits the court to infer more than the mere possibility of misconduct." *Coleman*, 626 F.3d at 190 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Mr. Carson's Complaint more than satisfies this standard. As such, he respectfully requests that the Defendants' motion to dismiss be denied in its entirety.

## IV. ARGUMENT

### A. THERE IS NO BASIS TO DISMISS RELATOR'S STATE FCA CLAIMS (COUNTS 10 TO 25)

**1. Mr. Carsons' state FCA claims are not barred by any purported prior public disclosures.**

Defendants incorrectly state Fourth Circuit law on the FCA's public disclosure bar and thus incorrectly conclude that Relator's state FCA claims are barred by any purported prior public disclosures. In fact, Relator's claims are not barred, because his Second Amended Complaint was not based upon any such purported public disclosures. Even if Mr. Carson's Complaint had been based on prior public disclosures, it would not fall to the public disclosure bar because Mr. Carson is an original source of the information upon which the allegations in his Complaint are based.

**a. Relator's claims are not based on information previously disclosed.**

Although not an issue here, the public disclosure bar precludes jurisdiction over FCA actions that are "based upon the public disclosure of allegations or transactions" in government and news media reports "unless . . . the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A) (2000).[5] The FCA of every state plaintiff has a public disclosure bar that closely mirrors the federal bar which "courts have routinely . . . interpreted and applied in the same manner as the federal statute. (Def. Mem. 8).

However, Defendants fail to correctly state and apply the law in this Circuit on the public disclosure bar. It has been well established that the courts of this circuit "interpret the phrase "based upon" in the . . . public disclosure bar differently than [their] sister circuits." *United States ex rel. Ondis v. City of Woonsocket*, 587 F.3d 49, 57 (1st Cir. 2009) (discussing the circuit split on this issue and observing that "[t]his leaves the Fourth Circuit alone among the courts of appeals in

---

[5] Defendants concede that it is the pre-2010 amendment version of the public disclosure bar that apply here. (Def. Mem. 8, n.7).

favoring a narrow reading of the [public disclosure bar's] 'based upon' language"). While other circuits read the phrase to bar FCA claims that are "substantially similar to" or "supported by" publicly disclosed information, *see, e.g., United States ex rel. Bledsoe v. Community Health Sys., Inc*., 342 F.3d 634, 646 (6th Cir. 2003), the Fourth Circuit interprets it to preclude actions "only where the relator has actually derived from [a public] disclosure the allegations upon which his qui tam action is based" *United States ex rel. Siller v. Becton Dickinson & Co*., 21 F.3d 1339, 1348 (4th Cir. 1994); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 350 (4th Cir. 2009).

Thus, to sustain a finding allegations are "based upon" a public disclosure requires more than a finding of similarity between the public disclosure and the complaint's allegations. "[I]t is self-evident that a suit that includes allegations that happen to be similar (even identical) to those already publicly disclosed, but were not actually derived from those public disclosures, *simply is not, in any sense, parasitic*." *Siller*, 21 F.3d at 1348 (emphasis added).

Indeed, Defendants do not claim that Mr. Carson's allegations were "actually derived" from the purported examples of public disclosures they offer.  As such, Defendants have provided this Court with no basis for finding that Mr. Carson's Complaint is barred under the Public Disclosure Bar.  Instead, the Defendants simply highlight and exaggerate vague similarities between Mr. Carson's allegations and the purported examples.

The two examples cited by the Defendants are far too general to have provided the detailed information on which Carson's Complaint was based.  Both the HHS-OIG report and the *Washington Post* article cited by the Defendants raise questions about and cite unspecific

allegations of improper billing practices by skilled nursing facilities.[6]  The *Washington Post* article mentions HCR ManorCare only once, briefly, to merely note that two of its nursing homes "put their residents in the most expensive billing category at nearly five times the national average." That is the full extent of the article's discussion of Defendants. None of the other wrongful conduct that Mr. Carson uncovers is ever mentioned.  Of special importance for the viability of Relator's state claims, the *Washington Post* article *never even* mentions fraud against the states and fails to include any reports relating to Medicare Part A coinsurance claims billed to and paid by the states' Medicaid plans.[7] This is fatal to the Defendants' arguments.

 Moreover, the HHS-OIG Report never even mentions the Defendants as potential wrongdoers.  Thus, neither purported disclosure ever alleges or imputes to the Defendants the specific conduct alleged in Mr. Carson's claims.

### b.  Relator is an original source of the information in his Complaint

Even if the Court determines that there has been a public disclosure, Mr. Carson is an original source of the information found in his Complaint and thus his Complaint cannot be dismissed pursuant to the public disclosure bar.

It has long been established that an original source is one who has "direct and independent knowledge of the information on which the allegations are based." 31 U.S.C. § 3730(e)(4)(B). This provision has been construed to impose a conjunctive requirement of demonstrating that the

---

[6] It is worth noting that the web address for the Washington Post article provided by Defendants in their memorandum, http://www.washingtonpost.com/wpdyn/content/article/2010/03/28/AR201003280 2764.htm, does not in fact direct the reader to the article.

