IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* RIBIK, | CIVIL ACTION NUMBER: |
| Plaintiffs, | 1:09-cv-0013 (CMH/TCB) (Lead Case) |
| v. | |
| HCR MANORCARE, INC., *et al.*, | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SANCTIONS FOR EXPERT DISCOVERY VIOLATIONS**

Defendants submit this Memorandum in Support of their Motion for Sanctions for Expert Discovery Violations ("Motion for Sanctions"). Defendants respectfully request the Court impose sanctions on the United States Department of Justice ("DOJ") pursuant to Federal Rule of Civil Procedure 37 and Local Civil Rule 37, for continuing discovery violations with respect to its expert witnesses, as follows.

**INTRODUCTION**

This False Claims Act ("FCA") case is entirely dependent on the opinions of alleged expert witness Rebecca Clearwater. For reasons already presented to the Court, Clearwater's methodology is unreliable and her opinions should be excluded. *See* Defendants' Memorandum in Support of Their Motion *in Limine* to Exclude the Expert Report and Testimony of Rebecca Clearwater (Dkt. 485) and Defendants' Reply Brief in Further Support of Motion *in Limine* to Exclude the Expert Report and Testimony of Rebecca Clearwater (Dkt. 595). But instead of recognizing this fact, DOJ and Clearwater continue to engage in deceitful conduct in an attempt

to evade summary judgment.  *See* Defendants' Opposition to United States' Notice Regarding Supplementation of Expert Reports (Dkt. 613).  Most recently, on October 15, 2017, five days prior to the *Daubert* hearing relating to Clearwater, DOJ produced 131 pages of Clearwater's handwritten notes, which in her deposition she denied existed and which are in certain material respects inconsistent with the opinions contained in her expert report and testimony.  Almost 25 years ago the Fourth Circuit, in stating that lawyers have the first line task of assuring the integrity of our adversarial process, eloquently wrote:

> Our adversary system for the resolution of disputes rests on the unshakable foundation that truth is the object of the system's process which is designed for the purpose of dispensing justice.  However, because no one has an exclusive insight into truth, the process depends on the adversarial presentation of evidence, precedent and custom, and argument to reasoned conclusions—all directed with unwavering effort to what, in good faith, is believed to be true on matters material to the disposition.  Even the slightest accommodation of deceit or lack of candor in any material respect quickly erodes the validity of the process.  As soon as the process falters in that respect, the people are then justified in abandoning support for the system in favor of one where honesty is preeminent.

*United States v. Shaffer Equipment Company,* 11 F.3d 450, 457 (4th Cir. 1993).

Instead of being mindful of its discovery obligations, DOJ has engaged in a pattern of discovery abuses in an effort to protect Clearwater, who is both unreliable and untruthful.  These abuses disrupted the schedule set in place by the Court and deprived Defendants of the opportunity—and right—to adequately identify, question and challenge Clearwater's opinions.  For these reasons, as set forth in detail below, Defendants respectfully request that the Court impose sanctions against DOJ for its abuse of the discovery process.  Specifically, Defendants respectfully request that the Court consider dismissing this case in its entirety.  In the alternative, Defendants request that Clearwater's opinions be excluded in their entirety, on grounds separate and apart from those set forth in Defendants' *Daubert* motion, or at the very least exclude

Clearwater's opinions regarding the sub-set of sample patients for whom DOJ improperly withheld Clearwater's notes.

**PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

The deadline for DOJ's expert reports was November 4, 2016, and for rebuttal reports it was January 13, 2017. Oct. 7, 2016 Order (Dkt. 193). DOJ ostensibly complied with those deadlines by producing expert reports and rebuttal reports for Clearwater. After significant discovery delays caused by DOJ's failure to timely produce discoverable information, Defendants were finally able to depose each of these experts in July and August 2017. *See* Joint Memorandum in Support of Motion for Extension of Discovery Period for Defendants (Dkt. 263).