[7] *See e.g.,* California State Plan under Title XIX of the Social Security Act, Supp. 1 to Attachment 4.19-B at pp. 2-3, *available at* http://www.dhcs.ca.gov/formsandpubs/laws/Documents/StatePlan%20Supplement%201%20t o%20Att%204.19-B.pdf. (last visited May 18, 2017).

relator's knowledge is both direct and independent. *See United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 656 (D.C. Cir.1994).   A relator's knowledge is "direct" if she acquired it through her own efforts without an intervening agency, and it is "independent" if her knowledge is not dependent on the public disclosure. *See id.*   Contrary to Defendants' suggestion, there is no requirement that a relator have worked at each facility owned or operated by a defendant to be an original source of information underlying allegations of fraud at those facilities.   Relator can have direct and independent knowledge that the Defendants' alleged schemes occurred at facilities to which he was not assigned or where he was not physically present. This can be effectuated by among other things, meetings and telephone conference calls.   Moreover, as stated in his Complaint, Mr. Carson worked at more than one facility operated by the Defendants.

Clearly, Mr. Carson has direct personal knowledge of the Defendants' improper schemes, as he was an employee who witnessed the conduct first-hand.  This makes him "precisely the sort of 'whistleblowing insider' the statute seeks to encourage." See *United States ex rel Wilson v. Graham County Soil & Water Conservation Dist.* 777 F.3d 691, 699 (4th Cir. 2015). Mr. Carson's knowledge is independent because it does not depend on public disclosures, and it is direct because it was obtained without any intervening agency, instrumentality, or influence. *See id.*  The claims in the Complaint are the result of Mr. Carson's own observations of the Defendants' improper conduct.  As stated above, there are no public disclosures in this case. Even if there were, Mr. Carson is an original source of the information concerning the allegations contained in his Complaint. Mr. Carson therefore respectfully asserts that this not a basis to dismiss his Complaint, and he respectfully requests that this Court deny the Defendants' motion to dismiss.

It is important to note that, whether through inattention or an intent to deceive the Court, Defendants falsely claim that Relator did not "plead the other prerequisite to meeting the 'original

source' exception—that he 'voluntarily provided the information to the Government before filing

and action . . .'" (Def. Mem. 12). As stated numerous times, in fact, Relator very clearly did allege

as much:

> 15. In accordance with 31 U.S.C. §3730(b)(2), the Relator must provide the Government with a copy of this Complaint and/or a written disclosure of substantially all material evidence and material information in its possession contemporaneous with the filing of this Complaint. Relator has complied with this provision by serving copies of this Complaint upon Peg Hutchison, United States Attorney for the Eastern District of Pennsylvania, Monika Moore, United States Attorney for the Eastern District of Virginia and Eric H. Holder, Jr., United States Attorney General.

(Complaint ¶15).

### 2. Mr. Carson's State FCA claims are adequately pled under Rules 8(a) and 9(b).

Mr. Carson's claims, as pled, satisfy the Federal Rules of Civil Procedure.

### a. Mr. Carson's Complaint states a plausible claim for relief

Mr. Carson's Complaint satisfies FRCP 8(a). To adequately plead an FCA claim, a plaintiff

must allege, *inter alia*, (1) a false statement or fraudulent course of conduct; (2) made or carried

out with the requisite scienter, *i.e.* with actual knowledge or deliberate ignorance or reckless

disregard of the truth or falsity of the information; (3) that was material; and (4) caused the

government to pay out money or forfeit money due. *United States ex rel. Ahumada v. Nat'l Ctr.*

*for Employment of the Disabled*, No. 1:06-CV-713, 2013 WL 2322836, at *2-3 (E.D. Va. May 22,

2013) (Hilton, J.) *aff'd sub nom. United States ex rel. Ahumada v. NISH*, 756 F.3d 268 (4th Cir.

2014) (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 788 (4th Cir. 1999)

("*Harrison I*")). Relator has done this.

Defendants' incorrectly attempt to argue to the contrary by insisting that Relator's

allegations of unnecessary services being rendered to patients *can never* give rise to State FCA

liability because such claims are inescapably subjective and that Relator failed to allege that

10

Defendant's wrongful conduct is disallowed under the Medicaid regimes of the various state plaintiffs.[8]

### i. Defendants implausibly suggest that Medicaid reimbursement rules of the various states might allow claims for payment for medical services that were never rendered or were medically unnecessary.

Defendants contend that because the precise reimbursement rules and procedures vary across the various state Medicaid programs, it somehow follows that Relator's allegations of wrongful conduct such as billing for services not rendered and for medically unnecessary services *never* state a plausible claim with respect to the false claims submitted to Medicaid. Such an argument turns the law on its head. It is difficult to discern the logic of Defendants' very brief argument on this point. Defendants are correct, no doubt, that the precise Medicaid reimbursement rules and procedures do vary from state-to state. Yet, unless the Defendants somehow suggest that certain states have adopted Medicaid reimbursement methods under which a skilled nursing facility may submit claims for reimbursement for services that were never rendered, or for services that were medically unnecessary, the mere fact that reimbursement methods can vary from state-to-state is irrelevant, and this Court should give Defendants' argument no credence.

The conduct Mr. Carson alleged in his Complaint, which includes claims for reimbursement submitted to the various state plaintiffs for medical services that were never rendered and for services that were medically unnecessary, plausibly gives rise to a claim for relief pursuant to the false claims statutes of the various states.

---

[8] As explained more fully below, this is at least the third time Defendants raise this argument before this Court having previously raised unsuccessfully it in their Motion to Dismiss the Government's Complaint and their first Motion to Dismiss Relator Carson's Complaint. *See* ECF #117 and #131. Rightly so, each attempt has failed as a matter of law.