On September 8, 2017, upon consideration of the Defendants' Motion to Amend the Scheduling Order (Dkt. 435), the Court indicated its preference to hear the parties' *Daubert* motions prior to summary judgment briefing and ordered that motions for summary judgment be filed on October 19, 2017. Sept. 8, 2017 Order (Dkt. 443). Pursuant to that preference and schedule, Defendants filed their Motion *In Limine* to Exclude the Expert Report and Testimony of Rebecca Clearwater (Dkt. 484) on September 17, 2017. DOJ filed its opposition brief on October 2, 2017 (Dkt. 559), and Defendants filed a reply brief on October 10, 2017 (Dkt. 597). All of the *Daubert* motions in this case, including the motion related to Clearwater, are now fully briefed and set for hearing on Friday, October 20, 2017 at 10:00 AM. At no time in the course of this briefing did DOJ advise the Court that it intended to further supplement Clearwater's report.

On Friday, October 13, 2017, DOJ filed a "Notice" with the Court decreeing that it intends to serve "supplemental" expert reports for three experts, including Clearwater, on November 17, 2017, the deadline for final pretrial submissions (Dkt. 612, "DOJ's Notice").

3

Defendants filed an Opposition to this Notice on Saturday, October 14, 2017, so that the Court had an opportunity to hear Defendants' position on the issue prior to the scheduled *Daubert* hearing (Dkt. 613).

Two days later, on Sunday, October 15, 2017, DOJ produced to Defendants, among other documents, 131 pages of handwritten notes from Clearwater. Ex. 1, October 15, 2017 letter. With this production, DOJ offered no explanation of what these notes are, why they were being produced after the witness had been deposed and after the *Daubert* motion had been fully briefed. *Id*. Upon review, it appears these notes relate to 101 of the 180 patients in DOJ's sample for whom Clearwater provided an expert opinion regarding the therapy provided by Defendants (the opinion that forms the sole basis of DOJ's evidence of falsity in this case).

Well before Clearwater's deposition, on June 27, 2017, Defendants served upon DOJ a Subpoena and Notice of Deposition *Duces Tecum* for Clearwater's deposition, requesting among other things any and all notes prepared by or for Clearwater in connection with Clearwater's investigation and review in the litigation. Ex. 2. On July 11, 2017, DOJ responded by generally objecting to the request "to the extent it seeks protected material, including communications protected from disclosure by Rule 26(b)(4)(C)," but agreed to produce non-protected, responsive documents. Ex. 3.

Defendants deposed Clearwater on August 23, 24 and 25, 2017. During Clearwater's deposition, undersigned counsel repeatedly asked about the existence of any notes. *See* Ex. 4, excerpts from Clearwater Dep. Generally, Clearwater testified that she did not recall taking any notes, and she further testified that she looked for notes prior to her deposition and did not locate any. *Id*. 82:15-83:7. This testimony was and still is completely implausible.

4

On September 13, 2017, Defendants deposed Christina Jessee, one of Clearwater's employees who assisted her in the review of medical records in this case. At 6 PM on September 12, 2017, the evening before this deposition, DOJ emailed undersigned counsel stating that Jessee had notes relating to her work in this litigation and that the documents would be available at the deposition the following morning. DOJ arrived at the deposition with approximately 1,300 pages of Jessee's notes. During her deposition, Jessee testified that no one had asked her for copies of those notes prior to the day before her deposition. Ex. 5, Jessee Dep. 13:1-6; 16:15-17.

During the deposition, Jessee testified that as part of Clearwater's methodology, she would communicate with her team through track changes and comment boxes in the Word documents used to document Clearwater's opinions, referred to by Clearwater and her team as "beneficiary profiles." Ex. 5, Jessee Dep. 19:7-22:20. This was contrary to Clearwater's deposition testimony. Ex. 4, Clearwater Dep. 952:6-953:17. In light of this contradiction, the day after the Jessee deposition on September 14, 2017, undersigned counsel asked DOJ whether Clearwater's employer, AdvanceMed, had copies of the communications between Clearwater and her review team in any format and whether any other reviewers have notes similar to Jessse's. Ex. 6, p. 5, September 14, 2017 Dubelier email. Nearly a week later on September 20, 2017 (after Defendants filed their *Daubert* Motion to exclude Clearwater), DOJ advised Defendants that "there are some notes," but did not provide any details as to whose notes they were, what they related to, or even the volume. Ex. 6, p. 3, September 20, 2017 Cendali email. DOJ further stated that it had not produced the redline drafts of the beneficiary profiles because they are draft reports protected under Rule 26(b)(4). But DOJ was wrong because these documents were generated among Clearwater and her team prior to the time Clearwater provided any draft reports to DOJ. After further email communication on the issue, on September 22,