**ii. Mr. Carson's allegations of unnecessary treatment clearly give rise to liability under the state false claims acts.**

Defendants incorrectly contend that Mr. Carson's allegations fail "as a matter of law," because he has failed to allege "an objectively falsehood." Def. Mem. 15. Defendants assert that their claims to the state governments for therapy could not have been objectively false, because disagreement over the amount of therapy that is "reasonable and necessary" cannot give rise to an objectively false statement or a false claim. *Id*. In making these assertions, Defendants ignore a previous ruling of this Court rejecting this very same argument in the context of Defendants' effort to the Government's Complaint in Intervention dismissed. See ECF #117, #121, and #125. This Court's previous ruling concerning Defendants' argument was based on well-established case law holding that claims for unnecessary services are actionable as "false" under the FCA. See *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004) ("[C]laims for medically unnecessary treatment are actionable under the FCA."); *see also United States ex rel. Mikes v. Straus*, 274 F.3d 687, 700-701 (2d Cir. 2001) (holding that claims for medically unnecessary services are "false" under the FCA); *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 468 (6th Cir. 2011) (adopting reasoning in *Mikes*); *United States ex rel. Augustine v. Century Health Servs.*, 289 F.3d 409, 415 (6th Cir. 2002) (holding that claims for payment submitted in violation of Medicare regulations on which payment is conditioned are "false" claims under the FCA).

Defendants' argument *incorrectly* assumes that a claim is *never* false where "reasonable minds can differ" regarding whether the service rendered was medically necessary. Def. Mem 15. This cannot be correct. If Defendants were correct, any treatment, no matter how unnecessary, could be charged to Medicaid and other Government-funded health plans as long as the provider was willing to assert that the treatment was appropriate. This would render meaningless the requirement that only "reasonable and necessary" treatment is reimbursable. *See, e.g., Mount Sinai*

12

*Hosp., Inc. v. Weinberger*, 517 F.2d 329, 334 (5th Cir. 1975) (explaining "reasonable and necessary" standard set forth in 42 U.S.C. § 1395y controls whether particular services are covered by Medicare).

Other courts have also rejected the argument that because a medical determination is purportedly "subjective," the provider is insulated from FCA liability.  In *United States ex rel. Landis v. Hospice Care of Kansas, LLC*, No. 06-2455-CM, 2010 WL 5067614, at *4 (D. Kan. Dec. 7, 2010), the United States alleged that defendants submitted false claims to Medicare for hospice benefits because the underlying certification that the patients were terminally ill – and therefore eligible for the hospice benefit – was knowingly false.  The district court denied defendants' motion to dismiss and expressly rejected the argument that a subjective medical determination could not give rise to a false claim:

> Defendants argue that a medical opinion regarding whether a patient is terminally ill . . . is a subjective medical opinion that cannot be false.  FCA liability must be based on an objectively verifiable fact; however, facts that rely upon clinical medical judgments are not automatically excluded from liability under the FCA.

*Id.* at *4.  See also *United States v. Vitas Hospice Servs., LLC*, No. 4:13-cv-00449-BCW, slip op. at 9 (W.D. Mo. Sept. 30, 2014) ("The Government alleges that Vitas submitted claims . . . for hospice services that were not medically necessary. With all reasonable inferences drawn in the Government's favor, the allegations of the complaint plausibly state a claim for relief under the FCA."); *United States ex rel. Reid v. Aegis Therapies, Inc*., No. 10-cv-00072, 2013 WL 5816501, at *7 (N.D. Ga. Oct. 29, 2013) (denying motion to dismiss FCA claims because government's allegations that speech therapy was not reasonable and necessary "state[] a plausible claim for relief against the Facility and Contractor under the FCA").

Defendants may contend at trial that patients in their facilities received reasonable and necessary services and that the allegedly false claims for reimbursement were in fact not false. But Defendants may not contend, at this stage of the proceedings, that the Relator's allegations of unnecessary and unreasonable treatment do not plausibly support FCA liability.

Moreover, the very same conduct alleged in Mr. Carson's Complaint and in the United States' Complaint in Intervention to be in violation of the federal FCA constitutes, if proven at trial, violation of state FCAs. In a number of instances, Medicare Part A beneficiaries are subject to a co-insurance payment whenever their stay at an SNF exceeds 20 days. If the patient is also eligible, Medicaid will pay the co-insurance fee. Thus, to the extent that Defendant delayed discharge of patients in order to increase reimbursable billings rather than for reasons of medical need, such conduct may have resulted in co-insurance fees being paid by the state Medicaid programs. To be clear, these were coinsurance claims billed to and paid by the states, where the states paid coinsurance connected to Medicare false claims. Such claims constitute defendants' state false claims liability.

### b. Mr. Carson's Complaint pleads with particularity.

Relator Carson's Complaint satisfies the heightened requirement of Rule 9(b), the purpose of which is "to ensure . . . that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of . . ." *United States ex rel. Harrison v. Westinghouse Savannah River Co*., 352 F.3d 908, 921 (4th Cir. 2003) ("*Harrison II*") (citations omitted). Rule 9(b) does not require a relator to plead his allegations with the level of detail required to prove his case, as Defendants seem to contend. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *see also United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 189 & n.29 (5th Cir. 2009) ("Surely a procedural rule ought not be read to insist that a

14

plaintiff plead the level of detail required to prevail at trial."). Relator Carson's Complaint satisfies the requirements of Federal Civil Procedure Rule 9(b) because his allegations provide sufficient notice to Defendants of *the precise misconduct that they engaged in*.