5

2017, DOJ agreed to provide copies of the beneficiary profiles that were created by Clearwater and her team prior to them being shared with DOJ. Ex. 6, p. 1, September 22, 2017 Cendali email. DOJ indicated that the documents would be produced by Monday, October 2, 2017. To date these documents still have not been produced.

When undersigned counsel asked DOJ for an explanation of the Clearwater notes, DOJ's response was essentially that Clearwater forgot that she had them and they had been "misfiled." Ex. 7, p. 2, October 16, 2017 Cendali email. DOJ explained that when it received Defendants subpoena and notice of deposition in June 2017, it had a telephone call with Clearwater as well as AdvanceMed's internal counsel, that it asked Clearwater about handwritten notes, but that Clearwater said that "it was not the team's general practice to take notes." *Id*. Despite this fantastic statement that a review by five people of 180 patients charts, some as large as 2,000 pages, could be completed without a single person taking any notes, DOJ left it at that, and did not inquire further of any of Clearwater's team. Moreover, DOJ failed to explain why the notes were not produced until October 15, 2017, when they had apparently been identified as early as September 20, 2017.

**LEGAL STANDARD**

Rule 37 "gives the district court wide discretion to impose sanctions for a party's failure to comply with its discovery orders," including prohibiting the disobedient party from introducing certain evidence and outright dismissal of the action. *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989); Fed. R. Civ. P. 37(b)(2)(A)(ii), (v). The Fourth Circuit has affirmed dismissal of cases following a party's repeated failure to comply with discovery orders. *See, e.g., Projects Management Co. v. Dyncorp Intern., LLC,* 734 F.3d 366 (4th Cir. 2013). The court may deny the party violating discovery obligations the benefit of

any portion of the record which may have been tainted by misconduct. *Shaffer Equipment*, 11 F.3d at 463.

In considering whether dismissal of a case is warranted for repeated discovery violations the Court should consider, (1) the degree of the wrongdoer's culpability, (2) the extent of a clients' blamelessness if the acts are only of the attorney, (3) prejudice to the judicial process and the administration of justice, (4) prejudice to the victim, (5) the availability of other sanctions, and (6) public interest. *See id.* at 462-3,

Here, the Court's discovery orders were crystal clear. Discovery closed on September 1, 2017. Apr. 25, 2017 Order (Dkt. 269). By producing Clearwater's notes on October 15, 2017, and to date still failing to produce written communications between Clearwater and her reviewers (the draft beneficiary profiles), DOJ violated that order and severe sanctions are appropriate, particularly in light of DOJ's history of discovery abuses in this litigation.

**ARGUMENT**

DOJ's conduct again highlights its blatant disregard for the Court's orders and Defendants' right to a fair trial. The inexcusable production of Clearwater's notes regarding more than half of the 180 patients whose medical records she reviewed comes after fully briefed *Daubert* motions and on the eve of their argument; opening briefs for the parties' summary judgment motions are just days from filing; and this Court begins trial in this matter on January 22, 2018. This late production of key documents underlying Clearwater's opinions must also be considered in light of DOJ's Notice that it intends to produce a supplemental report for Clearwater and two other experts over ***one year*** after expert reports were due.

    **A.    DOJ Is Culpable**

DOJ's response to the request for an explanation of the late production of Clearwater's notes demonstrates again a lack of good faith effort to comply with its discovery obligations.