The Court should reject Defendants' arguments that Relator Carson's claims are insufficient under Rule 9(b). Rather, Mr. Carson's Complaint alleges with particularity, as Rule 9(b) requires, the details regarding HCR ManorCare's improper scheme to inflate billings to Medicaid and specific, representative false claims that were actually submitted for payment.[9] Indeed, he lists specific patients[10], dates of treatment and the improper activity engaged in by the Defendants. Indeed, as Defendants concede, Mr. Carson's claims under the State FCAs were all "based on the same underlying allegations" (Def. Mem 5) as the claims under the Federal FCA, which this Court has repeatedly declined to dismiss under Rule 9(b). In other words, same schemes, different Government-funded healthcare plans implicated.

For example, the Complaint details how Defendants used unnecessary and unreasonable therapy to increase minutes delivered to patients. (Complaint ¶¶ 124-136). The Complaint then provides specific examples of false claims whereby Defendants sought reimbursement for unnecessary and unreasonable therapy provided to particular patients. (*Id.* ¶¶ 125, 126, 127, 128, 130, 131 and 134). The Complaint likewise provides detailed allegations of the methodologies HCR ManorCare used in its improper scheme to subject Skilled Nursing Facility ("SNF") patients to unnecessary rehabilitation therapy and inflate its reimbursement from state healthcare programs,

---

[9] Defendants' falsely claim that Mr. Carson's allegations are limited to allegations of improper billing of Medicare. (Def. Mem. 2). In fact, Mr. Carson's Complaint is replete with allegations of improper billing of health plans funded by both the Federal and the State Governments.

[10] Obviously, specific patient identifiers are not included in Mr. Carson's allegations, so as to not violate the Health Insurance Portability and Accountability Act ("HIPAA"). The failure to include such "specific" information never renders a FCA Complaint insufficient as a matter of law.

and connects representative false claims to these various means and methodologies. *Id.* Mr. Carson's Complaint is replete with the dates of specific meetings where improper conduct occurred. He sets forth the names of the individuals who engaged in improper conduct. *Id.* ¶138. He specifically references patients, complete with dates for delayed discharges. Complaint ¶141. He references the improper use of modalities by management, *id.* ¶133, and the improper treatment of specific patients, with dates of treatment. *Id.* ¶134. He alleges that he submitted his time records, which were billed to Government-funded healthcare programs, including Medicaid. Mr. Carson's Complaint even provides representative examples of false claims which Defendants submitted to Government-funded health plans for payment. *Id.* ¶¶112-141.

Defendants erroneously contend that, although the Complaint sets forth numerous specific false claims for different patients, the Complaint lacks sufficient particularity under Rule 9(b). Def. Mem. 16. Defendants' selective and self-serving reading of the Complaint ignores the primary purpose of Rule 9(b), which is to ensure that the defendant has sufficient information to articulate a defense by placing it on notice of the conduct complained of. *Harrison II*, 352 F.3d at 921 (citations omitted). Moreover, Rule 9(b) does not require the relator to plead his allegations with the level of detail required to prove his case, as Defendants seem to contend. *See Kanneganti*, 565 F.3d at 189 & n.29. Mr. Carson's Complaint, including the representative examples of patients and false claims, easily satisfies Rule 9(b), because Relator's allegations provide sufficient notice to Defendants of the precise misconduct alleged. He sets forth information on the various schemes and very clearly states that Government-funded healthcare programs, including Medicaid are implicated.

Notice pleading is still viable under the Federal Rules of Civil Procedure. Mr. Carson satisfied the requirements of the Federal Rules of Civil Procedure, and he respectfully requests that the Defendants' Motion be denied as to this point.

### 3. Mr. Carson's Complaint adequately pleads conspiracy under the state FCAs.

Relator pleads a claim for conspiracy under the State FCAs. Defendants incorrectly argue that Mr. Carson failed to adequately plead a conspiracy to submit false claims to the state plaintiffs. Defendants' argument rests on the observation that Relators' state FCA counts include "a conclusory assertion that Defendants 'conspired' to violate the state FCA's." Def. Mem. 18.  These assertions are not the only allegations in Mr. Carson's Complaint establishing a conspiracy to defraud the state plaintiffs.  Mr. Carson's Complaint is replete with facts sufficient to state a plausible violation of the state FCAs conspiracy provisions.

Defendants argue that despite Mr. Carson's many detailed allegations tending to show a conspiracy, his allegations establish only "an 'intra-corporate conspiracy' among [Defendants'] employees and/or affiliated . . . entities." Def. Mem. 18.  However, while the United States Supreme Court cautioned courts against finding intra-corporate conspiracies, it has also cautioned courts not to blind themselves to the possibility of an intra-corporate conspiracy by elevating form over substance. *See American Needle, Inc. v. National Football League,* 560 U.S. 183, 192, (2010); *see also Copperweld Corp. v. Indep. Tube Corp*., 467 U.S. 752, 769 (1984).

The Supreme Court has explained that "corporate interrelationships . . . are not determinative" of the existence of a conspiracy. *Id*. at 193 (noting that § 1 of the Sherman Act, prohibiting conspiracies in restraint of trade, may apply "as readily [to] a conspiracy among those who are affiliated or integrated under common ownership as [to] a conspiracy among those who are otherwise independent.").  The Defendants' reliance on *Copperweld* is thus misguided.   In

*Copperweld*, the Supreme Court held that there was no prohibited conspiracy under the Sherman Act between a corporation and its wholly owned subsidiary where "they are controlled by a single center of decision making." *Copperweld*, 467 U.S. at 767. As *Copperweld* exemplifies, "substance, not form, should determine whether a[n] . . . entity is capable of conspiring" under federal statutes. *Id.* at 773. The question is not, as the Defendants contend, whether the alleged conspiracy is an "inter-corporate conspiracy" but rather whether the alleged conspiracy is a concerted effort that "joins together separate decision makers."[11] *American Needle, Inc.*, 560 U.S. at 194.