7

Ex. 7. A request for the notes of an expert witness is not unusual in any way and yet, apparently DOJ did nothing to prepare for this completely predictable request in the years between when Clearwater conducted her review and her deposition. In fact, it seems DOJ did not even ask Clearwater for her notes until it received the request for documents from Defendants, much less instruct her to keep all of her work papers together and filed in a manner in which they could be located later. Rather than further pursuing Clearwater's remarkable statement that there were no notes, DOJ left it at that. DOJ did not question any of Clearwater's team about notes, and did not even ask Christina Jessee about the existence of any notes until the day before her scheduled deposition in September 2017. This is an inexcusable failure of DOJ to preserve and produce discoverable information.

Further, DOJ's correspondence makes clear that it became aware of Clearwater's notes no later than September 20, 2017, shortly after Defendants' filed their *Daubert* motion and weeks before the deadline for Defendants' reply brief, but did nothing to expedite the production to Defendants or to advise the Court of this issue. And on top of that, DOJ still has not produced the draft beneficiary profiles that contain the communications between Clearwater and her team, which were promised by October 2, 2017, again well before the deadline for Defendants' reply brief in support of its *Daubert* motion.

This is not the first time DOJ behaved dishonestly. First it opposed Defendants' request to take depositions of the Medicare Contractors who reviewed and processed Defendants' claims during the relevant time period, suggesting that Defendants could only seek discovery directly from CMS. *See* United States' Motion to Quash Rule 45 Subpoenas (Dkt. 201) and Order denying that motion (Dkt. 208). When those depositions did finally take place, two of the four witnesses were not adequately prepared, requiring Defendants to seek Court intervention and the

8

re-opening of those depositions. *See* Defendants' Motion to Compel Additional Time for the 30(b)(6) Deposition of Maximus Federal Services (Dkt. 328) and Order granting that motion (Dkt. 341) and Defendants' Amended Motion to Hold United States in Contempt (Dkt. 357) and Order denying that motion but ordering the 30(b)(6) deposition of Medicare contractor National Government Services to be repeated (Dkt. 374).

DOJ also withheld discoverable and critical witness statements by falsely asserting the statements were privileged. *See* Defendants' Memorandum in Support of Their Motion to Compel the United States to Respond to Defendants' Interrogatory No. 8 and Request for Production No. 58 (Dkt. 210) and Order granting that motion (Dkt. 219); Defendants' Memorandum in Support of Their Second Motion to Compel the United States to Respond to Defendants' Interrogatory No. 8 and Request for Production No. 58 (Dkt. 238) and Order granting that motion (Dkt. 255). It also withheld material communications with Clearwater's employer AdvanceMed, falsely asserting that they were privileged. *See* Defendants' Memorandum in Support of Their Motion Seeking In Camera Review by the Magistrate Judge of Allegedly Privileged Documents Related to Medicare Contractor AdvanceMed (Dkt. 422) and Opinion and Order requiring production of those documents (Dkt. 451). Further, despite repeated requests from Defendants, DOJ has failed to produce a document of the American Physical Therapist Association, which Clearwater testified that she relied upon in forming her opinions. *See* Defendants' Reply Brief in Further Support of Motion to Exclude Clearwater at 1 n.3.[1]

---

[1] There were several other instances in which DOJ improperly delayed the production of discoverable information, including both documents and responses to written discovery, requiring Defendants to repeatedly follow up before obtaining the discovery to which they were entitled, but which did not necessitate Court intervention. These delays also impeded Defendants' ability to seek further discovery regarding this information in deposition.

This pattern deprived Defendants time and again of materials necessary to adequately defend themselves. In light of the benefits DOJ gained from this gamesmanship in terms of second chances, last-minute revisions, and other do-overs, it is "difficult to believe that the multitude of problems experienced are all happenstance." *Baylor v. Comprehensive Pain Mgmt. Centers, Inc.*, No. 7:09CV00472, 2011 WL 1325994, at *7 (W.D. Va. Apr. 6, 2011). This conduct is exactly the type of "flagrant case, where [DOJ's] noncompliance represents bad faith and callous disregard of the [Court] and the Rules." *Mut. Fed. Sav. & Loan Ass'n*, 872 F.2d at 92. *See also, Dyncorp Intern., LLC,* 734 F.3d 366.