Given the patchwork of related entities and skilled nursing facilities under the Defendants' umbrella throughout the country whose cooperation was necessary for the Defendants to undertake their improper scheme, this Court should not allow Defendants to escape liability on the mere basis of the form of their corporate organization. Indeed, much has been made of the mosaic of corporate relationships established in the skilled nursing facility context. Mr. Carson respectfully requests that the Defendants' motion to dismiss his Complaint be denied on this point.

**4. Mr. Carson Pled Cognizable Claims under the Michigan, Delaware and Maryland FCAs.**

Defendants erroneously claim that Relator's Michigan FCA claims fail on first-to-file grounds. Def. Mem 19. Michigan's first-to-file rule is also triggered only by a previously-filed related action. *See* Mich. Comp. Laws Ann. § 400.610a, Sec. 10a (12). Here, Relator was the

---

[11] In the anti-trust context, the relevant inquiry would not be whether the multiple parties "seem like one firm or multiple firms in any metaphysical sense," but rather whether the alleged conspiracy is amongst "separate economic actors pursuing separate economic interests, such that the agreement deprives the marketplace of independent centers of decision making . . . and thus of actual or potential competition." *Id.* at 194 (internal citations omitted). Here, the relevant inquiry should not turn simply on whether the co-conspirators are wholly-owned subsidiaries or employees of each other, but whether the improper conduct was made possible or facilitated by the concerted effort of the separate actors.

first—indeed, the only—individual to file a claim against Defendants for the improper conduct alleged in the Complaint under Michigan's FCA.  Defendants note that Michigan FCA's first-to-file bar is triggered by an earlier-filed case to which the federal government may already be a party. However, this is irrelevant, as the bar is only triggered by an earlier-filed case seeking the same legal remedy.  As no one has filed a claim under the Michigan FCA for the conduct alleged in Relator's Complaint, Michigan's first-to-file rule does not apply.

Defendants also erroneously claim that Carson's claims under the Delaware FCA are barred because the Delaware Attorney General has not determined there was "substantial evidence that a violation [of the state FCA] has occurred." Def. Mem 20.  This is simply not a requirement under the Delaware FCA.  Delaware's FCA closely parallels the federal statute, and thus imposes no special requirement that the relator obtain permission to proceed in a non-intervened basis. *See* Del. Code tit. 6, §1203.

Finally, the State of Maryland has the right to intervene at a later point if it so chooses. As such, dismissal would be premature here.

### 5. Supplemental Jurisdiction exists over Mr. Carson's state FCA claims.

This Court has supplemental jurisdiction over Mr. Carson's state claims. This Court has jurisdiction over Mr. Carson's state claims.  Federal statute provides that  "[t]he district courts shall have jurisdiction over any action brought under the laws of any State for the recovery of funds paid by a State or local government if the action arises from the same transaction or occurrence as an action brought under section 3730 [of the False Claims Act]." 31 U.S.C. § 3732(b).  *See United States ex rel. Galmines v. Novartis Pharms. Corp.*, No. 06-3213, 2013 U.S. Dist. LEXIS 158090, at *5 (E.D. Pa. November 5, 2013).

Moreover, Congress provided that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are *so related* to claims in the action within such original jurisdiction *that they form part of the same case or controversy* under Article III." 28 U.S.C. §1367(a) (emphasis added). The United States Courts of Appeals for the Fourth Circuit explained that supplemental jurisdiction "is not limited to restatements of the same basic ground for recovery." *White v. Cty. of Newberry, S.C.*, 985 F.2d 168, 172 (4th Cir. 1993). Indeed, the related claims "need only revolve around a central fact pattern." *Id.* Supplemental jurisdiction exists over a plaintiff's state law claims where the alleged facts bearing on the federal claims and the facts that could establish recovery for Plaintiff's state law claims revolve around a central fact pattern and a common nucleus of operative fact. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966); *United States ex rel. Bunk v. Gov't Logistics N.V.*, 842 F.3d 261, 272 (4th Cir. 2016) (exercising supplemental jurisdiction over state law claims when facts establishing False Claims Act claim served as foundation for defendant's liability under state law).

Original jurisdiction here is a result of Plaintiff's retaliation claim under 31 U.S.C. §3730(h), and by the consolidated plaintiffs' claims under 31 U.S.C. §3729 claim asserted in the Government's Consolidated Complaint in Intervention filed in this consolidated matter. The facts used to establish Defendants' liability for retaliatory termination under §3730(h) and for violations of §3729 are similar to those establishing Plaintiff's claims under the state FCA's. Several of the state FCA's contain anti-retaliation provisions that mirror the federal provision and the underlying scheme for overbilling Government-funded health plans that form the core of the plaintiffs' consolidated claims against Defendants. This is largely identical to the scheme underlying Mr. Carson's allegations under the State FCAs. Thus, if the consolidated plaintiffs establish

20

Defendants' liability under the federal statute, Relator also establishes his state law claims. *Gov't Logistics*, 842 F.3d at 272 (stating that claims "need only revolve around a central fact pattern"). Accordingly, supplemental jurisdiction exists. *Harvey v GOBO, Inc.*, No. 6:16-CV-00076, 2017 U.S. Dist. LEXIS 34903, at * 7 (W.D. Va, Mar. 10, 2017).