In addition to bad faith, DOJ's conduct in this most recent dispute reveals a startling lack of candor toward the Court. *See Shaffer Equip. Co.*, 11 F.3d at 457-59. The Fourth Circuit in *Shaffer*, facing a situation in which government lawyers concealed certain misrepresentations made by a government witness, recognized that "[t]he system can provide no harbor for clever devices to divert the search [for truth], mislead opposing counsel or the court, or cover up that which is necessary for justice in the end." *Id.* at 457-58. The DOJ lawyers here did just that, by not adequately investigating whether any notes actually existed prior to Clearwater's deposition and then delaying their production by four weeks after having learned of their existence until after the *Daubert* motions were fully briefed. Such a display of bad faith in an effort to gain an advantage over Defendants is not only sanctionable, but is also a violation of the DOJ lawyers' duty of candor and good faith as officers of the Court. *Id.* at 457. *See also Stewart v. U.S. Postal Service,* 649 F. Supp. 1531, 1534 (S.D.N.Y. 1986) (stating that prosecutors, even in a civil case, are held to a higher standard than a private litigant and there "[t]here are other manifestations of the interest in justice rather than in technicalities when the government is a litigant").

### B. Blamelessness of the Client is Not Relevant Here

Unlike ordinary civil litigation, here the DOJ lawyers represent the people of the United States. The Defendants are included in that universe and DOJ's discovery violations have harmed them. *See, e.g. First Amendment Coalition v. U.S. Dep't of Justice*, 869 F.3d 868, 890-91 (9th Cir. 2017) (Murguia, J., concurring in part and concurring in the judgment) (citing *Shaffer* in the context of a FOIA fee award where DOJ lawyers in two parallel proceedings failed to provide notice to the respective courts of actions in the other); *United States v. Gotti*, 322 F. Supp. 2d 230, 237 (E.D.N.Y. 2004) (questioning an Assistant United States Attorney's candor to the court and noting that "the Court must remind him that 'government lawyers have responsibilities and obligations different from those facing members of the private bar. While the latter are appropriately concerned first and foremost with protecting their clients…government lawyers have a higher, compelling duty to act in the public interest'" (citing *In re Witness Before Special Grand Jury 2000-2*, 288 F.3d 289, 293 (7th Cir. 2002)).

### C. DOJ's Conduct Prejudices the Process and Administration of Justice

The Court adopted an extended discovery schedule that is atypical in this District but was agreed to by the parties. That schedule was disrupted once because of misconduct by DOJ. *See* Joint Memorandum in Support of Motion for Extension of Discovery Period for Defendants (Dkt. 263). DOJ's current actions, as explained in Defendants' Opposition to DOJ's Notice, seek to unilaterally eviscerate the schedule set by the Court. The practical effect of DOJ's conduct is to take control of the case, ignoring the Rules of Civil Procedure entirely, as well as this Court's scheduling order, in deciding on their own when and under what circumstances DOJ will produce discoverable information. *See, e.g., Fulton v. Theradyne Corp.,* No. 06 C 1321, 2007 WL 772953, at *3 (N.D. Ill. Mar. 12, 2007) (noting that "Plaintiff's contention that it agreed with [Defendant] to depose the witnesses in early January 2007 offers no justification for Plaintiff's

failure to meet the court's set disclosure deadline. Discovery was closed by the time Plaintiff was scheduling the depositions. The parties cannot dictate the scheduling of case matters to the court, which has an inherent power to manage the cases on its docket." (citing *Deere & Co. v. Ohio Gear,* 462 F.3d 701, 706-07 (7th Cir. 2006))).