> This court may decline to exercise supplemental jurisdiction in one of four circumstances:
>
> (1) The claim raises a novel or complex issue of State law;
> (2) The [state] claim substantially predominates over the claim or claims over which the district court has original jurisdiction;
> (3) The district court has dismissed all claims over which it has original jurisdiction; or
> (4) In exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. §1367(c).  None are applicable here, and Defendants do not identify the statutory exception under which the Court should decline to exercise supplemental jurisdiction over Relator's State FCA claims.  Instead, Defendants make a blanket statement that the Court's failure to decline supplemental jurisdiction over Relator's state claims "would not be in furtherance of judicial economy, convenience and fairness to litigants." Def. Mem. 21.   This, of course, is not the case.

Defendants speculate that retaining supplemental jurisdiction over Relator's state claims would not be in furtherance of judicial economy, convenience and fairness to litigants because "Relator has not participated in discovery in the consolidated matter" and it would be unfair to require Defendants to re-do discovery." Def. Mem. 21-22.   This argument is weak indeed, especially given the fact that Mr. Carson, in a separate motion, has petitioned the Court for an extension of discovery, which has not yet concluded.

Contrary to Defendants' speculation, considerations of judicial economy, convenience and fairness to the litigants strongly weigh in favor of the Court retaining supplemental jurisdiction.

Due to the statutes of limitations of the State FCAs, Mr. Carson may not have the option of pursuing his state law claims in state courts should this Court decline supplemental jurisdiction. Such a draconian result would deny Mr. Carson his day in court to seek redress for his legal injuries. *See Rosado v. Wyman*, 397 U.S. 397, 404-405 (1970) (noting that matters such as statute of limitation problems and amount of time and resources expended should be considered before ever dismissing state claims); see also *Ridenour v. Andrews Fed. Credit Union*, 897 F.2d 715, 722 (4th Cir. 1990). If, however, Relator can somehow overcome time-limitation obstacles and pursue his claims in state courts, this will make a mockery of judicial economy as he will need to litigate, and numerous state courts will have to hear, the same common nucleus of operative facts several times over.[12]

For these reasons, supplemental jurisdiction exists under 28 U.S.C. §1367(a), and none of the statutory exceptions of §1367(c) apply.

## B. MR. CARSON SUFFICIENTLY PLED A CLAIM FOR RETALIATION

Mr. Carson sufficiently pled a claim for retaliation. The FCA protects Mr. Carson from being "discharged . . . or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of [the FCA]." 31 U.S.C. § 3730(h).

To assert a valid FCA claim for retaliation in this Circuit, a plaintiff must allege that: (1) he engaged in protected activity by taking action in furtherance of a *qui tam* suit; (2) his employer had notice of those acts; and (3) his employer took adverse action against him as a result of these acts. See *Mann v. Heckler & Koch Defense, Inc.*, 630 F.3d 338, 343 (4th Cir. 2010). Incredibly,

---

[12] Of course, Defendants will also have to defend themselves against the same core set of allegations several times over. This will no doubt be a burden to the Defendant as well.

Defendants challenge all three elements.  Def. Mem. 24-27.  For the reasons elaborated below, Defendants' challenges are without merit.

Relator Carson alleged that the Defendant terminated his employment in retaliation for his repeated efforts to stop "the fraudulent billing practices concerning patients associated with Government-funded health programs." Complaint ¶149.  Throughout his Complaint, and in particular in paragraphs 148-157, Relator alleges at least five specific instances, starting as far back as February 2007, in which he informed the Defendant of the improper conduct which formed the basis of the present action and which constituted clear violations of the FCA.  Four days after Relator Carson's final attempt to expose the Defendants' improper conduct in an effort to stop the numerous violations of the FCA, the Defendants terminated him on a pre-textual basis. *Id.* ¶156.[13] These allegations are sufficient, when taken as true, to establish that Relator engaged in protected whistleblowing activity, that Defendants had notice of the activity, and that Defendants terminated Relator as a result of engaging in such protected activity.  Under any fair reading of the Complaint, Mr. Carson's plausibly alleges that Defendants terminated him in retaliation for engaging in protected activity, and sufficiently pleads a § 3730(h) claim according to the plain language of the statute.

To sufficiently plead the first element of a 3730(h) claim, it is not necessary that a relator plead that he undertook the activity in question in contemplation of an eventual FCA suit. *United States ex rel. Owens v. First Kuwaiti Gen. Trading*, 612 F.3d 724, 735 (4th Cir. 2010).  In the Fourth Circuit, a protected activity takes place where "an employee's opposition to fraud takes

---

[13] Defendants' falsely assert that Mr. Carson conceded that he was terminated for non-retaliatory reasons.  Def. Mem. 3.   The Complaint clearly alleges that the reason Defendants' proffered for his termination was merely pre-textual and that he was *actually terminated* for engaging in protected whistleblowing activity. Any assertion to the contrary is simply false.

place in a context where litigation is a distinct possibility, when the conduct could reasonably lead to a viable FCA action, or when . . . litigation is a reasonable possibility." *Mann*, 630 F.3d at 344.