### D. Defendants Have Been, and Will Continue to Be, Prejudiced by DOJ's Conduct

DOJ should not be allowed to profit from its flagrant violations of the rules of discovery. Clearwater used unreliable methodology, provided implausible testimony, and should be excluded for the reasons set forth in Defendants' motion to exclude her report and testimony. However, the damage to Clearwater in discovery would have been much worse had DOJ produced Clearwater's notes and the communications among the reviewers. The basic tenet of Clearwater's testimony, which is otherwise demonstrably false, is that any medical reviewer will reach the same conclusion as any other medical reviewer regarding Medicare coverage. Ex. 4, Clearwater Dep. 79:2-80:20. First, if this were the case there would be no administrative appeals process. But second, and more important in this case, Clearwater's notes contain inconsistencies with her final opinions.[2] That is, even a cursory review shows instances where it appears Clearwater denied claims where her notes do not reflect the denial. It also appears that she may have added additional denials not originally included by her reviewers. This evidence not only goes to credibility, but it goes to the core issue of the lack of reliability of Clearwater's methodology. The notes make it even more apparent that she simply made it up as she went along because there is no objective standard governing this type of Medicare claims review. Third, the lack of any notes with respect to 79 of the patients is contrary to the methodology

---

[2] Defendants do not know the potential impact of the draft beneficiary profiles because they still have not been produced.

Clearwater described in her deposition where she asserted that she conducted a final review of the decisions for all 180 patients. Ex. 4, Clearwater Dep. 498:13-500:13.

### E. A Second Clearwater Deposition Will Not Cure the Harm

DOJ's cavalier suggestion in email communications, without seeking any leave of Court, that Defendants can simply depose Clearwater again to resolve any prejudice is both inadequate and dishonest for the following reasons:

First, any such deposition would occur after the *Daubert* hearing, and consequently may require a second *Daubert* hearing if the Court does not exclude Clearwater on the current record. Second, allowing Clearwater to provide self-serving testimony to try to remedy her unreliable methodology and massive number of errors and omissions—after *Daubert* and summary judgment motions have been fully briefed and argued—only benefits DOJ by allowing it to clean up its mess and obtain a second shot at arguing for admissibility of her report and testimony. In other words, it gives DOJ the opportunity to build a record to try to rehabilitate Clearwater, under the guise of giving Defendants a chance to meaningfully question her about her opinions. Third, it took thousands of attorney hours to prepare to depose Clearwater on her 800 page report. The deposition lasted three full days and eighteen and a half hours on the record. Defendants should not be required to do all of this over again at great expense and inconvenience simply because DOJ and Clearwater withheld discoverable evidence.

Further, DOJ has not yet decreed when any such second deposition would take place. Under DOJ's unilaterally declared schedule set forth in its Notice, it will produce supplemental reports from Clearwater and two other experts on November 17, 2017. Depending upon the number of changes made in these reports, the earliest possible deposition date would be in January 2018. But trial is set for January 22, 2018. As such, DOJ's apparent solution is simply unacceptable. The current trial date was set and the schedule carefully planned around it so that

this case will ultimately end. Further, under DOJ's proposal, Defendants would be preparing for and taking second depositions of DOJ's three most important witnesses in the weeks leading up to trial, and then with no time or schedule to revisit *Daubert* motions as may be appropriate.

### F. The Time for Other Sanctions Has Passed

Throughout discovery, Magistrate Judge Buchanan repeatedly warned DOJ about its conduct and imposed lesser sanctions, including re-opening the depositions of two fact witnesses and ordering the production of improperly withheld documents. But much like discovery in this case, the time for such measures has long passed. Defendants have already spent a massive amount of resources to prepare for and take Clearwater's deposition, which lasted three full days. Within three weeks of completing that deposition, Defendants filed extensive *Daubert* motions challenging the reliability of Clearwater and DOJ's other alleged expert witnesses, in accordance with the Court's stated preference to hear *Daubert* motions prior to summary judgment. Defendants have consistently abided by this Court's discovery orders and schedule, only to have DOJ fail to reciprocate. The Court should not permit DOJ to benefit from this behavior and further disrupt the schedule set for pretrial motions and trial. In short, DOJ is trying to write its own rules so that it can obtain every advantage without consideration for Defendants' rights and resources, or the resources of the Court.