Here, Relator pled facts that, when proven, indicate that litigation of a FCA claim was a distinct and reasonable possibility. Throughout his Complaint, and particularly in paragraphs 112-141, Relator alleges fraudulent conduct by the Defendants which rises to the level of a FCA violation. He further alleged that he brought the improper conduct to the Defendants' attention on at least five specific occasions. Complaint ¶¶148-157. On two of those occasions, he directed his complaint to his supervisors, *id.* ¶¶150-51, and on at least the three other occasions he directed his complaints to the Defendants' office of corporate compliance. *Id.* ¶¶152-154. Therefore, based on the facts known to the Relator (and even Defendants) at the time of his internal complaints to the Defendant, there was a reasonable possibility that his efforts could lead to a viable FCA action. *See Elder v. DRS Techs., Inc.*, No. 1:13cv799, 2013 WL 4538777, at *5 (E.D. Va. Aug. 27, 2013) (holding that internal complaints by the relator that "corporate practices of [Defendant] were wrong and potentially illegal" were protected activity under the FCA).

Defendants' predictable resistance to this obvious conclusion is based on two inapposite cases. Specifically, Defendant cites *Owens*, 612 F.3d at 734, for the proposition that "[a]n employer is entitled to treat a suggestion for improvement as what it purports to be rather than as a precursor to litigation," and *United States ex rel. Rector v. Bon Secours Richmond Health Corp.*, No. 3:11-CV-38, 2014 WL 1493568, at *13 (E.D. Va. Apr. 14, 2014), for the proposition that allegations of shoddy business practices do not constitute protected activity under the FCA. Def. Mem. 24-25. Defendants infer from these two inapplicable cases that Relator's allegations of billing irregularities do not plausibly allege that HCRMC was "on notice that litigation is a

24

reasonable possibility." *Id.* at 26.   But this is irrelevant, as Defendants rely on a misrepresentation of Mr. Carson's allegations of reporting his concerns to his supervisors. Complaint ¶150-51.

Under Fourth Circuit precedent, internal complaints by an employee of "shoddy business practices" or "suggestions for improvement" do not qualify as protected activity.   However, the Defendants incorrectly state Mr. Carson's attempts to denounce Defendants' improper schemes were mere suggestions to improve shoddy business practices.

As the *Owens* court explained, "[f]or activity to rise above the level of ordinary critique and constitute a step in preparation for an FCA claim, there must be some suggestion of impropriety or illegality by the employer" that the employee is attempting to uncover or prevent. *Owens*, 612 F.3d at 735.  Here, Relator's Complaint is replete with allegations of fraud against the Government beyond mere suggestions for improving the Defendant's business practices, and he has clearly and sufficiently alleged that his internal complaints made to the Defendants while in their employ were allegations of fraudulent conduct and should have put the Defendants on notice that litigation was a reasonable and distinct possibility.  Thus, Mr. Carson's conduct was protected activity under the FCA.

To sufficiently plead the third element of a 3730(h) claim, a relator must allege that his employer took adverse action against him as a result of engaging in protected activity.  This Circuit recognized at least two methods of proving a causal link between protected activity and retaliatory discharge which are relevant here.  The first method relies on the "temporal proximity" of the protected activity and the alleged retaliatory discharge.  *Elder*, 2013 WL 4538777, at *5; *see also Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001).  In *Elder*, the court rejected the defendant's response to plaintiff's temporal proximity argument by noting that "the time span between Plaintiff's latest instance of protected conduct and the adverse action of his termination

may be much shorter than the 23-month period [alleged by defendant]." *Id.* at *5-6.  Here, Mr. Carson's "latest instance of protected conduct" preceded his termination by a *mere four days*. Complaint ¶155.

The second method of proving a causal link between protected activity and the retaliatory discharge requires a showing that the Defendants' articulated reason for termination is a mere "pretext." *Lettieri v. Equant Inc.*, 478 F.3d 640, 646 (4th Cir. 2007); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).  To survive the Defendants' Motion to Dismiss, Relator need only have alleged that the Defendants' articulated reason for the termination was a mere pretext.  Indeed, Mr. Carson does this at ¶156 of his Complaint, where he alleges that he did not change a plan of care without approval of a physical therapist, as Defendants had accused him of doing.

Thus, whether by alleging a close temporal proximity between the protected activity and the retaliatory discharge, or by alleging that Defendants' articulated reason for termination was a mere pretext, Relator sufficiently alleged that Defendants terminated his employment because he engaged in protected activity.  Mr. Carson's allegations plausibly suggest that he was terminated in retaliation for engaging in protected activity, and are sufficient to plead a § 3730(h) claim. As such, Defendants' arguments fail and their motion should be denied.

## C.  MR. CARSON'S ALLEGATIONS ARE NOT LIMITED TO CONDUCT THAT OCCURRED DURING HIS EMPLOYMENT

Defendants erroneously contend that Relator Carson's allegations are limited to allegations of fraudulent conduct that occurred during his employment with the Defendants between August 29, 2005 and November 9, 2009. Def. Mem. 27.  Defendants then argue that because Mr. Carson filed his original complaint on September 28, 2011, his claims are subject to the time limitations of the federal and state statutes.  Specifically, Defendants contend that count 9 is subject to the

three-year limitation of 31 U.S.C. § 3730(h), and must therefore be barred for all claims prior to September 28, 2008. Finally, Defendant claims that counts 10 through 24 are subject to the six-year periods of limitation of the respective state statutes, and must be dismissed for all claims prior to September 28, 2005.