### G. The Public Interest Weighs In Favor of Sanctions

This Court and others have recognized the responsibility of government lawyers to conduct themselves in litigation with the highest integrity and honesty. *See Stewart,* 649 F. Supp. 1534 (noting that different rules apply to government plaintiffs than apply to private parties with counsel and that "when the government is a party to litigation, substance should trump procedure"). *See also* Transcript of March 24, 2017 Motion Hearing (noting that DOJ lawyers have "the highest duty to be fair and to be forthcoming and honest"). In this case, DOJ

has continually failed to meet that standard. Imposing sanctions in this case would benefit the public interest by holding DOJ to the standard demanded of it, and deterring similar conduct in the future. *See National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (recognizing that "sanctions . . . must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent") Deterrence is a useful consideration in this case, where the party whose conduct has been called into question—DOJ—is frequently in the position of litigating similar cases. Putting a stop to this flagrant disregard of the Court's orders and prejudicing Defendants' ability to fully and adequately prepare a defense will prevent such improper behavior in the future.

**CONCLUSION**

DOJ's arrogant and cavalier attitude towards its discovery obligations in this case is no longer confined to fact discovery, but has also carried over to the experts upon whom DOJ's case completely relies. At this point it hardly matters if DOJ is dishonest or incompetent, or both. Therefore, Defendants request that the Court either (1) dismiss this case with prejudice, or (2) exclude DOJ from using Clearwater's report or testimony, on grounds additional to Daubert, as a sanction for discovery abuses. *Mut. Fed. Sav. & Loan Ass'n.*, 872 F.2d at 92; Fed. R. Civ. P. 37(b)(2)(A)(ii), (v).

Dated:   October 18, 2017                                             Respectfully submitted,

HCR MANORCARE, INC.
MANOR CARE, INC.
HCR MANOR CARE SERVICES, LLC
HEARTLAND EMPLOYMENT SERVICES, LLC

By Counsel

/s/ _____

Katherine J. Seikaly (VSB No. 71438)
Eric A. Dubelier
Carol C. Loepere
Reed Smith LLP
1301 K Street, N.W.
Suite 1000 – East Tower
Washington, D.C. 20005
202-414-9200 (phone)
202-414-9299 (fax)
kseikaly@reedsmith.com
edubelier@reedsmith.com
cloepere@reedsmith.com

Melissa A. Geist (pro hac vice)
Reed Smith LLP
136 Main Street, Suite 250
Princeton, NJ 08540
609-987-0050 (phone)
609-951-0824 (fax)
mgeist@reedsmith.com

Marilyn A. Moberg (pro hac vice)
Reed Smith LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
213-457-8035 (phone)
213-457-8080 (fax)
mmoberg@reedsmith.com

*Counsel for Defendants HCR ManorCare, Inc., Manor Care, Inc., HCR Manor Care Services, LLC, and Heartland Employment Services, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of October 2017, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Michael D. Granston
Andy J. Mao
David B. Wiseman
Allison Cendali
Amy L. Likoff
United States Department of Justice
P.O. Box 261, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 353-8297
Fax: (202) 514-0280
david.wiseman@usdoj.gov

Monika L. Moore
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Ave
Alexandria, VA 22314
Tel: (703) 299-3779
Fax: (703) 299-3983
Monika.Moore@usdoj.gov

*Counsel for the United States*

Jeffrey J. Downey
Law Office of Jeffrey J. Downey
8270 Greensboro Drive
Suite 810
McLean, VA  22102
Tel: (703) 564-7318
Fax: (703) 883-0108
jdowney@jeffdowney.com

*Counsel for Relator Christine Ribik*

Ashish Joshi
Lorandos Joshi
2400 S. Huron Parkway
Ann Arbor, MI 48104-5152

*Counsel for Relator Marie Slough*

/s/
Katherine J. Seikaly (VSB No. 71438)
Reed Smith LLP
1301 K Street, N.W.
Suite 1000 – East Tower
Washington, D.C. 20005
202-414-9200 (phone)
202-414-9299 (fax)
kseikaly@reedsmith.com

*Counsel for Defendants HCR ManorCare, Inc., Manor Care, Inc., HCR Manor Care Services, LLC, and Heartland Employment Services, LLC*