As noted above, Defendants are incorrect in asserting that Relator Carson's allegations are limited to allegations of improper conduct that occurred during his employment with the Defendants between August 29, 2005 and November 9, 2009. Nothing in his Complaint suggests any such limitation, and Defendants cite no support and nor marshal any argument in favor of their assumption. In fact, Relator Carson has no reason to believe that Defendants stopped their fraudulent conduct on the very day he was unlawfully terminated. In other words, he alleges a continuing tort. It is premature for Defendants to argue otherwise, especially without the benefit of discovery. Mr. Carson's allegations concern all conduct by the Defendants up to the present day, and through the conclusion of this action. As such, Defendants' arguments are not a basis for dismissal

## D. MR. CARSON RESPECTFULLY REQUESTS LEAVE TO AMEND THE COMPLAINT SHOULD IT BE FOUND LACKING.

For the reasons articulated below, Mr. Carson respectfully requests that he be given leave to amend his Complaint should it be found lacking in any way. It has long been established that, where, as here, a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile. See *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F. 3d 370, 376 (4th Cir. 2008) (holding that courts should liberally grant a leave to amend unless "amending the complaint would be futile").

Accordingly, it would be equitable to allow the Complaint to be amended, should the Court hold that it fails to state a plausible claim. See *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613

(4th Cir. 1980) ("Because defendant was from the outset made fully aware of the events giving rise to the action, an allowance of the amendment could not in any way prejudice the preparation of the defendant's case."). Nearly all of the Defendants' arguments, if viable, appear to be curable largely through scriveners' additions.

In *Ostrzenski v. Seigel*, 177 F. 3d 245, 253 (4th Cir. 1999), the Fourth Circuit endorsed that:

> A dismissal under Rule 12(b)(6) generally is not final or on the merits and the court normally will give plaintiff leave to file an amended complaint. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that plaintiff be given every opportunity to cure a formal defect in his pleading. This is true even though the court doubts that plaintiff will be able to overcome the defects in his initial pleading. Amendment should be refused only if it appears to a certainty that plaintiff cannot state a claim.

Defendants have advanced the argument that Mr. Carson should somehow proffer a draft of an amended complaint with his submission. This is absurd. Mr. Carson does not believe his Complaint is lacking in any way for the reasons articulated above and thus does not believe his Complaint requires amendment. However, should this Court find that that Mr. Carson's Complaint is lacking in some way, he fully expects he can overcome any deficiencies this Court describes in its written opinion.

Further, Defendants attempt to cast aspersions regarding the nature of Mr. Carson's prior amendments to his Complaint. It is important to note that those amendments were made *prior* to the matter being joined by an adversary. Indeed, the first amendment was made to correct *a scrivener's error in the caption*. The second amendment was made *after the Government intervened in the consolidated action to exclude certain parties from the litigation for the sake of judicial economy*, something for which Mr. Carson should not be penalized

28

Defendants' claim Mr. Carson should proffer an amended complaint at this stage is patently absurd. In essence, the Defendants are asking the Mr. Carson correct some heretofore unidentified deficiency. Unless and until some such deficiency is identified, it is unfair to suggest that he correct the deficiencies Defendants have alleged.  Given the procedural history of this case, Mr. Carson respectfully requests leave to amend his Complaint should the Court find it insufficient in any way. Quite simply, there is no basis in law to dismiss Mr. Carson's Complaint – again. As stated at length above, and numerous times previously, Mr. Carson's Complaint is sufficient as a matter of law. His complaint satisfies the Federal Rules of Civil Procedure and relevant legal authority including, but not limited to, the applicable False Claims Acts. As such, he respectfully requests that the Defendants' Motion to Dismiss be denied in its entirety.

## V. Conclusion

For the foregoing reasons, Mr. Carson respectfully requests that this Court deny the Defendants' Second Motion to Dismiss his Complaint in its entirety.  As articulated above, there is no basis in law to dismiss his Complaint. As such, Mr. Carson should be permitted to proceed with his case. However, should the Court deem Mr. Carson's Complaint defective for any reason, Mr. Carson respectfully requests that the Court grant him an opportunity to cure any such defects and file an amended complaint.

Dated:  May 19, 2017

/s/ Robert O. Wilson
Robert O. Wilson (VSB# 77791)
Rosalee B. C. Thomas
FINKELSTEIN THOMPSON LLP
James Place 1077 30th Street NW, Suite 150
Washington, D.C. 20007
Phone: 202-337-8000
Fax: 202-337-8090
rwilson@finkelsteinthompson.com
rbcthomas@finkelsteinthompson.com

29

William L. Hurlock (pro hac vice)
Christopher P.  Furlong
MUELLER LAW, LLC
363 Bloomfield Avenue, Suite 2-C
Montclair, New Jersey 07042
Tel: (973) 233-8290
Fax: (973)509-9521
william.hurlock@muellerlaw.com
Christopher.furlong@muellerlaw.com

COUNSEL FOR PLAINTIFF/RELATOR CARSON

## CERTIFICATE OF SERVICE

I certify that on May 19, 2017, I filed the foregoing using the Court's electronic filing system, which generated a notice of electronic filing to all counsel of record.

/s/ *Robert O. Wilson*
Robert O. Wilson (VSB# 77791)
FINKELSTEIN THOMPSON LLP
James Place 1077 30th Street NW, Suite 150
Washington, D.C. 20007
Phone: 202-337-8000
Fax: 202-337-8090
rwilson@finkelsteinthompson.com